**ORAL ARGUMENT NOT YET SCEDULED**
**No. 26-1032**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

Jorge Rivera Lujan, et al.,

*Petitioners-Appellants,*

– v. –

Federal Motor Carrier Safety Administration, et al.,

*Respondents-Appellees.*

_____

On Petition for Review of a Final Rule of the Federal Motor
Carrier Safety Administration

---

**BRIEF OF ASYLUM SEEKER ADVOACY PROJECT, NATIONAL IMMIGRATION LAW CENTER, AND NATIONAL EMPLOYMENT LAW PROJECT AS AMICI CURIAE IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR A STAY PENDING REVIEW**

---

Lynn Damiano Pearson
NATIONAL IMMIGRATION
LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
damianopearson@nilc.org

Marcela X. Johnson
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0164
marcela.johnson@asaptogether.org

Hilda Bonilla
NATIONAL IMMIGRATION
LAW CENTER
P.O. BOX 43573
Washington, D.C.
bonilla@nilc.org

Daniel E. Ocampo
Laura Padin
NATIONAL EMPLOYMENT LAW PROJECT
90 Broad St. 11th Fl.
New York, NY 10003
(646) 693-8233
docampo@nelp.org
lpadin@nelp.org

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae the Asylum Seeker Advocacy Project (ASAP), National Immigration Law Center (NILC), and the National Employment Law Project (NELP) certify that:

**(A)    Parties and Amici**

**Parties:** Except for amici curiae, all parties and intervenors are listed in Petitioners' Rivera Lujan, et al. Emergency Motion for a Stay.

**Amici:** Undersigned amici are the ASAP, NILC, and NELP.

**(B)    Ruling under Review**

On February 12, 2026, Petitioners Jorge Rivera Lujan, Aleksei Semenovskii, American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME), and American Federation of Teachers (AFT) petitioned this Court for review of a Final Rule issued by the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA) (the "Rule"). On February 26, 2026, Petitioners filed with this Court an Emergency Motion for a Stay of the Effective Date of the Rule pending review.

**(C)    Related Cases**

Petitioners' challenge to the FMSCA's Interim Final Rule—the precursor to the challenged Rule—is being held in abeyance pending disposition of the instant case. *See Rivera Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Feb. 20, 2026).

Date:   March 4, 2026                    Respectfully submitted,


                                         */s/ Lynn Damiano Pearson*
                                         Lynn Damiano Pearson
                                         NATIONAL IMMIGRATION LAW CENTER
                                         3450 Wilshire Blvd. #108-62
                                         Los Angeles, CA 90010
                                         (213) 639-3900
                                         damianopearson@nilc.org


                                         *Counsel for Amici Curiae*

## CERTIFICATE PURSUANT TO CIRCUIT RULE 29

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for amici curiae represent that counsel for all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amici curiae certify that a separate brief is necessary because, as of the date of this certification, they are aware of no other brief that addresses in depth the combined interests and experiences of workers impacted by the challenged Rule.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, counsel for amici curiae make the following disclosure: The Asylum Seeker Advocacy Project (ASAP), National Immigration Law Center (NILC), and the National Employment Law Project (NELP) are not publicly held corporations and have no parent corporations. No publicly held corporation has 10% or more of the stock of any amicus organization.

## TABLE OF CONTENTS

**INTEREST OF AMICI CURIAE** ........................................................................1

**INTRODUCTION** ............................................................................................2

**ARGUMENT** ..................................................................................................4

   I.   The Rule is already causing harm to drivers, as illustrated by the experiences of ten impacted workers.........................................................................5

   II.  The government cannot articulate any countervailing harms. .....................10

**CONCLUSION** ...............................................................................................11

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Nken v. Holder*,
   556 U.S. 418 (2009) ...........................................................................4

## FEDERAL CASES

*Singh v. Berger*,
   56 F.4th 88 (D.C. Cir. 2022) ..............................................................4

*Rivera Lujan v. FMCSA*,
   2025 WL 3182504, at *1–2 (D.C. Cir. Nov. 13, 2025) .....................2

## FEDERAL STATUTES

8 U.S.C. § 1231(b)(3)(A) ...........................................................................7

## FEDERAL RULES

Fed. R. App. P. 26.1 .....................................................................................v

Fed. R. App. P. 32(a)(7)(B) ......................................................................13

Fed. R. App. P. 29(d) ................................................................................13

Fed. R. App. P. 32(a)(7)(B)(iii) ...............................................................13

Fed. R. App. P. 32(a)(5) ...........................................................................13

Fed. R. App. P. 32(a)(6) ...........................................................................13

Fed. R. App. P. 29(c)(5) .............................................................................1

## FEDERAL REGULATIONS

49 C.F.R. § 383.110 ..................................................................................11

49 C.F.R. § 383.111 ..................................................................................11

49 C.F.R. § 383.113 ...............................................................................................11

## OTHER AUTHORITIES

91 Fed. Reg. 7044, 7096 (Feb. 13, 2026) ............... **Error! Bookmark not defined.**

*Have Enough Truck Drivers*, NEWSWEEK (Jul. 10 2025), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123 ..........................................................................................4

*Born Drivers, Visa Policy, and Supply Chain Impacts*, NATIONAL IMMIGRATION FORUM (Oct. 17, 2025), https://forumtogether.org/article/addressing-the-u-s-truck-driver-shortage-the-role-of-foreign-born-drivers-visa-policy-and-supply-chain-impacts/ ...............................................................................4

*Crash Statistics*, FED. MOTOR CARRIER SAFETY ADMIN. (Feb. 27, 2026), https://ai.fmcsa.dot.gov/crashstatistics?tab=Summary&type=&report_id=1&crash_type_id=1&datasource_id=1&time_period_id=2&report_date=0&vehicle_type=2&state=NAT&domicile=ALL&measure_id=1&operation_id=null....................................................................................................10

# GLOSSARY

FMCSA:        Federal Motor Carrier Safety Administration

CDL:            Commercial Drivers Licenses

VAWA:         Violence Against Women Act

DACA:         Deferred Action for Childhood Arrivals

LPR:            Legal Permanent Resident

TPS:            Temporary Protected Status

# INTEREST OF AMICI CURIAE[1]

The **Asylum Seeker Advocacy Project (ASAP)** is a national membership organization of asylum seekers in the United States. ASAP provides members with legal and community support, including time-sensitive updates about immigration policies; legal information; and opportunities to advocate for reform based on members' priorities, including access to employment authorization and drivers' licenses.

The **National Immigration Law Center (NILC)** is a non-profit organization dedicated to advancing the rights and opportunities of low-income immigrants and their families. NILC works to ensure that immigrant communities have access to justice and are protected against unlawful practices and governmental overreach. NILC has a long history of advocating for immigrants' access to drivers' licenses through litigation, policy work, and community education.

**The National Employment Law Project (NELP)** is a non-profit organization with over 55 years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP has studied and written extensively about the working conditions of truck drivers.

---

[1] Counsel for amici curiae certify that no party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than amici, their members, or their counsel made such a contribution. Fed. R. App. P. 29(c)(5).

1

\* \* \*

All three are national organizations that have engaged with their members, clients, and community-based contacts who are facing financial devastation due to the challenged Rule. The impacted workers whose stories are recounted below comprise a fraction of the almost 200,000 employment-authorized immigrants whose jobs require them to have a non-domiciled commercial drivers' license.[2] Amici bring these personal accounts to this Court's attention to underscore the adverse impact the Rule would have on their livelihoods and those of thousands of other, similarly situated drivers.

## INTRODUCTION

On February 13, 2026, the FMCSA published a Final Rule prohibiting most noncitizens from obtaining or renewing commercial drivers' licenses (CDLs). *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044, 7096 (Feb. 13, 2026) (the "Rule"). The Rule is substantively identical to the FMCSA's Interim Final Rule ("IFR") which this Court stayed pending review, holding, among other things, that FMSCA likely acted arbitrarily and capriciously in issuing the IFR. *See Rivera Lujan v. FMCSA*, 2025 WL 3182504, at \*1–2 (D.C. Cir. Nov. 13, 2025). As detailed in Petitioners' briefs,

---

[2] *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044, 7096 (Feb. 13, 2026) ("roughly 194,000 current non-domiciled CDL holders" will lose licenses because of the Rule).

the Rule is still arbitrary and capricious. Amici write to highlight stories of several workers and families whose lives have been upended by the Rule, illustrating the need for an emergency stay of the effective date.

The impacted workers include drivers across the U.S. who have built businesses and careers in the trucking industry—hauling freight for major logistics companies and driving long distances to keep shelves stocked and supply chains running. Among them are asylees and asylum-seekers; recipients of Deferred Action for Childhood Arrivals (DACA), relief under the Violence Against Women Act (VAWA), and Temporary Protected Status (TPS); and others close to obtaining a green card.

They all share the same pride in their work and a deep concern about the devastating impact of the Rule. Some have already lost their CDLs, leaving them without work even as their financial obligations continue, including loan payments on the trucks they own. Others fear they will soon be jobless when their licenses are revoked. For those who have spent years building accomplished careers in the industry—forging relationships with brokers, maintaining excellent road records, and progressing through the ranks—this Rule abruptly halts their careers. Their accounts stand in sharp contrast to the FMCSA's unfounded suggestion that noncitizen drivers pose a risk to public safety. Collectively, these testimonials show that the Rule threatens not only the livelihoods of these workers and their families,

3

but also the stability of an industry critical to the national economy. These harms make emergency relief necessary. Accordingly, this Court should grant Petitioners' emergency motion for a stay.

## ARGUMENT

Amici write to assist the Court in evaluating the final two stay factors—possible harm to other parties if relief is granted and the public interest—which merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435, 443 (2009); *see Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022).

Without a stay of the Rule's effective date, noncitizen commercial drivers will experience acute harm. Trucking operators, logistics companies, and large food and retail corporations who rely on these drivers also face the significant harm of losing a substantial portion of their workforce.[3] The government, on the other hand, faces no harm should the Rule be set aside. The balance of the equities and the public interest therefore weigh heavily in favor of a stay.

---

[3] *See* Hugh Cameron, *America Doesn't Have Enough Truck Drivers*, NEWSWEEK (Jul. 10 2025), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123; Arturo Castellanos-Canales, *Addressing the U.S. Truck Driver Shortage: The Role of Foreign-Born Drivers, Visa Policy, and Supply Chain Impacts*, NATIONAL IMMIGRATION FORUM (Oct. 17, 2025), https://forumtogether.org/article/addressing-the-u-s-truck-driver-shortage-the-role-of-foreign-born-drivers-visa-policy-and-supply-chain-impacts/.

## I.   The Rule is already causing harm to drivers, as illustrated by the experiences of ten impacted workers.

In the weeks after the IFR was issued, dozens of impacted CDL drivers contacted amici to share their stories, detailing how the IFR has harmed or will harm them. After the FMCSA published the Final Rule, amici spoke with many of these same drivers again. They continue to experience uncertainty around their CDLs; NELP and ASAP spoke with many of these workers to understand their situation and help them find relevant services. The stories of ten workers are as follows:[4]

**Jose U.** has lived in the U.S. since age two and has been a DACA recipient since 2013. A longtime UPS employee and proud Teamsters member, Jose began working in the warehouse when he was just 20 years old and was later promoted to door-to-door delivery, before training as a big-rig driver. With his CDL, Jose has built a stable life. He and his wife purchased their first home three years ago and a few months ago welcomed their first child.

If the Rule stands, Jose will be unable to renew his CDL. Without it, he will lose his job at UPS and be forced to give up on his goal of becoming a power lineman, a position that also requires a CDL. He worries about making his mortgage

---

[4] Attorneys at NELP and ASAP spoke with each of these individuals at length during the week of October 20, 2025, following FMCSA's issuance of the IFR and again during the week of February 23, 2026, following the FMSCA's publication of the Rule. Several workers are using pseudonyms to protect their identities.

payment and caring for his new baby while out of work, upending the stability he and his wife have worked hard to build.

**Muhammad J.**, originally from Pakistan, has been in the U.S. for 26 years. He has a pending asylum application and U-Visa petition. In 2013, he sold a gas station he owned for many years, obtained his CDL, leased a semi-truck, and began hauling auto parts and later frozen foods across Michigan. He now transports beef products across the country for Walmart, Costco, and US Foods. After driving more than a million miles, he's onto his third truck—a $170,000 Freightliner costing about $3,400 in lease payments a month—and has never had an accident or any major violation while driving his truck. Without driving, he will likely go bankrupt from his truck and mortgage debts, powerless to support his children through college or his wife through ongoing medical issues.

**John P.** is an asylum seeker and ASAP member originally from Myanmar. John earned his CDL over four years ago. He started out hauling goods all over the U.S. and now works as a bus driver transporting Google employees.

John's CDL expires soon, and under the Rule, he will be unable to renew it. His license and work have given him a stable life and the ability to support his mother and brother. John is concerned he will lose the career and life he has built, even though he is a qualified and safe driver.

**David M.** has made a trucking career over the last 15 years, hauling freight for companies like Lowes, Walmart, and Target nationwide. Originally from Kenya, David came to the U.S. at the age 13 and was granted withholding of removal in 2005.[5] He recently reached the "one million safe miles" milestone after driving the required million miles without incident, a major professional achievement. The Rule threatens David's plans to work as a truck driver until retirement. Without this income, David will be unable to pay his bills or support his elderly parents and medically fragile brother.

**Rafad A.** is an ASAP member and Iraqi asylee. He moved to the U.S. in 2020 and was granted asylum in 2024. Rafad has driven commercial trucks for over two years, hauling loads safely for Amazon across the country. He recently started his own business and purchased a semi-truck.

Rafad is the sole breadwinner for his wife, two young children, and elderly parents. His daughter has a serious degenerative genetic condition which requires expensive biweekly infusions at a children's hospital. Rafad lives in constant fear of losing his CDL, which would impact his ability to afford his daughter's care and support his family. Rafad is willing to go through more training or vetting— whatever it takes—to maintain his CDL.

_____

[5] Withholding of removal is a form of immigration relief that protects an individual from being removed to a country where they would more likely than not face persecution. 8 U.S.C. § 1231(b)(3)(A).

**Fernando L.** is a Kansas-based truck driver for Pepsi, running bulk deliveries to large grocery stores like Sam's Club, Walmart, and Kroger. He moved to the U.S. 29 years ago, when he was just two years old. He was granted DACA status in 2012. Eight years ago, Fernando started working for Pepsi as a merchandiser, stocking store shelves, filling vending machines, and then delivering to gas stations and restaurants. In 2024, Fernando obtained his CDL—after completing extensive safety training and passing six tests—and was promoted to making bulk deliveries in a semi-truck.  Fernando's life now revolves around driving a semi-truck. It allows him to pay for his house and support his wife and two young children. If Fernando is unable to renew his CDL when it expires, he worries his job could be impacted.

**Samaria P.** is a TPS holder and U-visa applicant from El Salvador who has been living in the U.S. for over 25 years, since she was eight. Until a few years ago, she worked as a custodian. In 2021, hoping to better the futures of her three U.S. citizen children, Samaria decided to take a course and obtain her CDL. With that license, she now owns and operates a dump truck business alongside her partner and one employee. She has a clean driving record, without accidents or citations.

Samaria now cannot renew her CDL once it expires due to the Rule. She invested time and resources into obtaining a CDL and starting a business that enables her to take care of her family, and just wants to continue operating her business and providing for her children.

**Javier G.** is a DACA recipient who has spent nearly his entire life in the U.S. After several years working at an auto repair shop, he decided to invest in a CDL and become a food service truck driver. This decision transformed Javier's life. By distributing food to schools, hospitals, and retirement homes, Javier found financial freedom in an expensive city and the means to support his girlfriend through nursing school. Without his CDL, the couple would lose their only income source.

**Ali** is an ASAP member and asylee from Turkey who has lived in the U.S. lawfully for almost 15 years. A truck driver since 2019, he now owns a company with eight trucks and a team of seven drivers, a dispatch operator, and a safety staff person—hauling loads for Amazon nationwide. Ali first came to the U.S. on an E-2 visa, status eligible for a CDL under the Rule, but as an asylee, he now faces losing it. His income supports his family and allows him to save for his teenage daughter's university tuition. For Ali, the stress of losing his business is unbearable, especially since he has a clean driving record and always maintains the highest safety standards.

**Mohamed**, originally from Tunisia, moved to the U.S. in 2005 when he was 16. He has worked as a CDL-licensed trucker for 12 years, first as a company driver, and later as an owner-operator. Because of his exceptional road safety record and work ethic, his broker trusted him with increasingly specialized loads and especially high value cargo. He once hauled an F-35 engine for the U.S. military base in Connecticut to Lockheed Martin in Texas.

Mohamed is a VAWA recipient and is months away from receiving a green card. His CDL renewal application was denied after the FMCSA issued the IFR, and he was unable to get it reinstated before the Final Rule was published. Absent relief from this Court, his accomplished career as a trucker is now over, and with it his decade's worth of investments, experience, and relationships in his work.

\* \* \*

Almost 200,000 other workers face similar harms. Without the requested emergency stay of the Rule's effective date, they will be forced to sell their trucks, give up their professional achievements and goals, and may lose their livelihoods altogether.

## II.   The government cannot articulate any countervailing harms.

The government, on the other hand, has failed to effectively articulate any harm or substantiate its claimed interests in public safety. Although 3,558 fatal crashes involving commercial drivers of large trucks occurred in 2025,[6] FMCSA bases the Rule on a handful accidents where noncitizens were behind the wheel. *See* 91 Fed. Reg. 7065. FMCSA's reliance on cherry-picked anecdotes rather than persuasive data ignores the rigorous safety requirements already in place for CDL-

---

[6] *Crash Statistics*, FED. MOTOR CARRIER SAFETY ADMIN. (Feb. 27, 2026), https://ai.fmcsa.dot.gov/crashstatistics?tab=Summary&type=&report_id=1&crash_type_id=4&datasource_id=1&time_period_id=2&report_date=0&vehicle_type=2&state=NAT&domicile=ALL&measure_id=1&operation_id=null.

10

holders, such as the mandatory skills and knowledge test and the disqualification of drivers with serious traffic violations, all of which provide protection to the drivers and to the public. *See* 49 C.F.R. §§ 383.110, 383.111, 383.113. The real and substantial harm to noncitizen workers far outweighs the unsubstantiated safety concerns the government purports to address in the Rule. The balance of equities and public interest therefore weigh heavily in favor of a stay.

## CONCLUSION

For the foregoing reasons, this Court should grant the Petitioners' emergency motion.

Dated: March 4, 2026

Respectfully submitted,

/s/ *Lynn Damiano Pearson*
Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
damianopearson@nilc.org

Hilda Bonilla
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, DC 20043
(213) 674-2907

bonilla@nilc.org

Marcela X. Johnson
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0164
marcela.johnson@asaptogether.org

Daniel E. Ocampo
Laura Padin
NATIONAL EMPLOYMENT LAW PROJECT
90 Broad St. 11th Fl.
New York, NY 10003
(646) 693-8233
docampo@nelp.org
lpadin@nelp.org


*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d) because it contains 2,665, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 4, 2026

/s/ *Lynn Damiano Pearson*
Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
damianopearson@nilc.org

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I electronically filed the foregoing *amicus curiae* brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 4, 2026

/s/ *Lynn Damiano Pearson*
Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
damianopearson@nilc.org

*Counsel for Amici Curiae*