## ORAL ARGUMENT NOT YET SCHEDULED
### No. 26-1032

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Jorge Rivera Lujan, et al.,

*Petitioners-Appellants,*

– v. –

Federal Motor Carrier Safety Administration, et al.,

*Respondents-Appellees.*

On Petition for Review of a Final Rule of the
Federal Motor Carrier Safety Administration

## BRIEF OF TEAMSTERS CALIFORNIA AS AMICUS CURIAE IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR A STAY OF THE EFFECTIVE DATE PENDING REVIEW

Julie Gutman Dickinson
Hector De Haro
Samantha Keng
Bush Gottlieb
801 N. Brand Blvd.
Ste. 950
Glendale, CA 91203
(818) 973-3200

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for amicus curiae the Teamsters California certifies that:

## (A)   Parties and Amici

**Parties:** Except for amicus curiae, all parties and intervenors are listed in Petitioners' Emergency Motion for a Stay of the Effective Date Pending Review.

**Amicus:** Undersigned amicus is Teamsters California. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

## (B)   Ruling under Review

On February 12, 2026, Petitioners Jorge Rivera Lujan, Aleksei Semenovskii, American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME), and American Federation of Teachers (AFT) petitioned this Court for review of a Final Rule issued by the United States Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA). *See* 91 Fed. Reg. 7044 (Rule).   On

February 26, 2026, Petitioners filed with this Court an Emergency

Motion for a Stay of the Effective Date of the Rule Pending Review.

**(C)    Related Cases**

Case No. 25-1215: *Jorge Rivera Lujan, et al. v. FMCSA, et al.*

Date:    March 4, 2026

Respectfully submitted,

/s/ Julie Gutman Dickinson

Julie Gutman Dickinson
Hector De Haro
Samantha Keng
BUSH GOTTLIEB
801 N. Brand Blvd.
Ste. 950
Glendale, CA 91203
(818) 973-3200

*Counsel for Amicus Curiae*

## CERTIFICATE PURSUANT TO CIRCUIT RULE 29

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for amicus curiae represent that counsel for all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amicus curiae certify that a separate brief is necessary because, as of the date of this certification, they are aware of no other brief that addresses in depth the combined interests and experiences of Teamsters California members impacted by the Rule.

Amicus seeks to file this brief based on the motion for leave to file, submitted with this brief on March 4, 2026, to the D.C. Circuit Court of Appeals.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, counsel for amicus curiae make the following disclosure: Teamsters California is not a publicly held corporation and has no parent corporations. No publicly held corporation has an ownership interest in it of any kind.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................vi

GLOSSARY ..........................................................................................viii

INTEREST OF AMICUS CURIAE...........................................................1

INTRODUCTION....................................................................................2

ARGUMENT ..........................................................................................4

    I.     An emergency stay is in the public interest because the Rule will irreparably harm Teamsters California members and the communities they serve. ...........................4

    II.    An emergency stay is in the public interest because the Rule will make our roads and our communities less safe.....................................................................9

CONCLUSION .......................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................4

*Singh v. Berger*,
    56 F.4th 88 (D.C. Cir. 2022) ....................................................4

**Federal Rules**

Fed. R. App. P. 26.1 ....................................................................5

Fed. R. App. P. 29(c)(5)..............................................................1

**Regulatory Materials**

*Restoring Integrity to the Issuance of Non-Domiciled
    Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044
    (2026)...................................................................................2

**Other Authorities**

Arturo Castellanos-Canales, *Foreign-Born Drivers, Visa
    Policy, and Supply Chain Impacts*, FORUM TOGETHER
    (Oct. 17, 2025), available at
    https://forumtogether.org/article/addressing-the-u-s-truck-
    driver-shortage-the-role-of-foreign-born-drivers-visa-
    policy-and-supply-chain-impacts/........................................7

Hugh Cameron, *America Doesn't Have Enough Truck
    Drivers*, NEWSWEEK (Jul. 10, 2025), available at
    https://www.newsweek.com/america-trucking-shortage-
    logistics-supply-chain-2097123- .........................................9

Naomi Dunn *et al.*, *Commercial Motor Vehicle Driver Risk Based on Age and Driving Experience*, National Surface Transportation Safety Center for Excellence (Apr. 17, 2020), available at https://vtechworks.lib.vt.edu/server/api/core/bitstreams/a5 800006-4b00-4854-bd5c-1f3e76f5d5c1/content ................................. 10

OCCUPATIONAL OUTLOOK HANDBOOK, Heavy and Tractor-trailer Truck Drivers, available at https://www.bls.gov/ooh/transportation-and-material-moving/heavy-and-tractor-trailer-truck-drivers.htm (last visited Feb. 23, 2026) ........................................................................... 9

# **GLOSSARY**

CDL       Commercial Driver's License

DACA     Deferred Action for Childhood Arrivals

FMCSA   Federal Motor Carrier Safety Administration

IFR        Interim Final Rule

SDLA     State Driver's Licensing Agencies

## <u>INTEREST OF AMICUS CURIAE[1]</u>

**Teamsters California** represents 250,000 workers across dozens of industries that power California's economy. Teamsters with commercial driver's licenses (CDLs), including both citizens and noncitizens, do critical work day in and day out to keep communities running. These drivers have invested substantial resources into becoming skilled drivers in reliance on using their CDL to support their families, and they have fought to maintain the highest possible safety standards in their workplaces and on our public roads. If allowed to take effect, the challenged Rule would deprive Teamsters California members of their hard-earned livelihoods, impose significant burdens on their fellow drivers, and jeopardize the well-being of the general public.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for amicus curiae certify that no party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than amicus, their members, or their counsel made such a contribution.

## <u>INTRODUCTION</u>

On February 11, 2026, the Federal Motor Carrier Safety Administration (FMCSA) issued a Final Rule prohibiting most noncitizens from obtaining or renewing commercial driver's licenses (CDLs), with an effective date of March 16, 2026. *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 91 Fed. Reg. 7044 (published Feb. 13, 2026) (Rule). As detailed in Petitioners' emergency motion for a stay, the Rule is arbitrary and capricious, procedurally flawed, and detrimental to the public interest. The Rule fails to promote safety, and instead threatens to negatively impact communities across the country.

Amicus here writes to highlight the immediate devastating consequences that the Rule would impose on Teamsters California members, their families, their unions, and their communities—all of which the FMCSA neglected to adequately consider. These far-reaching effects, including mass job loss and disruption of critical supply chains and services, will cause irreparable harm on a nationwide scale unless this Court issues an emergency stay of the effective date of the Rule pending review.

Impacted Teamsters California members include both citizen and noncitizen drivers who deliver food, packages, and other essential goods, transport our children to school and our neighbors to work, and ensure our streets are safe and clean. These drivers serve not only as the main and often sole providers for their families, but as the backbone of our national economy. As Teamsters California explained in its public comment on the FMCSA's Interim Final Rule (IFR),[2] the Rule will deprive impacted drivers—who have invested significant time and resources into their careers—of their livelihoods, without any concurrent benefit to the public interest.

And the negative effects of the Rule will extend much further than the drivers who will be permanently deprived of their CDLs, as taking these drivers off the road will drastically undermine safety, exacerbate existing driver shortages, and create acute gaps in service. The FMCSA summarily dismissed these very real implications when it issued a Final Rule nearly identical to its IFR.

---

[2] *Teamsters California Comment Opposing Restrictions on Noncitizen Commercial Driver's Licenses*, FMCSA-2025-0622-7875 (Nov. 28, 2025).

Emergency relief is necessary to avoid this imminent harm. Accordingly, this Court should grant Petitioners' emergency motion for a stay of the Rule's effective date.

## ARGUMENT

In evaluating a motion to stay, the Court considers: (1) the likelihood of success on the merits; (2) the prospect of irreparable injury to the moving party; (3) the possibility of harm to other parties if relief is granted; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 443 (2009). The final two factors "merge when the Government is the opposing party." *Id*. at 435; *see Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022). Petitioners have compellingly shown that each of these factors weighs soundly in favor of a stay. Amicus Teamsters California writes to provide additional argument for why a stay is in the public interest, based on the direct experiences of its members.

I.  **An emergency stay is in the public interest because the Rule will irreparably harm Teamsters California members and the communities they serve.**

Without an emergency stay, the Rule would arbitrarily strip drivers of their CDLs and thus the hard-earned careers and high union

standards they have fought and sacrificed for. Impacted Teamsters California members have spent decades honing the skills that make them safe drivers who set the industry bar. They have invested substantial resources and time into their careers, undergoing the same intensive mandatory training and testing as drivers who will remain eligible for CDLs under the Rule. As a group, these impacted drivers are demonstrably as safe as any group of drivers who will be allowed to continue operating on our roads. By depriving these drivers of their livelihoods, the Rule will impose severe financial and other hardships on Teamster members and their families.

One Teamster driver who would lose his CDL as a result of the Rule operates a passenger bus in Los Angeles. Prior to obtaining his CDL, he worked a low-wage job at a factory producing goods for a popular chain restaurant, until he was forced to leave after developing carpal tunnel syndrome from the repetitive nature of his work. If he lost his CDL, he would not be able to return to factory work due to his medical limitations. He is the main provider for a baby, an eight year old, and his mother. His unionized job as a bus operator provided the best pay and benefits of any job he ever had. Any alternative position would be more strenuous, would

5

likely worsen his condition, and would still not allow him to provide his family with the quality of life he has secured through his strong Teamster job. Another Teamster member who works in food delivery previously had to work three to four jobs in the restaurant industry just to make ends meet. His job as a Teamster driver provided him with not only health insurance and benefits for his family, but also time to spend with his two young children. Because of the Rule, these Teamster members and thousands of similarly situated drivers now face the looming possibility of losing everything they have built.[3]

While the FMCSA asserts, without evidence, that drivers will be able to find other similar employment, that is not at all consistent with the experience of Teamsters California members. Many said they would have to take on unpredictable gig-delivery work, fast food work, and/or work multiple jobs—none of which come with the stability, pay, benefits, and protections of the strong union jobs these individuals have obtained with their CDLs. The FMCSA also flippantly ignored the well-established research presented by Teamsters California suggesting that job

---

[3] Additional stories from affected Teamsters California members can be found in the Teamsters California comment on the IFR, *supra* at note 2.

displacement, which would be a guaranteed consequence of the Rule, is associated with subsequent unemployment, long-term earnings losses, and lower job quality; declines in psychological and physical well-being; loss of psychosocial assets; social withdrawal; family disruption; and lower levels of children's attainment and well-being.[4] Instead of weighing these serious harms against the nonexistent benefits of the Rule, FMCSA dismissed the profound injuries that drivers and their families will suffer as a result of the Rule's enactment.

Further, the detrimental effects of the Rule are not limited to impacted drivers and their families. With already existing driver shortages,[5] forcing these experienced drivers off the road will create critical gaps in service to our communities, to the detriment of the greater public well-being. It will hinder the ability of employees to get to work, kids to get to school, and nursing homes and hospitals to receive the food and supplies they need to support the vulnerable populations they serve.

---

[4] *See* Teamsters California comment, *supra* at note 2.

[5] Arturo Castellanos-Canales, *Addressing the U.S. Truck Driver Shortage: The Role of Foreign-Born Drivers, Visa Policy, and Supply Chain Impacts*, FORUM TOGETHER (Oct. 17, 2025), available at https://forumtogether.org/article/addressing-the-u-s-truck-driver-shortage-the-role-of-foreign-born-drivers-visa-policy-and-supply-chain-impacts/.

It will disrupt the stocking of our shelves and the pickup of waste from our streets, and compromise businesses and consumers alike.

For example, one impacted Teamster member who drives a school bus is particularly worried that the Rule will result in drivers like her, who have taken the time to familiarize themselves with routes and develop relationships with students, being forced out and replaced with less experienced and less safe drivers. Another impacted Teamster member drives a bus in Los Angeles and is concerned that the students and people with disabilities who rely on his bus will lose out on the safe services he has consistently provided, as a result of his decades of practice in transporting his community members to work, school, and appointments. These Teamster members and thousands of their colleagues have sharpened their skills through experience on the road and cultivated meaningful connections with clients and passengers, forming an integral part of the social fabric of the communities they serve. In short, these drivers are not just workers, but vital contributors to the continued operation of the transportation and delivery networks on which we all depend.

Further, removing these drivers from the CDL pool will fracture essential supply chains, leading to longer delivery times, inventory shortages, and production delays throughout the economy, which will adversely affect businesses and consumers.[6] For example, a Teamster food delivery driver explained how his services support the health and well-being of everyone who depends on those goods—from assisted living facility residents to hospital patients to small mom and pop businesses to large chain hotels and restaurants. In a time marked by an increasingly dire affordability crisis, forcing out nearly 200,000 drivers who are integral to the stability of the national economy runs directly counter to the public interest.

## II.     **An emergency stay is in the public interest because the Rule will make our roads and our communities less safe.**

On a basic level, the loss of nearly 200,000 skilled and dedicated CDL drivers nationwide will make our communities fundamentally less safe. Truck drivers already have one of the highest rates of injuries and

---

[6] Hugh Cameron, *America Doesn't Have Enough Truck Drivers*, NEWSWEEK (Jul. 10, 2025), available at https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123.

illnesses of all occupations.[7] The loss of these experienced drivers will create significant burdens on remaining CDL drivers, who will be forced to take on additional work and longer hours to fill those gaps, increasing the risk of fatigue and stress which are the most common source of accidents on the road. It would also replace experienced drivers with less experienced drivers, who statistically are more prone to accidents, negating any purported safety or public benefit from the Rule.[8]

Instead of addressing Teamsters California's comment demonstrating that the Rule would harm rather than improve safety, FMCSA provided cherry-picked examples of fatal crashes which purportedly involve noncitizens, without analyzing a more comprehensive set of data. Rule at 7055-66. FMCSA further explained that "[t]he necessity of this Rule stems not from a specific crash count,

---

[7] Bureau of Labor Statistics, U.S. Department of Labor, OCCUPATIONAL OUTLOOK HANDBOOK, Heavy and Tractor-trailer Truck Drivers, available at https://www.bls.gov/ooh/transportation-and-material-moving/heavy-and-tractor-trailer-truck-drivers.htm (last visited Feb. 23, 2026).

[8] Naomi Dunn *et al.*, *Commercial Motor Vehicle Driver Risk Based on Age and Driving Experience* (Report #20-UI-079), National Surface Transportation Safety Center for Excellence (Apr. 17, 2020), available at https://vtechworks.lib.vt.edu/server/api/core/bitstreams/a5800006-4b00-4854-bd5c-1f3e76f5d5c1/content.

but from a critical safety vulnerability: the inability of State Driver's Licensing Agencies (SDLAs) to verify foreign driver histories." *Id.* at 7065. But the Rule does not actually address the inability of SDLAs to verify foreign driver histories, as it permits drivers who have unverified foreign driver histories to renew a CDL and prohibits drivers who do not, such as the majority of those with Deferred Action for Childhood Arrivals (DACA) status.

Moreover, the Rule is logically defective, in that it fails to demonstrate any meaningful connection between being able to verify foreign driver histories and the crash rate or any other indicator of safety. It also cites but altogether disregards Teamsters California's detailed explanation of the process by which non-domiciled CDL holders are highly qualified and rigorously screened, in equal measure to their counterparts who remain eligible for a CDL under the Rule. *Id.* at 7064. Impacted Teamsters California members have completed extensive skills testing and training, both for basic vehicle operations and safety and for additional endorsements or certifications, and often undergo additional vetting and continued education through their employers and unions. The FMCSA's invented safety concerns are unsubstantiated and entirely

incongruent with what Teamster members actually experience and observe in their workplaces.

This is not a case involving balancing or weighing competing interests, as the Rule does nothing to accomplish its purported goal of improving road safety and instead does precisely the opposite, creating far-reaching risks that will fall on both drivers and the general public. Without an emergency stay, the Rule will deprive thousands of Teamster members and other similarly situated drivers of their livelihoods, place unmanageable pressure and strain on remaining CDL holders, and cause irreparable harm to the communities that rely on the efficient delivery of goods and critical transportation services these drivers provide day in and day out. These material harms far outweigh the unfounded justifications for the Rule proffered by the FMCSA. Accordingly, an emergency stay is undoubtedly in the public interest.

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Petitioners' emergency motion for a stay of the Rule's effective date pending review.

Dated: March 4, 2026

Respectfully submitted,

<u>/s/ Julie Gutman Dickinson</u>
Julie Gutman Dickinson
Hector De Haro
Samantha Keng

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d) because it contains 2,249 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century font.

Dated: March 4, 2026

/s/ Julie Gutman Dickinson
Julie Gutman Dickinson
Hector De Haro
Samantha Keng

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2026, I electronically filed the foregoing *amicus curiae* brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 4, 2026

/s/ Julie Gutman Dickinson
Julie Gutman Dickinson
Hector De Haro
Samantha Keng

*Counsel for Amicus Curiae*
