<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>
No. 26-1032

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

JORGE RIVERA LUJAN; ALEKSEI SEMENOVSKII; AMERICAN
FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES; AFL-
CIO; and AMERICAN FEDERATION OF TEACHERS,
*Petitioners,*

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; UNITED
STATES DEPARTMENT OF TRANSPORTATION; and THE UNITED
STATES,
*Respondents.*

---

On Petition for Review of the United States Department of Transportation's
Federal Motor Carrier Safety Administration's Final Rule "Restoring Integrity to
the Issuance of Non-Domiciled Commercial Drivers Licenses"

---

**BRIEF OF LOCAL GOVERNMENTS AND LOCAL GOVERNMENT
LEADERS AS *AMICI CURIAE* IN SUPPORT OF PETITIONERS'
MOTION FOR STAY PENDING JUDICIAL REVIEW**

---

ELENA GOLDSTEIN
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 322-1959
egoldstein@democracyforward.org

TOBY MERRILL
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837
toby@publicrightsproject.org

*Counsel for* Amici Curiae *listed on
Appendix A*

i

SUBASH IYER
Kaplan Kirsch LLP
1500 Broadway, Suite 1605
New York, NY 10036
(929) 458-6975
siyer@kaplankirsch.com

JOHN E. PUTNAM
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7010
jputnam@kaplankirsch.com

CAITLIN MCCUSKER
CAROLINE G. JASCHKE
1634 I Street, NW, Suite 300
Washington, D.C. 20006
(202) 955-5600
cmccusker@kaplankirsch.com
cjaschke@kaplankirsch.com

*Counsel for* Amici Curiae *listed on Appendix B*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and Amici**. All parties appearing in this Court are named in the petition for review, except for *amici* in this brief and any other *amici* who have not yet entered an appearance.

**B. Rulings Under Review**. Petitioners identified the challenged action in their petition for review.

**C. Related Cases**. This case has not previously been before this Court, but two consolidated petitions for review, *Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Oct. 20, 2025) and *King County v. FMCSA*, No. 25-1224 (D.C. Cir. Oct. 30, 2025), challenged an earlier version of the action challenged here. On March 4, 2026, Martin Luther King, Jr. County filed a petition for review of the same action at issue in this case. *King County v. FMCSA*, No. 26-1046 (D.C. Cir. Mar. 4, 2026). Earlier today and on the court's own motion, the clerk consolidated that case with this one. Order, Dkt. No. 2162288. Counsel is not aware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

iii

## <u>RULE 29 CERTIFICATION</u>

Pursuant to Circuit Rule 29(b), *amici* state that all parties have consented to the filing of this *amicus* brief. *Amici* are aware of four other *amicus* briefs that have been or will be filed by the Sikh Coalition, the Asylum Seekers Advocacy Project, Teamsters California, and Waste Pro USA, Inc. Pursuant to Circuit Rule 29(d), *amici* certify that joinder in a single brief with other *amici* would be impracticable because local governments and their officials have interests that are distinct from individual drivers. To *amici*'s knowledge, this is the only *amicus* brief that will address the impact of this challenged action on localities.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. vi

GLOSSARY.............................................................................................x

INTEREST OF *AMICI CURIAE* ............................................................1

ARGUMENT ..........................................................................................2

    I.    Local Governments Face Unique Challenges in Responding to the Rule.................................................................................3

    II.    The Rule Impedes Essential Services and Diminishes Road Safety.......................................................................................6

        A.    The Rule Impedes Essential Transportation Services. ..............6

        B.    The Rule Will Harm Roadway Safety. .....................................8

        C.    The Rule's Blanket Ban Does Not Further Safety...................11

CONCLUSION ......................................................................................13

ADDITIONAL COUNSEL ...................................................................15

APPENDIX A .......................................................................................18

APPENDIX B .......................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Dixon v. Love*,
    43 U.S. 105 (1977)..........................................................................2

*FDA v. Wages & White Lion Invs., LLC*,
    604 U.S. 542 (2025)........................................................................3

*Lujan v. Fed. Motor Carrier Safety Admin.*,
    No. 25-1215, 2025 U.S. App. LEXIS 29835 (D.C. Cir.) ............... 2, 3, 11, 13

*Lujan v. Fed. Motor Carrier Safety Admin.*,
    No. 25-1224, (D.C. Cir.)..................................................................6

**Regulations**

8 C.F.R. § 236.22(b) .............................................................................12

**Court Rules**

D.C. Cir. Rule 18(a)(1) ...........................................................................2

Fed. R. App. P. 29(a)(4)(E)......................................................................1

**Other Authorities**

Am. Trucking Ass'ns, *Trucking Wages Continue to Rise Despite
    Challenging Freight Economy*, (Sep. 3, 2024),
    https://www.trucking.org/news-insights/trucking-wages-continue-rise-
    despite-challenging-freight-economy...........................................................5

Michelle Bandur, *'It's a Hiring Problem': Tahoe Basin Residents Fear
    Snow Plow Driver Shortage Will Leave Them Stranded at Home*,
    KCRA3 (Nov. 12, 2024, at 19:12 ET),
    https://www.kcra.com/article/tahoe-basin-snow-plow-driver-
    shortage/62888030...........................................................................10

Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*, Bloomberg
    (June 28, 2018, at 08:00 ET),
    https://www.bloomberg.com/news/articles/2018-06-28/there-s-a-bus-
    driver-shortage-and-no-wonder..............................................................6, 7

Christine Brittle & Julie Van Keuren, Am. Pub. Transp. Ass'n, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators* 10 (2024), https://www.apta.com/wp-content/uploads/APTA-Impact-of-CDL-Under-the-Hood-Testing-Requirement-Nov-2024.pdf ........................ 4, 6, 10

Ashley Cafaro, *Syracuse Department of Public Works Faces CDL Driver Shortage During Busy Winter*, InformNNY (Feb. 26, 2026, at 17:30 ET), https://www.informnny.com/news/state-news/syracuse-department-of-public-works-faces-cdl-driver-shortage-during-busy-winter/ ............................................................................................................. 9

Central Puget Sound Regional Transit Authority, Comment Letter on Proposed Rule, https://www.regulations.gov/comment/FMCSA-2025-0622-7930 .............................................................................................................. 6

Bob Costello & Alan Karickhoff, Am. Trucking Ass'ns, *Truck Driver Shortage Analysis* 4 (2019), https://www.trucking.org/sites/default/files/2020-01/ATAs%20Driver%20Shortage%20Report%202019%20with%20cover.pdf .............................................................................................................. 6

Matthew Dickens, Am. Pub. Transp. Ass'n, *Policy Brief: Workforce Shortages Impacting Public Transportation Recovery* 3, 5 (2022), https://www.apta.com/wp-content/uploads/APTA-SURVEY-BRIEF-Workforce-Shortages-March-2022.pdf ..................................................... 6, 7

Naomi Dunn, Susan Soccolich & Jeffrey Hickman, Nat'l Surface Transp. Safety Ctr. for Excellence, *Commercial Motor Vehicle Driver Risk Based on Age and Driving Experience* 37 (2020), https://vtechworks.lib.vt.edu/server/api/core/bitstreams/a5800006-4b00-4854-bd5c-1f3e76f5d5c1/content ........................................................ 10

Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://www.governing.com/management-and-administration/tough-challenges-for-counties-in-a-new-era-of-fiscal-federalism ............................ 5

National Education Association, Comment Letter on Proposed Rule on Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses at 3 (Sep. 29, 2025), https://www.regulations.gov/comment/FMCSA-2025-0622-6539 ............. 7, 8

Alicia Neaves, *The Unseen First Responders: Tow Crews Fuel Hope After Hill Country Floods*, Kens5 (July 10, 2025, at 22:23 CDT), https://www.kens5.com/article/news/state/texas-news/texas-flood/texas-floods-first-responders-tow-crews-fuel-hope-hill-country/273-a2f3f29b-b69f-4734-830a-48633149e274...................................9

Edgar Sandoval, Sophie Kasakove & Maggie Astor, *Winter Storm Disrupts U.S. with Power Outages and Icy Roads*, N.Y. Times (Feb. 23, 2026), https://www.nytimes.com/live/2022/02/03/us/winter-storm-snow-ice..........9

U.S. Bureau of Lab. Stats., *Occupational Outlook Handbook*, https://www.bls.gov/ooh/transportation-and-material-moving/ (last visited Mar. 3, 2026)......................................................................................5

U.S. Dep't of Transp. Climate Change Ctr., *Climate Strategies that Work: InterCity Buses* 3 (2025), https://www.transportation.gov/sites/dot.gov/files/2024-10/Intercity%20Buses%20PDF%20%282%29.pdf ......................................7

U.S. Dep't of Transp., Fed. Highway Admin., FHWA-HOP-21-009, *Resources for Commercial Vehicles Involved in Emergency Response* 1 (2021), https://ops.fhwa.dot.gov/publications/fhwahop21009/fhwahop21009.pdf ...............................................................................................................9

U.S. Dep't of Transp., Fed. Highway Admin., FHWA-SA-21-033, *Local Road Safety Plans*, https://highways.dot.gov/sites/fhwa.dot.gov/files/Local%20Road%20Safety%20Plans_508.pdf.................................................................8

U.S. Dep't of Transp., Fed. Motor Carrier Safety Admin., *Crash Statistics*, https://ai.fmcsa.dot.gov/CrashStatistics?tab=Driver&type=&report_id=36&crash_type_id=1&datasource_id=2&time_period_id=2&report_date=2023&vehicle_type=1&state=AllStates&domicile=ALL&measure_id=1&operation_id=1 (last visited March 4, 2026)...................................11

U.S. Dep't of Transp., Fed. Motor Carrier Safety Admin., "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)," 91 Fed. Reg. 7044 (Feb. 13, 2026) ............. 3, 4, 11, 12, 13

U.S. Dep't of Transp., Fed. Motor Carrier Safety Admin., "Restoring
    Integrity to the Issuance of Non-Domiciled Commercial Drivers
    Licenses (CDL)," 90 Fed. Reg. 46509 (Sep. 29, 2025) ........................ 11, 12

## <u>GLOSSARY</u>

CDL        Commercial Driver's License

FMCSA      Federal Motor Carrier Safety Administration

Rule       "Restoring Integrity to the Issuance of Non-Domiciled Commercial
           Drivers Licenses (CDL)," 91 Fed. Reg. 7044 (Feb. 13, 2026)

### INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are local governments and officials. Their jurisdictions differ in size, demographics, and policy priorities and in how they provide transportation-related services—whether directly or as funders, public authority members, or first responders. Yet all share a fundamental interest in providing effective, reliable public services and keeping their communities safe, including on the roads.

Many critical local services depend upon commercial driver's license ("CDL") holders, including: public transportation; school buses; building and maintaining infrastructure (including roads); roadway clearing during inclement weather; providing gas, electricity, and other utilities; and addressing natural disasters. Many drivers employed by local governments must have valid CDLs, so *amici* depend on stable and predictable licensing processes.

The Federal Motor Carrier Safety Administration ("FMCSA") impeded local governments from providing critical services when it promulgated the rule, "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)," 91 Fed. Reg. 7044 (Feb. 13, 2026) (the "Rule"). By prohibiting CDL issuance to certain noncitizens, the Rule shrinks the pool of drivers who can

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici* certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money to fund this brief, and no person other than *amici* and their counsel contributed money to fund this brief. All parties consent to this filing.

1

provide essential services. Approximately 5% of active CDL holders will exit the freight market due to the Rule. Local governments like *amici* face unique challenges in responding to this reduction. Without enough licensed drivers, local governments will have to cut services, not only disrupting their residents' lives but diminishing road safety, notwithstanding FMCSA's unsupported safety-benefit claims.

*Amici* submit this brief in support of Petitioners' motions for stay pending review. As this Court previously concluded when staying the substantively identical interim final rule, the public interest strongly favors a stay.

## **ARGUMENT**

A motion for stay pending review of an agency order must address the likelihood of movant's success on the merits, irreparable injury absent relief, the possible harm to other parties, and the public interest. D.C. Cir. Rule 18(a)(1). *Amici* focus on the public interest factor.

As this Court previously held regarding the substantively identical interim final rule, there is an "important public interest in safety on the roads and highways."[2] Like the interim rule, the Rule does not "demonstrate[] any safety benefit," and instead would harm public safety.[3] Absent "'a satisfactory explanation'

---

[2] *Lujan v. FMCSA*, No. 25-1215, 2025 U.S. App. LEXIS 29835, at *10 (D.C. Cir. Nov. 13, 2025) (quoting *Dixon v. Love*, 431 U.S. 105, 114 (1977)).

[3] *Id.*

for how the Rule would promote safety," this Rule should meet the same fate.[4] The Court should grant the stay.

## I.     Local Governments Face Unique Challenges in Responding to the Rule.

Local governments depend on access to commercial drivers with stable, predictable licensing status. Until recently, certain noncitizens could and did obtain CDLs. FMCSA has scuttled that pathway, first in an interim final rule issued in September 2025, which this Court stayed on procedural and substantive grounds,[5] and now in this Rule, which reproduces the interim rule's restrictions.

By FMCSA's own estimates, the Rule will cause 194,000 non-domiciled CDL holders (of 200,000 total) to exit the freight market.[6] That is approximately 5% of all active CDL holders.[7] Even if, as FMCSA claims,[8] all 194,000 CDL holders do not exit the market at once, but evenly over five years, nearly 40,000 drivers would exit annually.

Without a CDL, these individuals cannot perform their jobs. Further, because the Rule depletes the pool indefinitely, replacing those drivers and filling future

---

[4] *Id.* at *9 (quoting *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025)).

[5] *Id.* at *10.

[6] Rule at 7095–96.

[7] *Id.* at 7097.

[8] *Id.* at 7084, 7096–97.

vacancies become harder. Local governments relying on these drivers to provide essential services will be left understaffed.

The challenge is not theoretical. Even before this Rule, local governments faced CDL-driver shortages. In public transportation, for example, a 2024 survey found that 84.6% of transit agencies faced workforce shortages, with 71.8% reporting impacts on service.[9] Nor is this picture likely to improve. The industry has struggled to replace workers disappearing due to age or job changes.[10] The Rule exacerbates these challenges.

FMCSA waves away these concerns, claiming there is no CDL-holder shortage. It offers illusory support, relying primarily on federal data showing a 4.4% unemployment rate in the "Transportation and Utilities sector."[11] But even FMCSA admits this data has limited relevance.[12] The "Transportation and Utilities sector" is both under- and over-inclusive. Underinclusive, because it is not the "sole sector in which CDL holders are employed."[13] And overinclusive, because the sector includes

---

[9] Christine Brittle & Julie Van Keuren, Am. Pub. Transp. Ass'n, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators* 10 (2024), https://www.apta.com/wp-content/uploads/APTA-Impact-of-CDL-Under-the-Hood-Testing-Requirement-Nov-2024.pdf.

[10] *See, e.g.*, *id.* at 6.

[11] Rule at 7098.

[12] *Id.*

[13] *Id.*

positions that do not require a CDL (*e.g.*, pilots, sailors, taxi drivers, wastewater engineers). FMCSA makes no assertion that these people would be willing or able to seek a CDL, nor does it assess the unemployment rate for current or prospective CDL holders. The 4.4% figure therefore offers no reasoned rebuttal to *amici*'s concerns.

Even if FMCSA were right that there is no driver shortage *in general*, local governments face unique challenges. They operate on fixed budgets and therefore cannot easily spend more to address the Rule's consequences.[14] They struggle to offer competitive compensation in ordinary times: Whereas drivers in private industry earned median wages of $76,420 to $95,114 in 2023,[15] public employees like transit bus, snow plow, and garbage truck drivers earned far less ($46,620 to $57,440).[16] These constraints become more acute with fewer drivers and more competition to hire and retain them. Local governments will struggle to raise salaries, offer recruitment or retention incentives, or pay additional overtime.

---

[14] Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://www.governing.com/management-and-administration/tough-challenges-for-counties-in-a-new-era-of-fiscal-federalism.

[15] *Trucking Wages Continue to Rise Despite Challenging Freight Economy*, Am. Trucking Ass'ns (Sep. 3, 2024), https://www.trucking.org/news-insights/trucking-wages-continue-rise-despite-challenging-freight-economy.

[16] *Occupational Outlook Handbook*, U.S. Bureau of Lab. Stats., https://www.bls.gov/ooh/transportation-and-material-moving/ (last visited Mar. 3, 2026).

Legal requirements further constrain local governments. For example, public employees often have substantial training requirements, making recruiting and replacing drivers costlier and more time-consuming.[17] For local transit authorities, it can cost approximately $15,000 to $30,000 to hire and train a single operator.[18] To illustrate: Washington's King County faced the loss of fifty active, non-domiciled bus drivers and four recent trainees—a lost training investment of over $800,000—due to FMCSA's rule.[19]

## II. The Rule Impedes Essential Services and Diminishes Road Safety.

### A. The Rule Impedes Essential Transportation Services.

Fewer licensed commercial drivers, now and in the future, translate directly into disrupted government services. Without enough drivers, local governments already facing driver shortages and serious fiscal constraints will have to cut services, whether by limiting hours or frequency or suspending routes.[20]

---

[17] *See* Brittle & Van Keuren, *supra* note 9, at 18–22; Bob Costello & Alan Karickhoff, Am. Trucking Ass'ns, *Truck Driver Shortage Analysis* 4 (2019), https://www.trucking.org/sites/default/files/2020-01/ATAs%20Driver%20Shortage%20Report%202019%20with%20cover.pdf.

[18] Central Puget Sound Regional Transit Authority, Comment Letter on Proposed Rule, https://www.regulations.gov/comment/FMCSA-2025-0622-7930.

[19] Emergency Mot. for Stay Pending Judicial Review, Dkt. No. 2142094, *Lujan v. FMCSA*, No. 25-1224 (D.C. Cir. Oct. 24, 2025), at 26.

[20] *See, e.g.*, Matthew Dickens, Am. Pub. Transp. Ass'n, *Policy Brief: Workforce Shortages Impacting Public Transportation Recovery* 3, 5 (2022), https://www.apta.com/wp-content/uploads/APTA-SURVEY-BRIEF-Workforce-Shortages-March-2022.pdf (71% of 117 agencies delayed or cut services due to

Transit agencies already report cutting and delaying service due to workforce shortages.[21] One-third of agencies report that workforce shortages have reduced service reliability.[22] This affects not only large, urban transit systems, but rural communities, where buses bridge service gaps.[23] Unreliable service disrupts those who depend on transportation to get to jobs, schools, healthcare, and loved ones.

Cut, reduced, or unreliable school bus routes also could affect tens of millions of students and families.[24] Supermajorities of school leaders—80%—report that driver shortages impair school transportation operations.[25] These disruptions harm students, parents, and teachers and reduce access to school resources, including meals and extracurriculars. Furthermore, unreliable bus service can have academic

---

staffing shortages); Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*, Bloomberg (June 28, 2018, at 08:00 ET), https://www.bloomberg.com/news/articles/2018-06-28/there-s-a-bus-driver-shortage-and-no-wonder (significant shortages in Seattle, New Jersey, Denver, Los Angeles, Toledo, Gainesville, and New Hampshire have caused delays and service cuts).

[21] Dickens, *supra* note 20, at 3.

[22] *Id.*

[23] U.S. Dep't of Transp. Climate Change Ctr., *Climate Strategies that Work: InterCity Buses* 3 (2025), https://www.transportation.gov/sites/dot.gov/files/2024-10/Intercity%20Buses%20PDF%20%282%29.pdf (bus services offer rural residents "connections to essential services and economic opportunities").

[24] National Education Association, Comment Letter on Proposed Rule on Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses at 3 (Sep. 29, 2025), https://www.regulations.gov/comment/FMCSA-2025-0622-6539.

[25] *Id*. at 2–3.

consequences: Research shows a strong connection between diminished access to transportation and chronic absenteeism.[26]

**B.     The Rule Will Harm Roadway Safety.**

Losing non-domiciled CDLs also puts the public at increased risk by curtailing safety-critical services. For example, local road maintenance is critical, because such roads "have a much higher rate of fatal and serious injury crashes" than State highways.[27] Less repair, maintenance, and improvement puts travelers at greater risk.

Similarly, local governments are crucial to preparing for and recovering from natural disasters, like the recent blizzards in the Northeast, Hurricane Helene in North Carolina, the Guadalupe River floods, or the Los Angeles wildfires. Disaster response heavily relies on timely positioning of equipment and workers. Key response activities—including supplying food, fuel, and water; clearing debris; ensuring road access for emergency responders; thinning forests; and protecting coastlines—involve heavy hauling and thus CDL holders. During the Guadalupe flood response, for example, local tow-truck drivers became essential for "clearing

---

[26] *Id.* at 3.

[27] U.S. Dep't of Transp., Fed. Highway Admin., FHWA-SA-21-033, *Local Road Safety Plans*, https://highways.dot.gov/sites/fhwa.dot.gov/files/Local%20Road%20Safety%20Plans_508.pdf.

the way for emergency crews, recovering submerged vehicles and delivering life-saving supplies."[28] CDL drivers also help restore energy infrastructure after hurricanes.[29] And when serious storms knock out electricity, commercial trucks clear debris and help restore power.[30] Fewer CDL drivers will hamper local governments' disaster response.

Snow and ice clearing also ensures safe, reliable road access, including for emergency responders. Fewer snowplow operators prevents local governments from addressing hazardous road conditions, as recent storms demonstrated.[31] This can increase crash risk and road closures, dangerously stranding people at home and

---

[28] Alicia Neaves, *The Unseen First Responders: Tow Crews Fuel Hope After Hill Country Floods*, Kens5 (July 10, 2025, at 22:23 CDT), https://www.kens5.com/article/news/state/texas-news/texas-flood/texas-floods-first-responders-tow-crews-fuel-hope-hill-country/273-a2f3f29b-b69f-4734-830a-48633149e274.

[29] *See* U.S. Dep't of Transp., Fed. Highway Admin., FHWA-HOP-21-009, *Resources for Commercial Vehicles Involved in Emergency Response* 1 (2021), https://ops.fhwa.dot.gov/publications/fhwahop21009/fhwahop21009.pdf.

[30] Edgar Sandoval, Sophie Kasakove & Maggie Astor, *Winter Storm Disrupts U.S. with Power Outages and Icy Roads*, N.Y. Times (Feb. 23, 2026), https://www.nytimes.com/live/2022/02/03/us/winter-storm-snow-ice.

[31] *E.g.*, Ashley Cafaro, *Syracuse Department of Public Works Faces CDL Driver Shortage During Busy Winter*, InformNNY (Feb. 26, 2026, at 17:30 ET), https://www.informnny.com/news/state-news/syracuse-department-of-public-works-faces-cdl-driver-shortage-during-busy-winter/ (Syracuse's Department of Public Works lost thirty CDL drivers, complicating winter storm response).

delaying emergency response.[32] When every minute counts, less snow and ice removal capacity adds time at the cost of lives.

Further safety risks arise when depleted driver pools force active drivers to work longer or more frequently, causing driver fatigue. Longer shifts also contribute to driver burnout, exacerbating workforce shortages and sparking a vicious cycle.[33] Losing experienced CDL drivers forces new, inexperienced drivers on the road, if local governments can find replacements at all. But newly trained drivers are involved in more safety incidents than experienced colleagues.[34] Indeed, the preventable-crash rate is significantly higher for drivers with less commercial-driving experience.[35] This Court recognized as much, observing that FMCSA's "anticipation that less-experienced drivers would replace the nondomiciled ones

---

[32] *See* Michelle Bandur, *'It's a Hiring Problem': Tahoe Basin Residents Fear Snow Plow Driver Shortage Will Leave Them Stranded at Home*, KCRA3 (Nov. 12, 2024, at 19:12 ET), https://www.kcra.com/article/tahoe-basin-snow-plow-driver-shortage/62888030.

[33] *See* Brittle & Van Keuren, *supra* note 9, at 11, 18–19.

[34] Naomi Dunn, Susan Soccolich & Jeffrey Hickman, Nat'l Surface Transp. Safety Ctr. for Excellence, *Commercial Motor Vehicle Driver Risk Based on Age and Driving Experience* 37 (2020), https://vtechworks.lib.vt.edu/server/api/core/bitstreams/a5800006-4b00-4854-bd5c-1f3e76f5d5c1/content.

[35] *Id.* at 21, 23, 37–38.

forced out of the market" undermined the claim that the interim rule "would produce any net safety benefit."[36]

### C.      The Rule's Blanket Ban Does Not Further Safety.

In stark contrast with these all-too-real risks, the Rule offers speculative, unjustified safety-benefit claims. At bottom, the Rule premises safety improvements on tying CDL eligibility to immigration classifications. This lacks evidence and defies logic. In its interim rule, FMCSA even admitted it lacks evidence demonstrating any "relationship between the nation of domicile for a CDL driver and safety outcome in the United States."[37]

FMCSA tries to sidestep its lack of causal evidence by pointing to individual instances in which non-domiciled CDL drivers were involved in fatal crashes.[38] This evidence has no statistical value. While non-domiciled drivers comprise about 5% of all CDL holders, the 17 crashes FMCSA identifies represent approximately 0.42% of annual fatal crashes involving CDL holders.[39] These incidents say nothing about

---

[36] *Lujan*, 2025 U.S. App. LEXIS 29835, at *8.

[37] 90 Fed. Reg. 46509, 46520 (Sep. 29, 2025).

[38] Rule at 7065–67.

[39] The most recent FMCSA statistics show that, in 2023, there were 4,043 fatal large truck and bus crashes involving CDL drivers. U.S. Dep't of Transp., FMCSA, *Crash Statistics*, https://ai.fmcsa.dot.gov/CrashStatistics?tab=Driver&type=&report_id=36&crash_type_id=1&datasource_id=2&time_period_id=2&report_date=2023&vehicle_type=1&state=AllStates&domicile=ALL&measure_id=1&operation_id=1 (last visited

the safety, relatively or in aggregate, of non-domiciled CDL holders. FMCSA blames its statistical shortfall on a lack of available data.[40] But FMCSA is obligated by law to provide a reasoned basis for its action.

Unable to muster evidence tying immigration status to crash risk, FMCSA attempts to justify the eligibility restrictions based on driving record accessibility, since historical performance is a "strong predictor for future driving safety outcomes."[41] But the Rule excludes many drivers who *do* have verifiable driving records. For example, the Rule outright bars all asylum grantees, refugees, and DACA recipients even though many have resided in the United States for years or decades and have an established, verifiable driving history.[42] That is particularly true of DACA recipients who, by definition, arrived here as children[43] and therefore have as available a driving history as any U.S.-born individual. Likewise, drivers who obtained non-domiciled CDLs under the prior licensing regime also have a U.S. driving history. The Rule ignores this all while maintaining eligibility for seasonal

---

March 4, 2026). This percentage assumes that number remains consistent year-to-year as it has recently.

[40] Rule at 7065.

[41] *Id.* at 7046, 7048–49, 7098–99.

[42] *See id.* at 7044; 90 Fed. Reg. at 46515.

[43] 8 C.F.R. § 236.22(b).

workers and foreign-treaty investors, whose driving history is predominately or entirely foreign-based and inaccessible to States.

The Rule's concern about concurrent driving records fares no better,[44] not least because seasonal workers remain eligible, despite the near certainty that they too generate driving records in another county. By contrast, asylees, refugees, and DACA recipients are able, and often likely, to stay in the United States year-round.

These shortcomings reveal FMCSA's approach for what it is: immigration policy disguised as road safety. Just as with the interim rule, this Rule fails to "demonstrate[] any safety benefit" and fails to protect the "important public interest in safety on the roads and highways."[45] In fact, it jeopardizes public safety by depleting the pool of drivers who perform safety services and forcing replacement of "safer experienced drivers with less-safe new drivers."[46]

## CONCLUSION

This Court should conclude that a stay pending review is in the public interest.

---

[44] Rule at 7044, 7048.

[45] *Lujan*, 2025 U.S. App. LEXIS 29835, at *10 (quoting *Dixon*, 431 U.S. at 114).

[46] *Id*.

Dated: March 5, 2026

Respectfully submitted,
*/s/ Caitlin McCusker*

TOBY MERRILL
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837
toby@publicrightsproject.org

ELENA GOLDSTEIN
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 322-1959
egoldstein@democracyforward.org

*Counsel for* Amici Curiae *listed on Appendix A*

CAITLIN MCCUSKER
CAROLINE G. JASCHKE
Kaplan Kirsch LLP
1634 I Street, NW, Suite 300
Washington, D.C. 20006
(202) 955-5600
cmccusker@kaplankirsch.com
cjaschke@kaplankirsch.com

SUBASH IYER
1500 Broadway, Suite 1605
New York, NY 10036
(929) 458-6975
siyer@kaplankirsch.com

JOHN E. PUTNAM
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7010
jputnam@kaplankirsch.com

*Counsel for* Amici Curiae *listed on Appendix B*

## <u>ADDITIONAL COUNSEL</u>

ROBERT MAGEE
Corporation Counsel
24 Eagle Street, Room 106
Albany, NY 12207
*Attorney for the City of Albany, New York*

MEGAN BAYER
City Solicitor
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of Cambridge, Massachusetts*

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County, Maryland*

MURIEL GOODE-TRUFANT
Corporation Counsel
100 Church Street
New York, NY 10007
*Counsel for the City of New York, New York*

DAVID CHIU
City Attorney
City Hall Room 234
One Drive Carlton B. Goodlett Place
San Francisco, CA 94102
*Attorney for the City and County of San Francisco, California*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel for *Amici Curiae* certifies that this brief:

(i)      complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2594 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1); and

(ii)      complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and is set in Times New Roman font in a size equivalent to 14 points or larger.

Dated: March 5, 2026                    */s/ Caitlin McCusker*
                                        Caitlin McCusker

## **CERTIFICATE OF SERVICE**

The undersigned counsel for *Amici Curiae* certifies that a true and accurate copy of the foregoing Brief was electronically filed with the Court using the CM/ECF system. Service on counsel for all parties will be accomplished through the Court's electronic filing system.

Dated: March 5, 2026                    */s/ Caitlin McCusker*
                                       Caitlin McCusker

## **APPENDIX A**

**List of *Amici Curiae* Represented
by Public Rights Project & Democracy Forward**

### **Local Governments**

City of Albany, New York

City of Albuquerque, New Mexico

City of Cambridge, Massachusetts

Montgomery County, Maryland

City of New Haven, Connecticut

City of New York, New York

City of Portland, Oregon

City and County of San Francisco, California

County of Santa Clara, California

City of Seattle, Washington

### **Local Government Leaders**

Celina Benitez
*Mayor, City of Mount Rainier, Maryland*

Jesse Brown
*Councilmember, City of Indianapolis, Indiana*

Chelsea Byers
*Mayor, City of West Hollywood, California*

Chris Canales
*Councilmember, City of El Paso, Texas*

Michael Chameides
*Supervisor, County of Columbia, New York*

18

John Clark
*Mayor, Town of Ridgway, Colorado*

Alison Coombs
*Mayor Pro Tempore and Councilmember, City of Aurora, Colorado*

Christine Corrado
*Councilmember, Township of Brighton, New York*

Nikki Fortunato Bas
*Supervisor, Alameda County, California*

Brenda Gadd
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Caroline Torosis
*Mayor Pro Tempore, City of Santa Monica, California*

Terry Vo
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Ginny Welsch
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Robin Wilt
*Councilmember, Township of Brighton, New York*

## APPENDIX B

### List of *Amici Curiae* Represented by Kaplan Kirsch LLP

### Local Governments

City of Albany, New York

City of Albuquerque, New Mexico

City of Cambridge, Massachusetts

Montgomery County, Maryland

City of New York, New York

City of Portland, Oregon

City and County of San Francisco, California

County of Santa Clara, California

City of Seattle, Washington