Case No. 26-1032

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Jorge Rivera Lujan, et al.,**
Petitioners,

v.

**Federal Motor Carrier Safety Administration, et al.,**
Respondents.

On Petition for Review of a Final Rule of the
Federal Motor Carrier Safety Administration

**BRIEF OF *AMICUS CURIAE* THE SIKH COALITION, CALIFORNIA SIKH YOUTH ALLIANCE, SIKH AMERICAN LEGAL DEFENSE AND EDUCATION FUND, THE JAKARA MOVEMENT, AND UNITED SIKHS, IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR A STAY PENDING REVIEW**

Sahel K. Sra
Munmeeth Kaur
The Sikh Coalition
165 Broadway, 23rd Floor
New York, NY 10006
Tel: (212) 655-3095

Katherine Zhao
Joshua Rosenthal
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
Tel: (415) 896-1701

*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

### A. Parties and Amici

Except for amici curiae, all parties and intervenors, are listed in the petition for review. Amici curiae the Sikh Coalition, California Sikh Youth Alliance (CSYA), Sikh American Legal Defense and Education Fund (SALDEF), the Jakara Movement, and UNITED SIKHS. None of amici have any parent corporations and no publicly held company owns 10% or greater ownership in any of amici.

### B. Rulings Under Review

On February 12, 2026, Petitioners Jorge Rivera Lujan, Aleksei Semenovskii, American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME), and American Federation of Teachers (AFT) petitioned this Court for review of a Final Rule issued by the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA) (the "Rule"). On February 26, 2026, Petitioners filed with this Court an Emergency Motion for a Stay of the Effective Date of the Rule pending review

### C. Related Cases

Petitioners' challenge to the FMSCA's Interim Final Rule—the precursor to the challenged Rule—is being held in abeyance pending disposition of the instant case. *See Rivera Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Feb. 20, 2026), consolidated

with *King County v. FMCSA*, No. 25-1224 (D.C. Cir. Oct. 30, 2025). On March 4, 2026, Martin Luther King, Jr. County filed a petition for review of the same action at issue in this case. *King County v. FMCSA*, No. 26-1046 (D.C. Cir. Mar. 4, 2026). The clerk consolidated that case with this one on March 5, 2026. Order, Dkt. No. 2162288. Counsel is not aware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

### D. Statutes and Regulations

All applicable statutes, etc., are contained in the Petitioners' Motions for Emergency Stay.

Dated: March 6, 2026                                  */s/ Sahel K. Sra*
                                                      Sahel K. Sra

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES..................................................................ii

GLOSSARY.........................................................................................iv

STATEMENT OF INTEREST..............................................................v

PRELIMINARY STATEMENT............................................................1

ARGUMENT.......................................................................................2

**I.    Petitioners are likely to succeed on the merits because the Rule is arbitrary and capricious**..............................2

**II.   The balance of equities and the public interest support staying the Rule** ……..................................................................9

    A. *Sikh truckers remain targets of hateful discrimination because of the Rule*...................................................... 9

    B. *The Rule will likely make the roads less safe because of the persistent driver shortage*..................................13

CONCLUSION..................................................................................15

CERTIFICATE OF COMPLIANCE ..................................................16

CERTIFICATE OF SERVICE ...........................................................17

# TABLE OF AUTHORITIES

**Cases**

*CASA, Inc. v. Noem, 2025* WL 1907378 (D. MD. July 10, 2025) ...........................3

*Fox v. Clinton*, 684 F.3d 67 (D.C. Cir. 2012) ...........................................3

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983)....................................3

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................9

*Oregon State Penitentiary v. Hammer*, 434 U.S. 945 (1977)...............................14

*Rivera Lujan v. Fed. Motor Carrier Safety Admin., No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025)* ......................................6, 7

*Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985)....................................3

**Statutes**

5 U.S.C. § 706....................................................................1

**Federal Regulations**

49 C.F.R. § 383.31.............................................................2, 8

49 C.F.R. § 383.71(f)(2)(ii) ...................................................2, 8

**Federal Rules**

90 Fed. Reg. 46512..............................................................6

90 Fed. Reg. 46513..............................................................6

90 Fed. Reg. 46515..............................................................6

90 Fed. Reg. 46520..............................................................6

91 Fed. Reg. at 7044..........................................................1, 8

91 Fed. Reg. at 7095...........................................................13

91 Fed. Reg. at 7096........................................................7, 13

91 Fed. Reg. at 7099...........................................................7

**Executive Orders**

Executive Order 14159................................................................3, 4

Executive Order 14286.................................................................4

**Other Authorities**

Alex Lockie, *Did DOT Secretary Duffy just kill trucking's 'driver shortage'*
*narrative once and for all?*, OVERDRIVE (Sept. 30, 2025) ......................................14

*Driver Shortage Update 2021*, AMERICAN TRUCKING ASSOCIATIONS,
INC. (Oct. 25, 2021) ...........................................................................13

Gagandeep Singh, *After Fatal Crash, Sikh Truck Drivers in the*
*US Fear Backlash,* BBC NEWS, (Sept. 13, 2025)..............................................10, 11

Henna Kaur Kaushal, *Sikhs in America: "Perpetually Foreign,*
*Automatically Suspect, and Potentially Terrorist,"* 108 Cal.
L. Rev. Online (July 2020)..........................................................................9

Kurtis Lee, Long-Haul Trucking Was a Refuge for Sikh Immigrants. Until Now.,
N.Y. TIMES (Dec. 21, 2025) ................................................................10

Luis Andres Henao, *A deadly crash, a divided nation:*
*Why Sikh truckers are now in the crossfire,* SEATTLE TIMES
(Sept. 5, 2025)...........................................................................11

Nilesh Christopher, *California's Punjabi truckers say they're*
*being harassed after deadly Florida wreck,* L.A.
TIMES, (Sept. 12, 2025)..................................................................11, 12

*U.S. Rears Its Ugly Side After Fatal Accident in Florida*
*Involving Sikh Trucker,* THE FRESNO BEE, (Sept. 7, 2025) ..............................10, 11

*Transactional Records Access Clearinghouse*, Immigration
Court Quick Facts....................................................................9, 10

*Trump's Transportation Secretary Sean P. Duffy Takes Emergency Action to*
*Protect America's Roads*, DEP'T OF TRANSP. (Sept. 26, 2025).................................6

*Trump's Transportation Secretary Sean P. Duffy Puts Safety First, Finalizes Rule*
*to Stop Unqualified Foreign Drivers from Driving Big Rigs on American*
*Roadways*, DEP'T OF TRANSP. (Feb. 11, 2026) .........................................7

## GLOSSARY

APA         Administrative Procedure Act

CDL         Commercial Driver's License

CLP         Commercial Learner's Permit

DOT         Department of Transportation

FMCSA       Federal Motor Carrier Safety Administration

IFR         Interim Final Rule

## STATEMENT OF INTEREST[1]

**The Sikh Coalition** is a nonprofit and nonpartisan organization dedicated to ensuring that members of the Sikh community in America are able to practice their faith without fear of discrimination or backlash. It defends the civil rights and civil liberties of Sikhs by providing direct legal services and advocating for legislative change, educating the public about Sikhs and Sikhi, promoting local community empowerment, and fostering civic engagement amongst Sikh Americans. The organization also educates community members about their legally recognized free-exercise rights and works with public agencies and officials to implement policies that accommodate their sincerely held beliefs. The Sikh Coalition was originally founded as an effort to combat uninformed hate violence and discrimination against Sikh Americans after September 11, 2001. The Sikh Coalition has long stood for the legal rights of Sikh truckers, including by representing plaintiffs in landmark hiring discrimination legislation, fighting for clients' rights to maintain their articles of faith while working in the trucking industry, seeking justice for drivers who

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici curiae* certify that no person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. Under Circuit Rule 29(d), *amici curiae* certify that joinder in a single brief with other *amici* would be impracticable because, as of the date of this certification, they are aware of no other brief that addresses in depth the interests and experiences of members of the Sikh community impacted by the challenged Rule.

experience bias-motivated assault, producing accessible "know your rights resources" in Punjabi, and more.

**California Sikh Youth Alliance** (CSYA) is a grassroots community organization dedicated to advocacy, organizing, and youth development for the Sikh community in the United States. CSYA is dedicated to mobilizing and binding Californian Sikhs closer together while raising in-depth awareness for justice and human rights for all. Through this work, CSYA knows that the California Sikh community members and truck drivers have been seriously impacted by the Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver Licenses (CDL) rule.

The **Sikh American Legal Defense and Education Fund** (SALDEF) is a 501(c)(3) not for profit organization whose mission is to empower Sikh Americans by building dialogue, deepening understanding, promoting civic and political participation, and upholding civil rights and religious freedom for all Americans. Sikh truckers are deeply connected to SALDEF's mission because they represent one of the most visible and vital segments of the Sikh American community and their daily experiences directly reflect the issues SALDEF works to address.

The **Jakara Movement** is a nonprofit 501(c)(3) grassroots community-building organization dedicated to empowering, educating, and organizing working-class Punjabi Sikhs and other marginalized communities. Its mission is to advance

health, education, arts and culture, economic opportunity, and community power. Many Jakara members work in the trucking industry, which forms one of the organization's largest and most active membership bases.

**UNITED SIKHS** is an international, New York based nonprofit organization whose mission is to protect the civil and human rights of individuals and communities, and especially the rights, safety, and dignity of members of the Sikh community. UNITED SIKHS' mission is to advocate for the equitable treatment of Sikhs in the United States and to ensure members of the Sikh community—including Sikh truck drivers and business owners—are not subjected to arbitrary and discriminatory policies, protected from bias and hate, and can continue contributing safely and fully to the American economy. UNITED SIKHS has a direct interest in this matter because the FMCSA Rule disproportionately harms Sikh truck drivers, who represent a significant portion of the U.S. trucking workforce.

## PRELIMINARY STATEMENT

*Amici Curiae*, community-based organizations representing the Sikh community in the United States, submit this brief in support of Petitioners' motion seeking a stay of the final rule, 91 Fed. Reg. 7044 (Feb. 13, 2026) ("the Rule") issued by Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("DOT"), which categorically prevents entire classes of lawfully eligible and lawfully present immigrants from obtaining, maintaining, or renewing non-domiciled commercial driver's licenses ("CDL"), based solely based on immigration status.

Sikh truck drivers and their communities will be directly impacted by the Rule. Many Sikh immigrants came to the United States seeking asylum. Like many immigrant communities, Sikhs have worked in the trucking industry for decades. Once lauded for their contributions to the American economy, Sikh truck drivers are now being vilified because of this Rule.

This Court should grant a stay because the Rule is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). FMCSA's alleged rationale—to enhance commercial motor vehicle safety—is merely a pretext to target immigrant truck drivers, like Sikhs, and force them out of the industry. There is no rational link between decreased road safety and immigrant ("non-domiciled") CDL holders. While the Rule insists

1

driving history predicts future safety outcomes, its reasoning is fundamentally flawed. It assumes non-domiciled CDL holders pose a risk because their driving histories may involve other countries, but not all such drivers have foreign driving records. Federal regulations also require commercial drivers to notify the state issuing their credentials of adverse actions taken by foreign or domestic governments against their driving privileges. 49 C.F.R. §§ 383.31, 383.71(f)(2)(ii). And domiciled CDL holders are equally capable of concealing overseas driving incidents.

The Rule prohibits immigrants who are otherwise lawfully able to work from holding a CDL regardless of their driving history, skills, and other qualifications. By doing so, the Rule perpetuates the harmful myth that all immigrant drivers (regardless of their legal status) are unqualified or dangerous. This, in turn, inflames anti-immigrant bias towards immigrant truck drivers, especially Sikh drivers. The Rule also makes our roads more dangerous by worsening the existing truck-driver shortage. Accordingly, this Court should stay the Rule.

## **ARGUMENT**

### I. **Petitioners are likely to succeed on the merits because the Rule is arbitrary and capricious**

2

Under the Administrative Procedure Act ("APA"), agency actions is "arbitrary" or "capricious" if it is not "the product of reasoned decision-making." *Fox v. Clinton*, 684 F.3d 67, 74-75 (D.C. Cir. 2012). Petitioners are likely to prevail on their APA claim that FMCSA failed to rationally connect the Rule to road safety. Emergency Mot., 7–23, *Jorge Lujan v. FMCSA* (No. 26-1032).

Agency action is also arbitrary and capricious when it relies on impermissible factors or information Congress did not intend the agency to consider. *See, e.g.*, *Motor Vehicle Manufacturers Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Race and nationality are such impermissible considerations. *See, e.g.*, *CASA, Inc. v. Noem*, 2025 WL 1907378, at *22 (D. MD. July 10, 2025) (holding goal to reduce the number of non-white immigrants would render an agency decision arbitrary and capricious). "An agency decision prompted by personal animus would run afoul of the requirement that agencies act in a reasoned, nonarbitrary manner." *Robbins v. Reagan*, 780 F.2d 37, 50 n.20 (D.C. Cir. 1985).

FMCSA was impermissibly motivated by anti-immigrant bias, as shown by agency rhetoric and the political context. On his first day in office, President Trump issued Executive Order 14159, "Protecting the American People Against Invasion," which begins, "[o]ver the last 4 years, the prior administration invited, administered,

3

and oversaw an unprecedented flood of illegal immigration into the United States," and alleged noncitizens are "committing vile and heinous acts against innocent Americans." 90 Fed. Reg. 8443 (Jan. 29, 2025). A later executive order directed the Secretary of Transportation to scrutinize non-domiciled CDLs. EO 14286, 90 Fed. Reg. 18759 (April 28, 2025).

Public messaging also highlighted isolated accidents involving immigrant drivers. Following an August 2025 crash in Florida involving Harjinder Singh, a Sikh, the Department of Homeland Security posted it would work with DOT "to root out and prevent illegal aliens from obtaining these licenses from sanctuary jurisdictions that put American drivers and passengers in danger." DHS (@DHSgov), X (Aug. 20, 2025, at 6:20 AM), https://x.com/DHSgov/status/1958157078503030915. DHS doubled down and used Singh's name and image on X (formerly Twitter) to villainize Sikh truck drivers. DHS (@DHSgov), X (Oct. 8, 2025, at 12:00 PM), https://x.com/dhsgov/status/1976007319197712471?s=46&t=TtB-NjfkmOcriEtub1XBQQ.



This is not the first time DHS has harmfully spotlighted Sikh drivers. Following a fatal crash involving Jashanpreet Singh in California, the White House, as recently as this month, has falsely claimed Singh was under the influence—even though toxicology reports from months ago showed otherwise. The White House (@WhiteHouse), X (Feb. 10, 2026 at 10:59 AM), https://x.com/WhiteHouse/status/2021252784465564096; *but see* Jacquelyn Rodriguez, *Semi-Truck Driver Charged in Multi Vehicle Crash* (Oct. 31, 2025),

https://da.sbcounty.gov/2025/10/31/semi-truck-driver-charged-in-multi-vehicle-crash-that-killed-three-and-injured-multiple-victims-in-ontario/.

Last fall, FMCSA promulgated an interim final rule ("IFR"), citing five accidents from 2025 (including the Florida accident) and attributing them to the drivers' foreignness. *See* 90 Fed. Reg. 46512-13 (Sept. 29, 2025). U.S. Secretary of Transportation Sean Duffy justified the rule as addressing "dangerous foreign drivers," falsely describing "a direct threat to the safety of every family on the road." *Trump's Transportation Secretary Sean P. Duffy Takes Emergency Action to Protect America's Roads,* Dep't of Transp. (Sept. 26, 2025), https://www.transportation.gov/briefing-room/trumps-transportation-secretary-sean-p-duffy-takes-emergency-action-protect-americas.

The government leveraged this handful of accidents to distract from the lack of any evidence of systemic risk. *See* 90 Fed. Reg. at 46515, 46520. The IFR also failed to provide evidence that particular immigration statuses presented a safety risk. As this Court noted, "according to the FMCSA's own data, non-domiciled CDL holders account for approximately 5 percent of all CDL holders but only about 0.2 percent of fatal crashes" and FMCSA did "not appear to have shown that the rule would produce any net safety benefit." *Rivera Lujan v. Fed. Motor Carrier Safety*

*Admin.*, No. 25-1215, 2025 WL 3182504, at *2 (D.C. Cir. Nov. 13, 2025). Accordingly, this Court stayed the IFR as likely arbitrary and capricious.

Even after receiving 8,010 comments, the Rule is nearly identical to the stayed IFR. FMCSA itself concedes this point, characterizing the final rule as "reaffirming the changes made in the IFR." 91 Fed. Reg. at 7096.

FMCSA feebly attempts to supplement safety data in the final rule. Instead of 5, it names 17 crashes involving non-domiciled CDL holders in 2025, representing only 0.46 percent of all fatal large truck and bus crashes that year (compared to the 0.2 percent statistic this Court noted in its order staying the IFR). Like the IFR, FMCSA acknowledges and dismisses this lack of empirical evidence, stating "data limitations in existing crash reporting requirements do not provide the granular detail required to estimate quantitatively the risk associated with non-domiciled CDL holders." 91 Fed. Reg. at 7099. Lacking evidence, the agency continues to deploy discriminatory rhetoric to justify its near categorical exclusion. In announcing the publication of the Rule, for example, Secretary Duffy stated it ends a "safety loophole" posed by "dangerous foreign drivers." *Trump's Transportation Secretary Sean P. Duffy Puts Safety First, Finalizes Rule to Stop Unqualified Foreign Drivers from Driving Big Rigs on American Roadways*, DEP'T OF TRANSP. (Feb. 11, 2026),

https://www.transportation.gov/briefing-room/trumps-transportation-secretary-sean-p-duffy-puts-safety-first-finalizes-rule-stop.

Perhaps to compensate for its lack of safety-related data, FMCSA asserts that non-domiciled CDL applicants do not "face rigorous driver history checks" like other CDL applicants, due to foreign driving histories. This, FMCSA argues, "shield[s] unsafe driving behaviors . . . simply because they occurred outside the reach of U.S. databases." 91 Fed. Reg. 7044. This claim ignores the foreign driving histories of U.S. citizens and lawful permanent residents, and the many non-domiciled CDL applicants who have a U.S. driving history; indeed, some have *only* driven in the U.S.[1] Federal regulations, moreover, require commercial drivers to notify the state issuing their credentials of any adverse action taken by any foreign government against their driving privileges. 49 C.F.R. §§ 383.31, 383.71(f)(2)(ii).

FMCSA fails to justify permanently barring these drivers despite no evidence they pose a safety risk; and it never considered reasonable alternatives if driving history were an issue.

---

[1] *See* Asian Law Caucus Comment, FMCSA-2025-0622-7616, at 4, 10; 19 State Attorneys General Comment, FMCSA-2025-0622-7571, at 7; Asylum Seekers Advocacy Project Comment, FMCSA-2025-0622-0001, at 6.

The Rule, just like the IFR, disqualifies 194,000 immigrant drivers based on immigration status, an arbitrary factor that FMCSA cannot link to safety. The only explanation is animus towards immigrants—a factor impermissible for an agency to consider, rendering the Rule arbitrary and capricious.

## II.     The balance of equities and the public interest support staying the Rule

The balance of equities and the public interest favor a stay. *Nken v. Holder*, 556 U.S. 418, 443 (2009).

### A.  *Sikh truckers remain targets of hateful discrimination because of the Rule*

The balance of equities and public interest are not served when one community becomes the target of discrimination. Many Sikh immigrants sought asylum in the United States after fleeing religious and political persecution. Henna Kaur Kaushal, *Sikhs in America: "Perpetually Foreign, Automatically Suspect, and Potentially Terrorist,"* 108 Cal. L. Rev. Online (July 2020), https://www.californialawreview.org/online/sikhs-in-america#_ftn3.      Millions remain trapped in the asylum process because of the backlogs in the U.S. immigration system. *Transactional Records Access Clearinghouse*, Immigration Court Quick Facts, https://tracreports.org/immigration/quickfacts/eoir.html. Despite

this uncertainty, many Sikhs have found stability through work, particularly in the trucking industry.

Indeed, trucking has been a prominent part of the Sikh-American identity since the 1980s. *See* Kurtis Lee, *Long-Haul Trucking Was a Refuge for Sikh Immigrants. Until Now.*, N.Y. TIMES (Dec. 21, 2025), https://www.nytimes.com/2025/12/21/business/sikhs-truckers-trump-crackdown.html/. Sikh truck drivers constitute a considerable percentage of the country's entire Sikh population, and many have established trucking companies, trucking associations, and related businesses (like truck washes). *Id.*; Gagandeep Singh, *After Fatal Crash, Sikh Truck Drivers in the US Fear Backlash,* BBC NEWS (Sept. 13, 2025), https://www.bbc.com/news/articles/cy4rmymrl2ro. Amid a critical national truck driver shortage, Sikh truckers have helped fill the gap. *Id.*

Many Sikh truckers maintain visible articles of faith that are easy targets for bias. Among the most visible articles of faith is *kesh*, or unshorn hair, which is commonly accompanied by a turban, which maintains the sanctity of unshorn hair and publicly affirms the wearer's Sikh identity.

Since the IFR's publication, Sikh truck drivers have faced a surge in harassment. People have thrown objects like water bottles at Sikh trucks and have called them slurs like "diaper head" and "towel-head." *See U.S. Rears Its Ugly Side*

*After Fatal Accident in Florida Involving Sikh Trucker,* THE FRESNO BEE (Sept. 7, 2025), https://www.fresnobee.com/opinion/editorials/article311993510.html. One Sikh trucker described comments like, "[t]ake the towel heads off the streets," and "[m]ake our roads safe by taking immigrants off the streets." Luis Andres Henao, *A deadly crash, a divided nation: Why Sikh truckers are now in the crossfire,* SEATTLE TIMES (Sept. 5, 2025), https://www.seattletimes.com/business /sikh-truckers-see-spike-in-anti-immigrant-vitriol-after-deadly-florida-crash/.

Truckers' complaints are often dismissed or ignored by law enforcement, leaving them without any recourse. Singh, *supra* page 10. Indeed, rather than providing help, law enforcement has subjected Sikh drivers to heightened scrutiny regarding their immigration status. THE FRESNO BEE, *supra* page 10–11. Some have stopped driving because they fear for their safety. *See* Nilesh Christopher, *California's Punjabi truckers say they're being harassed after deadly Florida wreck,* L.A. TIMES (Sept. 12, 2025), https://www.latimes.com/business/story/2025-09-12/punjabi-truckers-feel-targetted-by-tariff-and-crackdown-after-accident.

Additionally, there has been a surge in xenophobic posts and misinformation on social media platforms, including entire Facebook pages, with thousands of subscribers, devoted to spreading harmful narratives like: Sikh truck drivers are obtaining CDLs without merit, and Sikhs are responsible for trucking accidents.

Sikh industry leaders have also reported an influx of hate emails following the IFR. These emails include harmful statements like, "stop playing the race card, you came into the trucking industry uninvited so now ICE, HSI, and FMSCA will be looking at all non-US citizens," and:

> You people need to get out of trucking and go back to your shithole country altogether. . . I'm a trucker and every time I see one of your trucks and drivers I report you to DOT . . . Your drivers . . . have zero intelligence and are killing people all over the country. It is my mission to ruin you and every driver you have until your completely off American highways.

Other Sikh industry actors have been forced to contend with inequitable repercussions; trucking business owners like Baldev Khang reported that multiple Sikh drivers quit from fear of being targeted, despite the drivers having valid work permits. Christopher, *supra* page 15. Notably, the Assistant Attorney General for Civil Rights at the U.S. Department of Justice acknowledged that Sikh and Indian-origin truckers are being targeted "because of who they are." Harmeet Dhillon (@AAGDhillon), X (Oct. 27, 2025, at 11:23 AM), https://x.com/aagdhillon/status/1982875887600013333?s=46. Dhillon asked the public "to act with reason," and reminded all that it "is illegal under federal law to discriminate against individuals or attack or violently threaten them because of their race, color, religion, or national origin."

12

The IFR spread fear throughout the Sikh trucker community, effectively undermining drivers' sense of safety and belonging, despite many having contributed to the profession for decades. This disruption and anxiety will no doubt only continue under the Rule, given how closely it mirrors the IFR. These calamitous consequences demonstrate the balance of equities and public interest strongly favor staying the Rule.

  B. *The Rule will likely make the roads less safe because of the persistent driver shortage*

Despite FMCSA's alleged concern for road safety, it failed to address how the Rule could make roads increasingly unsafe. FMCSA estimates that nearly 97 percent of current non-domiciled CDL holders—about 194,000 drivers—will lose their licenses within five years. 91 Fed. Reg. 7095-96 (Feb.13, 2026).

This mass exodus would make roads increasingly *unsafe*. For years, there has been a persistent shortage of truck drivers. In 2021, the American Trucking Association estimated an industry shortfall of greater than 80,000 drivers and forecasted a persistent shortage expected to grow to 162,000 drivers by 2030. *Driver Shortage Update 2021*, AMERICAN TRUCKING ASSOCIATIONS, INC. (Oct. 25, 2021), https://www.trucking.org/sites/default/files/2021-

10/ATA%20Driver%20Shortage%20Report%202021%20Executive%20Summary.

FINAL_.pdf.

Instead of acknowledging this risk, FMCSA denies the problem entirely: in the Rule, it describes the driver shortage as "so-called" and asserts that the "ATA has now pivoted away from the 'driver shortage' narrative." Public reporting from September 30, 2025 (after publication of the IFR), however, notes that the ATA "maintains that there is still a shortage that will likely get worse over time." Alex Lockie, *Did DOT Secretary Duffy just kill trucking's 'driver shortage' narrative once and for all?*, OVERDRIVE (Sept. 30, 2025), https://www.overdriveonline.com/business/article/15768125/dots-move-against-nondomiciled-cdl-holders-and-the-driver-shortage.

Forcing nearly 200,000 drivers from the market will severely exacerbate that shortage. Since the IFR's publication, drivers have already reported to *amici* that they have been forced to take additional routes because of increased driver shortages, causing increased pressure and driver fatigue. Thus, the balance of equities and the public interest would be served by staying the Rule. *See Oregon State Penitentiary v. Hammer*, 434 U.S. 945, 946 (1977) (there is an "important public interest in safety on the roads and highways").

14

## <u>CONCLUSION</u>

For the foregoing reasons, *amici* respectfully request that this Court grant

Petitioners' motion for an emergency stay.


Respectfully submitted,

Dated: March 6, 2026                                  <u>      /s/ Sahel K. Sra</u>

Sahel K. Sra

Munmeeth Kaur

The Sikh Coalition

165 Broadway, 23rd Floor

New York, NY 10006

Tel: (212) 655-3095

sahel@sikhcoalition.org

munmeeth@sikhcoalition.org


Katherine Zhao

Joshua Rosenthal

Asian Law Caucus

55 Columbus Ave

San Francisco, CA 94111

Tel: (415) 896-1701

katherinez@asianlawcaucus.org

joshr@asianlawcaucus.org


*Counsel for Amici Curiae*

15

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this Brief of *Amici Curiae* complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), it contains 2,535 words.

I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font in Microsoft Word.

Respectfully submitted,

Dated: March 6, 2026                                    *    /s/ Sahel K. Sra*
                                                             Sahel K. Sra
                                                        *Counsel for Amici Curiae*

16

## CERTIFICATE OF SERVICE

I certify that on March 6, 2026, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system. I certify that the foregoing document is being served on this day to all counsel of record registered to receive a Notice of Electronic Filing generated by CM/ECF.

*/s/ Sahel K. Sra*
Sahel K. Sra
*Counsel for Amici Curiae*
