ORAL ARGUMENT NOT YET SCHEDULED

**No. 26-1032**

(consolidated with No. 26-1046)

———————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

Jorge Rivera Lujan, et al.,

Petitioners-Appellants,

v.

Federal Motor Carrier Safety Administration, et al.,

Respondents-Appellees.

———————————

On Petition for Review of a Final Rule of the Federal Motor Carrier
Safety Administration

———————————

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
OF THE EFFECTIVE DATE PENDING REVIEW**

———————————

Teague Paterson
Matthew Blumin
American Federation of
State, County & Municipal
Employees, AFL-CIO
1625 L Street, NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Daniel McNeil
Channing Cooper
American Federation of Teachers,
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners
in No. 26-1032*

March 11, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

GLOSSARY ........................................................................................iv

INTRODUCTION...................................................................................1

ARGUMENT .......................................................................................1

I.    Petitioners are likely to succeed on the merits of their claim that the Rule is arbitrary and capricious. ............................................... 1

II.   The likelihood of imminent harm, balance of the equities, and the public interest weigh decisively in favor of a stay......................... 12

CONCLUSION ................................................................................. 14

CERTIFICATE OF COMPLIANCE..................................................... 16

CERTIFICATE OF SERVICE............................................................. 17

# TABLE OF AUTHORITIES*

**Cases**                                                                    **Pages**

*American Radio Relay League, Inc. v. Federal Communications Commission*,
524 F.3d 227 (D.C. Cir. 2008) ................................................................2

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ................................................................................6

*Department of Homeland Security v. Regents of the University of California*,
591 U.S. 1 (2020)....................................................................................9

*League of United Latin American Citizens v. Executive Office of the President*,
780 F. Supp. 3d 135 (D.D.C. 2025) ......................................................13

**Motor Vehicle Manufacturers Ass'n of United States v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983)..................................................................................2

*Rivera Lujan v. Federal Motor Carrier Safety Administration*,
No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025)....................2

**Regulatory Materials**

6 C.F.R. § 37.21 ........................................................................................7

49 C.F.R. § 383.23 ...................................................................................10

49 C.F.R. § 383.71 .....................................................................................7

49 C.F.R. § 383.73 .................................................................................3, 7

---

* Authorities upon which we chiefly rely are marked with asterisks.

ii

91 Fed. Reg. 7044 (2026) ...................................................... 3, 6, 9, 11, 13

**Other Authorities**

American Transportation Research Institute, *Critical Issues in the Industry–2025* ..................................................................... 13

Department of State, *Interview by Consular Officer*, Foreign Affairs Manual, 9 FAM 504.7 (2024) ................................................. 5

FMCSA, FMCSA-CDL-383.23-FAQ001 (2023-05-08) ............................ 11

J.B. Hunt, *Immigration Policy and Enforcement Impact on U.S. Commercial Driver Supply* (Oct. 28, 2025) ........................................ 4

NEOGOV, *Time to Hire Report* (2020) ........................................ 5

U.S. Citizenship & Immigration Services, *Handbook for Employers M-274* (Oct. 30, 2025) ................................... 8

## GLOSSARY

CDL          Commercial Driver's License

DACA        Deferred Action for Childhood Arrivals

EAD          Employment Authorization Document

FMCSA      Federal Motor Carrier Safety Administration

**INTRODUCTION**

The Federal Motor Carrier Safety Administration (FMCSA) Final Rule at issue prohibits most noncitizens from holding non-domiciled commercial driver's licenses (CDLs), removing approximately 200,000 experienced drivers from the commercial driving workforce. As explained in Petitioners' motion and below, FMCSA has no data supporting its position that the exclusion of these drivers will advance safety, and the explanations it offers do not justify the Rule. Because Petitioners are likely to succeed on the merits of their claim that the Rule is arbitrary and capricious, the harm caused by the Rule is imminent and irreparable, and the balance of the equities and the public interest tilt decisively in Petitioners' favor, the Court should stay the effective date of the Rule pending its review.

**ARGUMENT**

## I. Petitioners are likely to succeed on the merits of their claim that the Rule is arbitrary and capricious.

**A.** FMCSA concedes "the absence of definitive evidence," Resp. 13, to support its assertion that the Rule is likely to improve safety by reducing motor vehicle crashes. And FMCSA appears to agree that the seventeen examples of crashes that it identified do not justify the Rule's

restrictions. *Id.* at 13 n.2. FMCSA's lack of evidence shows that the Rule is arbitrary and capricious. *See Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008) ("It is not consonant with the purpose of a rulemaking proceeding to promulgate rules on the basis of inadequate data …." (citation omitted)); *see also Rivera Lujan v. FMCSA*, No. 25-1215, 2025 WL 3182504, at *2 (D.C. Cir. Nov. 13, 2025) (in staying the substantively identical Interim Final Rule, noting that FMCSA "does not appear to have shown that the rule would produce any net safety benefit").

FMCSA counters that Petitioners have not cited data showing that drivers ineligible under the Rule are safer than other drivers. Resp. 13. But FMCSA has justified the Rule based on the assertion that the excluded drivers pose greater safety risk; it is the *agency's* burden to substantiate that assertion and to show that its decision is reasonable. *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Moreover, FMCSA offers little to counter the evidence that the Rule will *harm* safety by replacing now-excluded drivers with less-experienced or more fatigued drivers and by curtailing public services, including those

2

concerning safety. Although FMCSA denies that the Rule will exacerbate the driver shortage, *see* Resp. 14–15, that assertion is belied by the substantial contrary evidence in the record. *See* Motion 12–13; Teamsters Cal. Amicus Br. 7 & n.5; Local Gov'ts Amicus Br. 4.

**B.** FMCSA primarily argues that the now-excluded drivers pose a risk because their driving records are inaccessible. Yet while FMCSA asserts that non-domiciled license holders are "subject to a lower level of scrutiny … than U.S.-domiciled individuals," Resp. 11 (quoting 91 Fed. Reg. 7044, 7048 (2026)), all drivers in the United States—citizens and noncitizens alike—must satisfy the same requirements and complete the same training and testing. *See* 49 C.F.R. § 383.73(f)(2).

Moreover, FMCSA's decision to exclude drivers who are Deferred Action for Childhood Arrivals (DACA) recipients makes plain that the Rule cannot be justified by purported concern about foreign driving history. *See* Resp. 15. Because DACA recipients arrived in the United States as children and must have continuously resided here since 2007, they do not have foreign driving histories. *See* Motion 16–17; *see, e.g.*, Rivera Lujan Decl. ¶2. FMCSA's primary rationale, then, does not apply

3

to 21 percent of drivers (approximately 42,000 drivers) impacted by the Rule.[2]

Likewise, many other drivers now excluded by the Rule have years-long U.S. driving histories. *See, e.g.*, John Doe Decl. ¶3 (10-year U.S. driving history); Semenovskii Decl. ¶4 (5-year U.S. driving history). FMCSA's primary rationale does not apply to those experienced drivers either, offering further evidence of arbitrary decisionmaking.

Additionally, as Petitioners explained, FMCSA's distinctions between the now-excluded drivers and drivers still permitted to hold CDLs (H-2A, H-2B, and E-2 visa-holders) highlights the lack of reasoned decisionmaking. *See* Motion 21–23. Misunderstanding the point, FMCSA suggests that Petitioners have argued that H-2A, H-2B, and E-2 visa-holders should also be excluded from holding CDLs. Resp. 15. Petitioners' point, however, is not that those visa-holders should be excluded, but that FMCSA's reliance on "screening" processes for people with H-2A, H-2B, and E-2 visas does not explain the agency's choice to exclude other non-citizen drivers. FMCSA asserts that the "totality" of the processes

---

[2] *See* J.B. Hunt, *Immigration Policy and Enforcement Impact on U.S. Commercial Driver Supply* (Oct. 28, 2025), https://www.jbhunt.com/blog/enterprise/immigration-policy-impact.

justifies the Rule's distinctions. Resp. 16. But it offers no responses to Petitioners' discussion of the problems with FMCSA's reliance on the Department of Labor certification and visa-renewal processes. *See* Motion 21–22. And its assertion that consular interviews assess English proficiency, *see* Resp. 16, ignores that interviews may be conducted in other languages.[3] Further, FMCSA asserts that H-2A and H-2B employers are incentivized to hire safe drivers because the hiring process "can take 75 days or more." Resp. 9. Public employers, too, are incentivized to hire safe drivers, a process that takes on average 119 days.[4]

Notwithstanding the poor fit between the facts and its decision, FMCSA asserts in closing that "it was reasonable" to conclude that the now-ineligible noncitizen drivers "*as a class* … are likely to share the characteristics described"—that is, unavailable driving records. Resp. 17. But as explained above, the facts show that its conclusion was not reasonable. Indeed, the mismatch between the Rule's restrictions and its

---

[3] *See* Dep't of State, *Interview by Consular Officer*, Foreign Affairs Manual, 9 FAM 504.7 (2024).

[4] NEOGOV, *Time to Hire Report* 2 (2020), https://www.neogov.com/hubfs/NEOGOV-Time-to-Hire-Report.pdf.

purported primary justification suggests that driving history is not FMCSA's true motivation for the Rule. *See Dep't of Comm. v. New York*, 588 U.S. 752, 780–85 (2019) (affirming district court decision setting aside agency action that was based on pretextual rationale).

**C.** The Rule accomplishes its restriction of most noncitizens from CDL eligibility by rejecting Employment Authorization Documents (EADs) as documentation supporting a non-domiciled CDL application. Instead, the Rule limits non-domiciled CDLs to applicants with I-94 forms with an H-2A, H-2B, or E-2 visa. *See* 91 Fed. Reg. 7102 (§ 353.5). Characterizing this change as "revise[d] … documentation" require-ments, Resp. 17, FMCSA asserts that the change is needed to improve state administrability and compliance with federal requirements. Critically, FMCSA disclaims that the new prohibition on using EADs has anything to do with safety. *See* Resp. 19 (noting that it was "not States' licensing deficiencies *per se* that posed a safety concern" (cleaned up)). FMCSA's non-safety justification for rejecting EADs—and with them, the 200,000 noncitizen drivers who have them—does not withstand scrutiny.

**1.** FMCSA claims "widespread issues" from state licensing clerks improperly reading codes on EADs, Resp. 17, "result[ing] in 'tens of

thousands of non-domiciled CDLs' issued inconsistent with federal law," *id.* at 6. This "consistent failure," it argues, shows that "the issue is not merely a training deficiency." *Id.* at 17. But what FMCSA characterizes as widespread "errors" reflects its retroactive imposition of a requirement that *did not appear in the prior regulations*. *See* Motion 14. Specifically, the bulk of the purported "errors" are CDLs with expiration dates that did not match the expiration date on the driver's EAD. The prior regulations, however, did not require the expiration dates to match. *See* 49 C.F.R. § 383.71 (2021); *id.* § 383.73 (2022); *cf.* 6 C.F.R. § 37.21(b)(1) (REAL ID regulation requiring matching dates). FMCSA does not really disagree, but argues that a matching requirement "followed" from the requirement to present unexpired proof of lawful presence. Resp. 22. FMCSA cites no authority for reading an unstated requirement into federal regulations.

Moreover, the facts do not support FMCSA's conclusion that EADs are so "complex" that state licensing clerks cannot properly read them, even with proper training. Resp. 18; *see id.* at 23. Of the states for which FMCSA provided data,[5] FMCSA found zero to only three instances of

---

[5] *See* FMCSA List of States, FMCSA-2025-0622-8110.

CDL expiration dates exceeding the EAD period in half of those states.[6] These numbers refute FMCSA's assertion that state clerks are incapable of reading EADs—which is unsurprising because EADs are no more complex than drivers' licenses.[7]

FMCSA's argument that it must show only that it "reasonably determined that [s]tates could more effectively implement" the Rule's new expiration-date requirements by allowing only I-94 forms (and excluding EADs), Resp. 21, sets the bar too low. In setting a new paperwork requirement that functionally excludes approximately

---

[6] Six states had zero instances. *See* FMCSA Letter, FMCSA-2025-0622-8065, at 4 (Rhode Island); FMCSA Letter, FMCSA-2025-0622-8095, at 4 (Oregon); FMCSA Letter, FMCSA-2025-0622-8061, at 4 (North Dakota); FMCSA Letter, FMCSA-2025-0622-8092, at 4 (Maryland); FMCSA Letter, FMCSA-2025-0622-8054, at 3–4 (Maine); FMCSA Letter, FMCSA-2025-0622-8057, at 4 (Delaware). Six more states had between one and three instances. *See* FMCSA Letter, FMCSA-2025-0622-8068, at 5 (Pennsylvania; 2 instances of 150 records sampled); FMCSA Letter, FMCSA-2025-0622-4009, at 6–7 (Washington; 1 of 125); FMCSA Letter, FMCSA-2025-0622-8060, at 4 (Ohio; 3 of 125); FMCSA Letter, FMCSA-2025-0622-8093, at 3 (New Jersey; 2 of 129); FMCSA Letter, FMCSA-2025-0622-8059, at 4 (District of Columbia; 3 of 32); FMCSA Letter, FMCSA-2025-0622-8064, at 4 (Michigan; 2 of 75).

[7] USCIS, *Handbook for Employers M-274* § 5.0 (Oct. 30, 2025), https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/50-automatic-extensions-of-employment-authorization-andor-employment-authorization-documents-eads-in.

200,000 noncitizens from the CDL workforce, FMCSA was obliged to consider their reliance interests and the availability of less burdensome options. Its failure to do so is arbitrary and capricious. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020).

**2.** FMCSA's exclusion of DACA recipients highlights the Rule's unreasonableness. For DACA recipients, FMCSA disavows any safety concern and agrees that its driver-history justification is inapplicable. Its purported justification for prohibiting 42,000 DACA recipients, *see supra* n.2, from holding CDLs is that state clerks have had trouble "distinguishing between the EAD code for DACA and other forms of deferred action." Resp. 19. But FMCSA does not explain why this administrative issue warrants excluding these people, particularly given the lack of a safety concern.

Rejecting an administrative solution to the administrative problem it identifies, FMCSA contends that improved training would not address "consistent failure[s]" in state administration. Resp. 23 (quoting 91 Fed. Reg. 7052). But FMCSA's data do not show widespread clerk confusion on DACA codes: FMCSA found only 71 instances of Canadian or Mexican citizens who were not DACA recipients receiving CDLs, out of a total

9

sample of 2,029 driver records (approximately 3.5 percent).[8] And just three states accounted for more than half of those instances.[9]

In any event, the data suggest that, as with expiration dates, FMCSA's assertion of non-compliance is based on a reading of prior regulations that the agency only recently communicated to states. The prior regulations stated that "a driver *holding a commercial driver's license issued under the Canadian National Safety Code or a new Licencia Federal de Conductor* issued by Mexico is prohibited from obtaining a non-domiciled CDL." 49 C.F.R. § 383.23(b)(1) n.1 (2018) (emphasis added). The regulation did not state that Canadian or Mexican citizens who did not hold a Mexican or Canadian license were ineligible for non-domiciled CDLs. Consistent with the regulation, FMCSA's guidance permitting Mexican-citizen DACA recipients to apply for CDLs stated

---

[8] *See supra* n.5.

[9] *See* FMCSA Letter, FMCSA-2025-0622-0463, at 4 (California; 11 instances); FMCSA Letter, FMCSA-2025-0622-8095, at 4 (Oregon; 8 instances); FMCSA Letter, FMCSA-2025-0622-4012 at 4 (Colorado; 18 instances).

that they were eligible so long as they did not hold a Mexican CDL. *See* FMCSA, FMCSA-CDL-383.23-FAQ001 (2023-05-08).[10]

In short, the record shows that most states are already in full compliance with FMCSA's understanding of the prior regulations' requirements, and that any paperwork problems with the use of EADs can be resolved through improved guidance and training, without prohibiting CDLs for most noncitizens, including tens of thousands of DACA recipients.

**D.** FMCSA agrees that the Rule will harm "the serious economic reliance interests" of the 200,000 drivers now forced to exit the market. Resp. 24 (quoting 91 Fed. Reg. 7083). Its response that drivers have "up to five years to adjust," Resp. 24, is inexplicable. The record shows that "[a]ssuming CDLs come up for renewal at a consistent rate, approximately 8,000 non-domiciled CDLs will come up for renewal every month and … will not be renewable, leading to continuous ongoing losses (8,000 holders losing their jobs and 8,000 vacancies that employers will

---

[10] *Available at* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled.

11

have to fill each month)."[11] *See, e.g.*, Rivera Lujan Decl. ¶¶3, 8; Semenoskii Decl. ¶¶6–10; Jane Doe Decl. ¶¶6– 9; John Doe Decl. ¶¶9–15.

## II. The likelihood of imminent harm, balance of the equities, and the public interest weigh decisively in favor of a stay.

**A.** The Rule threatens irreparable harm that, absent a stay, is certain to occur. Motion 25–26. As to Petitioners Rivera Lujan and Semenovski, however, FMCSA asserts that harm is not imminent because the Rule will not strip them of their livelihoods until the Fall. *See* Resp. 25. This case, however, will not be resolved or even argued by then. Absent a stay, the harm to these Petitioners is certain.

As to Petitioners AFSCME and AFT, FMCSA argues that the Rule does not harm the member declarants because their states declined to renew their licenses before it issued the Final Rule. Resp. 26. FMCSA does not contest, though, that the states acted in anticipation of the Rule; that, absent the Rule, these members could renew their CDLs and return to their jobs; or that AFSCME member Doe will be fired if he cannot renew his CDL by April. *See* John Doe Decl. ¶14. Moreover, although

---

[11] 19 State Attorneys Gen. Comment, FMCSA-2025-0622-7571, at 9.

FMCSA suggests otherwise, the Sforza and Samet declarations are independently adequate to support standing and imminent injury because they identify additional affected members. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 181 (D.D.C. 2025).

**B.** As Petitioners explained, the Rule will impair state and local governments' ability to provide essential services including public transportation, school bus service, road maintenance, and utility services. *See* Motion 27–28 (citing administrative record); *see also* Waste Pro Amicus Br. 5 (stating "the consequences of losing non-domiciled CDL drivers would be immediate"). FMCSA suggests that "experienced drivers" will pick up the slack. Resp. 14. But this prediction requires FMCSA to deny the longstanding shortage of CDL drivers. *See* Motion 12–13; Local Gov't Amicus Br. 4; Teamsters Cal. Amicus Br. 7. Even the report on which FMCSA relies specifies that "motor carriers still rank the need to find and retain qualified drivers as their number five and number six concerns."[12]

---

[12] Am. Transp. Research Inst., *Critical Issues in the Industry–2025*, at 24, https://truckingresearch.org/wp-content/uploads/2025/10/ATRI-Top-Industry-Issues-2025.pdf, *cited in* 91 Fed. Reg. 7082 n.64.

FMCSA also ignores the harm to the economy from "fractur[ing] essential supply chains, leading to longer delivery times, inventory shortages, and production delays." Teamsters Cal. Amicus Br. 9.

Finally, FMCSA ignores the Rule's harmful consequences for CDL drivers, their families, schools, motor carriers, and others. *See* Motion 27–28 (citing administrative record). These harms—further detailed in AFSCME's and AFT's declarations, and in amicus briefs from local governments, Teamsters California, an industry employer, and impacted drivers—weigh heavily in favor of a stay.

## CONCLUSION

The Court should grant Petitioners' motion for a stay of the effective date and order FMCSA promptly to inform state licensing agencies of the stay.

14

Respectfully submitted,

Teague Paterson
Matthew Blumin
American Federation of
State, County & Municipal
Employees, AFL-CIO
1625 L Street, NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Daniel McNeil
Channing Cooper
American Federation of Teachers
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

March 11, 2026

/s/ *Wendy Liu*
Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners in*
No. 26-1032

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 2,576 words, as calculated by my word processing software.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word 365.

/s/ *Wendy Liu*
Wendy Liu

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 11, 2026, the foregoing document

was served through the Court's ECF system on counsel for all parties.

/s/ *Wendy Liu*
Wendy Liu

17