[ORAL ARGUMENT NOT SCHEDULED]

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Jorge Rivera Lujan, et al., | |
| Petitioners, | |
| | |
| v. | No. 26-1032 |
| | (Consolidated with |
| Federal Motor Carrier Safety | Nos. 26-1046) |
| Administration, et al., | |
| Respondents. | |

## UNOPPOSED MOTION TO EXPEDITE

Teague Paterson
Matthew Blumin
American Federation of
  State, County & Municipal
  Employees, AFL-CIO
1625 L Street, NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Daniel McNeil
Channing Cooper
American Federation of Teachers,
  AFL-CIO
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

March 23, 2026

Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners
in No. 26-1032*

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................1

BACKGROUND .................................................................................2

ARGUMENT ......................................................................................6

I.     Delay will cause irreparable injury. ...............................................7

II.    The public has a significant and compelling interest in expedition. ............................................................................9

III.   The Final Rule is subject to substantial challenge. .....................11

CONCLUSION .................................................................................15

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE............................................................17

## INTRODUCTION

The Federal Motor Carrier Safety Administration (FMCSA) Final Rule at issue prohibits numerous noncitizens from holding non-domiciled commercial driver's licenses (CDLs), removing approximately 200,000 experienced drivers from the workforce. The Rule went into effect on March 16, 2026. There is a strong and compelling public interest in expeditious review of the Rule, which threatens to destroy the livelihoods of the individual driver Petitioners, numerous members of the union Petitioners, and tens of thousands of drivers across the country. The Rule also threatens harm to numerous families, employers, schools, and local and state governments that depend on the work of commercial drivers. And Petitioners are likely to prevail in their challenge that the Rule is arbitrary and capricious. For these reasons and the ones set forth below, if this Court does not grant Petitioners' pending motion to stay the Rule pending this Court's review, the Court should expedite briefing and argument.

Petitioner in consolidated case No. 26-1046, Martin Luther King, Jr. County, consents to this motion. Respondents state that they consent

to the expedited briefing schedule requested below and take no position on the request to schedule oral argument at the first available date.

## BACKGROUND

**A.** Commercial driver's licenses (CDLs) are required for drivers of commercial motor vehicles, such as trucks and buses. 49 U.S.C. §§ 31301(4), 31302. CDLs, though issued by states, are subject to federal standards under the Commercial Motor Vehicle Safety Act. That statute requires FMCSA to "prescribe regulations on minimum uniform standards for the issuance of [CDLs] and [commercial] learner's permits by the States." *Id.* § 31308. Accordingly, FMCSA promulgated regulations requiring CDL drivers to "have the knowledge and skills necessary to operate a [commercial motor vehicle] safely," 49 C.F.R. § 383.110; *see id.* § 383.111 (required knowledge of "20 general areas"), § 383.113 (required skills), and to be tested on that knowledge and those skills, *id.* § 383.133.

In 2011, FMCSA issued regulations specifying that only U.S. citizens and lawful permanent residents are eligible for CDLs. At the same time, it created a new category of license—the "non-domiciled" CDL—for (i) persons who are "not domiciled in a foreign jurisdiction" that

2

FMCSA has determined has equivalent licensing standards to those in the United States,[1] and (ii) persons domiciled in a state prohibited from issuing CDLs. 49 C.F.R. §§ 383.5, 383.23(b), 383.71(f) (2011). Under the 2011 rule, a driver applying for a non-domiciled CDL was required to present:

> an unexpired employment authorization document (EAD) issued by [U.S. Citizenship and Immigration Services (USCIS)] or an unexpired foreign passport accompanied by an approved I-94 form documenting the applicant's most recent admittance into the United States.

*Id.* § 383.71(f)(2)(i). All drivers with non-domiciled CDLs must satisfy the same procedures and requirements, including the same training and testing, as drivers with other CDLs. *See* 49 C.F.R. § 383.73(f)(2).

**B.** On September 29, 2025, FMCSA issued an Interim Final Rule (IFR) restricting non-domiciled CDLs to people with H-2A, H-2B, or E-2 visas. *See* 90 Fed. Reg. 46509. The IFR excluded all other noncitizens,

---

[1] FMCSA determined that Mexican and Canadian CDL standards are equivalent to federal licensing standards. *See* 49 C.F.R. § 383.23(b)(1) n.1. Thus, people with Mexican or Canadian licenses may drive in the United States with their Mexican or Canadian license pursuant to "CDL reciprocity agreements." FMCSA, *Commercial and non-Commercial Driver License Requirements* (2018), https://www.fmcsa.dot.gov/international-programs/commercial-and-non-commercial-driver-license-requirements.

"includ[ing] asylum seekers, asylees, refugees, and Deferred Action for Childhood Arrivals (DACA) recipients," from eligibility. *Id.* 46515. FMCSA made the IFR immediately effective, but accepted comments through November 28, 2025. *Id.* 46514–15.

On October 20, 2025, Petitioners Jorge Rivera Lujan, Aleksei Semenovskii, American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME), and American Federation of Teachers, AFL-CIO (AFT) petitioned for review of the IFR.[2] They moved for an emergency stay pending review, which this Court granted. *Rivera Lujan v. FMCSA*, No. 25-1215, 2025 WL 3182504, at *1 (D.C. Cir. Nov. 13, 2025). The Court held, among other things, that Petitioners were likely to succeed on their claim that FMCSA acted arbitrarily and capriciously in issuing the IFR. *Id.* at *1–2. The Court observed that "FMCSA's own data appears to indicate that the CDL holders excluded by the rule are involved in fatal crashes at a lower rate than CDL holders who are not excluded" and that "non-domiciled CDL holders account for approximately 5 percent of all CDL holders but only about 0.2 percent of

---

[2] A petition filed by Martin Luther King, Jr. County, No. 25-1224, was consolidated with *Rivera Lujan*, No. 25-1215.

fatal crashes." *Id.* at \*2. The case challenging the IFR is in abeyance pending disposition of this case. *See* Order, No. 25-1215 (Feb. 20, 2026).

**C.** On February 11, 2026, Respondents issued a final rule titled "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)." Respondents published the Rule in the Federal Register on February 13, 2026, with an effective date of March 16, 2026. 91 Fed. Reg 7044.

Like the IFR, the Rule specifies that non-domiciled commercial driver's licenses are available only to H-2A, H-2B, and E-2 visa holders, thereby excluding asylum seekers, asylees, DACA recipients, refugees, and people with temporary protected status. *Id.* 7048. FMCSA's primary justification for the Rule is closing a "gap in the Nation's commercial drivers licensing system" that, the agency says, has "manifested in two ways": first, through "the issuance of licenses to individuals whose safety fitness cannot be adequately verified" by state licensing agencies; and second, through reliance on EADs to demonstrate eligibility for CDLs, which FMCSA states "has proven administratively unworkable and resulted in widespread regulatory noncompliance." *Id.* 7044.

On February 12, 2026, Petitioners filed this petition for review of the final rule. Petitioners Rivera Lujan and Semenovskii are drivers who, under the Rule, will be ineligible for CDLs, and Petitioners AFSCME and AFT each represent numerous members who drive CMVs for state and local governments and who will be ineligible for CDLs under the Rule. The Rule threatens their livelihoods, jeopardizing their ability to pay for housing, food, and other necessities; their employer-provided benefits, including health insurance; and essential public services they provide.

On February 26, 2026, Petitioners filed an emergency motion to stay the Rule's effective date pending this Court's review of the Rule. Petitioners explained that they are likely to succeed on the merits of their claim that the Rule is arbitrary and capricious and that the Rule would cause irreparable harm and have negative consequences nationwide. Petitioners' motion is pending.[3]

## ARGUMENT

This Court may grant expedited review where "the delay will cause irreparable injury and … the decision under review is subject to

---

[3] A petition filed by Martin Luther King, Jr. County, No. 26-1046, was consolidated with this appeal. King County also filed an emergency motion to stay the Rule, and that motion is also pending.

substantial challenge." *D.C. Cir. Handbook of Practice & Internal Procedures* 34. Expedition is also warranted in "cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition; the reasons must be strongly compelling." *Id.*; *see also Make the Rd. New York v. Wolf*, No. 19-5298, 2019 WL 13192054, at *1 (D.C. Cir. Dec. 12, 2019) (Katas, J., concurring) (collecting cases).

Here, the Court should grant expedited briefing and argument because the delay in waiting for a decision in the normal course will cause significant and irreparable harm to Petitioners and the public. In addition, the merits of Petitioners' challenge are strong.

## I. Delay will cause irreparable injury.

As this Court recognized in staying the substantively identical IFR, the Final Rule "threatens destruction of the individual petitioners' businesses" and "similar harm for members of the union petitioners." *Rivera Lujan*, 2025 WL 3182504, at *2. The same is true of the Final Rule.

Petitioners Rivera Lujan and Semenovskii face the loss of their CDLs and, with them, the loss of jobs on which they rely to provide for

their families and pay for basic necessities. Rivera Lujan Decl. ¶¶8–9;[4] Semenovskii Decl. ¶¶7–11; *see Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) ("A business's 'destruction in its current form' commonly qualifies as irreparable harm" (collecting cases)). That harm is also imminent: Their licenses expire before this litigation will conclude in the normal course. *See* Semenovskii Decl. ¶6; Rivera Lujan Decl. ¶3.

AFSCME's and AFT's members also will suffer irreparable harm because each union's membership includes drivers required to have CDLs for their jobs but who cannot renew them under the Rule— including a member who will be fired if he cannot renew his CDL by April. Sforza Decl. ¶¶3–8; Samet Decl. ¶¶12–16; John Doe Decl. ¶¶4–5, 9–12, 15; Jane Doe Decl. ¶¶3–6, 9. Those members face loss of their jobs and ability to provide for their families, as well as employer-provided benefits like health insurance. Sforza Decl. ¶¶5–8; Samet Decl. ¶¶15–16, 18; John Doe Decl. ¶¶11–16; Jane Doe Decl. ¶¶5–12; *see S. Educ. Found. v. Dep't of Educ.*, 784 F. Supp. 3d 50, 72 (D.D.C. 2025) (finding irreparable harm

---

[4] Cites to declarations refer to the declarations filed in support of Petitioners' emergency motion for a stay of the Rule's effective date, filed on February 26, 2026.

in part "because the defendants' actions threaten the livelihoods of [the organization's] employees").

## II. The public has a significant and compelling interest in expedition.

In addition to harming Petitioners, the Rule will harm "the serious economic reliance interests" of the 200,000 drivers now forced to exit the market, 91 Fed. Reg. 7083, who have invested substantial time and resources in their driving career.[5] The record shows that "[a]ssuming CDLs come up for renewal at a consistent rate, approximately 8,000 non-domiciled CDLs will come up for renewal every month and … will not be renewable, leading to continuous ongoing losses (8,000 holders losing their jobs and 8,000 vacancies that employers will have to fill each month)."[6] *See also, e.g.*, Rivera Lujan Decl. ¶¶3, 8; Semenoskii Decl. ¶¶6–10; Jane Doe Decl. ¶¶6– 9; John Doe Decl. ¶¶9–15. The Rule will eliminate "approximately five percent" of the CDL workforce. 91 Fed. Reg. 7097.

---

[5] *See* Teamsters Cal. Comment, FMCSA-2025-0622-7875, at 1; AFT Comment, FMCSA-2025-0622-7134, at 2; Asylum Seekers Advocacy Project Comment, FMCSA-2025-0622-6546, at 4.

[6] 19 State Attorneys Gen. Comment, FMCSA-2025-0622-7571, at 9.

In addition, FMCSA estimates that as many as 25 percent of private or for-hire motor carriers may be impacted by the Rule. 91 Fed. Reg. 7100. Although FMCSA predicts that other drivers will pick up the slack, that prediction requires FMCSA to deny the longstanding and critical shortage of commercial vehicle drivers.[7] Even the report on which FMCSA relies specifies that "motor carriers still rank the need to find and retain qualified drivers as their number five and number six concerns."[8] With a reduced workforce, the Rule also will adversely affect safety by replacing "safer experienced drivers with less-safe new drivers," as this Court has recognized. *Rivera Lujan*, 2025 WL 3182504, at *2 (order staying the IFR).

The loss of 200,000 drivers also will harm the public by disrupting and curtailing essential public services, including public transportation,

---

[7] *See* Local Gov'ts Comment, FMCSA-2025-0622-789, at 5, 7 (citing American Trucking Ass'n report of shortage of 80,000 drivers in 2021 that "could double to 160,000 drivers in 2030").

[8] Am. Transp. Research Inst., *Critical Issues in the Industry–2025*, at 24, https://truckingresearch.org/wp-content/uploads/2025/10/ATRI-Top-Industry-Issues-2025.pdf, *cited in* 91 Fed. Reg. 7082 n.64; *see also* Am. Transp. Research Inst., *Operational Costs of Trucking* (2025), https://truckingresearch.org/wp-content/uploads/2025/07/ATRI-Operational-Costs-of-Trucking-07-2025.pdf, *cited in* 91 Fed. Reg. 7082 nn.61 & 63 (identifying a "decrease in capacity" in the trucking industry).

school bus services, highway and road maintenance and repair, utility services, disaster response, and roadway clearance during inclement weather.[9] And by shrinking the CDL workforce, the Rule will "disrupt supply chains" and lead to delayed delivery of goods and "increased rates for freight operations and higher prices."[10]

All of these harms—to drivers, their families, schools, motor carriers, and others—weigh heavily in favor of expedition.

## III. The Final Rule is subject to substantial challenge.

Petitioners have a strong challenge that the Rule is arbitrary and capricious. First, FMCSA concedes the absence of data supporting its assertion that the Rule will improve safety by reducing motor vehicle crashes. *See* 91 Fed. Reg. 7065, 7071; *see id.* 7099. "It is not consonant with the purpose of a rulemaking proceeding to promulgate rules on the basis of inadequate data[.]" *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008) (citation omitted)); *see Rivera Lujan*, 2025 WL 3182504, at \*2 (in staying the substantively identical IFR, noting

---

[9] *See* Local Gov'ts Comment 3–10.

[10] Local Gov'ts Comment 6.

that FMCSA "does not appear to have shown that the rule would produce any net safety benefit").

Second, FMCSA's primary justification for the Rule is that the drivers that it excludes from holding CDLs pose a safety risk because their foreign driving records are inaccessible. All CDL drivers, however—citizens and noncitizens alike—must satisfy the same requirements and complete the same training and testing. *See* 49 C.F.R. § 383.73(f)(2). Moreover, 21 percent of the drivers (approximately 42,000 drivers) who the Rule bars from holding CDLs are Deferred Action for Childhood Arrivals (DACA) recipients,[11] who have *exclusively* U.S. driving histories.[12] Likewise, many other drivers now excluded by the Rule have years-long U.S. driving histories.[13] *See also, e.g.*, John Doe Decl. ¶3 (10-

---

[11] *See* J.B. Hunt, *Immigration Policy and Enforcement Impact on U.S. Commercial Driver Supply* (Oct. 28, 2025), https://www.jbhunt.com/blog/enterprise/immigration-policy-impact.

[12] *See* USCIS, *Consideration of Deferred Action for Childhood Arrivals (DACA), Frequently Asked Questions*, https://www.uscis.gov/ humanitarian/consideration-of-deferred-action-  for-childhood-arrivals-daca/frequently-asked-questions, cited in 19 State Attorneys Gen. Comment 7 n.24; *see also, e.g.*, Rivera Lujan Decl. ¶2.

[13] 19 State Attorneys Gen. Comment 7; *see* Asian Law Caucus Comment, FMCSA-2025-0622-761, at 4, 10; Asylum Seekers Advocacy Project Comment 6.

year U.S. driving history); Semenovskii Decl. ¶4 (5-year U.S. driving history). FMCSA's rationale thus shows a "significant mismatch between the decision the [agency] made and the rationale [it] provided," *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019); *see World Shipping Council v. Fed. Mar. Comm'n*, 152 F.4th 215, 223 (D.C. Cir. 2025).

Third, the Rule is not justified by FMCSA's assertion that excluding DACA recipients, asylum seekers, people with temporary protected status, and others is necessary because of administrative failures at the state level. Critically, FMCSA agrees that state administrative errors are not a safety concern. *See* FMCSA Stay Resp. 19 (stating that it was "not States' licensing deficiencies per se that posed a safety concern" (cleaned up)). And its claim that state licensing clerks have made widespread errors in issuing non-domiciled CDLs reflects its retroactive imposition of an expiration-date matching requirement that did not appear in the prior regulations.[14] Although FMCSA has stated that EAD codes are too complicated for state DMV staff to understand, EADs are in fact no more complex than drivers' licenses and bear only one code, plainly identified

---

[14] *See* 49 C.F.R. § 383.71 (2021); *id.* § 383.73 (2022); *cf.* 6 C.F.R. § 37.21(b)(1) (REAL ID regulation requiring matching dates).

as such.[15] Thus, rather than a blanket prohibition on CDLs for thousands of noncitizens who currently have CDLs, improved guidance and clerk training could address FMCSA's administrative concerns. *See Spirit Airlines, Inc. v. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) ("An agency is required to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives.").

For all these reasons, Petitioners respectfully request that—if the Court does not grant the pending motion for a stay—the Court expedite this appeal. Petitioners request that the Court set the following briefing schedule:

Petitioners' initial briefs due on April 14, 2026;

Respondents' initial brief due on May 14, 2026;

Petitioners' initial reply briefs due on May 28, 2026;

Joint Appendix and final briefs due June 4, 2026.

---

[15] USCIS, *Handbook for Employers* M-274 § 5.0 (Oct. 30, 2025), https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/50-automatic-extensions-of-employment-authorization-andor-employment-authorization-documents-eads-in.

In addition, Petitioners request that the Court schedule oral argument for the earliest date that the Court's calendar permits.

## CONCLUSION

For the foregoing reasons, if this Court denies Petitioners' pending motion to stay the effective date of the Rule, the Court should order expedited briefing and oral argument.

Respectfully submitted,

/s/ *Wendy Liu*

Teague Paterson
Matthew Blumin
American Federation of
  State, County &
  Municipal Employees,
  AFL-CIO
1625 L Street NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners in*
No. 26-1032

Daniel McNeil
Channing Cooper
American Federation of Teachers,
  AFL-CIO
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

March 23, 2026

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 2,707 words, as calculated by Microsoft Word 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word 365.

/s/ *Wendy Liu*
Wendy Liu

## CERTIFICATE OF SERVICE

I hereby certify that, on March 23, 2026, the foregoing document was served through the Court's ECF system on counsel for all parties.

/s/ *Wendy Liu*
Wendy Liu