**No. 26-1032**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

JORGE RIVERA LUJAN; ALEKSEI SEMENOVSKII; AMERICAN
FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES;
AFL-CIO; and AMERICAN FEDERATION OF TEACHERS,

*Petitioners*,

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; UNITED
STATES DEPARTMENT OF TRANSPORTATION;
and THE UNITED STATES,

*Respondents.*

On Petition for Review of the United States Department of
Transportation's Federal Motor Carrier Safety Administration's Final
Rule "Restoring Integrity to the Issuance of Non-Domiciled Commercial
Drivers Licenses"

**Brief of Local Governments and Local Government Leaders as
*Amici Curiae* in Support of Petitioners**

Toby Merrill
Elaine Poon
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837

Bradley Girard
Elena Goldstein
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for* Amici Curiae

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.     Parties and *Amici*.** All parties appearing in this Court are named in the petition for review, except for *amici* in this brief and any other *amici* who have not yet entered an appearance.

**B.     Rulings Under Review.** Petitioners identified the challenged action in their petition for review.

**C.     Related Cases**. This case has not previously been before this Court, but two consolidated petitions for review, *Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Oct. 20, 2025) and *King County v. FMCSA*, No. 25-1224 (D.C. Cir. Oct. 30, 2025), challenged an earlier version of the action challenged here. On March 4, 2026, Martin Luther King, Jr. County filed a petition for review of the same action at issue in this case. *King County v. FMCSA*, No. 26-1046 (D.C. Cir. Mar. 4, 2026). On March 5, the clerk consolidated that case with this one. Order, Dkt. No. 2162288. Counsel is not aware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................................... i

Table of Authorities ....................................................................... iii

Glossary.......................................................................................... vi

Interest of *Amici Curiae* ..............................................................1

Argument ...............................................................................2

I.   The Rule will exacerbate existing CDL-driver shortages faced
     by local governments. ............................................................3

II.  The Rule harms local governments by disrupting essential
     services and diminishing road safety.......................................6

     A.   The Rule forces cuts to essential transportation services..............6

     B.   The Rule will make roads more dangerous. ..................................8

     C.   The Rule's blanket ban does not further safety. ..........................11

Conclusion ................................................................................14

Additional Counsel .................................................................

Appendix A .................................................................................

# TABLE OF AUTHORITIES

**Cases**

*Dixon v. Love*,
    431 U.S. 105 (1977) ............................................................................ 2

*FDA v. Wages & White Lion Invs., LLC*,
    604 U.S. 542 (2025) ............................................................................ 2

\**Lujan v. FMCSA*,
    No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025)........2, 11, 14

**Regulations**

8 C.F.R. § 236.22(b) .................................................................................. 13

Restoring Integrity to the Issuance of Non-Domiciled Commercial
    Drivers Licenses (CDL), 90 Fed. Reg. 46509 (Sep. 29, 2025)...... 12, 13

Restoring Integrity to the Issuance of Non-Domiciled Commercial
    Drivers Licenses (CDL), 91 Fed. Reg. 7044
    (Feb. 13, 2026) ........................................................... 1, 3, 4, 10, 12

**Other Authorities**

Alicia Neaves, *The unseen first responders: Tow crews fuel hope
    after Hill Country floods*, Kens5 (July 10, 2025),
    https://tinyurl.com/4dn5x9m8 ............................................................ 9

Ashley Cafaro, *Syracuse Department of Public Works Faces CDL
    Driver Shortage During Busy Winter*, InformNNY (Feb. 26,
    2026), https://tinyurl.com/5bmj8caj .................................................. 10

Bob Costello & Alan Karickhoff, *Truck Driver Shortage Analysis*,
    Am. Trucking Ass'ns (2019), https://perma.cc/YWQ2-75UM ............. 6

Central Puget Sound Regional Transit Authority, Comment Letter on Proposed Rule (Nov. 28, 2025), https://perma.cc/4M4D-H7AB............................................................................................ 6

Christine Brittle & Julie Van Keuren, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators*, Am. Pub. Transp. Ass'n (2024), https://perma.cc/KNY9-3U6F ........................................4, 6, 11

*Climate Strategies that Work: InterCity Buses*, U.S. Dep't of Transp. Climate Change Ctr. (2025), https://perma.cc/MY7G-ZH43 ............................................... 7

Edgar Sandoval, Sophie Kasakove & Maggie Astor, *Winter Storm Disrupts U.S. with Power Outages and Icy Roads*, N.Y. Times (updated Feb. 23, 2026), https://tinyurl.com/3fyycsez.............. 9

Fed. Highway Admin., FHWA-HOP-21-009, *Resources for Commercial Vehicles Involved in Emergency Response*, U.S. Dep't of Transp. (Jan. 2021), https://perma.cc/HA3D-HP7W.............. 9

Fed. Highway Admin., *Local Road Safety Plans*, U.S. Dep't of Transp. FHWA-SA-21-033 (Oct. 2021) https://perma.cc/GRX4-CTET ............................................... 8

FMCSA, *CMV Driving Tips – Driver Fatigue*, U.S. Dep't of Transp. (Feb. 11, 2015), https://perma.cc/QF8N-5K9B ..................... 10

FMCSA, *Crash Statistics*, U.S. Dep't of Transp. (2023), https://perma.cc/9SVZ-SPFD ........................................... 12

Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://perma.cc/R3UH-HXYJ ........................................... 5

Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*,
Bloomberg (June 28, 2018), https://perma.cc/R5QA-G3VE ................ 7

Matthew Dickens, *Policy Brief: Workforce Shortages Impacting*
*Public Transportation Recovery*, Am. Pub. Transp. Ass'n
(2022), https://perma.cc/Z42S-Y5ZZ .................................................... 6

Michelle Bandur, '*It's a Hiring Problem': Tahoe Basin Residents*
*Fear Snow Plow Driver Shortage Will Leave Them Stranded*
*at Home,* KCRA3 (Nov. 12, 2024), https://perma.cc/7HGU-
AG32 ...................................................................................................... 10

Naomi Dunn, Susan Soccolich & Jeffrey Hickman, *Commercial*
*Motor Vehicle Driver Risk Based on Age and Driving*
*Experience,* Nat'l Surface Transp. Safety Ctr. for Excellence
(Apr. 17, 2020), https://perma.cc/9Z9S-ACTU .................................... 11

National Education Association, *Comment Letter on Proposed*
*Rule on Restoring Integrity to the Issuance of Non-Domiciled*
*Commercial Drivers Licenses* (Sep. 29, 2025),
https://perma.cc/7RVA-U5UP ....................................................... 7, 8

*Transportation and Material Moving Occupation*, U.S. Bureau of
Lab. Stats., https://perma.cc/Y4XJ-385S ........................................... 5

*Trucking Wages Continue to Rise Despite Challenging Freight*
*Economy*, Am. Trucking Ass'ns (Sep. 3, 2024),
https://perma.cc/2L4N-ESW7 ............................................................ 5

# GLOSSARY

| | |
|---|---|
| CDL | Commercial Driver's License |
| FMCSA | Federal Motor Carrier Safety Administration |
| The Rule | "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)," 91 Fed. Reg. 7044 (Feb. 13, 2026) |

*Amici curiae* are local governments and officials.[2] Their jurisdictions differ in size, demographics, and policy priorities and in how they provide transportation-related services—whether directly or as funders, public authority members, or first responders. Yet all share a fundamental interest in providing effective, reliable public services and keeping their communities safe, including on the roads.

Many critical local services depend upon commercial driver's license (CDL) holders, including: public transportation; school buses; building and maintaining infrastructure (including roads); roadway clearing during inclement weather; providing gas, electricity, and other utilities; and addressing natural disasters. Local governments, like *amici*, are strained to provide those critical local services because there is already a shortage of available CDL drivers.

When the Federal Motor Carrier Safety Administration (FMCSA) promulgated the rule, "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)," 91 Fed. Reg. 7044 (Feb. 13, 2026), it

---

[1] *Amici* affirm that no counsel for a party authored this brief in whole or in part and that no person other than *amici*, their members, or their counsel made a monetary contribution intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

[2] A full list of *amici* is attached as Appendix A.

exacerbated that shortage. By prohibiting CDL issuance to certain noncitizens, the Rule shrinks the pool of drivers who can provide essential services. Approximately 5% of active CDL holders will no longer be able to work due to the Rule. *Id.* at 7096

*Amici* submit this brief in support of Petitioners because local governments face unique challenges in responding to this reduction. Without enough licensed drivers, local governments will have to cut services, not only disrupting their residents' lives but diminishing road safety, notwithstanding FMCSA's unsupported safety-benefit claims.

## ARGUMENT

As this Court previously held regarding the substantively identical interim final rule, there is an "important public interest in safety on the roads and highways." *Lujan v. FMCSA*, No. 25-1215, 2025 WL 3182504, at *2 (D.C. Cir. Nov. 13, 2025) (quoting *Dixon v. Love*, 431 U.S. 105, 114 (1977)). Like the interim rule, the Rule does not "demonstrate[] any safety benefit," and instead would harm public safety. *Id.* Absent "'a satisfactory explanation' for how the Rule would promote safety," this Rule should meet the same fate. *Id.* at *2 (quoting *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025)). The Court should grant the petitions.

## I. The Rule will exacerbate existing CDL-driver shortages faced by local governments.

Local governments depend on access to commercial drivers to do a wide variety of critical tasks. Until recently, certain noncitizens could and did obtain CDLs. FMCSA has scuttled that pathway, and the resulting shortage of drivers will magnify the harms felt by local governments across the country.

By FMCSA's own estimates, the Rule will cause 194,000 non-domiciled CDL holders (of 200,000 total) to exit the freight market. 91 Fed. Reg. at 7095-96. That is 97% of non-domiciled CDL holders and approximately 5% of *all* active CDL holders. *Id.* at 7097. FMCSA contends that not all 194,000 CDL holders will exit the market at once, because some undefined number CDLs will not expire for "up to five years." *Id.* at 7084, 7096-97. Even if that is true, that's an average loss of 40,000 drivers annually.

Without a CDL, these individuals cannot perform their jobs. So local governments relying on these drivers to provide essential services will be left understaffed. Further, because the Rule depletes the pool indefinitely, replacing those drivers and filling future vacancies become harder.

The challenge is not theoretical. Even before this Rule, local governments faced CDL-driver shortages. In public transportation, for example, a 2024 survey found that 84.6% of transit agencies faced workforce

shortages, with 71.8% reporting impacts on service.[3] Nor is this picture likely to improve. The industry has struggled to replace workers disappearing due to age or job changes.[4] The Rule exacerbates these challenges.

FMCSA waves away these concerns, claiming there is no CDL-holder shortage. It offers illusory support, relying primarily on federal data showing a 4.4% unemployment rate in the "Transportation and Utilities sector." 91 Fed. Reg. at 7098. But even FMCSA admits this data has limited relevance. *Id.* The "Transportation and Utilities sector" is both under- and over-inclusive. Underinclusive, because it is not the "sole sector in which CDL holders are employed." *Id.* And overinclusive, because the sector includes positions that do not require a CDL (*e.g.*, pilots, sailors, taxi drivers, wastewater engineers). FMCSA makes no assertion that these people would be willing or able to seek a CDL, nor does it assess the unemployment rate for current or prospective CDL holders. The 4.4% figure therefore offers no reasoned rebuttal to *amici*'s concerns.

---

[3] Christine Brittle & Julie Van Keuren, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators*, Am. Pub. Transp. Ass'n 9-10 (2024), https://perma.cc/KNY9-3U6F.

[4] *See, e.g.*, *id*. at 6.

Even if FMCSA were right that there is no driver shortage *in general,* local governments face unique challenges. They operate on fixed budgets and therefore cannot easily spend more to address the Rule's consequences.[5] They struggle to offer competitive compensation in ordinary times: Drivers in private industry earned median wages of $76,420 to $95,114 in 2023.[6] But local governments face budget shortfalls and lower salaries in the public sector. In 2024, public employees like transit-bus, snowplow, and garbage-truck drivers earned far less than other drivers—$46,620 to $57,440.[7] These constraints become more acute with fewer drivers and more competition to hire and retain them. Cash-strapped local governments will struggle to raise salaries, offer recruitment or retention incentives, or pay additional overtime.

Legal requirements further constrain local governments. For example, public employees often have substantial training requirements, making

---

[5] Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://perma.cc/R3UH-HXYJ.

[6] *Trucking Wages Continue to Rise Despite Challenging Freight Economy*, Am. Trucking Ass'ns (Sep. 3, 2024), https://perma.cc/2L4N-ESW7.

[7] *Transportation and Material Moving Occupation*, U.S. Bureau of Lab. Stats., https://perma.cc/Y4XJ-385S.

recruiting and replacing drivers costlier and more time-consuming.[8] For local transit authorities, it can cost approximately $15,000 to $30,000 to hire and train a single operator.[9] To illustrate: Washington's King County faced the loss of fifty active, non-domiciled bus drivers and four recent trainees—a lost training investment of over $800,000—due to FMCSA's rule.[10]

## II. The Rule harms local governments by disrupting essential services and diminishing road safety.

### A. The Rule forces cuts to essential transportation services.

Fewer licensed commercial drivers, now and in the future, translate directly into disrupted government services. Without enough drivers, local governments already facing driver shortages and serious fiscal constraints have had to cut services, whether by limiting hours or frequency, or suspending routes.[11] One-third of agencies report that workforce shortages have reduced service reliability.[12] And reduced service means fewer riders,

---

[8] *See* Brittle & Van Keuren, *supra* n.2, at 18-22; Bob Costello & Alan Karickhoff, *Truck Driver Shortage Analysis*, Am. Trucking Ass'ns 4 (2019), https://perma.cc/YWQ2-75UM.

[9] Central Puget Sound Regional Transit Authority, Comment Letter on Proposed Rule 3 (Nov. 28, 2025), https://perma.cc/4M4D-H7AB.

[10] King Cnty. Br. 24.

[11] *See, e.g.*, Matthew Dickens, *Policy Brief: Workforce Shortages Impacting Public Transportation Recovery*, Am. Pub. Transp. Ass'n 3, 5 (2022), https://perma.cc/Z42S-Y5ZZ (71% of 117 agencies delayed or cut services due to staffing shortages).

[12] *Id.* at 3.

which means reduced fares, which makes it even harder for local governments to maintain competitive wages to hire and retain drivers.[13]

This affects not only large, urban transit systems, but rural communities, where buses bridge service gaps by offering rural residents "connections to essential services and economic opportunities."[14] Unreliable service disrupts those who depend on transportation to get to jobs, schools, healthcare, and loved ones.

Cut, reduced, or unreliable school bus routes also could affect tens of millions of students and families.[15] Supermajorities of school leaders—80%—report that driver shortages impair school transportation operations.[16] These disruptions "intensify a crisis already affecting school attendance and student safety."[17] Approximately 50% of U.S. students, 23.5

---

[13] Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*, Bloomberg (June 28, 2018), https://perma.cc/R5QA-G3VE (significant shortages in Seattle, New Jersey, Denver, Los Angeles, Toledo, Gainesville, and New Hampshire have caused delays and service cuts).

[14] *Climate Strategies that Work: InterCity Buses,* U.S. Dep't of Transp. Climate Change Ctr. 3 (2025), https://perma.cc/MY7G-ZH43.

[15] National Education Association, Comment Letter on Proposed Rule on Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses 3 (Sep. 29, 2025), https://perma.cc/7RVA-U5UP.

[16] *Id*. at 2-3.

[17] *Id*. at 3.

million, take the school bus daily.[18] An increasing shortage of drivers will harm students, parents, and teachers and reduce access to school resources, including meals, extracurriculars, and therapy.[19] Furthermore, unreliable bus service can have academic consequences: Research shows a strong connection between diminished access to transportation and chronic absenteeism.[20]

### B. The Rule will make roads more dangerous.

Losing non-domiciled CDLs also puts the public at increased risk by curtailing safety-critical services. For example, local road maintenance is critical, because local roads "have a much higher rate of fatal and serious injury crashes" than State highways.[21] Less repair, maintenance, and improvement puts travelers at greater risk.

Similarly, local governments are crucial to preparing for and recovering from natural disasters, like the recent blizzards in the Northeast, Hurricane Helene in North Carolina, the Guadalupe River floods, or the Los Angeles wildfires. Disaster response heavily relies on timely positioning of

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Fed. Highway Admin., *Local Road Safety Plans*, U.S. Dep't of Transp. FHWA-SA-21-033 (Oct. 2021) https://perma.cc/GRX4-CTET.

equipment and workers. Key response activities—including supplying food, fuel, and water; clearing debris; ensuring road access for emergency responders; thinning forests; and protecting coastlines—involve heavy hauling and thus CDL holders. During the Guadalupe flood response, for example, local tow-truck drivers became essential for "clearing the way for emergency crews, recovering submerged vehicles and delivering life-saving supplies."[22] CDL drivers also help restore energy infrastructure after hurricanes.[23] And when serious storms knock out electricity, commercial trucks clear debris and help restore power.[24] Fewer CDL drivers will mean that local governments are slowed in their responses to these time-sensitive emergencies. Slower responses means communities not receiving critical help when they need it most.

Likewise for the more common but essential task of clearing snow and ice, which is necessary to ensure safe, reliable road access, including for emergency responders. Fewer snowplow operators prevents local

[22] Alicia Neaves, *The unseen first responders: Tow crews fuel hope after Hill Country floods*, Kens5 (July 10, 2025, at 22:23 CDT), https://tinyurl.com/4dn5x9m8.

[23] *See* Fed. Highway Admin., FHWA-HOP-21-009, *Resources for Commercial Vehicles Involved in Emergency Response*, U.S. Dep't of Transp. 1 (Jan. 2021), https://perma.cc/HA3D-HP7W.

[24] Edgar Sandoval, Sophie Kasakove & Maggie Astor, *Winter Storm Disrupts U.S. with Power Outages and Icy Roads*, N.Y. Times (updated Feb. 23, 2026), https://tinyurl.com/3fyycsez.

governments from addressing hazardous road conditions, as recent storms demonstrated.[25] This can increase crash risk and road closures, dangerously stranding people at home and putting at risk essential workers who cannot stay at home during a storm. And that is to say nothing of the costs when first responders cannot quickly and safely get to emergencies.[26] When every minute counts, less snow and ice removal capacity adds time at the cost of lives.

Further safety risks arise when depleted driver pools force active drivers to work longer or more frequently, causing driver fatigue. *See, e.g.*, Lujan Br. 35-36. Despite the Rule's attempt to skirt the issue (at 7067), FMCSA itself acknowledges that driver fatigue "may be due to . . . extended work hours," and that 13% of commercial drivers "were considered to have been fatigued at the time of their crash."[27] It is hard to see how a 5% reduction in an already-stretched-thin workforce will not result in extended hours for those CDL drivers who remain on the road.

---

[25] *E.g.*, Ashley Cafaro, *Syracuse Department of Public Works Faces CDL Driver Shortage During Busy Winter*, InformNNY (Feb. 26, 2026, at 17:30 ET), https://tinyurl.com/5bmj8caj (Syracuse's Department of Public Works lost thirty CDL drivers, complicating winter storm response).

[26] *See* Michelle Bandur, *'It's a Hiring Problem': Tahoe Basin Residents Fear Snow Plow Driver Shortage Will Leave Them Stranded at Home*, KCRA3 (Nov. 12, 2024, at 19:12 ET), https://perma.cc/7HGU-AG32.

[27] FMCSA, *CMV Driving Tips – Driver Fatigue*, U.S. Dep't of Transp. (Feb. 11, 2015), https://perma.cc/QF8N-5K9B.

Longer shifts also contribute to driver burnout, exacerbating workforce shortages and sparking a vicious cycle.[28] Losing experienced CDL drivers forces new, inexperienced drivers on the road, if local governments can find replacements at all. But newly trained drivers are involved in more safety incidents than experienced colleagues.[29] Indeed, the preventable-crash rate is significantly higher for drivers with less commercial-driving experience.[30] This Court recognized as much, observing that FMCSA's "anticipation that less-experienced drivers would replace the nondomiciled ones forced out of the market" undermined the claim that the interim rule "would produce any net safety benefit." *Lujan*, 2025 WL 3182504 at *2.

### C. The Rule's blanket ban does not further safety.

In stark contrast with these all-too-real risks, the Rule offers speculative, unjustified safety-benefit claims. At bottom, the Rule premises safety improvements on tying CDL eligibility to immigration classifications. This lacks evidence and defies logic. In its interim rule, FMCSA even admitted it lacks evidence demonstrating any "relationship between the

---

[28] *See* Brittle & Van Keuren, *supra* n.2, at 11, 18-19.

[29] Naomi Dunn, Susan Soccolich & Jeffrey Hickman, *Commercial Motor Vehicle Driver Risk Based on Age and Driving Experience*, Nat'l Surface Transp. Safety Ctr. for Excellence 37 (Apr. 17, 2020), https://perma.cc/9Z9S-ACTU.

[30] *Id.* at 21, 23, 37-38.

nation of domicile for a CDL driver and safety outcomes in the United States." Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL), 90 Fed. Reg. 46509, 46520 (Sep. 29, 2025).

FMCSA tries to sidestep its lack of causal evidence by pointing to individual instances in which non-domiciled CDL drivers were involved in fatal crashes. 91 Fed. Reg. at 7065-67.[31] This evidence has no statistical value. While non-domiciled drivers comprise about 5% of all CDL holders, the 17 crashes FMCSA identifies represent approximately 0.42% of annual fatal crashes involving CDL holders.[32] These incidents say nothing about the safety, relatively or in aggregate, of non-domiciled CDL holders. FMCSA blames its statistical shortfall on a lack of available data. 91 Fed. Reg. at 7065. But FMCSA is obligated by law to provide a reasoned basis for its action.

Unable to muster evidence tying immigration status to crash risk, FMCSA attempts to justify the eligibility restrictions based on driving

---

[31] Yet FMCSA rejects comments highlighting causes of crashes that have nothing to do with immigration status by explaining that "the underlying causes of any particular crash. . . are not relevant to FMCSA's revisions to the non-domiciled CDL issuance process." 91 Fed. Reg. at 7067.

[32] The most recent FMCSA statistics show that, in 2023, there were 4,043 fatal large truck and bus crashes involving CDL drivers. FMCSA, *Crash Statistics*, U.S. Dep't of Transp. (2023), https://perma.cc/9SVZ-SPFD. This percentage assumes that number remains consistent year-to-year as it has recently.

record accessibility, since historical performance is a "strong predictor of future driving safety outcomes." *Id.* at 7046, 7048-49, 7098-99. But the Rule excludes many drivers who *do* have verifiable driving records. For example, the Rule outright bars all asylum grantees, refugees, and DACA recipients even though many have resided in the United States for years or decades and have an established, verifiable driving history. *See id.* at 7044; 90 Fed. Reg. at 46515. That is particularly true of DACA recipients who, by definition, arrived here as children and therefore have as available a driving history as any U.S.-born individual. 8 C.F.R. § 236.22(b). Likewise, drivers who obtained non-domiciled CDLs under the prior licensing regime also have a U.S. driving history. The Rule ignores this all while maintaining eligibility for seasonal workers and foreign-treaty investors, whose driving history is predominately or entirely foreign-based and inaccessible to States.

The Rule's concern about concurrent driving records (at 7044, 7048) fares no better, not least because seasonal workers remain eligible, despite the near certainty that they too generate driving records in another county. By contrast, asylees, refugees, and DACA recipients are able, and often likely, to stay in the United States year-round.

These shortcomings reveal FMCSA's approach for what it is: immigration policy disguised as road safety. Just as with the interim rule,

13

this Rule fails to "demonstrate[] any safety benefit" and fails to protect the "important public interest in safety on the roads and highways." *Lujan*, 2025 WL 3182504 at *2 (citation omitted). In fact, it jeopardizes public safety by depleting the pool of drivers who perform safety services and forcing replacement of "safer experienced drivers with less-safe new drivers." *Id.*

## CONCLUSION

The Court should grant the petition.

Respectfully submitted,

/s/ *Bradley Girard*

Toby Merrill
Elaine Poon
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837

Bradley Girard
Elena Goldstein
Democracy Forward Foundation
P.O. Box 34556
Washington, D.C. 20043
(202) 448-9090

*Counsel for* Amici Curiae

June 22, 2026

## ADDITIONAL COUNSEL

ROBERT MAGEE
Corporation Counsel
24 Eagle Street, Room 106
Albany, NY 12207
*Attorney for the City of Albany,
    New York*

LAUREN KEEFE
City Attorney
One Civic Plaza, 4th Floor
Albuquerque, NM 87102
*Attorney for the City of
    Albuquerque, New Mexico*

FARIMAH FAIZ BROWN
City Attorney
2180 Milvia Street, 4th Floor
Berkeley, CA 94704
*Attorney for the City of Berkeley,
    California*

MEGAN B. BAYER
City Solicitor
City Hall  795
Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of
    Cambridge, Massachusetts*

KRISTYN ANDERSON
City Attorney
350 S. Fifth Street
Minneapolis, MN 55415
*Attorney for the City of
    Minneapolis, Minnesota*

JOHN P. MARKOVS
County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County,
    Maryland*

ALLIE JACOBS
Corporation Counsel
165 Church Street-4th Floor
New Haven, CT 06510
*Attorney for the City of New
    Haven, Connecticut*

STEVEN BANKS
Corporation Counsel
100 Church Street
New York, NY 10007
*Counsel for the City of New York,
    New York*

ROBERT TAYLOR
City Attorney
1221 SW Fourth Avenue,
Room 430
Portland, OR 97204
*Attorney for the City of Portland,
    Oregon*

HEATHER FERBERT
City Attorney
1200 Third Ave., Suite 1100
San Diego, CA 92101
*Counsel for the City of San Diego,
    California*

DAVID CHIU
City Attorney
City Hall Room 234 One Dr.
Carlton B. Goodlett Place
San Francisco, CA 94102
*Attorney for the City and County
of San Francisco, California*

TONY LOPRESTI
County Counsel
70 West Hedding Street East
Wing, 9th Floor
San José, CA 95110
*Counsel for the County of Santa
Clara, California*

ERIKA EVANS
City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for the City of Seattle,
Washington*

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 27(d), I certify that this brief:

(i) contains 2,772 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word 365, set in Century Schoolbook font in a size measuring 14 points or larger.

/s/ *Bradley Girard*
Bradley Girard

# CERTIFICATE OF COUNSEL

In accordance with Circuit Rule 29(d), I certify that a separate brief for *amici curiae* is warranted because counsel prepared this filing unaware of other *amici* who are raising similar issues in support of petitioners. Moreover, joinder in a single brief with other *amici* would be impracticable because local governments and their officials have interests that are distinct from individual drivers. To *amici*'s knowledge, this is the only *amicus* brief that will address the impact of this challenged action on localities.

 /s/ *Bradley Girard*
Bradley Girard

# CERTIFICATE OF SERVICE

I certify that on June 22, 2026, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

 /s/ *Bradley Girard*
Bradley Girard

# APPENDIX A - List of *Amici Curiae*

## Local Governments

City of Albany, New York

City of Albuquerque, New Mexico

City of Berkeley, California

City of Cambridge, Massachusetts

City of Minneapolis, Minnesota

Montgomery County, Maryland

City of New Haven, Connecticut

City of New York, New York

City of Portland, Oregon

City of San Diego, California

City and County of San Francisco, California

County of Santa Clara, California

City of Seattle, Washington

## Local Government Leaders

Celina Benitez
*Mayor, City of Mount Rainier, Maryland*

Jesse Brown
*Councilmember, City of Indianapolis, Indiana*

Chelsea Byers
*Mayor, City of West Hollywood, California*

Chris Canales
*Councilmember, City of El Paso, Texas*

John Clark
*Mayor, Town of Ridgway, Colorado*

Alison Coombs
*Mayor Pro Tempore and Councilmember, City of Aurora, Colorado*

Christine Corrado
*Councilmember, Township of Brighton, New York*

Nikki Fortunato Bas
*Supervisor, Alameda County, California*

Brenda Gadd
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Caroline Torosis
*Mayor Pro Tempore, City of Santa Monica, California*

Terry Vo
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Ginny Welsch
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Robin Wilt
*Councilmember, Township of Brighton, New York*