# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Jorge Rivera Lujan, et al.,

*Petitioners-Appellants,*

– v. –

Federal Motor Carrier Safety Administration, et al.,

*Respondents-Appellees.*

---

On Petition for Review of a Final Rule Issued by the Federal
Motor Carrier Safety Administration

---

## BRIEF OF *AMICI CURIAE* ASYLUM SEEKER ADVOCACY PROJECT, NATIONAL IMMIGRATION LAW CENTER, AND LABORERS' INTERNATIONAL UNION OF NORTH AMERICA IN SUPPORT OF PETITIONERS

---

Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
damianopearson@nilc.org

Elizabeth Choo
NATIONAL IMMIGRATION LAW CENTER
P.O. BOX 43573
Washington, D.C.
(213) 279-2508
choo@nilc.org

*Counsel for Amici Curiae*

Marcela X. Johnson
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0164
marcela.johnson@asaptogether.org

Bruce R. Lerner
Kara A. Naseef
BREDHOFF & KAISER, P.L.L.C.
805 15th Street, NW, Suite 1000
Washington, DC 20005
(202) 842-2600
blerner@bredhoff.com
knaseef@bredhoff.com

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae the Asylum Seeker Advocacy Project (ASAP), National Immigration Law Center (NILC), and Laborers' International Union of North America (LIUNA) certify that:

**(A)     Parties and Amici**

**Parties:** Except for amici curiae, all parties and intervenors are listed in Petitioners' opening brief.

**Amici:** Undersigned amici are the ASAP, NILC, and LIUNA.

**(B)     Ruling under Review**

On February 12, 2026, Petitioners Jorge Rivera Lujan, Aleksei Semenovskii, American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME), and American Federation of Teachers (AFT) petitioned this Court for review of a Final Rule issued by the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA), titled Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 91 Fed. Reg. 7044 ("Final Rule").

**(C)     Related Cases**

Petitioners' challenge to the FMCSA's Interim Final Rule—the precursor to the challenged Final Rule—is being held in abeyance pending disposition of the instant case. *See Rivera Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Feb. 20, 2026).

Additionally, there is one related case pending before this Court, No. 26-1046, which this Court has consolidated with this case. *See Martin Luther King, Jr. Cnty. v. Duffy et al.*, No. 26-1046 (D.C. Cir.).

Date:   June 22, 2026                     Respectfully submitted,


*/s/ Lynn Damiano Pearson*
Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
damianopearson@nilc.org


*Counsel for Amici Curiae*

# CERTIFICATE PURSUANT TO CIRCUIT RULE 29

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for amici curiae represent that counsel for all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amici curiae certify that a separate brief is necessary because, as of the date of this certification, they are aware of no other brief that addresses in depth the combined interests and experiences of workers impacted by the challenged Final Rule.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, counsel for amici curiae make the following disclosure: The Asylum Seeker Advocacy Project (ASAP), National Immigration Law Center (NILC), and Laborers' Union of North America (LIUNA) are not publicly held corporations and have no parent corporations. No publicly held corporation has 10% or more of the stock of any amicus organization.

# TABLE OF CONTENTS

**INTEREST OF AMICI CURIAE** .......................................................................1

**INTRODUCTION**............................................................................................2

**ARGUMENT** .................................................................................................4

    I.    The Final Rule undermines the reliance interests and causes severe harm to drivers, as illustrated by the experiences of seven impacted workers.....................5

    II.   The FMCSA's justification for the Final Rule is unsubstantiated. ...............10

**CONCLUSION**...............................................................................................11

# TABLE OF AUTHORITIES

## **FEDERAL CASES**

*Genuine Parts Co. v. Env't Prot. Agency*,
890 F.3d 304, 346 (D.C. Cir. 2018) .................................................................10

## **FEDERAL STATUTES**

8 U.S.C. § 1231 .................................................................................................7

## **FEDERAL RULES**

Fed. R. App. P. 29 .............................................................................................1

## **FEDERAL REGULATIONS**

49 C.F.R. § 383.110 .........................................................................................11

49 C.F.R. § 383.111 .........................................................................................11

49 C.F.R. § 383.113 .........................................................................................11

## **OTHER AUTHORITIES**

90 Fed. Reg. 46509 (Sept. 29, 2025) ................................................................5

91 Fed. Reg. 7044 (Feb. 13, 2026) ............................................................ 2, 11

Arturo Castellanos-Canales, *Addressing the U.S. Truck Driver Shortage: The Role of Foreign-Born Drivers, Visa Policy, and Supply Chain Impacts*, NATIONAL IMMIGRATION FORUM (Oct. 17, 2025), https://forumtogether.org/article/addressing-the-u-s-truck-driver-shortage-the-role-of-foreign-born-drivers-visa-policy-and-supply-chain-impacts/ .........4

*Hugh Cameron, America Have Enough Truck Drivers*, NEWSWEEK (Jul. 10 2025), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123 .................................................................................4

*Crash Statistics*, FED. MOTOR CARRIER SAFETY ADMIN. (Jun. 21, 2026), https://ai.fmcsa.dot.gov/crashstatistics?tab=Summary&type=&report_id=1 &crash_type_id=1&datasource_id=1&time_period_id=2&report_date=0&v ehicle_type=2&state=NAT&domicile=ALL&measure_id=1&operation_id= null ...................................................................................................11

**GLOSSARY**

FMCSA:     Federal Motor Carrier Safety Administration

CDL:         Commercial Driver's License

DACA:       Deferred Action for Childhood Arrivals

TPS:         Temporary Protected Status

# INTEREST OF AMICI CURIAE[1]

The **Asylum Seeker Advocacy Project (ASAP)** is a national voluntary membership organization of over 700,000 asylum seekers living in the United States. ASAP provides members with legal and community support, including time-sensitive updates about immigration policies; legal information; and opportunities to advocate for reform based on members' priorities, including access to employment authorization and drivers' licenses.

The **National Immigration Law Center (NILC)** is a non-profit organization dedicated to advancing the rights and opportunities of low-income immigrants and their families. NILC works to ensure that immigrant communities have access to justice and are protected against unlawful practices and governmental overreach. NILC has a long history of advocating for immigrants' access to drivers' licenses through litigation, policy work, and community education.

The **Laborers' International Union of North America** (LIUNA) is a union of over 530,000 workers, including immigrants, who build and serve this country every day. LIUNA represents workers nationally whose jobs require a commercial driver's license to operate large, heavy, or hazardous vehicles. LIUNA was founded

---

[1] Counsel for amici curiae certify that no party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than amici, their members, or their counsel made such a contribution. Fed. R. App. P. 29(c)(5).

in 1903 by immigrant workers who believed that every worker that labors with dignity deserves fair treatment, safe conditions, and a voice on the job. That promise still guides LIUNA today.

* * *

ASAP, NILC, and LIUNA are national organizations that have engaged with their members, clients, and community-based contacts who are facing financial devastation due to the challenged Final Rule. The impacted workers whose stories are recounted below comprise a fraction of the almost 200,000 employment-authorized immigrants whose jobs require them to have a non-domiciled commercial drivers' license.[2] Amici bring these personal accounts to this Court's attention to underscore the adverse impact the Final Rule is having and will have on their livelihoods and those of thousands of other, similarly situated drivers.

## INTRODUCTION

On February 13, 2026, the FMCSA published a Final Rule prohibiting most noncitizens from obtaining or renewing commercial drivers' licenses (CDLs). *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044, 7096 (Feb. 13, 2026) (the "Final Rule" or "Rule"). Before this Final Rule, the FMCSA had long allowed immigrants with valid work permits

---

[2] *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044, 7096 (Feb. 13, 2026) ("roughly 194,000 current non-domiciled CDL holders" will lose licenses because of the Final Rule).

to obtain CDLs, many of whom built careers and lives around the ability to drive trucks, school buses, and other commercial vehicles. Amici write to highlight stories of several immigrant workers whose hard-earned CDLs are in jeopardy due to the Final Rule, and whose careers, financial stability, and families have been upended as a result.

The impacted workers include drivers across the United States who have built businesses and careers in the trucking industry—hauling freight for major logistics companies and driving long distances to keep shelves stocked and supply chains running. Among them are asylees and asylum-seekers; recipients of Deferred Action for Childhood Arrivals (DACA), and Temporary Protected Status (TPS), many of whom have been driving in the United States for years without incident.

They all share the same pride in their work and a deep concern about the devastating impact of the Final Rule. Some have already lost their CDLs, leaving them without work even as their financial obligations continue, including loan payments on the trucks they own. Others fear they will soon be jobless when their licenses are revoked. For those who have spent years building accomplished careers in the industry—forging relationships with brokers, maintaining excellent road records, and progressing through the ranks—this Final Rule abruptly halts their careers. Their accounts stand in sharp contrast to the FMCSA's unfounded suggestion that noncitizen drivers pose a risk to public safety. Collectively, these

testimonials show that the Final Rule threatens not only the livelihoods of these workers and their families, but also the stability of an industry critical to the national economy. Accordingly, this Court should vacate the Final Rule.

## **ARGUMENT**

Amici write to assist the Court in evaluating Petitioners' argument that the Final Rule is arbitrary and capricious and thus violates the Administrative Procedure Act. As illustrated through the accounts of the below impacted drivers, many noncitizen commercial drivers whole relied on and obtained CDLs under the FMSCA's previous regime, will experience acute harm. The Final Rule not only harms these drivers' reliance interests, but also the interests of their families, employees, and communities, as well as the trucking operators, logistics companies, and large food and retail corporations who rely on these drivers and who face the significant harm of losing a substantial portion of their workforce.[3] The Final Rule undermines these interests and inflicts harm on thousands of immigrants who lawfully obtained CDLs, without adequate justification.

---

[3] *See* Hugh Cameron, *America Doesn't Have Enough Truck Drivers*, NEWSWEEK (Jul. 10 2025), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123; Arturo Castellanos-Canales, *Addressing the U.S. Truck Driver Shortage: The Role of Foreign-Born Drivers, Visa Policy, and Supply Chain Impacts*, NATIONAL IMMIGRATION FORUM (Oct. 17, 2025), https://forumtogether.org/article/addressing-the-u-s-truck-driver-shortage-the-role-of-foreign-born-drivers-visa-policy-and-supply-chain-impacts/.

**I. The Final Rule undermines the reliance interests and causes severe harm to drivers, as illustrated by the experiences of seven impacted workers.**

In the weeks after the FMCSA issued an Interim Final Rule ("IFR") first announcing that it was barring almost all noncitizens from obtaining or renewing non-domiciled CDLs, dozens of impacted drivers contacted amici to share their stories, detailing how the IFR has harmed or will harm them. *See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 90 Fed. Reg. 46509 (Sept. 29, 2025). After the FMCSA published the Final Rule, amici spoke with many of these same drivers again and are still in contact with them. These drivers continue to experience uncertainty around their CDLs; amici spoke with many of these workers to understand their situation and help them find relevant services. The stories of seven workers are as follows:[4]

**Jose U.** has lived in the U.S. since age two and has been a DACA recipient since 2013. A longtime UPS employee and proud Teamsters member, Jose began working in the warehouse when he was just 20 years old and was later promoted to door-to-door delivery, before training as a big-rig driver. With his CDL, Jose was able to advance his career, increase his earning potential, and build a stable life for

---

[4] Amici spoke with these drivers during the week of October 20, 2025 (following FMCSA's issuance of the IFR), during the week of February 23, 2026 (after the FMCSA issued the Final Rule), and/or in June 2026. Several workers are using pseudonyms to protect their identities.

his family. He and his wife purchased their first home three years ago and recently welcomed their first child. Jose has also been working toward his long-term goal of becoming a power lineman, a skilled trade that requires a CDL. He has spent years building the experience and qualifications necessary to pursue that career path and provide an even better future for his family.

If the Rule stands, Jose's ability to maintain his CDL and continue advancing in CDL-dependent careers will be placed in serious jeopardy. At UPS, he is already being forced out of his current commercial driving position and back into warehouse work that carries substantially lower pay and fewer opportunities for advancement.

With a mortgage and the financial responsibilities that come with supporting a young family, Jose worries about the uncertainty this would create for his future. After years of building a career around his CDL, he is now exploring the possibility of returning to school and changing careers. However, the prospect of having to start over in a new field, leaving behind the career he has spent years building, and accepting a reduction in income during the transition makes him concerned and will be burdensome for his family. After years of hard work to achieve stability and provide for his loved ones, Jose now faces the possibility of seeing both his current career and future opportunities significantly limited through no fault of his own.

**Muhammad J.**, an ASAP member originally from Pakistan, has been in the U.S. for 26 years. He has a pending asylum application and U-Visa petition. In 2013,

he sold a gas station he owned for many years, obtained his CDL, leased a semi-truck, and began hauling auto parts and later frozen foods across Michigan. He now transports beef products across the country for Walmart, Costco, and US Foods. After driving more than a million miles, he's onto his third truck—a $170,000 Freightliner costing about $3,400 in lease payments a month—and has never had an accident or any major violation while driving his truck. Without driving, he will likely go bankrupt from his truck and mortgage debts, powerless to support his children through college or his wife through ongoing medical issues.

**David M.** has made a trucking career over the last 15 years, hauling freight for companies like Lowes, Walmart, and Target nationwide. An ASAP member originally from Kenya, David came to the U.S. at the age 13 and was granted withholding of removal in 2005.[5] He recently reached the "one million safe miles" milestone after driving the required million miles without incident, a major professional achievement. The Rule threatens David's plans to work as a truck driver until retirement. Without this income, David will be unable to pay his bills or support his elderly parents and medically fragile brother.

**Martin H.**, a DACA recipient originally from El Salvador, came to the United States when he was eight and has spent more than 15 years building his life here. He

---

[5] Withholding of removal is a form of immigration relief that protects an individual from being removed to a country where they would more likely than not face persecution. 8 U.S.C. § 1231(b)(3)(A).

earned his driver's license at 18 and soon put himself through school for his CDL, which he obtained about eight years ago. Shortly after, he bought his first truck and launched his own dump-trucking business. Over the past five years he has invested in that business and grown it into a fleet of five trucks and four employees—three of them lawful permanent residents—servicing construction operations across the Northeast.

Earlier this month, when Martin went to update his medical card with the Department of Transportation, he learned that the Final Rule barred him from renewing his CDL. The news was devastating. Without a valid CDL he cannot drive his truck, cannot fulfill his contracts, and cannot sustain the business he spent eight years building. The consequences are far reaching: Martin is raising two young U.S.-citizen children, one of whom has Down syndrome and requires ongoing medical care, and a stalled business puts his family's financial security at risk. After years of hard work to build a business and provide for his family, Martin only wants the opportunity to keep driving, growing his company, and supporting the people who depend on him.

**Samaria P.** is a TPS holder and U-visa applicant from El Salvador who has been living in the U.S. for over 25 years, since she was eight. Until a few years ago, she worked as a custodian. In 2021, hoping to better the futures of her three U.S. citizen children, Samaria decided to take a course and obtain her CDL. With that

license, she now owns and operates a dump truck business alongside her partner and one employee. She has a clean driving record, without accidents or citations.

Samaria now cannot renew her CDL once it expires due to the Rule. She invested time and resources into obtaining a CDL and starting a business that enables her to take care of her family, and just wants to continue operating her business and providing for her children.

**Ali** is an ASAP member and asylee from Turkey who has lived in the U.S. lawfully for almost 15 years. A truck driver since 2019, he now owns a company with eight trucks and a team of seven drivers, a dispatch operator, and a safety staff person—hauling loads for Amazon nationwide. Ali first came to the U.S. on an E-2 visa, status eligible for a CDL under the Rule, but as an asylee, he now faces losing it. His income supports his family and allows him to save for his teenage daughter's university tuition. For Ali, the stress of losing his business is unbearable, especially since he has a clean driving record and always maintains the highest safety standards.

**Jesus** has been a member of LIUNA for 14 years. He is originally from Mexico and has lived in the United States for 28 years. Jesus has had his CDL for 14 years and most recently his work has involved driving semi-trucks and dump-trucks, work that requires a CDL.

A few months ago, when Jesus applied to renew his CDL, his local Department of Motor Vehicles office refused to release it to him because of the then-

published Interim Final Rule and the now-effective Final Rule. Left without his hard-earned CDL, Jesus can now drive only regular, non-commercial vehicles, and he was reassigned to a smaller crew. The smaller crew does not have as many opportunities to work overtime hours on larger and more lucrative assignments from the employer. Because Jesus regularly worked overtime hours, the reduction in available overtime opportunities has impacted Jesus's ability to support his family.

\* \* \*

Almost 200,000 other workers face similar harms. If the Final Rule remains in place, they will be forced to sell their trucks, give up their professional achievements and goals, and may lose their livelihoods altogether.

## II.    The FMCSA's justification for the Final Rule is unsubstantiated.

The Final Rule is arbitrary and capricious because the government has failed to effectively articulate any harm or substantiate its claimed interests in public safety that would warrant reversing its longstanding policy of allowing most immigrants with valid work authorization to obtain CDLs. *See Genuine Parts Co. v. Env't Prot. Agency*, 890 F.3d 304, 346 (D.C. Cir. 2018) ("An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence." (internal quotation marks omitted)). Although 3,831 fatal crashes

involving commercial drivers of large trucks occurred in 2025,[6] FMCSA bases the Final Rule on a handful of accidents where noncitizens were behind the wheel. *See* 91 Fed. Reg. 7044, 7065. FMCSA's reliance on cherry-picked anecdotes rather than persuasive data ignores the rigorous safety requirements already in place for CDL-holders, such as the mandatory skills and knowledge test and the disqualification of drivers with serious traffic violations, all of which provide protection to the drivers and to the public. *See* 49 C.F.R. §§ 383.110, 383.111, 383.113. Further, these isolated incidents do not justify disrupting the lives of drivers and employers who relied on the FMCSA's longstanding policy that allowed work-authorized immigrants to obtain and renew their CDLs.

**CONCLUSION**

For the foregoing reasons, this Court should vacate the Final Rule.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Lynn Damiano Pearson*
Lynn Damiano Pearson
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900

---

[6] *Crash Statistics*, FED. MOTOR CARRIER SAFETY ADMIN. (June 21, 2026), https://ai.fmcsa.dot.gov/crashstatistics?tab=Summary&type=&report_id=1&crash_type_id=4&datasource_id=1&time_period_id=2&report_date=0&vehicle_type=2&state=NAT&domicile=ALL&measure_id=1&operation_id=null.

damianopearson@nilc.org

Elizabeth Choo\*
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, DC 20043
(213) 279-2508
choo@nilc.org

Marcela X. Johnson
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0164
marcela.johnson@asaptogether.org

*Counsel for Amici Curiae*

Bruce R. Lerner
Kara A. Naseef
BREDHOFF & KAISER, P.L.L.C.
805 15th Street, NW, Suite 1000
Washington, DC 20005
(202) 842-2600
blerner@bredhoff.com
knaseef@bredhoff.com

*Attorneys for Amicus Curiae LIUNA*

\*Application for admission
forthcoming

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d) because it contains 2,545, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 22, 2026

*/s/ Lynn Damiano Pearson*
Lynn Damiano Pearson

*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically filed the foregoing *amicus curiae* brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 22, 2026

*/s/ Lynn Damiano Pearson*
Lynn Damiano Pearson

*Counsel for Amici Curiae*
