ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 15, 2026

Nos. 26-1032, 26-1046

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JORGE RIVERA LUJAN, ALEKSEI SEMENOVSKII, AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO, and AMERICAN FEDERATION OF TEACHERS,

*Petitioners,*

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, and UNITED STATES,

*Respondents.*

*(caption continued on inside cover)*

On Petitions for Review of a Final Rule Issued by the Federal Motor Carrier Safety Administration

# JOINT APPENDIX
# VOLUME III

Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for Petitioners in No. 26-1032*

August 5, 2026

Teague Paterson
Matthew Blumin
American Federation of
State, County & Municipal
Employees, AFL-CIO
1625 L Street, NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Daniel McNeil
Channing Cooper
American Federation of Teachers
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

---

MARTIN LUTHER KING, JR. COUNTY,
*Petitioner,*

v.

SEAN DUFFY IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF TRANSPORTATION; THE U.S. DEPARTMENT OF TRANSPORTATION; THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; THE UNITED STATES,
*Respondents.*

---

# INDEX


| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| I | | Final Rule, Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL), 91 Fed. Reg. 7044 (effective Mar. 16, 2026) | JA0001 |
| I | | Interim Final Rule, Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL), 90 Fed. Reg. 46509 (effective Sept. 29, 2025) | JA0061 |
| II | FMCSA-2025-0622-1652 | Comment from Aleksei Semenovskii | JA0079 |
| II | FMCSA-2025-0622-0463 | U.S. DOT/FMCSA - Letter to California - 2025 Annual Program Review Finding | JA0092 |
| II | FMCSA-2025-0622-3254 | Comment from Carmelo Otero | JA0108 |
| II | FMCSA-2025-0622-3293 | Comment from Juan Gutierrez Ponce | JA0110 |
| II | FMCSA-2025-0622-4009 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Washington | JA0112 |
| II | FMCSA-2025-0622-4010 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Texas | JA0122 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| II | FMCSA-2025-0622-4011 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - South Dakota | JA0142 |
| II | FMCSA-2025-0622-4012 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Colorado | JA0151 |
| II | FMCSA-2025-0622-4513 | Comment from Gursharanjit Sohal | JA0162 |
| II | FMCSA-2025-0622-5935 | Comment from Raman Singh | JA0164 |
| II | FMCSA-2025-0622-6487 | Comment from Anonymous | JA0166 |
| II | FMCSA-2025-0622-6546 | Comment from Asylum Seeker Advocacy Project | JA0168 |
| II | FMCSA-2025-0622-7134 | Comment from AFT | JA0176 |
| II | FMCSA-2025-0622-7208 | Comment from Rafael Tavarez | JA0180 |
| II | FMCSA-2025-0622-7223 | Comment from Unitarian Universalists for Social Justice | JA0182 |
| II | FMCSA-2025-0622-7240 | Comment from The American Association of Motor Vehicle Administrators (AAMVA) | JA0183 |
| II | FMCSA-2025-0622-7246 | Comment from Josh Kloepper, attaching FMCSA, Large Truck Crash Causation Study – Analysis Brief (July 2007) | JA0194 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| II | FMCSA-2025-0622-7248 | Comment from Justice at Work PA | JA0200 |
| II | FMCSA-2025-0622-7259 | Comment from United Steelworkers (USW) | JA0202 |
| II | FMCSA-2025-0622-7264 | Comment from Colorado Fiscal Institute | JA0205 |
| II | FMCSA-2025-0622-7276 | Comment from AFSCME | JA0208 |
| II | FMCSA-2025-0622-7289 | Comment from Asian American Legal Defense and Education Fund | JA0212 |
| II | FMCSA-2025-0622-7475 | Comment from Maine Secretary of State Department | JA0217 |
| II | FMCSA-2025-0622-7515 | Comment from U.S. Committee for Refugees and Immigrants, Church World Service, IRC, Orel Alliance, RCUSA, World Relief | JA0222 |
| II | FMCSA-2025-0622-7540 | Comment from New York State Office of Temporary and Disability Assistance | JA0230 |
| II | FMCSA-2025-0622-7550 | Comment from Oregon Department of Transportation - Driver and Motor Vehicle Services Division | JA0233 |
| II | FMCSA-2025-0622-7554 | Comment from Maine Equal Justice | JA0236 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| II | FMCSA-2025-0622-7563 | Comment from MALDEF (Mexican American Legal Defense and Educational Fund) | JA0243 |
| II | FMCSA-2025-0622-7571 | Comment from Massachusetts, California, and 17 Other Jurisdictions | JA0249 |
| II | FMCSA-2025-0622-7616 | Comment from Asian Law Caucus | JA0266 |
| II | FMCSA-2025-0622-7875 | Comment from Teamsters California | JA0277 |
| II | FMCSA-2025-0622-7885 | FMCSA SDLA Comment Solicitation Letter, Nov 18, 2025 | JA0286 |
| II | FMCSA-2025-0622-7894 | Comment from Public Rights Project on behalf of Local Governments | JA0287 |
| II | FMCSA-2025-0622-7906 | Comment from Washington Trucking Associations | JA0301 |
| II | FMCSA-2025-0622-7911 | Comment from Martin Luther King County, by and through its Metro Transit Department | JA0308 |
| III | FMCSA-2025-0622-7914 | Comment from Maryland Department of Transportation (MDOT) Motor Vehicle Administration (MVA) | JA0325 |
| III | FMCSA-2025-0622-7929 | Comment from California Bus Association | JA0328 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| III | FMCSA-2025-0622-7930 | Comment from Central Puget Sound Regional Transit Authority | JA0331 |
| III | FMCSA-2025-0622-8019 | Comment from Amalgamated Transit Union | JA0337 |
| III | FMCSA-2025-0622-8020 | Comment from Delaware Division of Motor Vehicles | JA0339 |
| III | FMCSA-2025-0622-8053 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Indiana | JA0342 |
| III | FMCSA-2025-0622-8054 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Maine | JA0353 |
| III | FMCSA-2025-0622-8055 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Iowa | JA0361 |
| III | FMCSA-2025-0622-8056 | U.S. DOT/FMCSA - Conditional Determination - California | JA0371 |
| III | FMCSA-2025-0622-8057 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Delaware | JA0383 |
| III | FMCSA-2025-0622-8058 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Vermont | JA0392 |
| III | FMCSA-2025-0622-8059 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - District of Columbia | JA0402 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| III | FMCSA-2025-0622-8060 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Ohio | JA0411 |
| III | FMCSA-2025-0622-8061 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - North Dakota | JA0421 |
| III | FMCSA-2025-0622-8062 | U.S. DOT/FMCSA - Final Determination of Substantial Noncompliance - California | JA0428 |
| III | FMCSA-2025-0622-8063 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Minnesota | JA0438 |
| III | FMCSA-2025-0622-8064 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Michigan | JA0450 |
| III | FMCSA-2025-0622-8065 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Rhode Island | JA0458 |
| III | FMCSA-2025-0622-8066 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - New York | JA0465 |
| III | FMCSA-2025-0622-8067 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Oklahoma | JA0485 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| III | FMCSA-2025-0622-8068 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Pennsylvania | JA0493 |
| III | FMCSA-2025-0622-8092 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Maryland | JA0502 |
| III | FMCSA-2025-0622-8093 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - New Jersey | JA0510 |
| III | FMCSA-2025-0622-8094 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - North Carolina | JA0517 |
| III | FMCSA-2025-0622-8095 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Oregon | JA0530 |
| III | FMCSA-2025-0622-8096 | U.S. DOT/FMCSA - Preliminary Determination of Noncompliance - Utah | JA0539 |
| III | FMCSA-2025-0622-8110 | U.S. DOT/FMCSA - List of States FMCSA Determined Were in Substantial Noncompliance | JA0551 |
| IV | FMCSA-2025-0622-9322 | U.S. DOT/FMCSA - Driver Issues: Commercial Motor Vehicle Safety Literature Review, June 2007 | JA0556 |

| Vol. | Docket No. | Title | Page |
|---|---|---|---|
| IV | FMCSA-2025-0622-9329 | U.S. DOT/FMCSA - May a foreign driver with an employment authorization document obtain a CDL to operate a CMV in the United States, March 8, 2019 | JA0775 |
| IV | FMCSA-2025-0622-9339 | U.S. DOT/FMCSA - May a State Driver's Licensing Agency (SDLA) issue a non-domiciled CLP or CDL to an individual who is present in the United States under the Deferred Action for Childhood Arrivals (DACA) immigration policy as a citizen of Mexico, May 8, 2023 | JA0778 |
| V | FMCSA-2025-0622-9349 | U.S. DOT/FMCSA - Commercial Driver Safety Risk Factors, June 2020 | JA0781 |
| VI | FMCSA-2025-0622-9362 | ATRI - Predicting Truck Crash Involvement: 2022 Update, October 2022 | JA1012 |
| VI | FMCSA-2025-0622-9364 | ATRI - Critical Issues in the Trucking Industry - 2025, October 2025 | JA1075 |
| VI | FMCSA-2025-0622-9368 | U.S. DOT/OIG - Management Advisory to the Deputy Secretary of Transportation: Need to Establish a Legal Presence | JA1105 |

MARYLAND DEPARTMENT OF TRANSPORTATION
MOTOR VEHICLE ADMINISTRATION

Wes Moore
Governor
Aruna Miller
Lieutenant Governor
Samantha J. Biddle
Acting Secretary
Christine Nizer
Administrator

November 28, 2025

The Honorable Derek Barrs
Federal Motor Carrier Safety Administration
1200 New Jersey Ave., SE
Washington, DC 20590

RE: Interim Final Rule: Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver's Licenses, Docket No. FMCSA-2025-0622

Dear Administrator Barrs:

Thank you for the opportunity to comment on the Interim Final Rule: Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver's Licenses (CDL) Docket No. FMCSA-2025-0622 (IFR). The Maryland Motor Vehicle Administration (MVA) appreciates the opportunity to submit comments to the proposed regulation and would welcome further dialogue before any final action.

The MVA supports the comments and questions that have been provided by the American Association of Motor Vehicle Administrators (AAMVA) as well as the comments submitted on the behalf of the Attorney Generals in California, Maryland and several other states. We would like to highlight a few additional issues.

The MVA has a longstanding and successful partnership with the Federal Motor Carrier Safety Administration (FMCSA) over the years in administering the CDL program to promote safety on the roadways. The highest priority for the Maryland Department of Transportation and MVA is safety on the roadways, a goal which FMCSA shares. The MVA has successfully issued thousands of non-domiciled CDLs and Commercial Learner's Permits (CLP) to customers who are lawfully present in the United States and otherwise qualified to operate a commercial motor vehicle.

Currently, Maryland has approximately 2,200 non-domiciled CDL holders who are operating within the bounds of current federal and state law. These customers are gainfully employed and contributing to Maryland's economy. Nationally, there is a shortage of CDL drivers and

Maryland has experienced similar issues including challenges recruiting bus drivers, transit operators and impacts to the movement of goods and services. In response, the MVA has worked to streamline the CDL processes, increased testing capacity, promoted commercial driving as a career, and undertaken other efforts with the goal of increasing the number of eligible CDL drivers.

In fact, Maryland has enjoyed a partnership with FMCSA to increase the number of CDL drivers. Over the last several grant cycles, FMCSA awarded MVA Commercial Driver's License Program Implementation (CDLPI) grant funding over several years to create an online practice test, increase the number of MVA CDL examiners, promote CDL driving as a career and improve the physical test courses to be able to increase testing capacity.

Preliminary MVA analysis shows that among the 2,200 Maryland non-domiciled CDL drivers, only a handful would potentially qualify under the proposed IFR. The State of Maryland only has about 120,000 CDL holders at any given time, so this represents a loss of about 2% of the total CDL population. This will exacerbate the problems that Maryland and other states have experienced with regard to driver shortages. Several state and local government agencies have already expressed concerns to the MVA about the potential loss of drivers and the direct impact to their employees.

FMCSA has suggested that these drivers are somehow less safe than other CDL drivers. The MVA would like to better understand the rationale for this assertion. The MVA is interested in understanding what information FMCSA has reviewed and analyzed to determine this population of drivers presents an increased safety risk. The MVA is not aware of any data which indicates that non-domiciled drivers are less safe than other CDL drivers, given that the testing, and now, training processes are identical. If there is research indicating an increased risk on the roads with this population, MVA is interested to work together on potential solutions as we work to eliminate fatalities and serious injuries on our roadways.

Additionally, the IFR suggests that this rule had to be issued as an emergency to avoid a surge in CDL applicants as the normal rulemaking worked its way to becoming effective. The MVA does not share this as a concern. The MVA is able to handle any volume increase with its existing resources as it did when the Entry Level Driver Training (ELDT) rule became effective. However, a surge in applicants seems less likely to occur precisely as a result of these new ELDT requirements. Schools only have so much capacity to be able to train, and the training process itself takes time, which will limit any surge in applicants. The abrupt change in the rules with the IFR, created significant impact, not only for those who already held a CDL, but also those candidates who made a significant investment to go through ELDT. The MVA would urge FMCSA to undertake the normal rulemaking process in proposing any changes to the issuance of non-domiciled CDLs as we would expect of any change to the CDL issuance process.

Thank you for the opportunity to comment on this IFR. The MVA looks forward to a continued partnership with FMCSA to promote our shared highway safety objectives. The MVA would

welcome a dialogue with FMCSA among the states to examine and discuss this issue with our federal partners to better understand the objectives and achieve a collaborative solution.

Sincerely,

Christine Nizer
MVA Administrator

*California Bus Association*

***Promoting Professionalism, Safety & Integrity in the Motorcoach Industry***

Jesse Elison
Chief Counsel
Federal Motor Carrier Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590-0001
Submitted via regulations.gov

November 28, 2025

**Docket No. FMCSA-2025-0622**
**Subject: Public Comment Opposing FMCSA Interim Final Rule on Non-Domiciled CDL Holders**

To Whom It May Concern:

On behalf of the California Bus Association (CBA) and our member companies, I am writing to strongly oppose the proposed FMCSA rule that would prevent non-domiciled CDL holders from retaining their commercial driver's licenses. This policy is unnecessary, harmful to the passenger transportation industry, and unrelated to the actual factors that determine highway safety.

Commercial drivers—regardless of citizenship or immigration status—must meet the same federally mandated standards to obtain and maintain a CDL. They undergo rigorous training, background checks, knowledge testing, and skills testing before ever operating a commercial motor vehicle. These requirements ensure that every CDL holder demonstrates the competence, safety awareness, and professionalism needed to perform their job safely.

**Safety is achieved through training, testing, and compliance—not citizenship.**

The proposed rule shifts focus away from these proven safety measures and instead uses immigration status as a barrier to employment. This does nothing to improve road safety and instead risks removing qualified, experienced drivers from the workforce at a time when the passenger transportation industry already faces significant staffing challenges.

**Bus & Motorcoach Industry Workforce Crisis**

- The private motorcoach sector faces a 21.4% shortfall in driver availability, leaving thousands of buses idle and trips canceled due to lack of qualified drivers.
- Public transit agencies report 71% have cut or delayed service because of operator shortages, impacting essential mobility for students, seniors, and commuters.
- The workforce is aging: the median age of bus operators is over 53, meaning retirements will accelerate shortages in the coming years.

**Economic Impact of the Bus & Motorcoach Industry**

- The U.S. motorcoach industry generated $158 billion in total economic impact in 2024, supporting 885,000 jobs nationwide across transportation, tourism, and hospitality sectors.
- Group travel alone contributed $39.8 billion in direct spending, fueling local economies and sustaining more than 500,000 jobs in food service, lodging, and retail.
- California ranks among the top states for motorcoach economic activity, with $11.9 billion in impact, making workforce stability critical for regional tourism and commerce.

Removing nearly 200,000 non-domiciled CDL holders, as FMCSA estimates, would worsen these shortages, leading to:

- Canceled trips for schools, sports teams, and tour groups.
- Higher costs for charter and scheduled service, reducing affordability for consumers.
- Ripple effects on tourism, hospitality, and local economies.

**Why This Rule Fails**

Many non-domiciled CDL holders have built long, stable careers driving commercial vehicles in full compliance with federal and state regulations. Their safe performance records speak for themselves. Revoking or restricting their ability to work ignores these documented histories of safe operation and unfairly targets individuals who are already meeting every safety standard FMCSA requires.

This policy would cause significant operational hardships for motor carriers, disrupt service, and reduce the availability of skilled professional drivers—all without producing any measurable safety benefit.

---

**Our Request**

The California Bus Association urges FMCSA to:

- Withdraw this proposal and maintain a system that evaluates drivers based on competence, performance, and safety compliance—not citizenship status.
- Engage with industry stakeholders to address legitimate safety concerns without exacerbating the driver shortage crisis.

Roadway safety depends on maintaining high training and testing standards, and the current CDL framework already accomplishes this effectively.

Thank you for your consideration.

Sincerely,

Michael Giddens
President
California Bus Association

SOUNDTRANSIT

November 28, 2025

Federal Motor Carrier Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Washington, DC 20590

*SUMBITTED VIA REGULATIONS.GOV*

RE: Docket No. FMCSA-2025-0622

Dear Docket Clerk:

The Central Puget Sound Regional Transit Authority (Sound Transit) offers the comments below regarding the Federal Motor Carrier Safety Administration's (FMCSA) Interim Final Rule (IFR), "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)", published in the Federal Register at 90 FR 46509 and codified at 49 CFR Parts 383 and 384 on September 29, 2025. This IFR amends regulations for State Driver's Licensing Agencies to prohibit them from issuing non-domiciled CDLs and commercial learner's permits to asylum seekers, asylees, refugees, Deferred Action for Childhood Arrivals (DACA) recipients and other legally present non-citizens—even when they are eligible to work in the United States. Sound Transit opposes the IFR as it causes unnecessary disruption to bus operators and maintainers required to have CDLs for their work, and to entities like Sound Transit that manage bus services. This, in turn, causes disruption to the public we serve. Sound Transit respectfully requests FMCSA withdraw the IFR and restore the rule as it existed prior to the IFR.

Sound Transit appreciates the opportunity to provide feedback on the IFR and submits the following comments for FMCSA's consideration:

## I. Background on Sound Transit and its Bus Service

Sound Transit is a Regional Transit Authority charged with building and operating high-capacity transit in the Central Puget Sound Region. Sound Transit operates Link light rail, Sounder commuter rail, Tacoma light rail, ST Express regional express bus, and soon, Stride bus rapid transit (BRT). Sound Transit provides services in Pierce, King, and Snohomish Counties, which includes 53 cities spanning from DuPont in the south, to Issaquah and Sammamish in the east, to Everett in the north. As of 2024, the Sound Transit District has a population of 3,385,200. This

region is projected to grow by about one million people by 2040. In 2016, voters approved Sound Transit 3 (ST3), which will expand Sound Transit's services to the region's residents even further to meet the region's growing population and transportation demands.

As part of its services, Sound Transit manages ST Express, which provides regional bus services throughout the Sound Transit District using the region's highways. Sound Transit contracts with Community Transit in Snohomish County, King County Metro, and Pierce Transit (ST Partner Agencies) to maintain and operate the buses throughout the region connecting Everett, Seattle, Bellevue, and Tacoma.[1] Through ST3, Sound Transit will add Stride BRT services, further connecting Puget Sound communities, reducing traffic, and shortening commute times.

## II. The IFR's Disruption to Service and Operators

Due to our existing ST Express and upcoming Stride programs, Sound Transit relies on the availability of CDLs to qualifying drivers to operate the bus services our customers rely on. Under the IFR, the only individuals eligible for a non-domiciled CDL or CLP are those with H-2A, H-2B, or E-2 visas, thereby excluding asylum seekers, asylees, refugees, and DACA recipients.[2] FMCSA estimates the IFR will cause 194,000 or 97% of noncitizens who have a CDL to "exit the freight market."[3] Approximately 4,200 drivers hold Washington State-issued non-domiciled CDLs, and because of this IFR, only about 26 will be eligible to renew their licenses—roughly 0.6%.[4] This labor reduction will potentially reduce bus service levels Sound Transit can provide. Additionally, losing their CDL licenses will cause substantial distress among workers who depend on their licenses to do their jobs. Affected workers will not simply experience "de minimis costs" as the FMCSA claims.[5] And the IFR further spreads fear not only among non-domiciled CDL holders who depend on their jobs to support themselves and their families, but also among foreign-born people generally who continue facing uncertainty about their futures and whose population is approximately 20-25% of the Central Puget Sound Region.

In 2024, ST Express had over 9 million boardings with a daily average of about 30,000 boardings.[6] Because of labor shortages resulting in a lack of applicants to drive the buses, the ST Partner Agencies depend on noncitizens with CDLs within their labor pools to operate and maintain its service levels. In fact, Sound Transit was operating significantly less bus service than planned because the ST Partner Agencies had extended operator shortages. Due to these shortages beginning in 2020 and continuing through this year, Sound Transit had to make emergency cuts to its annual bus service match with operator capacity. Sound Transit's available funding would support an even higher level of bus service, but the ST Partner Agencies still do not have sufficient operations and maintenance staff to support our funded service levels. If the

---

[1] Sound Transit, *Current Sound Transit service map,* (2025), https://www.soundtransit.org/get-to-know-us/maps.
[2] 90 Fed. Reg. at 46515.
[3] *Id.* at 46509, 46518–19.
[4] Declaration of David Eldred at 14 ¶ 27, *Lujan v. FMCSA*, 25-1215, 2025 U.S. App. LEXIS 29835 (D.C. Cir. Nov. 13, 2025), Dkt. No. 2142094.
[5] 90 Fed. Reg. 46520.
[6] Sound Transit, *Ridership,* (2025), https://www.soundtransit.org/ride-with-us/system-performance-tracker/ridership.

IFR is not withdrawn, Sound Transit will likely face another shortage of licensed bus drivers, and the ST Partner Agencies will likely face a loss of resources invested in training bus drivers.

As part of ST3, Sound Transit will soon add new lines of bus service, Stride BRT, which will connect suburban areas surrounding Seattle[7]—significantly connecting passengers throughout the Central Puget Sound Region while also reducing travel times[8]. The service design for Stride requires frequent and predictable headways in order to meet passenger demand and provide the benefits of operating the service as high-capacity transit. Maintaining and recruiting a stable operator workforce is essential to delivering the planned high-capacity bus service.

While Sound Transit's bus services are expanding, so too are retirements and employee turnover—made more acute since the COVID-19 pandemic—making it increasingly necessary for the ST Partner Agencies to continuously hire and train drivers to ensure we provide the transit services the public depends on. ST Partner Agencies must hire noncitizen operators to maintain the labor pool needed to operate the many routes in the Sound Transit District. It costs ST Partner Agencies approximately $15,000-$30,000 to hire and train a single operator. If ST Partner Agencies are no longer able to hire operators with immigration statuses disqualified by the IFR, the Agencies will need to spend more tax dollars to train new operators as well as increase recruitment efforts. This is a poor use of public funds when the ST Partner Agencies already have operators more than capable of operating ST Express buses.

A loss of operators risks ST Partner Agencies not being able to run all the routes or provide the needed bus frequency. This results in both a decrease in service that customers rely on and an increase in uncertainty for ST Partner Agencies who must navigate a more limited hiring pool. Transit service requires reliable adherence to planned service levels and schedules, otherwise passenger confidence erodes, negatively impacting ridership and, reliable service is only possible with a robust and stable bus driver staff.

### III. Improper Basis to Promulgate the IFR

FMCSA's decision to exclude certain visa holders from holding CDLs is based on flawed reasoning, thereby making the IFR arbitrary and capricious in violation of the APA. "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'"[9] "The agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[10]

---

[7] Stride BRT's S1 Line will go from Burien to Bellevue. The S2 Line will go from Bellevue to Lynnwood. And the S3 Line will go from Shoreline to Bothell. *See* Sound Transit, *Project map and summary,* (2025), https://www.soundtransit.org/system-expansion/stride-bus-rapid-transit.

[8] *See* Sound Transit, *Sound Transit 3: The Regional Transit System Plan for Central Puget Sound,* (June 2016), https://www.soundtransit.org/sites/default/files/project-documents/st3-system-plan-2016.pdf.

[9] *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (citation omitted); see *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (requiring agencies to "engage in 'reasoned decisionmaking'" (citation omitted)).

[10] *Am. Clinical Lab. Ass'n v. Becerra*, 40 F.4th 616, 624 (D.C. Cir. 2022) (cleaned up, *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

Moreover, FMCSA issued the IFR without undertaking notice-and-comment and made the rule effective immediately after its publication.[11]

FMCSA's reasoning in implementing the IFR is that there is a "crisis that constitutes an imminent hazard to public safety and a direct threat to national security" citing to five examples of fatal crashes and administration problems in six states resulting in an unspecified number of erroneous CDLs being issued.[12] However, FMCSA admits that "[t]here is not sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between the nation of domicile for a CDL driver and safety outcomes in the United States."[13] This lack of evidence is apparent in FMCSA's reasoning.

**1. FMCSA's Examples**

FMCSA cited five examples of fatal crashes in 2025 involving drivers who presumably had valid non-domiciled CDLs to support implementing the IFR. While tragic, the data shows that these examples do not even remotely justify promulgating a rule that would take away CDLs from hundreds of thousands of people. According to FMCSA's own data, non-domiciled CDL holders account for approximately 5 percent of all CDL holders but only about 0.2 percent of fatal crashes.[14] In 2022, according to FMCSA, 6,050 large trucks and buses were involved in fatal crashes.[15] Assuming a similar number in 2025, five crashes out of 6,000 accounts for a mere 0.08%, or less than one tenth of one percent of crashes—a minuscule percentage. The data demonstrates that domiciled CDL holders account for a higher percentage of accidents than non-domiciled CDL holders, indicating that non-domiciled CLD holders are at least as safe, if not safer than domiciled CDL holders.

Additionally, the examples that FMCSA provides do not support the position that people with IFR-excluded immigration statuses are especially prone to endangering others. Not a single FMCSA example involved someone who was a refugee, asylee, or DACA recipient. In another example, FMCSA cites to a 2017 terrorist attack in which the perpetrator was a lawful permanent resident and did not use a commercial motor vehicle to carry out the attack.[16] FMCSA cited to this example to demonstrate the "damage that can be inflicted by a single vehicle in the wrong hands."[17] This example fails to support implementing a rule what would have done nothing to prevent the attack and is wholly unrelated to the example itself. FMCSA's cherrypicked examples fail to explain how immigration status was to blame for the accidents and ignores the

---

[11] The US Court of Appeals for the District of Columbia in *Lujan v. FMCSA, Lujan v. FMCSA*, 25-1215, 2025 U.S. App. LEXIS 29835 (D.C. Cir. Nov. 13, 2025) granted a temporary stay on the IFR, finding that the plaintiffs are likely to succeed in at least three of their challenges to the IFR, including that the FMCSA "has not satisfied the narrow good-cause exception to issue the rule without notice and comment.

[12] 90 Fed. Reg. at 46514.

[13] *Id.* at 46520.

[14] *Id.* at 46512, 46520.

[15] FMCSA, *Large Truck and Bus Crash Facts 2022,* (Oct. 10, 2025), https://www.fmcsa.dot.gov/safety/data-and-statistics/large-truck-and-bus-crash-facts-2022-1.

[16] 90 Fed. Reg 46509 at 46514 n. 20.

[17] *Id.*

fact that the leading causes of the tens of thousands of yearly vehicle fatalities are from drunk driving, speeding, and lack of seatbelt use—not immigration status.[18]

### 2. Immigration Status Restrictions

In reasoning which work visas qualify for CDLs, FMCSA explained that individuals with H-2A, H-2B, and E-2 visas have "proof of work established through the [f]ederal visa process," and that those visa requirements "ensure that [they] are already approved to work specific jobs that may require acquisition of a non-domiciled CDL."[19] This reasoning does not pass muster because asylees, refugees, DACA recipients, and other immigrant groups also must obtain proof of work authorization from a federal agency and must also fulfill background check and CDL requirements before working any job requiring a CDL. Additionally, H-2A and H-2B visas are *seasonal* visas and workers are not permitted to remain and work in the United States year-round. This is significantly different from asylees, refugees, and DACA recipients, who can stay in the United States all year. As it relates to Sound Transit and its partner agencies, it would be especially difficult to maintain a year-round bus service with seasonal workers.

On top of the seasonal nature of the CDL-qualifying visas under the IFR, these visas are not designed for trucking or bus operator-type work. H-2A visas are for temporary *agricultural* workers.[20] Common positions involve planting and harvesting crops, and handling livestock. H-2B visas are for temporary nonagricultural jobs when there is a lack of available U.S. workers.[21] Common positions include landscaping, construction, and hospitality. And E-2 visas are for individuals from a treaty country when investing "a substantial amount of capital in a U.S. business."[22] It is simply not realistic that individuals with these types of visas will hold positions requiring CDLs. The practical effect of the IFR is to shut out anyone who is not a citizen or lawful permanent resident from obtaining and working CDL-required positions.

## IV. Public Safety Mechanisms Already in Place for CDLs

FMCSA claims that restricting which immigration statuses qualify for a CDL will increase safety because employment-based visas "typically includes some combination of the following job requirements:…related work experience (12 months to 2 years), clean driving records, pass drug or medical testing, and knowledge or proficiency in English."[23] But many of these requirements are already accounted for through separate regulations. CDL applicants must pass a driving or skill test *in English.*[24] Commercial motor vehicle drivers must undergo drug testing as required

[18] *See* Insurance Institute for Highway Safety, *Fatality Facts 2023,* (July 2025), https://www.iihs.org/research-areas/fatality-statistics/detail/yearly-snapshot.
[19] 90 Fed. Reg. 46515.
[20] USCIS, *H-2A Temporary Agricultural Workers,* (Oct. 30, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2a-temporary-agricultural-workers.
[21] USCIS, *H-2B Temporary Non-Agricultural Workers,* (Oct. 1, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2b-temporary-non-agricultural-workers.
[22] USCIS, *E-2 Treaty Investors,* (Apr. 8, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/e-2-treaty-investors.
[23] 90 Fed. Reg. 46516.
[24] 49 CFR § 383.133(5).

in 49 CFR § 101-123. FMCSA cites the inability to review the driving histories for people with driving histories predominantly or entirely in a foreign jurisdiction.[25] But that reasoning overlooks the many asylees and refugees with driving histories in the United States and ignores the fact that DACA recipients, by definition, arrived in the United States *as children,* putting them in the same position as U.S.-born individuals. All people who wish to operate a commercial motor vehicle, regardless of country of origin or immigration status, must fulfill requirements to show they have "the knowledge and skills to operate a [commercial motor vehicle] safely".[26]

In addition to the federal requirements that non-domiciled CDL applicants must fulfill to obtain a license, ST Partner Agencies carefully screen their bus operators and ensure that all federal and state requirements are fulfilled. Upon employment, operators must pass written tests, physical examinations, pass a driving record review, pass drug screening, pass a criminal background check, and present documents required by the U.S. Citizenship and Immigration Services for employment verification.[27] Operators must undergo extensive training and testing both written and in the field with supervision.[28] By the time operators from ST Partner Agencies begin serving passengers, they are well trained and well equipped to safely serve the public.

## V. Conclusion

Sound Transit is a national leader in providing transportation services through various modes in one of the fastest growing regions in the country. Our bus services are vital to that effort as they help connect people all throughout the Central Puget Sound Region. This effort is only possible because of accessible labor provided by people from all backgrounds. The IFR will result in a sizeable decrease in labor available to operate Sound Transit's bus services simply based on immigration statuses for which the only cited data demonstrates that they do not pose any increased accident risk. Cutting out refugees, asylees, and DACA recipients from obtaining CDLs will not only result in a reduction in labor, it may potentially result in a reduction in bus services for the public. For these reasons, Sound Transit respectfully requests that FMCSA withdraw the IFR. Thank you.

Sincerely,

Andrés Muñoz
Senior Legal Counsel

---

[25] 90 Fed. Reg. 46514.
[26] CDL. 49 C.F.R. § 383.110; *see id.* § 383.111 (required knowledge in "20 general areas"), § 383.113 (required skills), § 383.133 (testing).
[27] *See eg.* Declaration of David Eldred at 7 ¶ 15, *Lujan v. FMCSA*, 25-1215, 2025 U.S. App. LEXIS 29835 (D.C. Cir. Nov. 13, 2025), Dkt. No. 2142094.
[28] *Id.* at 7 ¶ 16.

Amalgamated Transit Union

10000 New Hampshire Avenue, Silver Spring, MD 20903-1706
(301) 431-7100 Fax (301) 431-7117

Office of the International President

November 28, 2025

Federal Motor Carrier Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue SE, West Building, Ground Floor
Washington, DC 20590-0001

Re: Commercial Driver's License Standards: Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (Docket No. FMCSA-2025-0622)

---

The Amalgamated Transit Union ("ATU") represents transit, student transport, and intercity bus workers in North America, with 200,000 members in forty-four states and nine provinces. ATU members have been moving Americans safely since 1892. ATU members include bus operators, mechanics, dispatchers, and road supervisors. Most are required to have commercial driver's licenses ("CDLs").

The above-captioned Interim Final Rule ("IFR") subjects many ATU members holding non-domiciled CDLs to severe personal hardship. Under the IFR, ATU members with non-domiciled CDLs and long-established safety records would be forced out of their jobs, depriving the industry of sorely needed experience and skills. Although some would shuffle into lower-paying roles in the industry not requiring CDLs, an untold number would leave transit, student transportation, and intercity bus service altogether because of the IFR.

Depriving these industries of experienced CDL holders makes our roads more dangerous.[a] No reliable evidence demonstrates that non-domiciled CDL holders pose any greater risk than other CDL holders, the Federal Motor Carrier Safety Administration ("FMCSA") admits. The experience of this union certainly does not demonstrate that non-domiciled CDL holders pose any greater safety risk to the travelling public. What is clear is that the safest CDL holders are those with experience. By pushing nearly 200,000 CDL holders out of the system and forcing employers to recruit new replacements, the IFR ensures that experience levels will decline and accident rates increase.

The IFR completely overlooks the crucial industries in which ATU members work. The IFR makes no mention of student transport and mentioned transit and intercity bus service only in passing. Summarizing its evaluation of the IFR's impacts, "FMCSA estimates that SDLAs will issue approximately 6,000 non-domiciled CDLs per year. The remaining roughly 194,000 current non-domiciled CDL holders will exit *the freight market*." FMCSA appears oblivious to the IFR's impacts on the transit, student transport, or intercity bus industries, markets that many of the 194,000 are likely to exit.

The IFR also fails to acknowledge its impact on workers other than drivers. Mechanics, dispatchers and road supervisors are typically required to have CDLs. The IFR says nothing about these essential workers.

Without a word of acknowledgement, the IFR exacerbates severe shortages of CDL holders in transit, student transport, and intercity bus service. Transit agencies across the US struggle to recruit and


Affiliated with American Federation of Labor and Congress of Industrial Organizations and Canadian Labour Congress

retain CDL holders for essential work. 84.6% of transit agencies report a worker shortage, and 72% of transit agencies' report that this shortage is affecting operations. Difficulty recruiting and retaining CDL holders lies at the heart of this worker shortage, which is predicted to deepen because of the aging of the transit workforce. The IFR compounds this already debilitating shortfall.[b]

Student transport services face a severe shortage of CDL holders. 81% of school administrators said bus driver shortages are problems for their district, with 46% stating it is a major problem, according to a 2025 survey. CDL holders are also desperately needed in the intercity bus industry. Since the pandemic, the intercity bus market has grown more quickly than competing travel modes but its growth has been limited by an ongoing shortage of CDL holders.[c]

The shortage of CDL holders in transit, student transport, and intercity bus service means less service, with severe consequences for our communities. Transit agencies have too few CDL employees to meet growing demand for service, meaning more congestion for drivers and fewer opportunities for transit-dependent workers. Inadequate student transport drives student absenteeism and limits student access to extracurricular opportunities, impacts felt most acutely by special needs students. Inadequate school bus service also puts major burdens on parents, including those who drive and confront greater congestion because of inadequate service. The shortage threatens to stymie the post-pandemic resurgence in transit and intercity bus ridership.[d]

In sum, the IFR inflicts significant harms on other non-domiciled CDL holders and deprives the transit, student transport, and intercity bus service industries of their much-needed experience. Promising to make our roads safer, the IFR will make them more dangerous and congested and deprive our communities of the transportation they need to thrive. I urge the FMCSA to withdraw the IFR.

Sincerely,

John A. Costa
International President
Amalgamated Transit Union

---

[a] Jon Fetherston, *Federal CDL Rule Threatens Jobs at Portland Metro, Forcing Agency to Reassign Drivers*, Maine Wire (Nov. 14, 2025), https://www.themainewire.com/2025/11/federal-cdl-rule-threatens-jobs-at-portland-metro-forcing-agency-to-reassign-drivers/.
[b] American Public Transportation Association, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators* (Nov. 1, 2024), https://www.apta.com/research-technical-resources/research-reports/impact-of-cdl-under-the-hood-testing-requirement/.
[c] Joseph P. Schweiterman & Zaria Bonds, Chadwick Institute, *2025 Outlook for the Intercity Bus Industry in the United States* (Feb. 6, 2025), https://news.buses.org/the-future-of-intercity-bus-travel-key-trends-and-updates-for-2025/.
[d] Sebastian Martinez Hickey, Economic Policy Institute, *The School Bus Driver Shortage Has Improved Slightly but Continues to Stress K-12 Public Education* (Nov. 3, 2025), https://www.epi.org/blog/the-school-bus-driver-shortage-has-improved-slightly-but-continues-to-stress-k-12-public-education/; HopSkipDrive et al., *2025 State of School Transportation Report* (Sept. 2025), https://apnorc.org/projects/2025-state-of-school-transportation/.

**Comment from the Delaware Division of Motor Vehicles**

The Delaware Division of Motor Vehicles (DMV) respectfully submits the following comments in response to the U.S. Department of Transportation's (DOT) Interim Final Rule, *Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver's Licenses (CDL)*, published September 29, 2025 (Docket No. FMCSA-2025-0622). Delaware supports efforts to strengthen the integrity of CDL issuance and to ensure the safety of the nation's roadways. However, we offer the following concerns regarding the evidentiary basis for the rule, the procedural approach taken, and the lack of clarity surrounding visa-category eligibility determinations.

1. Lack of Statistical Evidence for Elevated Risk Among Non-Domiciled CDL/CLP Holders

- IFR cites "a troubling series of fatal crashes" but provides no statistical data showing higher crash risk for non-domiciled CDL/CLP holders.
- No comparative crash-rate analysis, longitudinal data, or peer-reviewed research is included.
- States have requested supporting data through AAMVA from FMCSA; none has been provided.
- Without statistically valid evidence, states cannot assess necessity or proportionality of the policy change.
- Delaware suggests FMCSA commission a study or ongoing data collection to better compare crash rates, violations, and driving behavior between non-domiciled and domiciled CDL holders. Use real-world evidence to guide future regulation rather than assumptions.

2. Deviation from Standard Rulemaking and Immediate-Compliance Burden

- DOT bypassed the normal notice-and-comment process by issuing an Interim Final Rule with an emergency effective date.
- Immediate compliance expectations create major operational and legal challenges for SDLAs.
- Rule imposes significant administrative, programming, documentation-retention, SAVE-query, and in-person renewal requirements without an implementation window.
- Non-compliance risks CDL program decertification.
- Delaware requests clarification on the emergency justification and recommends a reasonable phase-in period.

3. Insufficient Explanation for Limiting Eligibility to H-2A, H-2B, and E-2 Nonimmigrant Categories

- IFR restricts non-domiciled CLP/CDL eligibility to only three visa categories without explaining the selection criteria.
- FMCSA has not clarified why these categories were deemed secure or verifiable, or what risks were attributed to other categories.
- No information is provided on interagency consultation with DHS/USCIS/DOS.
- Unclear how limitations align with SAVE, which already verifies all visa types.
- Delaware requests detailed justification for selecting these categories and guidance on exclusion of similarly situated nonimmigrant groups.

4. Economic & Workforce Impact

- Many non-domiciled CDL holders are legally employed individuals (e.g., on work visas) who contribute to the trucking workforce, support supply chains, and pay taxes.
- The requirement for in-person annual renewal may impose significant burdens (cost, time) on non-domiciled drivers — particularly those who may live in more remote areas or have limited flexibility.
- Limiting their ability to obtain or renew CDLs could exacerbate driver shortages, especially in industries that already face significant labor constraints.
- Rather than a blanket restriction, a more nuanced or risk-based approach may preserve safety while recognizing the legitimate contributions of these drivers.

Conclusion

Delaware supports the overarching goal of protecting the integrity of the CDL program. However, the Delaware DMV respectfully requests that the U.S. Department of Transportation:

1. Provide statistical data and safety-risk analysis supporting the asserted need for the IFR;
2. Justify the use of emergency rulemaking procedures and consider providing a reasonable implementation timeline; and
3. Clarify the rationale used to determine eligible nonimmigrant categories to ensure states can administer the rule consistently, fairly, and in compliance with federal law.
4. Adopt a targeted, risk-based approach that maintains safety while avoiding workforce disruptions by allowing legally employed non-domiciled CDL holders to continue supporting critical supply chain needs.

Delaware appreciates the opportunity to comment and looks forward to continued dialogue with FMCSA to ensure that CDL issuance remains secure, data-driven, and operationally feasible for all states.

**U.S. Department**
**of Transportation**

**Federal Motor Carrier**
**Safety Administration**

**1200 New Jersey Ave, S.E.**
**Washington, D.C. 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Michael Braun
Governor of Indiana
State House
200 West Washington Street, Room 206
Indianapolis, IN 46204

Kevin Garvey, Commissioner
Indiana Bureau of Motor Vehicles
Indiana Government Center North
100 North Senate Avenue, N404
Indianapolis, IN 46204

Dear Governor Braun and Commissioner Garvey:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Indiana Bureau of Motor Vehicles (BMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of systemic policy and procedural errors in Indiana's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Indiana. In this regard, FMCSA found that BMV issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to naturalized citizens of the United States who were eligible for regular CDLs, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Indiana has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Indiana must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

---

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of BMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, BMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated Indiana's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, BMV informed FMCSA that its records reflect that Indiana has issued 2,966 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 100 records of drivers that BMV issued a non-domiciled CDL. FMCSA found that 24 of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b) (2024).

[11] *Id*. at § 383.73(f)(2) (2024).

The 2025 APR uncovered evidence of procedural and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found 14 transactions where BMV issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as described in section III(b) below, FMCSA found one transaction where BMV issued a non-domiciled CDLs to a naturalized citizen of the United States, who was eligible for a regular CDL. Finally, as section III(c) explains, FMCSA found nine transactions where BMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, BMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, BMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in BMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that 14 of the driver records sampled showed that BMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). These transactions are described below.

1. On June 10, 2022, BMV issued a non-domiciled CDL with an expiration date of October 11, 2026 to a driver with the initials "KJN" who is a citizen of Rwanda. At the time the transaction occurred, KJN presented an EAD credential showing an expiration date of March 15, 2024. However, BMV issued a non-domiciled CDL with an expiration date of October 11, 2026, more than *two years* after the EAD's expiration date.

2. On March 7, 2023, BMV issued a non-domiciled CDL with an expiration date of July 26, 2027 to a driver with the initials "FF" who is a citizen of Haiti. At the time the transaction occurred, FF presented an EAD credential showing an expiration date of October 20, 2024. However, BMV issued a non-domiciled CDL with an expiration date of July 26, 2027, more than *two years* after the EAD's expiration date.

3. On December 26, 2024, BMV issued a non-domiciled CDL with an expiration date of June 19, 2026 to a driver with the initials "PSL" who is a citizen of Haiti. At the time the transaction occurred, PSL presented an EAD credential showing an expiration date of December 26, 2024. However, BMV issued a non-domiciled CDL with an expiration date of June 19, 2026, more than *one year* after the EAD's expiration date.

4. On April 18, 2024, BMV issued a non-domiciled CDL with an expiration date of October 12, 2025 to a driver with the initials "SSN" who is a citizen of Saudi Arabia. At the time

the transaction occurred, SSN presented an EAD credential showing an expiration date of April 20, 2024. However, BMV issued a non-domiciled CDL with an expiration date of October 12, 2025, more than *one year* after the EAD's expiration date.

5. On July 2, 2025, BMV issued a non-domiciled CDL with an expiration date of July 29, 2029 to a driver with the initials "QR" who is a citizen of Afghanistan. At the time the transaction occurred, QR presented an EAD credential showing an expiration date of December 6, 2028. However, BMV issued a non-domiciled CDL with an expiration date of July 29, 2029, more than *seven months* after the EAD's expiration date.

6. On June 27, 2024, BMV issued a non-domiciled CDL with an expiration date of October 27, 2028 to a driver with the initials "MLF" who is a citizen of Democratic Republic of Congo. At the time the transaction occurred, MLF presented an EAD credential showing an expiration date of February 23, 2025. However, BMV issued a non-domiciled CDL with an expiration date of October 27, 2028, more than *three years* after the EAD's expiration date.

7. On December 14, 2024, BMV issued a non-domiciled CDL with an expiration date of June 22, 2026 to a driver with the initials "AJJ" who is a citizen of Haiti. At the time the transaction occurred, AJJ presented an EAD credential showing an expiration date of December 29, 2024. However, BMV issued a non-domiciled CDL with an expiration date of June 22, 2026, more than *one year* after the EAD's expiration date.

8. On December 7, 2024, BMV issued a non-domiciled CDL with an expiration date of June 9, 2026 to a driver with the initials "KKC" who is a citizen of Nicaragua. At the time the transaction occurred, KKC presented an EAD credential showing an expiration date of December 16, 2024. However, BMV issued a non-domiciled CDL with an expiration date of June 9, 2026, more than *one year* after the EAD's expiration date.

9. On July 24, 2025, BMV issued a non-domiciled CDL with an expiration date of October 19, 2026, to a driver with the initials "CS" who is a citizen of Turkey. At the time the transaction occurred, CS presented an EAD credential showing an expiration date of June 27, 2026. However, BMV issued a non-domiciled CDL with an expiration date of October 19, 2026, approximately *three months* after the EAD's expiration date.

10. On December 11, 2024, BMV issued a non-domiciled CDL with an expiration date of June 14, 2026, to a driver with the initials "SS" who is a citizen of India. At the time the transaction occurred, SS presented an EAD credential showing an expiration date of December 21, 2024. However, BMV issued a non-domiciled CDL with an expiration date of June 14, 2026, more than *one year* after the EAD's expiration date.

11. On February 28, 2025, BMV issued a non-domiciled CDL with an expiration date of October 10, 2029, to a driver with the initials "JS" who is a citizen of India. At the time the transaction occurred, JS presented an EAD credential showing an expiration date of June 20, 2029. However, BMV issued a non-domiciled CDL with an expiration date of October 10, 2029, more than *three months* after the EAD's expiration date.

12. On February 12, 2025, BMV issued a non-domiciled CDL with an expiration date of December 1, 2026, to a driver with the initials "VS" who is a citizen of India. At the time the transaction occurred, VS presented an EAD credential showing an expiration date of June 9, 2025. However, BMV issued a non-domiciled CDL with an expiration date of December 1, 2026, more than *one year* after the EAD's expiration date.

13. On February 20, 2025, BMV issued a non-domiciled CDL with an expiration date of September 7, 2026, to a driver with the initials "BPS" who is a citizen of India. At the time the transaction occurred, SPS presented an EAD credential showing an expiration date of March 16, 2025. However, BMV issued a non-domiciled CDL with an expiration date of September 7, 2026, more than *one year* after the EAD's expiration date.

14. On July 28, 2025, BMV issued a non-domiciled CDL with an expiration date of November 20, 2029, to a driver with the initials "BB" who is a citizen of India. At the time the transaction occurred, BB presented an EAD credential showing an expiration date of December 4, 2028. However, BMV issued a non-domiciled CDL with an expiration date of November 20, 2029, nearly *one year* after the EAD's expiration date. On August 20, 2025, BMV issued a letter to BB indicating that the license was no longer valid. Although BMV appropriately invalidated the license, the fact that it was issued remains concerning.

**b. Finding: 49 CFR § 384.212—BMV Issued a Non-Domiciled CDLs to an Ineligible Naturalized Citizen of the United States.**

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that BMV issued a non-domiciled CDL to a driver who, as a naturalized citizen of the United States, should have received a regular CDL. The transaction at issue is set forth below.

1. On January 31, 2023, BMV issued a non-domiciled CDL with an expiration date of January 31, 2024, to a driver with the initials "DJS" who is a naturalized citizen of the United States. At the time the transaction occurred, DJS presented a Certificate of Naturalization from USCIS demonstrating that DJS became a naturalized citizen on February 29, 2012. Regardless, BMV issued a non-domiciled CDL with an expiration date of January 31, 2024.

**c. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that nine of the driver records sampled showed that BMV issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On December 27, 2024, BMV renewed a non-domiciled CDL with an expiration date of February 3, 2026, to a driver with the initials "RBC" who is a citizen of Haiti. At the time

the transaction occurred, RBC presented an expired EAD credential showing an expiration date of August 3, 2024. However, BMV did not provide any evidence that RBC presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite RBC presenting an expired EAD credential, BMV provided no evidence of a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[12] or other USCIS approved verification system, showing that RBC's EAD credential had been renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of February 3, 2026.

2. On July 28, 2025, BMV issued a non-domiciled CDL with an expiration date of September 13, 2026 to a driver with the initials "SS" who is a citizen of India. At the time the transaction occurred, SS presented an expired EAD credential showing an expiration date of March 22, 2025. However, BMV did not provide any evidence that SS presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite SS presenting an expired EAD credential, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, showing that SS's EAD credential had been renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of September 13, 2026.

3. On June 4, 2024, BMV issued a non-domiciled CDL with an expiration date of January 22, 2026, to a driver with the initials "GS" who is a citizen of India. At the time the transaction occurred, GS presented an expired EAD credential showing an expiration date of July 31, 2024. However, BMV did not provide any evidence that GS presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite GS presenting an expired EAD credential, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, showing that GS's EAD credential had been renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of January 22, 2026.

4. On June 9, 2025, BMV issued a non-domiciled CDL with an expiration date of April 13, 2030, to a driver with the initials "IP" who is a citizen of Moldova. At the time the transaction occurred, IP presented an expired EAD credential showing an expiration date of August 2, 2024. However, BMV did not provide any evidence that IP presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite IP presenting an expired EAD credential, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, showing that IP's EAD credential had been

[12] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of April 13, 2030.

5. On March 5, 2024, BMV issued a non-domiciled CDL with an expiration date of September 14, 2028, to a driver with the initials "EPL" who is a citizen of Haiti. At the time the transaction occurred, EPL presented an expired EAD credential showing an expiration date of August 27, 2022. However, BMV did not provide any evidence that EPL presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite EPL presenting an expired EAD credential, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, showing that of EPL's EAD credential had been renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of September 14, 2028.

6. On July 31, 2024, BMV issued a non-domiciled CDL with an expiration date of February 3, 2026, to a driver with the initials "SP" who is a citizen of Haiti. At the time the transaction occurred, SP presented an expired EAD credential showing an expiration date of February 3, 2023. However, BMV did not provide any evidence that SP presented an unexpired foreign passport and Form I-94, or an unexpired EAD, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite SP presenting an expired EAD credential, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, showing that SP's EAD credential had been renewed. Regardless, BMV issued a non-domiciled CDL with an expiration date of February 3, 2026.

7. On January 20, 2024, BMV issued a non-domiciled CDL with an expiration date of February 22, 2028 to a driver with the initials "AKA." At the time the transaction occurred, AKA presented an Indiana regular CDL. However, BMV records do not indicate any other identification or credentials AKA presented at the time of the transaction. BMV did not provide any evidence that AKA presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, demonstrating AKA's lawful presence and work authorization. Regardless, BMV issued a non-domiciled CDL with an expiration date of February 22, 2028.

8. On November 27, 2024, BMV issued a non-domiciled CDL with an expiration date of December 2, 2025 to a driver with the initials "MSB." At the time of the transaction, MSB presented a Michigan CDL and several letters from the Michigan Department of State related to that credential. However, BMV did not provide any evidence that MSB presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, demonstrating MSB's lawful presence and work authorization. Regardless, BMV issued a non-domiciled CDL with an expiration date of December 2, 2025.

9. On August 1, 2025, BMV issued a non-domiciled CDL with an expiration date of July 1, 2029, to a driver with the initials "NAS." BMV records do not indicate what identification or credentials NAS presented at the time of the transaction. BMV did not provide any evidence that NAS presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, BMV provided no evidence of a SAVE query report, or other USCIS approved verification, demonstrating NAS's lawful presence and work authorization. Regardless, BMV issued a non-domiciled CDL with an expiration date of July 1, 2029.

## IV. Required Corrective Action

As noted above, approximately 2,966 drivers hold an unexpired non-domiciled CLP or CDL issued by BMV. In light of the errors and deficiencies in BMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Indiana must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Indiana under 23 U.S.C. § 104(b)(1) and (2).[13] Accordingly, upon a final determination of substantial noncompliance, Indiana risks losing up to approximately $30,400,000 for FY 2027.[14] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Indiana risks losing up to approximately $60,800,000 in the second and subsequent FY(s) of noncompliance.[15] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Indiana.[16]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Indiana's CDL program. Decertification of Indiana's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that BMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[17]

---

[13] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[14] FMCSA estimates this amount based on FY 2026 funding levels.

[15] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[16] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[17] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**VII. Conclusion**

The 2025 APR uncovered 24 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. BMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Indiana is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Indiana come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist BMV in resolving these serious issues.

Please note that this letter addresses noncompliance with BMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, SE
Washington, D.C. 20590

December 11, 2025

Via Electronic Mail and UPS
The Honorable Janet T. Mills
Governor of Maine
1 State House Station
Augusta, ME 04333

Catherine Curtis, Deputy Secretary of State
Department of the Secretary of State
Bureau of Motor Vehicles
29 State House Station
Augusta, ME 04333

Dear Governor Mills and Deputy Secretary Curtis:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Maine Bureau of Motor Vehicles (BMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Maine's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Maine. In this regard, FMCSA found that BMV issued non-domiciled CDLs without providing evidence that it verified the drivers' lawful presence under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Maine has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Maine must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

[2] 49 U.S.C. § 31301 *et seq*.

Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA conducted a thorough audit of BMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

---

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id.* at 18759-60.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DVS was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated Maine's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As part of the 2025 APR, BMV informed FMCSA that its records reflect that Maine has issued 88 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 25 records of drivers issued a non-domiciled CDL by BMV. Six of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of policy and procedural errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found six transactions where BMV issued non-domiciled CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, BMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, BMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in BMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—The Maine BMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that six of the driver records sampled showed that BMV issued non-domiciled CDLs to drivers without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with unexpired EADs or unexpired foreign passports and Forms I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On November 7, 2024, BMV issued a non-domiciled CDL with an expiration date of June 22, 2026 to a driver with the initials "MMA" who is a citizen of Djibouti. At the time the transaction occurred, MMA presented an expired EAD with an expiration date of June 22, 2024, and a Form I-797 that BMV described as a "notice of pending or approved application before USCIS" with an expiration date of June 22, 2026. BMV also noted an undated response from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[12] was pending. During the 2025 APR, a query of SAVE, conducted on October 8, 2025, showed that MMA's EAD expires on April 11, 2029. However, BMV did not provide any evidence that MMA presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

2. On December 3, 2024, BMV issued a non-domiciled CDL with an expiration date of March 25, 2026 to a driver with the initials "NKB" who is a citizen of the Democratic Republic of Congo. At the time the transaction occurred, NKB presented a document that BMV described as "Evidence of pending asylum application," with an unknown expiration date. During the 2025 APR, a query of SAVE, conducted on October 8, 2025, showed that NKB's status as an "Asylee – Employment Authorized." However, BMV did not provide any evidence that NKB presented an unexpired EAD or an unexpired foreign

[12] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

3. On June 5, 2025, BMV issued a non-domiciled CDL with an expiration date of March 23, 2026 to a driver with the initials "FNG" who is a citizen of Burundi. At the time the transaction occurred, FNG presented an expired EAD with an expiration date of May 16, 2024. However, BMV did not provide any evidence that FNG presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

   Further, during the 2025 APR, a query of SAVE, conducted on October 8, 2025, showed FNG's status as a lawful permanent resident. Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Therefore, if FNG were a legal permanent resident at the time of the transaction, BMV should not have issued him a non-domiciled CDL.

4. On March 31, 2025, BMV issued a non-domiciled CDL with an expiration date of June 16, 2026 to a driver with the initials "BH" who is a citizen of Ukraine. At the time the transaction occurred, BH presented a document that BMV described as "Unexpired 'Parole' document for 'Parolee'" that expired on June 16, 2024. During the 2025 APR, a query of SAVE, conducted on October 8, 2025, showed that BH's EAD expires on June 16, 2026. However, BMV did not provide any evidence that BH presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

5. On January 9, 2025, BMV issued a non-domiciled CDL with an expiration date of August 3, 2026 to a driver with the initials "BCL," whose citizenship is not recorded in the documents BMV provided. At the time the transaction occurred, BCL presented a Form I-797 that BMV described as a "notice of pending or approved application before USCIS" without an expiration date. However, BMV did not provide any evidence that BCL presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

6. On November 15, 2024, BMV issued a non-domiciled CDL with an expiration date of January 8, 2026 to a driver with the initials "BM" who is a citizen of Australia. At the time the transaction occurred, BM presented an expired EAD with an expiration date of July 17, 2024, and a Form I-797 that BMV described as a "notice of pending or approved application before USCIS" with an expiration date of January 8, 2026. During the 2025 APR, a query of SAVE, conducted on September 23, 2025, showed BM's status as an "Asylee – Employment Authorized." However, BMV did not provide any evidence that BM presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred.

## IV. Required Corrective Action

Approximately 88 drivers hold an unexpired CLP or CDL issued by BMV. In light of the errors and deficiencies in BMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Maine must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Maine under 23 U.S.C. § 104(b)(1) and (2).[13] Accordingly, upon a final determination of substantial noncompliance, Maine risks losing up to approximately $8,500,000 for FY 2027.[14] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Maine risks losing up to approximately $17,000,000 in the second and subsequent FY(s) of noncompliance.[15] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Maine.[16]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Maine's CDL program. Decertification of Maine's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that the BMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[17]

## VII. Conclusion

The 2025 APR uncovered six non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. BMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Maine is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help

[13] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[14] FMCSA estimates this amount based on FY 2026 funding levels.

[15] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[16] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[17] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Maine come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist BMV in resolving these serious issues.

Please note that this letter addresses noncompliance with BMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE
Washington, DC 20590**

December 11, 2025

<u>Via Electronic Mail and UPS</u>
The Honorable Kim Reynolds
Governor of Iowa
Iowa State Capitol
1007 East Grand Avenue
Des Moines, IA 50319

Mr. Scott Marler, Director
Iowa Department of Transportation
800 Lincoln Way
Ames, IA 50010

Dear Governor Reynolds and Mr. Marler:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the Iowa Department of Transportation, Driver's License and Motor Vehicle Division (MVD) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 Annual Program Review, FMCSA obtained evidence of policy, procedural, and programming errors in Iowa's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Iowa. In this regard, FMCSA found that MVD issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Iowa has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Iowa must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

---

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id*. at 18759-60.

conducted a thorough audit of the Iowa MVD's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, MVD was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in Lujan v. FMCSA, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b).

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See id.* at §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1) (2024).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States were permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they were present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Iowa's 2025 APR during August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the APR, MVD informed FMCSA that its records reflect that Iowa has issued 1,073 non-domiciled CLPs or CDLs. During the 2025 APR, FMCSA sampled 75 records of drivers issued a non-domiciled CDL by MVD. FMCSA found that 12 of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found five transactions where MVD issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found five transactions where MVD issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program. Finally, as section III(c) explains, FMCSA found two transactions where MVD issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, MVD was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, MVD has not programmed its systems with sufficient measures to prevent errors from occurring. The repeated errors discovered during the 2025 APR indicate a breakdown in MVD's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id*.

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

**a. Finding: 49 CFR § 384.212—The Iowa MVD Issued Non-Domiciled CLPs or CDLs With an Expiration Date that Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that five of the driver records sampled showed that MVD issued a non-domiciled CLP or CDL for a period of validity that exceeded the driver's lawful presence document(s). These transactions are described below.

1. On April 18, 2025, MVD issued a non-domiciled CDL with an expiration date of January 30, 2026 to a driver with the initials "TK" who is a citizen of South Africa. At the time the transaction occurred, TK presented an unexpired foreign passport and a Form I-94 with an expiration date of December 31, 2025. However, MVD issued a non-domiciled CDL with an expiration date of January 30, 2026, more than *one month* after the I-94's expiration.

2. On July 9, 2025, MVD issued a non-domiciled CDL with an expiration date of October 19, 2026 to a driver with the initials "TO" who is a citizen of Ukraine. At the time the transaction occurred, TO presented an unexpired foreign passport and a Form I-94 with an expiration date of August 3, 2025. During the 2025 APR, a SAVE query report, conducted on September 24, 2025, showed that TO's I-94 expires on September 18, 2026. However, MVD issued a non-domiciled CDL with an expiration date of October 19, 2026, more than *one month* after the I-94's expiration.

3. On May 28, 2025, MVD issued a non-domiciled CDL with an expiration date of January 14, 2026 to a driver with the initials "GY" who is a citizen of South Africa. At the time the transaction occurred, GY presented an unexpired foreign passport and a Form I-94 showing an expiration date of December 15, 2025. However, MVD issued a non-domiciled CDL with an expiration date of January 14, 2026, nearly *one month* after the I-94's expiration.

4. On August 19, 2025, MVD issued a non-domiciled CLP with an expiration date of January 10, 2026 to a driver with the initials "LF" who is a citizen of Brazil. At the time the transaction occurred, LF presented an unexpired foreign passport and a Form I-94 showing an expiration date of December 11, 2025. However, MVD issued a non-domiciled CLP with an expiration date of January 10, 2026, nearly *one month* after the I-94's expiration.

5. On May 17, 2024, MVD issued a non-domiciled CDL with an expiration date of May 17, 2026 to a driver with the initials "JC" who is a citizen of South Africa. At the time the transaction occurred, JC presented an unexpired foreign passport. MVD provided evidence of a SAVE query report showing an I-94 expiration date of January 14, 2025. However, MVD issued a non-domiciled CDL with an expiration date of May 17, 2026, more than *five months* after the I-94's expiration.

**b. Finding: 49 CFR § 384.212—The Iowa MVD Issued Non-Domiciled CLPs or CDLs to Citizens of Mexico.**

During the 2025 APR, FMCSA discovered that five of the driver records sampled showed that MVD issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico, was ineligible to receive a non-domiciled CDL. These transactions are described below.

1. On June 19, 2025, MVD issued a non-domiciled CDL with an expiration date of November 28, 2025 to a driver with the initials "JMM" who is a citizen of Mexico. At the time the transaction occurred, JMM presented three documents confirming their Mexican citizenship: 1) an unexpired foreign passport; 2) a U.S. Visa displaying H2A status with an expiration date of October 19, 2025; and 3) a Form I-94 with an expiration date of October 29, 2025. However, MVD did not provide FMCSA with any documentation showing that JMM is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On June 6, 2025, MVD issued a non-domiciled CDL with an expiration date of December 18, 2026 to a driver with the initials "OMG" who is a citizen of Mexico. At the time the transaction occurred, OMG presented an EAD credential which confirmed their Mexican citizenship. However, MVD did not provide FMCSA with any documentation showing that OMG is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On March 28, 2025, MVD issued a non-domiciled CLP with an expiration date of February 22, 2026 to a driver with the initials "OVL" who is a citizen of Mexico. At the time the transaction occurred, OVL presented an expired EAD credential which showed an expiration date of August 31, 2024 and confirmed they were from Mexico. MVD also provided evidence of a SAVE query performed on September 13, 2024 that showed OVL's EAD was automatically extended through February 22, 2026. However, MVD did not provide FMCSA with any documentation showing that OVL is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CLP as a citizen of Mexico.

4. On July 31, 2025, MVD issued a non-domiciled CDL with an expiration date of March 30, 2026 to a driver with the initials "JGP" who is a citizen of Mexico. At the time the transaction occurred, JGP presented three documents confirming their Mexican citizenship: 1) an unexpired foreign passport; 2) a U.S. Visa displaying TN non-immigrant status with an expiration date of March 30, 2027; and 3) a Form I-94 with an expiration date of March 30, 2026. However, MVD did not provide FMCSA with any documentation showing that JGP is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

5. On May 19, 2025, MVD issued a non-domiciled CDL with an expiration date of January 4, 2026 to a driver with the initials "DCC" who is a citizen of Mexico. At the

time the transaction occurred, OMG presented an EAD credential confirming their Mexican citizenship. However, MVD did not provide FMCSA with any documentation showing that DCC is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—MVD Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that MVD issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On March 7, 2025, MVD issued a non-domiciled CDL with an expiration date of March 7, 2026 to a driver with the initials "TM" who is a citizen of Eritrea. At the time the transaction occurred, TM presented an expired EAD showing an expiration date of July 21, 2023. MVD did not provide any evidence that TM presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, as required under 49 CFR § 383.71(f). Despite TM presenting an expired EAD credential, MVD provided no evidence of a SAVE query report, or other USCIS approved verification, showing that TM's EAD credential had been renewed. However, MVD did provide evidence of a SAVE query, conducted on February 28, 2025, that showed TM was "Not Employment Authorized" because they had a pending EAD application with USCIS. Regardless, MVD issued a non-domiciled CDL with an expiration date of March 7, 2026.

2. On July 21, 2025, MVD issued a non-domiciled CLP with an expiration date of July 21, 2026 to a driver with the initials "EJ" who is a citizen of Haiti. At the time of the transaction, EJ presented an expired EAD credential with an expiration date of July 20, 2025. MVD did not provide any evidence that EJ presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential, as required under 49 CFR § 383.71(f). In addition, MVD provided no evidence of a SAVE query report, or other USCIS approved verification, demonstrating EJ's lawful presence at the time of the transaction. Regardless, MVD issued a non-domiciled CDL with an expiration date of July 21, 2026.

## IV. Required Corrective Action

As noted above, approximately 1,073 drivers hold an unexpired CLP or CDL issued by MVD. In light of the errors and deficiencies in MVD's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Iowa must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;

- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Iowa under 23 U.S.C. § 104(b)(1) and (2).[15] Accordingly, upon a final determination of substantial noncompliance, Iowa risks losing up to approximately $23,500,000 for FY 2027.[16] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Iowa risks losing up to approximately $47,000,000 in the second and subsequent FY(s) of noncompliance.[17] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Iowa.[18]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Iowa's CDL program. Decertification of Iowa's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that MVD is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[19]

## VII. Conclusion

The 2025 APR uncovered 13 non-domiciled CLP and CDL issuances sampled by FMCSA failed to comply with parts 383 and 384 because MVD issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the DACA program, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. MVD must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Iowa is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Iowa come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist MVD in resolving these serious issues.

Please note that this letter addresses noncompliance with MVD's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled

---

[15] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[16] FMCSA estimates this amount based on FY 2026 funding levels.

[17] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[18] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[19] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

November 13, 2025

Via Electronic Mail and UPS
The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

Mr. Steve Gordon, Director
California Department of Motor Vehicles
2415 1st Avenue
Mail Station F101
Sacramento, CA 95818

**CONDITIONAL DETERMINATION**

Dear Governor Newsom and Mr. Gordon:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) served the State of California a Preliminary Determination of Noncompliance (preliminary determination) in accordance with 49 CFR § 384.307(b) on September 26, 2025. The preliminary determination proposed a finding that DMV has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs)[1] set forth in 49 CFR § 384.212.[2] FMCSA reviewed California's "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance" (Response), which

---

[1] FMCSA notes that California issues non-domiciled CLPs and CDLs as "limited term" CLPs and CDLs. However, this conditional determination uses the term "non-domiciled" CLPs and CDLs to ensure consistent terminology with Federal regulations.

[2] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 10, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, that administratively stayed the IFR until further notice. Because the transactions detailed in the preliminary determination occurred prior to publication of the IFR, the regulations cited in this conditional determination reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

DMV submitted on October 26, 2025. FMCSA also convened an informal conference on October 30, 2025 with Director Gordon and other DMV representatives to provide California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as present or discuss any other information for FMCSA's consideration. Further, through email and telephonic communications that occurred on November 5 and 6, 2025, DMV provided information about its action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs.

FMCSA issues this conditional determination after considering DMV's action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. FMCSA will base its final determination on DMV's implementation of the required corrective actions set forth in the preliminary determination. DMV must provide FMCSA evidence of its corrective action plan implementation as set forth in section III below. DMV's failure to implement, or undue delay in implementing, the required corrective actions will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of certain Federal-aid Highway funds as well as possible decertification of California's CDL program, as described in section III.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[3] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[4] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR part 383 and part 384, subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of part 384, subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices." As part of its oversight, FMCSA conducts comprehensive Annual Program Reviews (APR) of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance.

Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time that the transactions detailed on the preliminary determination occurred provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States (hereinafter "lawful presence documents").[5] In addition, State procedures for

[3] 49 U.S.C. § 31301 *et seq*.

[4] 49 U.S.C. § 31311(a).

[5] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b).

issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[6]

The requirement that States accept as valid only *unexpired* lawful presence documents also required States to make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents specified in 49 CFR § 383.71(f)(2)(ii).

In addition, with one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR part 383.[7] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR part 383.[8] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL within the United States. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[9] While the guidance is in effect, States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

FMCSA initiated an APR of DMV's CDL program in August 2025 (2025 APR) in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As set forth in the September 26, 2025 preliminary determination of the non-domiciled driver records sampled during the 2025 APR, FMCSA found that approximately 25 percent failed to comply with requirements in 49 CFR parts 383 and 384. The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. In this regard, of the driver records sampled, FMCSA observed a substantial number of transactions where DMV issued non-domiciled CLPs and CDLs that exceeded the expiration date of the driver's lawful presence document(s) and issued non-

---

[6] *Id*. at § 383.73(f)(2).

[7] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

[8] *See id*.

[9] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. FMCSA rescinded this guidance on September 29, 2025, as part of the IFR. However, due to the administrative stay of the IFR, this guidance remains in effect.

domiciled CDLs to citizens of Mexico who are not present in the United States under the DACA program at the time of issuance. In addition, through FMCSA's review of DMV's training manuals and discussions with DMV personnel during the 2025 APR, the Agency discovered that DMV continued to have a policy of issuing "temporary" CLPs and CDLs to drivers pending final determination of the driver's eligibility for a commercial credential and without reporting the issuances to the Commercial Driver's License Information System (CDLIS) as required in 49 CFR §§ 384.212 and 384.225.

FMCSA found that the repeated errors discovered during the 2025 APR evinced an unacceptable deviation from FMCSA's regulations when issuing non-domiciled CLPs and CDLs and indicated a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. Accordingly, as set forth in the preliminary determination, FMCSA determined that DMV must take the following immediate corrective actions:

- Immediately pause issuing non-domiciled CLPs and CDLs;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs;
- Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in the preliminary determination;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.

The preliminary determination required DMV to take the immediate corrective action of pausing all non-domiciled CLP and CDL issuances. However, DMV failed to fully pause non-domiciled CLP and CDL licensing by continuing to process certain types of upgrades. On October 15, 2025, DMV upgraded the non-domiciled CDL of a driver by removing the K (intrastate only) restriction. On October 21, 2025, this driver operated a semi-truck on a California freeway, struck a queue of stopped vehicles, and fatally injured three people. If California had complied with the corrective action of pausing non-domiciled CDL issuance required in the preliminary determination, the driver would not have an interstate CDL, and the crash may have been avoided. Further, DMV upgraded the driver's non-domiciled CDL without applying the standards of the IFR, which was in effect at the time the upgrade occurred. If DMV had applied the standards of the IFR, as required at the time, the driver would have been ineligible for a non-domiciled CDL.

## II. FMCSA Appropriately Issued the Preliminary Determination

Notwithstanding California's implemented or planned corrective actions, the DMV argued in its Response that its internal audit did not corroborate a substantial failure to comply with relevant Federal regulations. In this regard, DMV contends that no regulations in 49 CFR parts 383 and 384 required the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents. DMV also argues that FMCSA's pre-IFR regulations did not prohibit DMV from issuing non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program. Lastly, DMV contends that the preliminary determination's updated finding from the 2024 APR regarding the DMV's continued issuance of "temporary" or "interim" non-domiciled CDLs is inconsistent with DMV's understanding of the 2024 APR. FMCSA addresses DMV's arguments below.

DMV argues that FMCSA's regulations did not require the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents. While DMV acknowledges that California regulations prohibit DMV from issuing a non-domiciled CLP or CDL that exceed the driver's legal presence,[10] DMV argues that FMCSA did not impose such a requirement. DMV also suggests that FMCSA's recent publication of the IFR that amended the regulatory framework to clarify this obvious requirement constitutes an admission that no such requirement existed when the transactions at issue were discovered during the 2025 APR. However, the language of 49 CFR §§ 383.71, 383.73, and 383.153 demonstrates that California's assertion is erroneous.[11] The regulatory universe of non-domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States. Moreover, FMCSA's IFR amended parts 383 and 384 to underscore *existing* substantive rules governing the period of validity for non-domiciled CLPs and CDLs, not to create new rules on non-domiciled CLP and CDL periods of validity that did not exist prior to FMCSA's publication of the IFR.[12]

---

[10] *See* Cal. Code Regs. tit. 13, § 26.02(c) ("A commercial driver's license or commercial learner's permit issued to a person submitting documents pursuant to 26.01(b) [*i.e.,* a "valid, unexpired employment authorization document" or a "valid, unexpired foreign passport with an approved I-94 form"] will be termed to expire on the same date as the expiration date on the valid DHS document. The person may not renew or upgrade without submitting a document pursuant to 26.01(a) or (b).").

[11] DMV relies on two cases for the proposition that the decision to amend part 383 implies the original regulation did not encompass the amended provisions. *See United States v. Greene*, No. 1:23-CR-52 (RDA), 2025 WL 310128 at *5 (E.D. Va. Jan. 27, 2025); *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007), *aff'd on other grounds*, 556 F.3d 575 (7th Cir. 2009). FMCSA finds these cases inapposite. *Hecker* concerned regulations in which a regulatory proposal explicitly acknowledged that the regulations did not cover certain activities, while no such acknowledgment exists here. In *Greene*, the statutory/regulatory interpretation analysis is in the criminal context and relies in significant part on the rule of lenity, which requires that courts resolve statutory ambiguity in defendants' favor. FMCSA's preliminary determination, of course, was not a criminal prosecution, so the rule of lenity does not apply.

[12] While the IFR clarified existing rules governing the period of validity for non-domiciled CLPs and CDLs, it also implemented new standards governing non-domiciled driver eligibility, evidence of lawful immigration status, and document verification and retention by State driver licensing agencies. *See generally* 90 Fed. Reg. 46509.

49 U.S.C. § 31308 is the statutory basis for part 383's minimum standards for CDL expiration dates. It governs State issuance of CLPs and CDLs and permits FMCSA to issue regulations that compel all CDLs and CLPs to contain "the dates between which the license or learner's permit is valid." Pursuant to this statutory authority, FMCSA issued regulations requiring that CLPs and CDLs issued by the States "must contain . . . the date of issuance and the date of expiration of the license."[13] Under 49 CFR §§ 383.73(a)(3) and 383.73(b)(9), FMCSA mandates that CLPs be valid for no more than one year from the date of issuance, while CDLs may not be valid for more than eight years from the date of issuance. However, these rules merely provide a regulatory ceiling for CLP and CDL expiration generally. States must follow additional procedures prior to issuing non-domiciled CLPs and CDLs. These additional rules further restrict the period of validity for such credentials. First, under regulations in effect at the time the transactions at issue occurred, FMCSA obligated the States to require proof of an applicant's legal presence prior to issuing a non-domiciled CLP or CDL.[14] In addition, FMCSA required that "[a]n applicant domiciled in a foreign jurisdiction must provide an *unexpired* employment authorization document (EAD) issued by USCIS or an *unexpired* foreign passport accompanied by an approved I–94 form documenting the applicant's most recent admittance into the United States."[15]

Whenever possible, regulations must be read in harmony to avoid redundancy and surplusage.[16] DMV's claim that the State may issue a non-domiciled CLP or CDL that remains valid after a driver's lawful presence in the United States expires is rooted in an isolated reading of regulatory text that disrupts the overall framework. DMV's interpretation of §§ 383.71, 383.73, and 383.153 would render the requirements regarding verification of lawful presence in §§ 383.73(f)(3) and 383.71(f)(2)(i) meaningless. If a State may issue a non-domiciled CLP or CDL that expires after the expiration of the driver's lawful presence document, § 383.71(f)(2)(i)'s mandate to present an unexpired EAD or foreign passport would be irrelevant and inconsequential. Similarly, there would be no reason to verify lawful presence as § 383.73(f)(3) requires. FMCSA's interpretation of its own regulations avoids this conflict. Under FMCSA's regulatory framework, States must require proof of legal presence, in the form of an unexpired EAD or foreign passport, and ensure the expiration date of the CLP or CDL does not exceed the expiration date stated on the driver's lawful presence documents. Viewed in the totality, the regulatory framework demands this result.

Further, DMV's reading of FMCSA's pre-IFR regulations would allow non-domiciled drivers unlawfully present in the United States to operate commercial motor vehicles, at odds with the

---

[13] 49 CFR §§ 383.153(a)(7); 383.153(b)(2)(vi).

[14] 49 CFR § 383.73(f)(3).

[15] 49 CFR § 383.71(f)(2)(i) (emphasis added).

[16] *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) (cautioning against reading a regulation "in a way that makes part of it redundant"); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013) ("We do not construe regulations in such a way as to render other provisions of the regulations meaningless or superfluous.").

clear intent of FMCSA's non-domiciled CLP and CDL regulations.[17] The absurdity doctrine cuts against DMV's interpretation. Permitting States to issue non-domiciled CLPs and CDLs to individuals in a manner that permits them to continue operating commercial motor vehicles without being lawfully present in the United States is illogical, unreasonable, and contrary to the fundamental purpose of FMCSA's regulations establishing legal presence requirements for all CLP and CDL applicants: to ensure CLP and CDL drivers, including non-domiciled drivers, operate commercial motor vehicles while *lawfully present* in the United States.[18]

Moreover, FMCSA is unpersuaded by DMV's argument that the Department of Homeland Security (DHS) expressly approved DMV's non-domiciled CLP and CDL issuance practices. At the outset, FMCSA's preliminary determination of noncompliance was based on DMV's compliance with FMCSA's regulations, not DHS's regulations.[19] In addition, FMCSA notes that the noncompliant transactions cited in the preliminary determination are inconsistent with the DHS guidance presented in DMV's response. The Response states that DHS advised that, if a response received from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE), shows a clearly defined legal presence end date, DMV should use that date as the expiration date for the applicant's driver's license or identification card. However, FMCSA's preliminary determination cited many transactions where DMV issued a non-domiciled CDL or CLP that exceeded the driver's clearly defined EAD expiration date as shown in SAVE.[20] In fact, FMCSA did not cite any transaction where the expiration date of the non-domiciled CLP or CDL matched the later of either the expiration of the EAD or foreign passport presented by the driver or a SAVE query report generated at the time the transaction occurred.

DMV also contends that it was not a violation of FMCSA's pre-IFR regulations to issue non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program.[21] DMV suggests that FMCSA's regulations cannot be construed to exclude citizens of certain nations categorically from non-domiciled CDL eligibility. In this regard, DMV argues that 49 CFR § 383.5 defines an individual's "domicile" as "that State where a person has his/her true, fixed, and permanent home and principal residence and to which he/she has the intention of returning whenever he/she is absent." This is incorrect.

---

[17] As the Supreme Court has consistently reaffirmed, "[w]here the literal reading of a [regulatory scheme] would 'compel an odd result,' we must search for other evidence of [regulatory] intent to lend the [scheme] its proper scope." *Public Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 454 (1989) (*quoting Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989)); *see also U.S. v. Am. Trucking Assn's, Inc.*, 310 U.S. 534, 543-44 (1940) ("When aid to construction of the meaning of words, as used in the [regulation], is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'") (citations omitted).

[18] *See* 76 Fed. Reg. 26854, 26856 (May 9, 2011); 73 Fed. Reg. 19282, 19285 (Apr. 9, 2008).

[19] DMV's argument that its non-domiciled issuance practices are consistent with DHS requirements is further belied by the fact that the REAL ID regulations also prohibit States from issuing limited term driver's licenses and identification cards that exceed the applicant's legal presence. *See* 6 CFR § 37.21.

[20] *See* Preliminary Determination at section III(a).

[21] DMV states that its internal audit found that it issued non-domiciled CDLs to citizens of Canada and notes that FMCSA's preliminary determination made no mention Canadian CDL holders. However, in the driver records sampled during the 2025 APR, FMCSA found no instances of non-domiciled CDL issuance to citizens of Canada, hence its omission from the preliminary determination. Nonetheless, this conditional determination addresses the ineligibility of Mexican and Canadian citizens for a non-domiciled CLP or CDL.

DMV's argument omits material portions of the definition, resulting in a construction that aligns with its preferred interpretation. The term defined in § 383.5 is "State of domicile," not "domicile." Under § 383.5, the term "State" is defined as "a State of the United States and the District of Columbia." Thus, that definition only applies to individuals applying for a regular CDL as a U.S. citizen or lawful permanent resident. Said another way, the definition of "State of domicile" has no bearing on whether an individual who is a citizen of a foreign jurisdiction qualifies for a non-domiciled CDL under relevant regulations. This is underscored by § 383.71(f)(3)(ii), which indicates, for non-domiciled CLP and CDL applicants, that "no proof of domicile is required."[22]

The plain language of 49 CFR § 383.23(b)(1) demonstrates that Mexican and Canadian citizens may not obtain a non-domiciled CLP or CDL. Under § 383.23(b)(1), the only drivers permitted to obtain non-domiciled CDLs are those *not* from "a jurisdiction that the Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the standards [adopted by FMCSA] . . . so long as that person meets the requirements of § 383.71(f)." The regulation categorically excludes all other individuals. This necessarily includes individuals domiciled in Canada and Mexico, as footnote 1 to § 383.23(b)(1) explains, because Mexico and Canada are jurisdictions for which the Administrator has issued an equivalency determination and entered into a reciprocity agreement.[23] Accordingly, Mexican and Canadian citizens cannot obtain non-domiciled CLPs or CDLs from any State because they are able to operate commercial motor vehicles in the United States using Mexican or Canadian CDLs.[24] Put simply, citizens of foreign jurisdictions for which an equivalency determination has been made (*i.e.*, Mexico and Canada) are not eligible to obtain a non-domiciled CDL.

In addition, DMV's interpretation flouts regulatory guidance published by FMCSA in 2019, which stated:

> [D]rivers who are citizens of Canada and Mexico are not eligible for non-domiciled CDLs because FMCSA has determined that commercial licenses issued by Canadian provinces and territories, and the United Mexican States, are in

[22] In its 2008 Notice of Proposed Rulemaking (NPRM) that proposed amendments to the definition of "State of domicile," FMCSA noted, "If a State requires proof of domicile…, then those applicants who can demonstrate that they permanently live in the State, *i.e., U.S. citizens and lawful permanent residents*, would be successful." 73 Fed. Reg. 19285 (emphasis added). The NPRM further underscores the inapplicability of "State of domicile" to applicants domiciled in a foreign jurisdiction.

[23] Moreover, the very definitions of "commercial driver's license" and "commercial learner's permit" in § 383.5 illustrate FMCSA's decision to recognize properly issued Mexican and Canadian CDLs as equivalent to U.S. CDLs. Section 383.5 qualifies the definitions of a CDL and CLP as credentials "issued to an individual by a State or other *jurisdiction of domicile*, in accordance with the standards contained in [part 383]." In a 2023 final rule amending §§ 384.208 and 384.209, FMCSA explained, "in accordance with § 383.23(b)(1), CDLs issued by Canadian Provinces and Territories in conformity with the Canadian National Safety Code and the Licencias Federales de Conductor issued by the United Mexican States are in accordance with the standards of 49 CFR part 383." 88 Fed. Reg. 80169, 80174 (Nov. 17, 2023).

[24] Contrary to California's assertion, section 383.23(b)(1) does not establish that this prohibition extends only to individuals who already possess a CDL. Though the footnote references the single license requirement, it does not limit the broad scope of the regulation's language. Such a reading would stretch the plain language of §§ 383.23(b)(1) and 383.71(f)(1)(i) beyond its limit.

> accordance with the standards established by our rules. Therefore, all Mexican and Canadian drivers must have an appropriate commercial license from his or her home country.[25]

This guidance was in effect at the time of the transactions at issue in the 2025 APR. DMV cannot escape the inexorable conclusion that citizens of Canada and Mexico are ineligible for non-domiciled CDLs due to FMCSA's equivalency determinations. The plain language of relevant regulations, alongside the Agency's regulatory guidance, foreclose any argument to the contrary.

Lastly, DMV argues that the preliminary determination's updated finding from the 2024 APR regarding the DMV's continued issuance of "temporary" or "interim" non-domiciled CDLs is inconsistent with DMV's understanding of the 2024 APR. However, the State Compliance Records Enterprise (SCORE) system shows, on November 13, 2024, that FMCSA issued finding number FD-104079, citing DMV's continued issuance of temporary CDLs without reporting the issuance to CDLIS.

For the reasons stated above, the Agency appropriately issued the preliminary determination and DMV's arguments are unavailing. DMV failed to comply with the requirements for issuing non-domiciled CLPs and CDLs set forth in § 384.212 because it (1) issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents, and (2) issued non-domiciled CLPs or CDLs to citizens of Mexico not present in the United States under the DACA program. Further, DMV failed to comply with § 384.225 because it continued issuing "temporary" or "interim" non-domiciled CLPs and CDLs without reporting the transaction to CDLIS and without verifying the driver's legal presence. Under 49 CFR § 384.301, any one of these categories of noncompliance was sufficient to issue the preliminary determination and would also be a sufficient basis upon which to make a final determination of substantial noncompliance if DMV fails to complete the required corrective actions.

## III. California's Corrective Action Plan

FMCSA's preliminary determination set forth specific corrective actions DMV must undertake to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312. The required corrective actions centered on DMV immediately pausing issuance of non-domiciled CLPs and CDLs; identifying non-domiciled CLPs and CDLs that were not issued in accordance with FMCSA's standards; conducting an internal audit to identify the reasons for noncompliance and notifying FMCSA of its findings; immediately acting to correct the deficiencies identified in the internal audit; acting to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs; and reissuing the licenses subject to the standards in parts 383 and 384, as amended.[26] DMV was also permitted to resume non-domiciled CLP and CDL issuance only after it is able to meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.[27] Under 49 CFR § 384.307(c), DMV's corrective action must be adequate to correct the deficiencies noted in the

[25] 84 Fed. Reg. 8464, 8470-71 (Mar. 8, 2019).

[26] Preliminary Determination at Sec. IV.

[27] *Id*.

preliminary determination and must be implemented on a schedule mutually agreed upon by FMCSA and DMV.

In its Response and during the October 30, 2025 informal conference, DMV described the corrective actions that it has implemented or intends to implement. DMV explained that upon receipt of the preliminary determination, it complied with the corrective action requiring an immediate pause in issuing non-domiciled CLPs and CDLs. DMV also reported that it immediately began an in-depth audit of its policies and procedures surrounding the issuance of non-domiciled CLPs and CDLs and the approximately 65,000 records of non-domiciled CDL holders. While the internal audit remains on-going, DMV reported that "the audit revealed some technical limitations, mostly with DMV's programming system . . . that may result in gaps in the reviews that would be required for consistency with State requirements. DMV is working to address these limitations expeditiously. As DMV's audit proceeds, it will continue to timely identify and remedy any such issues." Further, DMV explained that it identified approximately 20,000 non-domiciled CDLs with expiration dates that exceed their drivers' legal presence documents but stated that the majority of those were "issued appropriately based on the results from SAVE…." DMV further stated that the internal audit identified 3,970 non-domiciled CDLs issued to Mexican citizens who are not DACA recipients, that DMV stopped issuing temporary CDLs pending DHS verification of legal presence, and that DMV is instituting procedures to ensure that all records, such as SAVE query reports, are filed and preserved correctly. DMV also explained that it is "currently working to identify and correct any programming limitations that could result in a CDL expiration date that exceeds a person's lawful presence" and that it is working to "correct any programming limitations that result in incomplete CDLIS reporting." DMV also stated it intends to comply with the IFR when non-domiciled CLP and CDL issuance resumes.[28]

In addition, through email and telephonic communications with FMCSA that occurred on November 5th and 6th, DMV stated that it initiated State proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. DMV further stated that it continues to review all non-domiciled CLPs and CDLs and anticipates completion by November 15, 2025.

Based on DMV's action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs, FMCSA issues this conditional determination. FMCSA acknowledges that DMV has implemented, or indicates that it will implement, some of the corrective actions required in the preliminary determination. However, as noted above, DMV did not immediately pause all non-domiciled CLP and CDL licensing but continued to process certain non-domiciled CLP and CDL upgrades, including upgrading the non-domiciled CDL of a driver who was subsequently involved in a fatal crash. FMCSA is disappointed that DMV did not comply with the required corrective action of pausing all non-domiciled CLP and CDL licensing. FMCSA emphasizes that it is important that DMV's corrective action include an immediate pause of non-domiciled CLP and CDL licensing until DMV ensures that its practices comply with each and every standard of 49 CFR part 384, subpart B, in effect at the time DMV resumes non-domiciled CLP and CDL licensing, and 49 U.S.C. § 31311.

[28] As noted above, due to the administrative stay, the IFR is, until further notice, not in effect. Until further notice, States are not prohibited from issuing non-domiciled CLPs and CDLs and commercial learner's permits in accordance with the Federal regulations and guidance in effect immediately prior to issuance of the IFR.

FMCSA further emphasizes that the timely rescission of all unexpired non-domiciled CLPs and CDLs that failed to meet the requirements of parts 383 and 384, as interpreted by FMCSA, at the time of issuance—and the reissuance of the licenses in accordance with parts 383 and 384, in effect at the time of reissuance—is critically important to the overall framework of the required corrective action plan. DMV's failure to rescind and reissue *all* noncompliant non-domiciled CLPs and CDLs, including those issued to citizens of Canada and Mexico not present under the DACA program, will render its overall corrective action plan materially deficient and wholly inadequate to correct the deficiencies noted in the preliminary determination.

DMV must provide additional information about the noncompliant non-domiciled CLPs and CDLs subject to rescission, including: (1) a breakdown of all identified credentials subject to recission by category of noncompliance (*e.g.*, total number of where the expiration date exceeds the driver's legal presence documents); (2) confirmation that the credentials subject to rescission include all non-domiciled CLPs and CDLs that expire after the expiration of the driver's legal presence document(s), that were issued to Citizens of Canada or Mexico not present under the DACA program, or that were issued with other deficiencies identified in the preliminary determination; and (3) the approximate date by which the rescission of noncompliant non-domiciled CLPs and CDLs and reissuance, if eligible, will be completed and recorded on the CDLIS driver record. In addition, DMV must provide FMCSA the findings of the internal audit, including a description of any procedural and programming errors, training and quality assurance problems, insufficient policies and practices, and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs. DMV must also describe its implemented, or planned, actions to correct any technical, procedural, or policy limitations identified in the internal audit, as well as actions to train or retrain staff. Further, while DMV stated that it will correct programming limitations that resulted in incomplete CDLIS reporting for temporary CDLs, DMV failed to state how it will correct its current practice of issuing temporary non-domiciled CLPs or CDLs before validating the driver's lawful presence. Therefore, DMV must also provide information on its implemented, or planned, corrective actions to address this deficiency. DMV must provide the additional information **no later than December 1, 2025**.

DMV cannot demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs until it has completed the required corrective actions within the mutually agreed-upon schedule. Further, upon DMV's notification that it has completed the required corrective actions, FMCSA will conduct a supplemental review of DMV's non-domiciled CLP and CDL issuance practices to verify that the corrective actions have been completed.

DMV's failure to complete, or undue delay in completing, the required corrective actions as set forth in the preliminary determination will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. § 104(b)(1) and (2).[29] Under 49 U.S.C. § 31314(d) and 49 CFR § 384.403, funds withheld following a substantial noncompliance determination are no longer available for apportionment

[29] Four percent of these funds totals approximately $158,318,508.

to California. Further, DMV may also be subject to decertification of its CDL program in accordance with 49 U.S.C. § 31312 and 49 CFR § 384.405.

**IV. Conclusion**

FMCSA remains committed to working with DMV officials and stands ready to assist the State to ensure its substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE**
**Washington, DC 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Matt Meyer
Office of Governor
Tatnall Building
150 Martin Luther King Jr. Boulevard South
Dover, DE 19901

Ms. Amy Anthony, Director
Delaware Division of Motor Vehicles
303 Transportation Circle
Dover, DE 19901

Dear Governor Meyer and Ms. Anthony:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the Delaware Department of Transportation, Division of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy, procedural, and programming errors in Delaware's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Delaware. In this regard, FMCSA found that DMV issued non-domiciled CDLs to lawful permanent residents who were eligible for a regular CDL, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program, and issued non-domiciled CDLs without providing evidence it verified the drivers' lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Delaware has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Delaware must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id*. at 18759-60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in

Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Delaware's 2025 APR during August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As part of the 2025 APR, DMV informed FMCSA that its records reflect that Delaware has issued 308 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 50 records of drivers issued a non-domiciled CDL by DMV. Eight of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.[15]

The 2025 APR uncovered evidence of policy and procedural errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found two transactions where DMV erroneously issued non-domiciled CDLs to lawful permanent residents who should have been issued a regular CDL. In addition, as set forth in section III(b) below, FMCSA found six transactions where DMV issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program. Finally, as section III(c) explains, FMCSA found two transactions where DMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

### a. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs to Lawful Permanent Residents of the United States.

During the 2025 APR, FMCSA discovered that two of the 50 driver records sampled showed that DMV issued non-domiciled CDLs to drivers who were lawful permanent residents of the United States, who should have been issued regular CDLs. These transactions are described below.

1. On May 30, 2025, DMV issued a non-domiciled CDL with an expiration date of December 9, 2025, to a driver with the initials "TC." At the time the transaction occurred, TC presented a United States Permanent Resident Card issued by USCIS. In accordance with 49 CFR

---

effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

[15] Two of the driver records, "JLL" and "GSB," contain multiple violations, which are listed separately in sections III(b) and III(c). Accordingly, the ten violations listed were found in eight driver records.

§§ 383.71 (Table 1) and 383.73, DMV was required to issue TC a regular CDL; however, DMV erroneously issued a non-domiciled CDL.

2. On July 28, 2025, DMV issued a non-domiciled CDL with an expiration date of May 8, 2029, to a driver with the initials "SG." At the time the transaction occurred, SG presented a United States Permanent Resident Card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DMV was required to issue SG a regular CDL; however, DMV erroneously issued a non-domiciled CDL.

**b. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that six of the driver records sampled showed that DMV issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On August 12, 2025, DMV issued a non-domiciled CDL with an expiration date of December 15, 2029 to a driver with the initials "DMJ" who is a citizen of Mexico. At the time the transaction occurred, DMJ presented an unexpired EAD credential confirming Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On February 10, 2025, DMV issued a non-domiciled CDL with an expiration date of October 1, 2029 to a driver with the initials "JLL" who is a citizen of Mexico. At the time the transaction occurred, JLL presented an expired EAD credential confirming Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On May 13, 2025, DMV issued a non-domiciled CDL with an expiration date of June 30, 2028 to a driver with the initials "JRH" who is a citizen of Mexico. At the time the transaction occurred, JRH presented an unexpired EAD credential and an unexpired foreign passport, both confirming Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

4. On August 12, 2025, DMV issued a non-domiciled CDL with an expiration date of February 1, 2028 to a driver with the initials "ERC" who is a citizen of Mexico. At the time the transaction occurred, ERC presented an unexpired EAD credential confirming Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

5. On September 25, 2024, DMV issued a non-domiciled CDL with an expiration date of March 19, 2026 to a driver with the initials "GSB" who is a citizen of Mexico. At the time the transaction occurred, GSB presented an expired EAD credential confirming

Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

6. On April 9, 2025, DMV issued a non-domiciled CDL with an expiration date of October 23, 2029 to a driver with the initials "OSH" who is a citizen of Mexico. At the time the transaction occurred, OSH presented an unexpired EAD credential confirming Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DMV issued a non-domiciled CDL or CLP to drivers without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States These transactions are described below.

1. On February 10, 2025, DMV issued a non-domiciled CDL with an expiration date of October 1, 2029 to a driver with the initials "JLL" who is a citizen of Mexico. At the time the transaction occurred, JLL presented an expired EAD credential. However, DMV did not provide any evidence that JLL presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential. In addition, despite DMV having a record of an expired EAD credential, DMV provided no evidence of a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE)[16] or other validation of JLL's lawful presence prior to issuing the non-domiciled CDL. Regardless, DMV issued a non-domiciled CDL with an expiration date of October 1, 2029.

2. On September 25, 2024, DMV issued a non-domiciled CDL with an expiration date of March 19, 2026 to a driver with the initials "GSB" who is a citizen of Mexico. At the time the transaction occurred, GSB presented an expired EAD credential. However, DMV did not provide any evidence that GSB presented an unexpired foreign passport and Form I-94, or an unexpired EAD credential. In addition, despite DMV having a record of an expired EAD credential, DMV provided no evidence of a SAVE query report or other validation of GSB's lawful presence prior to issuing the non-domiciled CDL. Regardless, DMV issued a non-domiciled CDL with an expiration date of March 19, 2026.

---

[16] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

## IV. Required Corrective Action

Approximately 308 drivers hold an unexpired CLP or CDL issued by DMV. In light of the errors and deficiencies in DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Delaware must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that DMV's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that DMV's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Delaware under 23 U.S.C. § 104(b)(1) and (2).[17] Accordingly, upon a final determination of substantial noncompliance, Delaware risks losing up to approximately $7,725,000 for FY 2027.[18] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Delaware risks losing up to approximately $15,450,000 in the second and subsequent FY(s) of noncompliance.[19] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Delaware.[20]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Delaware's CDL program. Decertification of Delaware's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[21]

## VII. Conclusion

The 2025 APR uncovered eight non-domiciled CLP and CDL driver records sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Delaware is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help

[17] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[18] FMCSA estimates this amount based on FY 2026 funding levels.

[19] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[20] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[21] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Delaware come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, SE
Washington, D.C. 20590

December 11, 2025

Via Electronic Mail and UPS
The Honorable Phil Scott
Governor of Vermont
109 State Street, Pavilion
Montpelier, VT 05609

Andrew Collier, Commissioner
Vermont Department of Motor Vehicles
120 State Street
Montpelier, VT 05603-0001

Dear Governor Scott and Commissioner Collier:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September of 2025, FMCSA initiated an Annual Program Review (APR) of the Vermont Department of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of systemic policy, procedural, and programming errors in Vermont's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Vermont. In this regard, FMCSA found that DMV issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued a non-domiciled CDL to a citizen of Canada not present in the United States under the Deferred Action for Childhood Arrivals program, issued a non-domiciled CDL to a lawful permanent resident who should have been issued a regular CDL, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR §384.307(b), this letter constitutes FMCSA's preliminary determination that Vermont has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Vermont must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the States' CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. 18759-60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, require that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Vermont's APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DMV informed FMCSA that its records reflect that Vermont has issued 20 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA reviewed all 20 records of drivers issued a non-domiciled CDL by DMV. Ten of the driver records—50 percent—failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of systemic policy and procedural errors. In this regard, as explained in section III(a) below, FMCSA found six driver records where DMV issued non-domiciled CDLs that exceeded the expiration date of the driver's lawful presence documents. In addition, as described in section III(b) below, FMCSA found one transaction where DMV issued a non-domiciled CDL to a citizen of Canada who is not present under DACA. As discussed in section III(c), FMCSA discovered that DMV erroneously issued a non-domiciled CDL to a lawful permanent resident who should have been issued a regular standard CDL. Finally, as section III(d) explains, FMCSA found two transactions where DMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. The repeated errors discovered during the 2025 APR indicate a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

**a. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs With an Expiration Date that Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA reviewed DMV's records. FMCSA discovered that six of the 20 driver records showed that DMV issued a non-domiciled CLP or CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On February 6, 2020, DMV issued a non-domiciled CLP[15] with an expiration date of February 6, 2021, to a driver with the initials "CC" who is a citizen of Moldova. At the time the transaction occurred, CC's EAD credential showed an expiration date of 2019,[16] and a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[17] conducted at the same time, showed that CC's EAD was set to expire on April 16, 2020. CC also presented an approved I-94 Form with most recent date of admittance, but the DMV did not present any evidence that CC also presented an unexpired foreign passport to accompany the I-94. Regardless, DMV issued a non-domiciled CLP with an expiration date of February 6, 2021, more than *nine months* after the EAD's expiration date.

2. On March 14, 2023, DMV issued a non-domiciled CDL with an expiration date of March 23, 2027, to a driver with the initials "IM" who is a citizen of Moldova. At the time the transaction occurred, IM's EAD credential showed an expiration date of April 17, 2022. On or about March 13, 2023,[17] DMV queried SAVE, which indicated IM's EAD was set to expire on October 9, 2023. However, DMV issued a non-domiciled CDL with an expiration date of March 23, 2027, more than *three years* after the EAD's expiration date.

3. On March 31, 2023, DMV issued a non-domiciled CDL with an expiration date of December 12, 2026, to a driver with the initials "MT" who is a citizen of Angola. At the time the transaction occurred, MT's EAD credential showed an expiration date of July 8, 2023. At the time of the transaction, DMV queried SAVE, which confirmed that MT's EAD was set to expire on July 8, 2023. However, DMV issued a non-domiciled CDL with an expiration date of December 12, 2026, more than *three years* after the EAD's expiration date.

4. On March 20, 2024, DMV issued an upgrade of a non-domiciled CDL with an expiration date of September 6, 2027, to a driver with the initials "SAR" who is a citizen of Jamaica. At the time the transaction occurred, SAR's EAD credential showed an expiration date of August 25, 2024. However, DMV issued an upgraded non-domiciled CDL with an expiration date of September 6, 2027, more than *three years* after the EAD's expiration date.

---

[15] The Vermont DMV refers to CLPs as "CDPs."

[16] DMV provided FMCSA a photocopy of CC's EAD credential that did not clearly show the expiration date. Therefore, FMCSA relied upon notes recorded by the FMCSA personnel who conducted the APR.

[17] IM's CDL application indicates an issuance date of March 14, 2023, however, the SAVE inquiry indicates a query date of March 13, 2023. One of these dates appears to be a typographical error.

5. On March 27, 2019, DMV issued a non-domiciled CDL with an expiration date of January 17, 2027, to a driver with the initials "SP" who is a citizen of Moldova. At the time the transaction occurred, SP's EAD credential showed an expiration date of December 7, 2019, which a SAVE query conducted by DMV at the time of the transaction, confirmed. However, DMV issued a non-domiciled CDL with an expiration date of January 17, 2027, more than *seven years* after the EAD's expiration date.

6. On December 2, 2022, DMV issued a non-domiciled CDL with an expiration date of February 1, 2026, to a driver with the initials "VR" who is a citizen of Moldova. At the time the transaction occurred, VR's EAD credential showed an expiration date of August 7, 2024, which a query conducted by DMV confirmed. However, DMV issued a non-domiciled CDL with an expiration date of February 1, 2026, more than *one year* after the EAD's expiration date. In addition, on September 21, 2023, DMV reissued the non-domiciled CDL with an expiration date of February 1, 2026. At the time the reissuance occurred, VR's EAD credential still showed an expiration date of August 7, 2024. However, DMV reissued the non-domiciled CDL with an expiration date of February 1, 2026, more than *one year* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DMV Issued a Non-Domiciled CDL to a Citizen of Canada.**

During the 2025 APR, FMCSA discovered that one that of the 20 driver records showed that DMV issued a non-domiciled CDL to a driver who, as a citizen of Canada who was not present in the United States under the DACA program, was ineligible to receive a non-domiciled CDL. The transaction at issue is set forth below.

1. On June 5, 2025, DMV issued a non-domiciled CDL with an expiration date of June 15, 2028, to a driver with the initials "JCM" who is a citizen of Canada. At the time the transaction occurred, JCM's EAD credential showed the driver was from Canada. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Canada.

**c. Finding: 49 CFR § 384.212—DMV issued a Non-Domiciled CDL to a Lawful Permanent Resident of the United States.**

During the 2025 APR, FMCSA discovered that one of the 20 driver records showed that DMV issued a non-domiciled CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transaction at issue is set forth below.

1. On October 3, 2023, DMV issued a non-domiciled CDL with an expiration date of October 30, 2027 to a driver with the initials "AF." At the time the transaction occurred, AF presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DMV was required to issue AF a regular CDL; however, DMV erroneously issued a non-domiciled CDL. While DMV corrected the error by subsequently issuing AF a regular CDL, the erroneous issuance shows that DMV lacks processes to prevent such errors from occurring in the first instance.

**d. Finding: 49 CFR § 384.212— DMV Issued Non-Domiciled CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the 20 driver records showed that DMV issued a non-domiciled CDL to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States. The transactions at issue are set forth below.

1. On December 9, 2021, DMV renewed a non-domiciled CDL with an expiration date of January 15, 2026, for a driver with the initials "IB." At the time the transaction occurred, IB presented an I-797C Notice of Action and a United States Immigration Court order indicating IB's application for asylum had been granted. Further, a SAVE query conducted at the time of the transaction directed DMV to "institute additional verification." DMV did not provide any evidence that IB presented an unexpired foreign passport accompanied by a Form I-94 showing the most recent date of admittance or presented an unexpired EAD at the time the transaction occurred, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of January 15, 2026.

2. On August 28, 2025, DMV issued a non-domiciled CDL with an expiration date of January 1, 2028, to a driver with the initials "LK" who is a citizen of Rwanda. At the time the transaction occurred, DMV had an EAD credential on file from a prior transaction that showed an expiration date of September 10, 2019. DMV did not provide any evidence that LK presented an unexpired foreign passport accompanied by a Form I-94 showing the most recent date of admittance or presented an unexpired EAD at the time the transaction occurred, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of January 1, 2028.

## IV. Required Corrective Action

As noted above, approximately 20 drivers hold an unexpired, non-domiciled CLP or CDL issued by DMV. In light of the systemic errors and deficiencies in DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Vermont must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);

- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider. After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Vermont under 23 U.S.C. § 104(b)(1) and (2).[18] Accordingly, upon a final

[18] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

determination of substantial noncompliance, Vermont risks losing up to approximately $9,300,000 for FY 2027.[19] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Vermont risks losing up to approximately $18,600,000 in the second and subsequent FY(s) of noncompliance.[20] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Vermont.[21]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Vermont's CDL program. Decertification of Vermont's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[22]

## VII. Conclusion

The 2025 APR uncovered that half of the 20 non-domiciled CLPs and CDLs issued by DMV failed to comply with Parts 383 and 384. This is a grossly unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Vermont is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses. However, DMV's failure to issue non-domiciled CLPs and CDLs in accordance with Federal regulations jeopardizes these shared safety goals. FMCSA issues this preliminary determination of substantial noncompliance with a clear understanding of the gravity of the findings, but also with the expectation that DMV will act expeditiously to achieve substantial compliance. To continue in that spirit of partnership, my staff stands ready to assist DMV in resolving these serious issues.

---

[19] FMCSA estimates this amount based on FY 2026 funding levels.

[20] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[21] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[22] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE**
**Washington, DC 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Muriel Bowser
Mayor of the District of Columbia
John A. Wilson Building
1350 Pennsylvania Avenue NW
Washington, D.C. 20004

Gabriel Robinson, Director
Government of the District of Columbia
Department of Motor Vehicles
95 M Street, SW
Washington, D.C. 20024

Dear Mayor Bowser and Mr. Robinson:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the District of Columbia (D.C.) Department of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in D.C.'s issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within D.C. In this regard, FMCSA found that DMV issued non-domiciled CDLs that extend beyond expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs without providing evidence that it verified the drivers' lawful presence in the United States under the standards set forth in 49 CFR Part 383, and issued non-domiciled CDLs to lawful permanent residents who should have been issued regular CDLs. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that D.C. has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. D.C. must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. D.C.'s failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying D.C.'s CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State[3] CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[4] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[5] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[6] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[7]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[8] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] Under 49 U.S.C. § 31301 and 49 CFR § 383.5, the definition of "State" includes the District of Columbia. Accordingly, the term "State" throughout this letter includes the District of Columbia.

[4] 49 U.S.C. § 31311(a).

[5] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[6] *Id*. at § 384.307(c).

[7] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[8] 90 Fed. Reg. 18759 (Apr. 28, 2025).

appropriate actions to improve the effectiveness of current protocols…."[9] Accordingly, FMCSA conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[10] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[11] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[12]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated D.C.'s 2025 APR in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DMV informed FMCSA that its records reflect that D.C. has issued 109 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 32 records of drivers issued a non-domiciled CDL by DMV. Thirteen of the

---

[9] *Id.* at 18759-60.

[10] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[11] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[12] *Id*. at § 383.73(f)(2).

driver records sampled—approximately 40 percent—failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of systemic policy, programming, and procedural errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found three transactions where DMV issued non-domiciled CDLs that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA also found eight transactions where DMV issued a non-domiciled CDL but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3). Finally, as set forth in section III(c) below, FMCSA also found two transactions where DMV erroneously issued non-domiciled CDLs to lawful permanent residents who should have been issued regular CDLs.

During the 2025 APR, DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—DMV issued Non-Domiciled CLPs or CDLs With an Expiration Date that Exceeded the Expiration of the Driver's EAD.**

During the 2025 APR, FMCSA discovered that three of the 32 driver records sampled showed that DMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). These transactions are described below.

1. On July 17, 2024, DMV issued a non-domiciled CDL with an expiration date of December 25, 2025, to a driver with the initials "TW" who is a citizen of Ethiopia. At the time the transaction occurred, TW presented an EAD credential showing an expiration date of September 25, 2025. DMV provided FMCSA a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[13] conducted on July 17, 2024, which confirmed that TW's EAD expires on September 25, 2025. However, DMV issued a non-domiciled CDL with an expiration date of December 25, 2025, *three months* after the EAD's expiration date.

2. On August 8, 2025, DMV issued a non-domiciled CDL with an expiration date of February 11, 2027, to a driver with the initials "MOM" who is a citizen of Eritrea. At the time the transaction occurred, MOM presented an EAD credential showing an expiration

[13] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

date of August 20, 2025, and a Form I-797C Notice of Action containing no relevant employment authorization dates. During the 2025 APR, DMV provided a SAVE query report, conducted on August 8, 2025, which showed an August 20, 2025 EAD expiration date. However, DMV issued a non-domiciled CDL with an expiration date of February 11, 2027, more than *one year* after the EAD's expiration date.

3. On May 14, 2025, DMV issued a non-domiciled CDL with an expiration date December 13, 2026, to a driver with the initials "LFG" who is a citizen of Colombia. At the time the transaction occurred, LFG presented an EAD credential showing an expiration date of June 21, 2025, and a Form I-797C Notice of Action containing no relevant employment authorization dates. During the 2025 APR, DMV provided an open and unresolved SAVE query, begun on May 14, 2025, which provided no indication that LFG's EAD expiration date had been extended beyond June 21, 2025. However, DMV issued a non-domiciled CDL with an expiration date of December 13, 2026, more than *one year* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that eight of the 32 driver records sampled showed that DMV issued a non-domiciled CDL to drivers without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On February 4, 2023, DMV issued a non-domiciled CDL with an expiration date of November 21, 2030, to a driver with the initials "SH" who is a citizen of Ethiopia. At the time the transaction occurred, SH presented a Form I-94 demonstrating that SH was granted indefinite asylum status by an immigration judge on October 24, 2022. However, DMV did not provide any evidence that SH presented an unexpired foreign passport to accompany the I94 or unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of November 21, 2030.

2. On April 18, 2025, DMV issued a non-domiciled CDL with an expiration date of June 20, 2033, to a driver with the initials "AF" who is a citizen of Ethiopia. At the time the transaction occurred, AF presented a Form I-94 and a Form I-589 Application for Asylum and for Withholding of Removal both demonstrating that AF was granted indefinite asylum status on December 1, 2023. However, DMV did not provide any evidence that AF presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of June 20, 2033.

3. On February 23, 2021, DMV issued a non-domiciled CDL with an expiration date of June 8, 2028, to a driver with the initials "TGS" who is a citizen of Eritrea. At the time the transaction occurred, TGS presented a Form I-94 form a Form I-589 Application for Asylum and for Withholding of Removal, both demonstrating that TGS was granted indefinite asylum status on March 29, 2019. However, DMV did not provide any evidence that TGS presented

an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of June 8, 2028.

4. On June 7, 2022, DMV issued a non-domiciled CDL with an expiration date of April 16, 2030, to a driver with the initials "EZH" who is a citizen of Eritrea. At the time the transaction occurred, EZH presented a Form I-94 form and an immigration court document, both demonstrating that EZH was granted indefinite asylum status on March 27, 2019. However, DMV did not provide any evidence that EZH presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of April 16, 2030.

5. On August 2, 2024, DMV issued a non-domiciled CDL with an expiration date of April 11, 2026 to a driver with the initials "AYF" who is a citizen of Ethiopia. At the time the transaction occurred, AYF presented a Form I-94 with an expiration date of December 12, 2025. However, DMV did not provide any evidence that AYF presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of April 11, 2026.

6. On July 18, 2025, DMV reissued a non-domiciled CDL with an expiration date of February 3, 2033 to a driver with the initials "TWB" who is a citizen of Eritrea. At the time the transaction, TWB presented a Form I-94 form and an immigration court document, both demonstrating that TWB was granted indefinite asylum status on February 12, 2024. However, DMV did not provide any evidence that TWB presented unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration of February 3, 2033.

7. On September 7, 2024, DMV issued a non-domiciled CDL with an expiration date of August 25, 2032 to a driver with the initials "GBM" who is a citizen of Ethiopia. At the time the transaction occurred, GBM presented a Form I-94 and a Form I-589 Application for Asylum and for Withholding of Removal, both demonstrating that GBM was granted indefinite asylum status on January 17, 2023. However, DMV did not provide any evidence that GBM presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of August 25, 2032.

8. On October 10, 2023, DMV issued a non-domiciled CDL with an expiration date of May 20, 2031 to a driver with the initials "HDG" who is a citizen of Ethiopia. At the time the transaction occurred, HDG presented an expired EAD credential, a Form I-589 Application for Asylum and for Withholding of Removal, and a Form I-94, all of which demonstrated that HDG was granted indefinite asylum status on October 21, 2021. However, DMV did not provide any evidence that HDG presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of May 20, 2031.

**c. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CDLs to Lawful Permanent Residents of the United States.**

During the 2025 APR, FMCSA discovered that two of the 32 driver records sampled showed that DMV issued a non-domiciled CDL to a lawful permanent resident of the U.S. who should have been issued a regular CDL. These transactions are described below.

1. On January 17, 2025, DMV issued a non-domiciled CDL with an expiration date of December 8, 2032, to a driver with the initials "RBS." At the time the transaction occurred, RBS presented a United States Permanent Resident card issued by USCIS. DMV was required to issue a regular CDL; however, it erroneously issued a non-domiciled CDL.

2. On August 23, 2022, DMV reissued a non-domiciled CDL with an expiration date of May 21, 2030, to a driver with the initials "TK" who is a citizen of Eritrea. At the time the transaction occurred, TK presented a foreign passport with a United States Permanent Resident stamp. During the 2025 APR, DMV presented a SAVE query report, conducted on August 23, 2022, which demonstrated that TK was a lawful permanent resident of the United States. DMV was required to issue a regular CDL; however, it erroneously issued a non-domiciled CDL.

## IV. Required Corrective Action

Approximately 109 drivers hold an unexpired CLP or CDL issued by DMV. In light of the errors and deficiencies in DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that D.C. must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that DMV's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;

- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that DMV's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to D.C. under 23 U.S.C. § 104(b)(1) and (2).[14] Accordingly, upon a final determination of substantial noncompliance, D.C. risks losing up to approximately $24,800,000 for FY 2027.[15] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, D.C. risks losing up to approximately $49,600,000 in the second and subsequent FY(s) of noncompliance.[16] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to D.C..[17]

[14] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[15] FMCSA estimates this amount based on FY 2026 funding levels.

[16] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[17] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify D.C.'s CDL program. Decertification of D.C.' CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[18]

## VII. Conclusion

The 2025 APR uncovered that 13 of the 32 non-domiciled CDL issuances sampled by FMCSA failed to comply with Parts 383 and 384. This is a grossly unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

D.C. is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses. However, DMV's failure to issue non-domiciled CLPs and CDLs in accordance with Federal regulations jeopardizes these shared safety goals. FMCSA issues this preliminary determination of substantial noncompliance with a clear understanding of the gravity of the findings, but also with the expectation that DMV will act expeditiously to achieve substantial compliance. To continue in that spirit of partnership, my staff stands ready to assist DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[18] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, S.E.
Washington, D.C. 20590**

February 10, 2026

Via Electronic Mail and UPS
The Honorable Mike DeWine
Governor of Ohio
Riffe Center, 30th Floor
77 South High Street
Columbus, OH 43215

Via Electronic Mail and USPS
Mr. Charles L. Norman, Registrar
Ohio Department of Public Safety, Bureau of Motor Vehicles
P.O. Box 16520
Columbus, Ohio 43216-6520

Dear Governor DeWine and Mr. Norman:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Ohio Bureau of Motor Vehicles (BMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Ohio's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Ohio. In this regard, FMCSA found that BMV issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico or Canada not present in the United States under the Deferred Action for Childhood Arrivals (DACA) program, issued non-domiciled CLPs or CDLs to lawful permanent residents of the United States, who should have been issued regular CDLs, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Ohio has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Ohio must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

---

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of BMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, States were required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the DACA program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Ohio's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, BMV informed FMCSA that its records reflect that Ohio has issued 6,240 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 125 records of drivers issued a non-domiciled CDL by BMV. FMCSA found that 17 of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found three transactions where BMV issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found three transactions where BMV issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program. Moreover, as described in section III(c) below, FMCSA found three transactions where BMV issued non-domiciled CLPs or CDLs to lawful permanent residents of the United States, who are eligible for regular CDLs. Finally, as section III(d) explains, FMCSA found eight transactions where BMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and approved Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, BMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, BMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in BMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

**a. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that BMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On July 28, 2025, BMV issued a non-domiciled CDL with an expiration date of February 12, 2027, to a driver with the initials "VS" who is a citizen of Russia. At the time the transaction occurred, VS's EAD credential showed an expiration date of August 21, 2025. However, BMV issued a non-domiciled CDL with an expiration date of February 12, 2027, more than *17 months* after the EAD's expiration date.

2. On March 1, 2025, BMV issued a non-domiciled CDL with an expiration date of October 19, 2026 to a driver with the initials "IS" who is a citizen of Ukraine. At the time the transaction occurred, IS's EAD credential showed an expiration date of April 19, 2025. The driver also presented a Form I-797C stating that USCIS received an application for an EAD, which BMV should not have relied upon in calculating the license expiration date. However, BMV issued a non-domiciled CDL with an expiration date of October 19, 2026, *18 months* after the EAD's expiration date.

3. On October 11, 2024, BMV issued a non-domiciled CDL with an expiration date of April 9, 2026 to a driver with the initials "PS" who is a citizen of India. At the time the transaction occurred, PS's EAD credential showed an expiration date of October 16, 2024. The driver also presented a Form I-797C stating that USCIS received an application for an EAD, which BMV should not have relied upon in calculating the license expiration date. However, BMV issued a non-domiciled CDL with an expiration date of October 19, 2026, nearly *18 months* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that BMV issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions are described below.

1. On October 29, 2024, BMV issued a non-domiciled CDL with an expiration date of August 3, 2028 to a driver with the initials "HAO" who is a citizen of Mexico. At the of the transaction, HAO's EAD credential confirmed their Mexican citizenship. However, BMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On August 10, 2024, BMV issued a non-domiciled CDL with an expiration date of May 11, 2026 to a driver with the initials "RK" who is a citizen of Canada. At the time of the transaction, RK's Form I-94 and passport confirmed their Canadian citizenship.

However, BMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Canada.

3. On June 28, 2024, BMV issued a non-domiciled CDL with an expiration date of December 21, 2025 to a driver with the initials "CGD" who is a citizen of Mexico. At the time of the transaction, CGD's Form I-94 and passport confirmed their Mexican citizenship. However, BMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs to Lawful Permanent Residents of the United States.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that BMV issued a non-domiciled CLP or CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transactions are described below.

1. On August 28, 2025, BMV issued a non-domiciled CDL with an expiration date of August 28, 2026, to a driver with the initials "YL." At the time the transaction occurred, YL presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, BMV was required to issue YL a regular CDL; however, BMV erroneously issued a non-domiciled CDL.

2. On May 13, 2024, BMV issued a non-domiciled CDL with an expiration date of June 10, 2026, to a driver with the initials "JN." At the time the transaction occurred, JN presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, BMV was required to issue JN a regular CDL; however, BMV erroneously issued a non-domiciled CDL.

3. On April 12, 2025, BMV issued a non-domiciled CDL with an expiration date of April 12, 2026, to a driver with the initials "TP." At the time the transaction occurred, TP provided a regular CDL issued by the State of Florida and a United States Permanent Resident card issued by USCIS that expired on March 13, 2025. TP also provided a Form I-797 Notice of Action issued by USCIS stating that it serves as evidence of TP's lawful permanent resident status, together with the expired Permanent Resident card, until March 23, 2028. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, BMV was required to issue TP a regular CDL; however, BMV erroneously issued a non-domiciled CDL.

**d. Finding: 49 CFR § 384.212—BMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that eight of the driver records sampled showed that BMV issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the driver's lawful presence with an unexpired EAD or unexpired foreign passport and approved Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On April 16, 2025, BMV issued a non-domiciled CDL with an expiration date of November 2, 2026 to a driver with the initials "MI" who is a citizen of Ukraine. At the time of the transaction, MI presented a Form I-94 with an admit until date of November 2, 2026. However, BMV did not provide any evidence that MI presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of November 2, 2026.

2. On March 20, 2025, BMV issued a non-domiciled CDL with an expiration date of July 12, 2026 to a driver with the initials "DA" who is a citizen of Ukraine. At the time of the transaction, DA presented an approved Form I-94 with an expiration date of July 12, 2026. However, BMV did not provide any evidence that DA presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of July 12, 2026.

3. On January 31, 2025, BMV issued a non-domiciled CDL with an expiration date of November 4, 2026 to a driver with the initials "RS" who is a citizen of Ukraine. At the time of the transaction, RS presented an approved Form I-94 with an admit until date of November 4, 2026. However, BMV did not provide any evidence that RS presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of November 4, 2026.

4. On December 3, 2024, BMV issued a non-domiciled CDL with an expiration date of September 5, 2026 to a driver with the initials "YS" who is a citizen of Ukraine. At the time of the transaction, YS presented an approved Form I-94 with an admit until date of September 5, 2026. However, BMV did not provide any evidence that YS presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of September 5, 2026.

5. On July 31, 2024, BMV issued a non-domiciled CDL with an expiration date of May 11, 2026 to a driver with the initials "SC" who is a citizen of Ukraine. At the time of the transaction, SC presented an approved Form I-94 with an admit until date of May 11, 2026. However, BMV did not provide any evidence that SC presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of May 11, 2026.

6. On April 23, 2024, BMV issued a non-domiciled CDL with an expiration date of March 13, 2028 to a driver with the initials "AI" who is a citizen of Uzbekistan. At the time of the transaction, AI presented an expired EAD with an expiration date of April 22, 2024, an unexpired foreign passport, and an I-797 Notice of Action. While the I-797 stated that AI's application for employment authorization had been approved with an expiration date of March 31, 2029, the I-797 also stated that the form could not be used as evidence of employment authorization. However, BMV did not provide any evidence

that AI presented a Form I-94 to accompany the unexpired foreign passport, as required under 49 CFR § 383.71(f). Regardless, BMV issued a non-domiciled CDL with an expiration date of February 12, 2027.

7. On April 23, 2024, BMV issued a non-domiciled CDL with an expiration date of December 12, 2028 to a driver with the initials "PI" who is a citizen of the Democratic Republic of Congo. At the time of the transaction, PI presented a Form I-94 showing the admit until date as "D/S," which indicates duration of stay. However, BMV did not provide any evidence that PI presented an unexpired foreign passport to accompany the Form I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, BMV issued a non-domiciled CDL with an expiration date of November 2, 2026.

8. On January 21, 2023, BMV issued a non-domiciled CDL with an expiration date of November 11, 2026 to a driver with the initials "ZN" who is a citizen of Cameroon. At the time of the transaction, ZN presented a Form I-94 indicating the driver had been granted indefinite asylum status. However, BMV did not provide any evidence that ZN presented either an unexpired foreign passport to accompany the I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, BMV issued a non-domiciled CDL with an expiration date of November 11, 2026.

## IV. Required Corrective Action

As noted above, approximately 6,240 drivers hold an unexpired non-domiciled CLP or CDL issued by BMV. In light of the errors and deficiencies in BMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Ohio must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's

corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;

- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Ohio under 23 U.S.C. §§ 104(b)(1) and (2).[15] Accordingly, upon a final determination of substantial noncompliance, Ohio risks losing up to approximately $61,200,000 for FY 2027.[16] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Ohio risks losing up to approximately $122,400,000 in the second and subsequent FY(s) of noncompliance.[17] Once

[15] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[16] FMCSA estimates this amount based on FY 2026 funding levels.

[17] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Ohio.[18]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Ohio's CDL program. Decertification of Ohio's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that BMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[19]

## VII. Conclusion

The 2025 APR uncovered 17 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. BMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Ohio is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Ohio come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist BMV in resolving these serious issues.

Please note that this letter addresses noncompliance with BMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,



Derek D. Barrs
Administrator

[18] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[19] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE**
**Washington, D.C. 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Kelly Armstrong
Office of Governor
State of North Dakota
600 East Boulevard Avenue
Bismarck, ND 58505

Mr. Ronald J. Henke, Director
North Dakota Department of Transportation
608 East Boulevard Avenue
Bismarck, ND 58505

Dear Governor Armstrong and Mr. Henke:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the North Dakota Department of Transportation, Driver's License Division's (DLD) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in North Dakota's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within North Dakota. In this regard, FMCSA found that DLD issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383 and issued a non-domiciled CDL to a lawful permanent resident who should have been issued a regular CDL. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that North Dakota has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. North Dakota must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL Program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive Annual Program Reviews (APRs) of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the States' CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of the North Dakota DLD's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, the DPS was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated North Dakota's 2025 APR during August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As part of the APR, DLD informed FMCSA that its records reflect that North Dakota has issued 526 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 50 records of drivers that DLD issued a non-domiciled CDL. Three of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

The 2025 APR uncovered evidence of procedural and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found two transactions where DLD issued non-domiciled CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3). In addition, as set forth in section III(b) below, FMCSA found one transaction where DLD issued a non-domiciled CDL to a lawful permanent resident of the United States, who was eligible for a regular CDL.

During the 2025 APR, DLD was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DLD has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DLD's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—DLD Issued Non-Domiciled CLPs or CDLs to Drivers Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DLD issued a non-domiciled CDL to drivers without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. The transactions at issue are set forth below.

1. On July 20, 2022, DLD issued a non-domiciled CDL with an expiration date of May 18, 2026, to a driver with the initials "HNA" who is a citizen of Somalia. At the time the transaction occurred, HNA presented a Form I-94 confirming HNA's refugee status and displaying an indefinite expiration date. However, DLD did not provide any evidence that HNA presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD credential, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, DLD issued a non-domiciled CDL with an expiration date of May 18, 2026.

2. On March 25, 2025, DLD issued a non-domiciled CDL with an expiration date of March 25, 2026, to a driver with the initials "AM." At the time the transaction occurred, AM presented a Form I-94 confirming AM's asylum status. However, DLD did not provide any evidence that AM presented an unexpired foreign passport to accompany the I-94 or an unexpired EAD credential, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, DLD issued a non-domiciled CDL with an expiration date of March 25, 2026.

**b. Finding: 49 CFR § 384.212—DLD Issued a Non-Domiciled CDL to a Lawful Permanent Resident of the United States.**

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that DLD issued a non-domiciled CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transaction at issue is set forth below.

1. On September 22, 2025, DLD issued a non-domiciled CDL with an expiration date of January 8, 2028 to a driver with the initials "AJH." At the time the transaction occurred, AJH presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DLD was required to issue AJH a regular CDL; however, DLD erroneously issued a non-domiciled CDL with an expiration date of January 8, 2028.

## IV. Required Corrective Action

As noted above, approximately 526 drivers hold an unexpired CLP or CDL issued by the North Dakota DLD. In light of the errors and deficiencies in DLD's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that North Dakota must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of

Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of corrective action as required by FMCSA. In addition, the corrective actions may be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to North Dakota under 23 U.S.C. § 104(b)(1) and (2).[12] Accordingly, upon a final determination of substantial noncompliance, North Dakota risks losing up to approximately $11,650,000 for FY 2027.[13] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, North Dakota risks losing up to approximately $23,300,000 in the second and subsequent FY(s) of noncompliance.[14] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to North Dakota.[15]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify North Dakota's CDL Program. Decertification of North Dakota's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until

[12] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[13] FMCSA estimates this amount based on FY 2026 funding levels.

[14] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[15] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

such time as FMCSA determines that DLD is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[16]

## VII. Conclusion

The 2025 APR uncovered three non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DLD must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

The State of North Dakota is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help North Dakota come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DLD in resolving these serious issues.

Please note that this letter addresses noncompliance with DLD's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[16] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Avenue, S.E.
Washington, D.C. 20590**

January 7, 2026

Via Electronic Mail and UPS
The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

Mr. Steve Gordon, Director
California Department of Motor Vehicles
2415 1st Avenue
Mail Station F101
Sacramento, CA 95818

**NOTICE OF FINAL DETERMINATION OF SUBSTANTIAL NONCOMPLIANCE**

Dear Governor Newsom and Mr. Gordon:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) served the State of California a Preliminary Determination of Noncompliance (Preliminary Determination) in accordance with 49 CFR § 384.307(b) on September 26, 2025. The Preliminary Determination proposed a finding that the California Department of Motor Vehicles (DMV) has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs)[1] set forth in 49 CFR § 384.212 and the standards for certain Commercial Driver's License Information System (CDLIS) reporting requirements in 49 CFR § 384.225.[2]

---

[1] FMCSA notes that California issues non-domiciled CLPs and CDLs as "limited term" CLPs and CDLs. However, this final determination uses the term "non-domiciled" CLPs and CDLs to ensure consistent terminology with Federal regulations.

[2] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this final determination of noncompliance reflect the pre-IFR text of parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

FMCSA reviewed California's "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance," which DMV submitted on October 26, 2025, convened an informal conference with DMV officials on October 30, 2025 and engaged in email and telephonic communications with DMV officials on November 5 and 6, 2025. DMV informed FMCSA that it took initial steps to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. On November 13, 2025, FMCSA issued a Conditional Determination reiterating that DMV's failure to complete, or undue delay in completing, the required corrective actions as set forth in the Preliminary Determination, including immediate rescission of all noncompliant non-domiciled CLPs and CDLs, would result in FMCSA issuing a Final Determination of Substantial Noncompliance.[3] Specifically, FMCSA's Conditional Determination was predicated on DMV's corrective actions—primarily, the timely rescission of approximately 17,000 noncompliant non-domiciled CLPs and CDLs.

On December 10, 2025, DMV submitted a "Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance," which stated, among other things, that DMV issued cancellation notices to approximately 17,400 drivers and the cancellations would be effective on January 5, 2026. However, on December 30, 2025, contrary to the mutually agreed upon date with FMCSA, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026.[4] FMCSA subsequently reiterated to DMV that any extension was not approved and that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan.

After considering DMV's responses and its failure to adhere to the schedule for corrective action, FMCSA makes this Final Determination of Substantial Noncompliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212(a). FMCSA considered DMV's implemented and planned corrective actions and determined that they are inadequate to correct the deficiencies noted in the Preliminary Determination because they were not implemented on a schedule mutually agreed upon by the Agency and the State. FMCSA makes this final determination in accordance with 49 CFR §§ 384.307(d) and 384.309(a)(2). Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would

---

[3] The September 26, 2025 Preliminary Determination and the November 13, 2025 Conditional Determination letters are incorporated by reference into this Final Determination of Substantial Noncompliance.

[4] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026); *California DMV Extends Date of Nondomiciled CDL Action*, State of California DMV, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action (last visited Jan. 7, 2026).

otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $158,318,508.[5,6]

## I. Background[7]

FMCSA initiated an annual program review (APR) of DMV's CDL program in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As set forth in the Preliminary Determination and restated in the Conditional Determination, of the non-domiciled driver records sampled during the 2025 APR, FMCSA found that approximately 25 percent failed to comply with requirements in 49 CFR parts 383 and 384. Accordingly, the September 26, 2025 Preliminary Determination proposed a finding that DMV failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212. Specifically, FMCSA found that DMV issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents and issued non-domiciled CLPs or CDLs to citizens of Mexico who were not present in the United States under the Deferred Action for Childhood Arrivals (DACA) program—drivers who are per se ineligible to hold a non-domiciled CDL. FMCSA also found that DMV failed to comply with the requirements for substantial compliance with 49 CFR § 384.225 because DMV issued "temporary" non-domiciled CLPs and CDLs to drivers without first validating the driver's lawful presence and without reporting issuance of the temporary credentials to CDLIS. FMCSA found that the repeated errors discovered during the 2025 APR evinced an unacceptable deviation from FMCSA's regulations when issuing non-domiciled CLPs and CDLs and indicated a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. Accordingly, as set forth in the Preliminary Determination, FMCSA determined that DMV must take the following immediate corrective actions:

- Immediately pause issuing non-domiciled CLPs and CDLs;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were issued not in compliance with parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs;
- Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in the Preliminary Determination;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance;

---

[5] FMCSA calculates this amount based on FY 2026 funding levels.

[6] 49 U.S.C. § 31314(d), 49 CFR § 384.403.

[7] The relevant statutory and regulatory authorities are set forth in the Preliminary Determination and Conditional Determination letters and are not repeated in this final determination.

- Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of 49 CFR part 384 and 49 U.S.C. § 31311.

On October 26, 2025, DMV provided a "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance" (October Response). DMV's October Response described the corrective actions that DMV had implemented or intended to implement. DMV's October Response also argued that no regulations in 49 CFR parts 383 and 384 required the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents and that FMCSA's pre-IFR regulations did not prohibit DMV from issuing non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program.

On October 30, 2025, FMCSA convened an informal conference with Director Gordon and other DMV representatives to provide California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as to present or to discuss any other information for FMCSA's consideration. Further, through email and telephonic communications that occurred on November 5 and 6, 2025, DMV provided information about its action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. In this regard, DMV stated that it initiated State proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs where the license expiration exceeded the drivers' lawful presence documents. DMV provided FMCSA with a template of its Notice of Commercial Driver's License (CDL) Cancellation, stating that it was sent to approximately 17,000 recipients. The cancellation notice informed the drivers that DMV will cancel their CDLs 60 days from the date of the letter. DMV further stated that it would continue to review all non-domiciled CLPs and CDLs and anticipated completion by November 15, 2025.

FMCSA issued the Conditional Determination on November 13, 2025 based on DMV's representation that it initiated proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs within 60 days, which would have been on or around January 5, 2026. The Conditional Determination reiterated that the Agency appropriately issued the Preliminary Determination, and that DMV did not demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. The Conditional Determination accepted DMV's corrective action of rescinding approximately 17,000 noncompliant non-domiciled CLPs and CDLs *within the mutually agreed-upon 60-day timeframe*. The Conditional Determination also emphasized, among other requirements, that the timely rescission of all unexpired non-domiciled CLPs and CDLs that failed to meet the requirements of parts 383 and 384, as interpreted by FMCSA, at the time of issuance is critically important to the overall framework of the required corrective action plan. As outlined in the Conditional Determination, "DMV's failure to rescind and reissue all noncompliant non-domiciled CLPs and CDLs, including those issued to citizens of Canada and Mexico not present under the DACA program, will render its overall corrective action plan materially deficient and wholly inadequate to correct the deficiencies noted in the Preliminary Determination."

The Conditional Determination also noted that the corrective action plan set forth in the Preliminary Determination required DMV to pause all non-domiciled CLP and CDL issuances immediately but that DMV failed to do so by continuing to upgrade non-domiciled CDLs by removing the K (intrastate only) restriction from the licenses of drivers upon their 21st birthday.[8] The Conditional Determination further informed DMV that its failure to implement, or undue delay in implementing, the required corrective actions would result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of certain Federal-aid Highway funds as well as possibly decertifying of California's CDL program. At no time did FMCSA approve an extension of the mutually agreed-upon January 5, 2026 cancellation date for the 17,000 noncompliant non-domiciled CDLs.

On December 10, 2025, DMV submitted a "Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance" (December Response). As explained in Section II below, DMV's December Response described its corrective action plan and asserted that it has complied with FMCSA's corrective action requests. DMV explained that it issued notices to approximately 17,400 drivers, stating that it would cancel their non-domiciled CDL in 60 days if they could not present evidence of lawful presence meeting or exceeding the expiration date of their CDL. DMV's December Response explained that the 60-day period provided in the November 6, 2025 cancellation notices would expire on January 5, 2026. DMV stated that any remaining non-compliant licenses that were noticed on November 6, 2025 would be canceled and recorded in CDLIS on January 5, 2026.

FMCSA and DMV representatives continued to communicate, allowing California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as discuss DMV's license issuance process. On December 24, 2025, DMV informed FMCSA that the recission date of January 5, 2026 needed to be changed to March 6, 2026. On December 30, 2025, without reaching a mutually agreed upon date with FMCSA other than January 5, 2026, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026. FMCSA subsequently reiterated to DMV that an extension was not approved and that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan.

## II. California's December Response to FMCSA's Conditional Determination and Corrective Actions

FMCSA's Preliminary Determination set forth specific corrective actions DMV must undertake to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312. The required corrective actions centered on DMV immediately pausing issuance of non-domiciled CLPs and CDLs; identifying non-domiciled CLPs and CDLs that were not issued in accordance with

[8] The Conditional Determination cited a transaction that occurred on October 15, 2025, when DMV upgraded the non-domiciled CDL of a driver by removing the K restriction. The Conditional Determination went on to state that on October 21, 2025, this driver operated a semi-truck on a California freeway, struck a queue of stopped vehicles, and fatally injured three people and that the crash may have been avoided if California had complied with the corrective action of pausing non-domiciled CDL issuance required in the Preliminary Determination.

FMCSA's standards; conducting an internal audit to identify the reasons for noncompliance and notifying FMCSA of its findings; immediately acting to correct the deficiencies identified in the internal audit; acting to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs; and reissuing the licenses subject to the standards in parts 383 and 384 in effect at the time of the reissuance.[9] DMV would be permitted to resume non-domiciled CLP and CDL issuance only after becoming able to meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.[10] Under 49 CFR § 384.307(c), DMV's corrective action must be adequate to correct the deficiencies noted in the Preliminary Determination and must be implemented on a schedule mutually agreed upon by FMCSA and DMV.

In its December Response, DMV continued to assert that FMCSA's regulations did not require California to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents, though DMV acknowledged that California State law includes such a requirement. DMV continued to argue that it interprets 49 CFR § 383.23(b)(1) to permit issuance of non-domiciled CLPs and CDLs to citizens of Mexico and Canada so long as they do not have a license from those jurisdictions and present the documentation required under 49 CFR §§ 383.71(f) and 383.73(f). The December Response also disputes FMCSA's interpretation of the regulations that the removal of a K (intrastate only) "restriction" is an upgrade and contends that it did not fail to pause issuance of non-domiciled CLPs and CDLs immediately.[11] FMCSA previously addressed these arguments in the Preliminary Determination and in the Conditional Determination and reaffirms the Agency's positions set forth therein.

In addition, DMV's December Response recites the corrective actions that it has implemented or intends to implement. DMV explained that upon receipt of the Preliminary Determination, it complied with the corrective action requiring an immediate pause in issuing non-domiciled CLPs and CDLs and that no non-domiciled CLPs or CDLs have been issued since FMCSA's September 26, 2025 letter. Yet, DMV goes on to state that it ceased automatically removing the K restriction from all CDLs on October 30, 2025 and that it reinstated the K restrictions it had removed. DMV also reported that it completed an audit of approximately 65,000 records of non-domiciled CDL holders and has identified all unexpired non-domiciled CDLs that were issued out of compliance with parts 383 and 384. In this regard, DMV advised that it identified approximately 20,100 non-domiciled CDLs where the expiration date on the CDL exceeded the driver's legal presence documentation at the time of issuance, and further identified approximately 1,600 CDLs that were issued to Mexican and Canadian nationals who were not

[9] Preliminary Determination at Sec. IV.

[10] *Id*.

[11] DMV states that FMCSA did not convey the Agency's position that removal of a "K" restriction constitutes an upgrade until October 23, 2025. However, under 49 CFR part 383, in effect at the time California lifted the restriction, removal of a restriction that would result in an *expansion* of the license holder's driving privileges, such as removal of the "K" intrastate only restriction, was an upgrade. This was not a new position. At the time the upgrade occurred, the corrective action plan required DMV to pause all non-domiciled CLP and CDL issuances. If California had complied with the corrective action of pausing non-domiciled CDL issuance required in the Preliminary Determination, the driver, supra note 8, would not have held an interstate CDL, and the crash may have been avoided. As stated in the Conditional Determination, DMV upgraded this driver's non-domiciled CDL without applying the standards of the IFR, which was in effect at the time the upgrade occurred. If DMV had applied the standards of the IFR, as required at the time, the driver would have been ineligible for a non-domiciled CDL.

present in the United States under the DACA program and, therefore, were ineligible to hold a non-domiciled CDL. DMV also stated that it would send the 1,600 Mexican and Canadian non-domiciled CDL holders who are not present under DACA 60-day cancellation notices on December 15, 2025, which would have been effective on February 13, 2026.

Further, regarding DMV's practice of issuing temporary non-domiciled CLPs or CDLs before validating the driver's lawful presence, DMV notes that those temporary CLPs and CDLs in effect as of September 26, 2025 have expired, because those credentials were only valid for a maximum of 60 days. DMV also notes that DMV has stopped issuing temporary CLPs and CDLs for both standard and non-domiciled CDLs.

Moreover, DMV advised that it audited its procedures and systems and identified various programming and computer errors that resulted in the deficiencies FMCSA outlined in its Preliminary Determination letter. More specifically, DMV explained that DMV system automation resulted in the faulty calculation of non-domiciled CDL expiration dates. DMV explained that it issued non-domiciled credentials to non-DACA Mexican and Canadian citizens because it misunderstood FMCSA's determination that States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada, because FMCSA has determined that the Canadian Provinces and Territories and the United Mexican States issue CDLs in accordance with standards that are consistent with 49 CFR part 383.[12] DMV attributes its issuance of temporary or interim credentials to California law and field office procedure. DMV pledged to update and end these practices and described its efforts to correct these deficiencies.

In its December Response, DMV confirmed that it issued cancellation notices to approximately 17,400 drivers on November 6, 2025, informing the drivers that it would cancel their CDLs in 60 days if they could not present evidence of their lawful presence meeting or exceeding the expiration date of their CDLs. DMV explained that the 60-day period provided in the cancellation notices would expire on January 5, 2026. DMV stated that any remaining non-compliant licenses that were noticed on November 6, 2025 would be canceled and recorded in CDLIS on January 5, 2026.

Following the December Response, FMCSA and DMV representatives continued to communicate, allowing DMV an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as to discuss DMV's license issuance process. On December 18, 2025, FMCSA advised DMV that any extension of the initial January 5, 2026 revocation deadline must be submitted in writing, because this would deviate from the commitment outlined in the December Response. In a December 22, 2025 follow-up email, FMCSA explicitly asked DMV whether it changed its position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated. FMCSA again directed DMV to notify FMCSA in writing of a proposed extension of the deadline. On December 24, 2025, DMV informed FMCSA that due to ongoing dialogue between DMV and FMCSA, the recission date of January 5, 2026 would need to be changed. DMV subsequently advised that it would move the cancellation date to March 6, 2026, to allow time for the parties to work through the compliance process and FMCSA's requested follow-up inquiries.

[12] *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

On December 30, 2025, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026.[13] DMV advised the public that impacted drivers will receive letters shortly informing them of the extension.[14] DMV did so without assent from FMCSA. In an email on the same date, FMCSA advised DMV that an extension to March 6, 2026 was unacceptable because extending the timeline for the cancellation of improperly issued CLPs and CDLs is a continuing safety concern. The following day, DMV responded that it did not initially receive a response to its December 24, 2025 proposed extension. Rather than following up with FMCSA by email or requesting a meeting, as DMV has done in the past, DMV instead decided to issue a press release informing the public of the extension to March 6, 2026. To date, DMV has not issued a retraction of its December 30, 2025 press release.

Regarding the actions DMV has taken as outlined above and the others it committed to take in the December Response, FMCSA acknowledges DMV's attempts at coming into compliance with FMCSA's designated corrective actions. However, as stated in the Conditional Determination, DMV cannot demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs until it has completed the required corrective actions within the mutually agreed-upon schedule. Prior to FMCSA issuing the Conditional Determination, DMV explicitly stated that it sent the cancellation notices to approximately 17,000 recipients on September 6, 2025, with a deadline on January 5, 2026. These letters were material to the Agency's decision to issue the Conditional Determination because they demonstrated DMV's prompt corrective action to an identified issue. In the December Response, DMV confirmed the deadline date, indicating continued progress toward compliance. However, two weeks later, without seeking approval from FMCSA about its proposed extension, DMV attempted to independently change a key term of its corrective action plan and the mutually agreed upon timeline; and did so, in a press release. DMV moved the anticipated deadline two months later to March 6, 2026.

Moreover, DMV's January 5, 2026 commitment to rescind the noncompliant non-domiciled credentials was not the only commitment to corrective action DMV has failed to deliver upon. In DMV's December Response, DMV asserted that "the 60-day period for the non-domiciled CDL cancellation notices scheduled to be sent on December 15, 2025, will expire on February 13, 2026."[15] FMCSA has discovered the following language in an FAQ heralding a "60-Day Extension for Approximately 17,000 Nondomiciled CDLs" on DMV's website: question, "When will DMV cancel my CDL?"[16] Response, "DMV is extending the cancellation dates of January

---

[13] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026); *California DMV Extends Date of Nondomiciled CDL Action*, State of California DMV, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action (last visited Jan. 7, 2026).

[14] *Id*.

[15] December Response, at 7.

[16] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026).

5, 2026 and February 13, 2026 to close of business, March 6, 2026."[17] DMV failed to mention in its correspondence with FMCSA between December 18 and 31, 2025 that it also planned to extend the cancellation dates of additional drivers whose non-domiciled CDLs were scheduled to be cancelled on February 13, 2026. FMCSA opposes this extension as well and urges DMV, as an important safety partner, to honor its initial commitments to complete these vital corrective actions by the dates that FMCSA and DMV mutually agreed upon, January 5 and February 13, 2026, respectively.

FMCSA acknowledges that DMV has implemented or indicates that it plans to implement some of the corrective actions required in the Preliminary Determination. However, as DMV is aware, the rescission and reissuance of all unexpired noncompliant non-domiciled CLPs and CDLs in accordance with parts 383 and 384, in effect at the time of reissuance, is critically important to the overall framework of the required corrective action plan. DMV acknowledges that more than 65,000 drivers held a California-issued non-domiciled CLP or CDL. Of those, DMV identified approximately 20,100 non-domiciled CDLs that expire past the date of the driver's legal presence at the time of license issuance; and of those, 17,400 were scheduled to be cancelled on January 5, 2026, with a remaining 2,700 scheduled to be cancelled on February 13, 2026. As FMCSA has already noted, these corrective actions were the basis for FMCSA's issuance of a Conditional Determination, a mutual recognition that DMV was moving toward coming into compliance with parts 383 and 384, while acknowledging DMV has more work to do.[18]

DMV is well aware of its obligation to not only provide documentation of corrective action as required by the Agency, but that corrective action must be adequate to correct the deficiencies noted in the program review and be implemented on a schedule mutually agreed upon by the Agency and the State.[19] DMV failed to implement the crucial corrective action of rescinding and reissuing the licenses in accordance with 49 CFR § 384.212, FMCSA and DMV's mutually agreed upon timeline, and DMV's own commitments. Instead, DMV unilaterally extended the timeline for cancellation of improperly issued CLPs and CDLs, flouted the mutually agreed upon terms of the State's corrective action, and is in substantial non-compliance with parts 383 and 384. As a result, thousands of drivers continue to hold noncompliant California-issued non-domiciled CLPs or CDLs. This is unacceptable and a significant safety risk. Because DMV has failed to undertake the necessary step of rescinding and reissuing noncompliant non-domiciled CLPs and CDLs, as promised and agreed upon, FMCSA determines that DMV's corrective actions undertaken thus far are inadequate to correct the deficiencies noted in the Preliminary Determination.

---

[17] *Id*.

[18] FMCSA has repeatedly requested an audit report identifying every driver to whom DMV has issued a non-compliant CLP or CDL. However, DMV only agreed to provide a sample of the identified drivers, which is inadequate for FMCSA to verify compliance. FMCSA also requested details to verify that DMV did not issue any non-domiciled CLPs or CDLs between September 29, and October 28, 2025, but DMV refused to provide details to demonstrate compliance during this period. Furthermore, DMV has not provided the required details regarding the approximately 2,000 drivers who achieved U.S. citizenship or permanent residency prior to the January 5, 2026 deadline, the sustainability of DMV's short-term solution, or realistic timeframes for implementation of the long-term programmatic changes.

[19] 49 CFR 384.307(c).

## III. Withholding of Funds Based on Noncompliance

FMCSA determines that DMV has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212 and the standards for reporting "temporary" or "interim" non-domiciled CLP and CDL issuance to CDLIS in 49 CFR § 384.225. Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $158,318,508. Under 49 U.S.C. § 31314(d) and 49 CFR § 384.403, funds withheld following a substantial noncompliance determination are no longer available for apportionment to California. Further, DMV may also be subject to decertification of its CDL program in accordance with 49 U.S.C. § 31312 and 49 CFR § 384.405.

If DMV persists in substantial noncompliance with the standards set forth in 49 CFR §§ 384.212 and 384.225 in subsequent years, FMCSA may withhold up to eight percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2028 that would otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $316,637,016.[20]

## IV. Conclusion

FMCSA is deeply disappointed by DMV's failure to implement *all* required corrective actions set forth in the Preliminary Determination. The withholding of Federal funds is the direct and necessary consequence of California's own actions and its demonstrated disregard for Federal safety standards. The Agency remains committed to working with DMV officials to bring California's CDL program into substantial compliance to ensure that further withholding of funds or decertification of California's CDL program is unnecessary.

Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[20] FMCSA calculates this amount based on FY 2026 funding levels.

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, S.E.**
**Washington, D.C. 20590**

December 1, 2025

Via Electronic Mail and UPS
The Honorable Tim Walz
Governor of Minnesota
130 State Capitol
75 Rev Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

Bob Jacobson, Commissioner
Minnesota Department of Public Safety
Driver and Vehicle Services
445 Minnesota Street
Suite 195, Town Square Building
Saint Paul, MN 55101

Dear Governor Walz and Commissioner Jacobson:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Minnesota Department of Public Safety's Driver and Vehicle Services (DVS) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Minnesota's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Minnesota. In this regard, FMCSA found that DVS issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the DACA program, issued non-domiciled CDLs to lawful permanent residents who should have been issued regular CDLs, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Minnesota has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Minnesota must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of DVS's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DVS was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Minnesota's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DVS informed FMCSA that its records reflect that Minnesota has issued 2117 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 75 records of drivers that DVS issued a non-domiciled CDL. Twenty-five[15] of the driver records sampled—approximately 33 percent—failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found 16 transactions where DVS issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found three transactions where DVS issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program. Moreover, as described in section III(c) below, FMCSA found three transactions where DVS issued non-domiciled CLPs or CDLs to lawful permanent residents of the United States, who are eligible for regular CDLs. Finally, as section III(d) explains, FMCSA found five transactions where DVS issued non-domiciled CLPs or CDLs without providing evidence of lawful presence verification.

During the 2025 APR, DVS was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DVS has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DVS's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

[15] One driver record, VH, had two violations listed separately in sections III(a) and III(b). Accordingly, there are 26 errors listed in in sections III(a) – (d) below.

**a. Finding: 49 CFR § 384.212— DVS Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that 16 of the driver records sampled showed that DVS issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On August 28, 2025, DVS issued a non-domiciled CDL with an expiration date of March 11, 2028 to a driver with the initials "VH" who is a citizen of Mexico. At the time the transaction occurred, VH's EAD credential showed an expiration date of August 24, 2026. However, DVS issued a non-domiciled CDL with an expiration date of March 11, 2028, nearly *two years* after the EAD's expiration date.[16]

2. On November 21, 2024, DVS issued a non-domiciled CDL with an expiration date of December 27, 2027 to a driver with the initials "JLT" who is a citizen of El Salvador. At the time the transaction occurred, JLT presented an EAD credential showing an expiration date of March 9, 2025. However, DVS issued a non-domiciled CDL with an expiration date of December 27, 2027, more than *two years* after the EAD's expiration date.

3. On December 16, 2024, DVS issued a non-domiciled CDL with an expiration date of March 13, 2028 to a driver with the initials "AAB" who is a citizen of Somalia. At the time the transaction occurred, AAB presented an EAD credential showing an expiration date of June 25, 2025. However, DVS issued a non-domiciled CDL with an expiration date of March 13, 2028, more than *two years* after the EAD's expiration date..

4. On December 17, 2024, DVS issued a non-domiciled CDL with an expiration date of November 1, 2028 to a driver with the initials "BI" who is a citizen of Ukraine. At the time the transaction occurred, BI presented an EAD credential showing an expiration date of October 23, 2025. However, DVS issued a non-domiciled CDL with an expiration date of November 1, 2028, more than *three years* after the EAD's expiration date. On August 25, 2025, DVS sent a letter to BI explaining that the lawful presence document presented was set to expire on October 23, 2025. The letter requested additional proof of BI's lawful presence in the United States. However, DVS provided no evidence demonstrating either that BI produced the required documents or that DVS downgraded BI's non-domiciled CDL.

5. On July 15, 2024, DVS issued a non-domiciled CDL with an expiration date of January , 2029 to a driver with the initials "AH" who is a citizen of Somalia. At the time the transaction occurred, AH presented an EAD credential showing an expiration date of June 21, 2025. However, DVS issued a non-domiciled CDL with an expiration date of January 1, 2029, more than *three years* after the EAD's expiration date.

---

[16] The driver also appears in section III(b) because they are ineligible for a non-domiciled CDL as a citizen of Mexico not present in the United States under DACA.

6. On October 24, 2024, DVS issued a non-domiciled CDL with an expiration date of January 1, 2029 to a driver with the initials "AA" who is a citizen of Saudi Arabia. At the time the transaction occurred, AA presented an EAD credential showing an expiration date of December 7, 2028. However, DVS issued a non-domiciled CDL with an expiration date of January 1, 2029, more than three weeks after the EAD's expiration date.

7. On July 30, 2024, DVS issued a non-domiciled CDL with an expiration date of February 18, 2029 to a driver with the initials "OH" who is a citizen of Ukraine. At the time the transaction occurred, OH presented a foreign passport with an expiration date of November 14, 2027 and a Form I-94 showing an admit until date of January 9, 2026. However, DVS issued a non-domiciled CDL with an expiration date of February 18, 2029, more than a year after the passport's expiration date and more than *three years* after the Form I-94's admit until date.

8. On August 11, 2025, DVS issued a non-domiciled CDL with an expiration date of February 19, 2029 to a driver with the initials "JN" who is a citizen of New Zealand. At the time the transaction occurred, JN presented an unexpired foreign passport and a Form I-94 showing an admit until date of "D/S" or "Duration of Status," indicating JN's legal presence is valid if his Exchange Visitor Status (J1) is valid. DVS also provided a copy of JN's Form DS2019, Certification of Eligibility for Exchange Visitor Status (J-Nonimmigrant), showing a "Form Covers Period" from April 1, 2025 to November 30, 2025. However, DVS issued a non-domiciled CDL with an expiration date of February 19, 2029, more than *three years* after JN's lawful presence document is set to expire.

9. On May 22, 2025, DVS issued a non-domiciled CDL with an expiration date of May 1, 2029 to a driver with the initials "MH" who is a citizen of Somalia. At the time the transaction occurred, MH presented an EAD credential showing an expiration date of April 19, 2025. However, DVS issued a non-domiciled CDL with an expiration date of May 1, 2029, more than *four years* after the EAD's expiration date.

10. On February 3, 2025, DVS issued a non-domiciled CDL with an expiration date of May 2, 2029 to a driver with the initials "SH" who is a citizen of Somalia. At the time the transaction occurred, SH presented an EAD credential showing an expiration date of November 19, 2028. However, DVS issued a non-domiciled CDL with an expiration date of May 2, 2029, more than *five months* after the EAD's expiration date.

11. On July 29, 2025, DVS issued a non-domiciled CDL with an expiration date of May 10, 2029 to a driver with the initials "MA" who is a citizen of Somalia. At the time the transaction occurred, MA presented an EAD credential showing an expiration date of May 6, 2028. However, DVS issued a non-domiciled CDL with an expiration date of May 10, 2029, more than *one year* after the EAD's expiration date.

12. On March 26, 2025, DVS issued a non-domiciled CDL with an expiration date of May 16, 2029 to a driver with the initials "OM" who is a citizen of Ukraine. At the time the transaction occurred, OM presented an EAD credential showing an expiration date of

April 19, 2025. However, DVS issued a non-domiciled CDL with an expiration date of May 16, 2029, more than *four years* after the EAD's expiration dated.

13. On December 3, 2024, DVS issued a non-domiciled CDL with an expiration date of July 13, 2029 to a driver with the initials "SA" who is a citizen of Kenya. At the time the transaction occurred, SA presented an EAD credential showing an expiration date of March 17, 2029. However, DVS issued a non-domiciled CDL with an expiration date of July 13, 2029, more than *three months* after the EAD's expiration date.

14. On April 29, 2025, DVS issued a non-domiciled CDL with an expiration date of September 22, 2029 to a driver with the initials "AP" who is a citizen of South Africa. At the time the transaction occurred, AP presented an unexpired foreign passport and a Form I-94 showing a "Valid Until" date of December 31, 2025. However, DVS issued a non-domiciled CDL with an expiration date of September 22, 2029, more than *three years* after AP's lawful presence document is set to expire.

15. On March 13, 2025, DVS issued a non-domiciled CDL with an expiration date of October 31, 2029 to a driver with the initials "IP" who is a citizen of Ukraine. At the time the transaction occurred, IP presented an unexpired foreign passport and a Form I-94 showing an admit until date of October 16, 2026. However, DVS issued a non-domiciled CDL with an expiration date of October 31, 2029, more than three years after IP's lawful presence document is set to expire.

16. On September 9, 2025, DVS issued a non-domiciled CDL with an expiration date of December 31, 2029 to a driver with the initials "ASA" who is a citizen of Somalia. At the time the transaction occurred, ASA presented an EAD credential showing an expiration date of May 16, 2029. However, DVS issued a non-domiciled CDL with an expiration date of December 31, 2029, more than *seven months* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DVS Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that DVS issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On August 4, 2025, DVS issued a non-domiciled CDL with an expiration date of December 2, 2025 to a driver with the initials "JBF" who is a citizen of Mexico. At the time the transaction occurred, JBF presented an unexpired EAD credential confirming their Mexican citizenship. However, DVS provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On August 28, 2025, DVS issued a non-domiciled CDL with an expiration date of March 11, 2028 to a driver with the initials "VH" who is a citizen of Mexico. At the time the transaction occurred, VH presented an unexpired EAD credential confirming their

Mexican citizenship. DVS provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On February 13, 2025, DVS issued a non-domiciled CDL with an expiration date of February 8, 2029 to a driver with the initials "WML" who is a citizen of Mexico. At the time the transaction occurred, WML presented an unexpired EAD credential that confirmed their Mexican citizenship. DVS provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—DVS Issued Non-Domiciled CLPs or CDLs to Lawful Permanent Residents of the United States.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that DVS issued a non-domiciled CLP or CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transactions at issue are set forth below.

1. On March 25, 2024, DVS issued a non-domiciled CDL with an expiration date of April 1, 2028 to a driver with the initials "MB." At the time the transaction occurred, MB presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DVS was required to issue MB a regular CDL; however, DVS erroneously issued a non-domiciled CDL.

2. On February 6, 2024, DVS issued a non-domiciled CDL with an expiration date of May 31, 2028 to a driver with the initials "AF." At the time the transaction occurred, AF presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DVS was required to issue AF a regular CDL; however, DVS erroneously issued a non-domiciled CDL.

3. On September 9, 2025, DVS issued a non-domiciled CDL with an expiration date of February 20, 2029 to a driver with the initials "GA." At the time the transaction occurred, GA presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DVS was required to issue GA a regular CDL; however, DVS erroneously issued a non-domiciled CDL.

**d. Finding: 49 CFR § 384.212—DVS Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification.**

During the 2025 APR, FMCSA discovered that five of the driver records sampled showed that DVS issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On August 21, 2025, DVS issued a non-domiciled CDL with an expiration date of December 19, 2025 to a driver with the initials "KM" who is a citizen of Somalia. At the

time the transaction occurred, KM presented an expired EAD credential showing an expiration date of June 12, 2025 and a Form I-94 noting that KM was granted indefinite asylum status by an immigration judge on November 15, 2024. However, DVS did not provide any evidence that KM presented an unexpired foreign passport or unexpired EAD at the time the transaction occurred, as required under 49 CFR § 383.71(f). In addition, despite KM presenting an expired EAD, DVS provided no evidence of a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[17] or other USCIS approved verification system, showing that of KM's EAD had been renewed. Regardless, DVS issued a non-domiciled CDL with an expiration date of December 19, 2025.

2. On June 20, 2024, DVS issued a non-domiciled CDL with an expiration date of April 11, 2028 to a driver with the initials "QF" who is a citizen of South Africa. At the time the transaction occurred, QF presented an unexpired foreign passport and an expired Form I-94 showing an admit until date of December 15, 2023. However, DVS did not provide any evidence that QF presented an unexpired Form I-94 or unexpired EAD. In addition, despite QF presenting an expired Form I-94, DVS provided no evidence of a SAVE query report, or query report from another USCIS approved verification system, validating QF's lawful presence prior to issuing the non-domiciled CDL. Regardless, DVS issued a non-domiciled CDL with an expiration date of April 11, 2028. Although DVS later recognized its error and issued a letter, dated September 17, 2025, downgrading QF's non-domiciled CDL for failing to provide proof of citizenship or lawful residency, DVS allowed the driver to improperly hold a non-domiciled CDL for more than *one year*, from June 20, 2024 to September 17, 2025.

3. On September 12, 2025, DVS issued a non-domiciled CDL with an expiration date of January 10, 2026 to a driver with the initials "IMK" who is a citizen of Somalia. At the time the transaction occurred, IMK presented an expired EAD credential showing an expiration date of July 13, 2025. DVS did not provide any evidence that IMK presented an unexpired EAD or an unexpired foreign passport accompanied by an approved Form I-94, as required under 49 CFR § 383.71(f) at the time the transaction occurred. In addition, despite IMK presenting an expired EAD, DVS provided no evidence of a SAVE query report, or query report from another USCIS approved verification system, showing that of IMK's EAD had been renewed. Regardless, DVS issued a non-domiciled CDL with an expiration date of January 10, 2026.

4. On July 7, 2025, DVS issued a non-domiciled CDL with an expiration date of April 10, 2028 to a driver with the initials "IK" who is a citizen of Ukraine. At the time the transaction occurred, IK presented an expired EAD credential with an expiration date of February 24, 2025. DVS did not provide any evidence that IK presented an unexpired EAD or an unexpired foreign passport accompanied by an approved Form I-94, as

---

[17] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

required under 49 CFR § 383.71(f) at the time the transaction occurred. In addition, despite IK presenting an expired EAD, DVS provided no evidence of a SAVE query report, or query report from another USCIS approved verification system, showing that of IK's EAD had been renewed. Regardless, DVS issued a non-domiciled CDL with an expiration date of April 10, 2028.

5. On September 17, 2025, DVS issued a non-domiciled CDL with an expiration date of November 10, 2025 to a driver with the initials "MP" who is a citizen of Bulgaria. At the time the transaction occurred, MP presented an unexpired foreign passport, a stamp of admission into the United States with an admit until date of November 10, 2024, and an H2B visa with an expiration date of October 31, 2024. DVS did not provide any evidence that MP presented an approved Form I-94 to accompany the unexpired foreign passport, or an unexpired EAD, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Regardless, DVS issued a non-domiciled CDL with an expiration date of November 10, 2025.

## IV. Required Corrective Action

As noted above, approximately 2117 drivers hold an unexpired non-domiciled CLP or CDL issued by DVS. In light of the systemic errors and deficiencies in DVS's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Minnesota must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the

State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

### V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

### VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Minnesota under 23 U.S.C. § 104(b)(1) and (2).[18] Accordingly, upon a final determination of substantial noncompliance, Minnesota risks losing up to approximately $30,400,000 for FY 2027.[19] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Minnesota risks losing up to approximately $60,800,000 in the second and subsequent FY(s) of noncompliance.[20] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Minnesota.[21]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Minnesota's CDL program. Decertification of Minnesota's CDL program would

[18] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[19] FMCSA estimates this amount based on FY 2026 funding levels.

[20] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[21] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DVS is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[22]

## VII. Conclusion

The 2025 APR uncovered 25 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DVS must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Minnesota is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Minnesota come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DVS in resolving these serious issues.

Please note that this letter addresses noncompliance with DVS's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[22] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE
Washington, D.C. 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Gretchen Whitmer
Governor of Michigan
Office of the Governor
George W. Romney Building
111 South Capitol Avenue
Lansing, MI 48909

Jocelyn Benson
Michigan Secretary of State
430 W. Allegan Street
Richard H. Austin Building, 4th Floor
Lansing, MI 48918

Dear Governor Whitmer and Secretary Benson:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Michigan Department of State's (DOS) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Michigan's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Michigan. In this regard, FMCSA found that DOS issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383, and issued a non-domiciled CDL to a lawful permanent resident who should have been issued a regular CDL. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Michigan has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Michigan must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of the Michigan DOS's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, the DPS was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated Michigan's 2025 APR during September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. DOS informed FMCSA, during the 2025 APR, that its records reflect that Michigan has issued 1,657 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 75 records of drivers that DOS issued a non-domiciled CDL. Five of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

The 2025 APR uncovered evidence of procedural and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found two transactions where DOS issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. As explained in greater detail in section III(b) below, of the driver records sampled, FMCSA found two transactions where DOS issued a non-domiciled CDL but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3). In addition, as set forth in section III(c) below, FMCSA found one transaction where DOS issued a non-domiciled CDL to a lawful permanent resident of the United States, who was eligible for a regular CDL.

During the 2025 APR, DOS was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DOS has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DOS's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—DOS Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DOS issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On June 25, 2025, DOS issued a non-domiciled CDL with an expiration date of June 25, 2026 to a driver with the initials "AGR" who is a citizen of Cuba. At the time the transaction occurred, AGR's EAD credential showed an expiration date of July 28, 2025. DOS queried USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[12] which confirmed AGR's EAD expiration date of July 28, 2025. However, DOS issued a non-domiciled CDL with an expiration date of June 25, 2026, nearly *eleven months* after the EAD's expiration date.

2. On June 30, 2025, DOS issued a non-domiciled CDL with an expiration date of June 30, 2026 to a driver with the initials "RS" who is a citizen of India. At the time the transaction occurred, RS presented an EAD credential showing an expiration date of July 27, 2025. DOS queried SAVE, which confirmed RS's EAD expiration date of

[12] The Systematic Alien Verification for Entitlements (SAVE) system is a service run by U.S. Citizenship and Immigration Services that "helps Federal, State and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP & IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

July 27, 2025. However, DOS issued a non-domiciled CDL with an expiration date of June 30, 2026, more than *eleven months* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DOS Issued Non-Domiciled CLPs or CDLs to Drivers Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DOS issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On January 16, 2025, DOS issued a non-domiciled CDL with an expiration date of January 5, 2026, to a driver with the initials "VS" who is a citizen of Russia. At the time the transaction occurred, VS presented an unexpired foreign passport and a Form I-20 Certificate of Eligibility for Nonimmigrant Student Status. DOS did not provide any evidence that VS presented a Form I-94 documenting their most recent entry into the United States, or an unexpired EAD credential, as required under 49 CFR § 383.71(f). DOS provided FMCSA a printout of a screen showing notes labeled "SAVE Initial Verification Response," that DOS obtained at the time the transaction occurred. The SAVE notes provided no information to justify issuing a non-domiciled CDL with an expiration date of January 5, 2026. Regardless, DOS issued a non-domiciled CDL with an expiration date of January 5, 2026.

2. On September 25, 2023, DOS issued a non-domiciled CDL with an expiration date of November 7, 2027, to a driver with the initials "KA" who is a citizen of Kazakhstan. At the time the transaction occurred, KA presented an unexpired foreign passport and a Form I-20 Certificate of Eligibility for Nonimmigrant Student Status. DOS did not provide any evidence that KA presented a Form I-94 to accompany the unexpired foreign passport or an unexpired EAD credential, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Further, DOS queried SAVE, which showed that no employment was authorized. Regardless, DOS issued a non-domiciled CDL with an expiration date of November 7, 2027.

**c. Finding: 49 CFR § 384.212—DOS Issued a Non-Domiciled CDL to a Lawful Permanent Resident of the United States.**

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that DOS issued a non-domiciled CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transaction at issue is set forth below.

1. On April 23, 2025, DOS issued a non-domiciled CDL with an expiration date of April 23, 2026 to a driver with the initials "AA." At the time the transaction occurred, AA presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 and 383.73, DOS was required to issue AA a regular

CDL; however, DOS erroneously issued a non-domiciled CDL with an expiration date of April 23, 2026.

## IV. Required Corrective Action

As noted above, approximately 1,657 drivers hold an unexpired CLP or CDL issued by the Michigan DOS. In light of the errors and deficiencies in DOS's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Michigan must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or

rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of corrective action as required by FMCSA. In addition, the corrective actions may be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Michigan under 23 U.S.C. § 104(b)(1) and (2).[13] Accordingly, upon a final determination of substantial noncompliance, Michigan risks losing up to approximately $48,065,000 for FY 2027.[14] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Michigan risks losing up to approximately $96,131,000 in the second and subsequent FY(s) of noncompliance.[15] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Michigan.[16]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Michigan's CDL program. Decertification of Michigan's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DOS is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[17]

## VII. Conclusion

The 2025 APR uncovered five non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DOS must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or

[13] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[14] FMCSA estimates this amount based on FY 2026 funding levels.

[15] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[16] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[17] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Michigan is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Michigan come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DOS in resolving these serious issues.

Please note that this letter addresses noncompliance with DOS's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, SE**
**Washington, DC 20590**

December 11, 2025

Via Electronic Mail and UPS
The Honorable Daniel McKee
Governor of Rhode Island
Office of the Governor
82 Smith Street
Providence, RI 02903

Mr. Thomas Verdi, Director
Rhode Island Department of Revenue
Division of Motor Vehicles
One Capitol Hill, 1st Floor
Providence, RI 02908

Dear Governor McKee and Mr. Verdi:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the Rhode Island Department of Revenue, Division of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Rhode Island's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Rhode Island. In this regard, FMCSA found that DMV issued a non-domiciled CDL to a citizen of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Rhode Island has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Rhode Island must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id*. at 18759-60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1) (2024).

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in

Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Rhode Island's 2025 APR in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DMV informed FMCSA that its records reflect that Rhode Island has issued 193 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 50 records of drivers issued a non-domiciled CDL by DMV. One of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

As explained in greater detail in section III(a) below, the 2025 APR uncovered evidence of at least one transaction where DMV issued a non-domiciled CDL to an individual ineligible for that credential due to their status as a citizen of Mexico not present in the United States under the DACA program. This transaction indicates that DMV has not programmed its systems with sufficient measures to prevent such an error from occurring. The noncompliant transaction is discussed in greater detail below. FMCSA will provide electronic documentation of the transaction through the State Compliance Records Enterprise (SCORE) system.

### a. Finding: 49 CFR § 384.212—The Rhode Island DMV Issued a Non-Domiciled CDL to a Citizen of Mexico.

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that DMV issued a non-domiciled CDL to a driver who, as a citizen of Mexico not present in the United States under the DACA program, was ineligible to receive a non-domiciled CDL. The transaction at issue is set forth below.

1. On February 4, 2025, DMV issued a non-domiciled CDL with an expiration date of December 27, 2025 to a driver with the initials "FT" who is a citizen of Mexico. At the time the transaction occurred, FT presented an EAD credential with an expiration date of January 22, 2030. FT's EAD credential showed the driver was from Mexico. DMV provided no evidence showing that FT is present in the United States under the DACA program, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

## IV. Required Corrective Action

Approximately 193 drivers hold an unexpired CLP or CDL issued by DMV. In light of DMV's erroneous issuance of a non-domiciled CDL uncovered by the 2025 APR, FMCSA determines that Rhode Island must take the following actions:

---

effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take

into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Rhode Island under 23 U.S.C. § 104(b)(1) and (2).[15] Accordingly, upon a final determination of substantial noncompliance, Rhode Island risks losing up to approximately $10,200,000 for FY 2027.[16] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Rhode Island risks losing up to approximately $20,400,000 in the second and subsequent FY(s) of noncompliance.[17] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Rhode Island.[18]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Rhode Island's CDL program. Decertification of Rhode Island's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[19]

## VII. Conclusion

The 2025 APR uncovered a non-domiciled CDL issuance sampled by FMCSA that failed to comply with Parts 383 and 384 because DMV issued a non-domiciled CDL to a driver who was not eligible. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiency that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Rhode Island is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Rhode Island come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DMV in resolving these serious issues.

---

[15] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[16] FMCSA estimates this amount based on FY 2026 funding levels.

[17] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[18] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[19] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

December 12, 2025

Via Electronic Mail and UPS
The Honorable Kathy Hochul
Governor of New York State
NYS State Capitol Building
Albany, NY 12224

Mark J.F. Schroeder, Commissioner
New York Department of Motor Vehicles
6 Empire State Plaza
Albany, NY 12220

Dear Governor Hochul and Commissioner Schroeder:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In July 2025, FMCSA initiated an Annual Program Review (APR) of the New York Department of Motor Vehicles' (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of systemic policy and procedural errors in New York's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within New York. In this regard, FMCSA found that DMV issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States and issued non-domiciled CDLs to drivers without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that New York has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. New York must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id*. at 18759-60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated New York's 2025 APR in July 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. DMV informed FMCSA that its records reflect that New York has issued 32,606 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 200 records of drivers issued a non-domiciled CDL by DMV. As explained in greater detail in section III below, of the 200 driver records sampled, FMCSA found 107 records—approximately 53 percent— that failed to comply with requirements in 49 CFR Parts 383 and 384.

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. In this regard, FMCSA found 101 driver records where DMV issued non-domiciled CLPs and CDLs that exceeded the expiration date of the driver's lawful presence documents. FMCSA learned through discussions with DMV staff during the 2025 APR that this error occurs because DMV only ensures that the expiration date of non-domiciled CLPs and CDLs does not exceed the drivers' legal presence documents, as confirmed in USCIS's online verification service, Systematic Alien Verification for Entitlements[12] (SAVE), if the licenses are REAL ID compliant. However, DMV staff stated that, during issuance of non-domiciled CDLs that are *not* REAL ID compliant, DMV's electronic records system, Common Portal to Search Services (COMPASS), will default to an expiration date that is 8 years from the date of initial issuance.[13]

As explained in greater detail in section III(b) below, of the driver records sampled, FMCSA found six transactions where DMV issued non-domiciled CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, FMCSA discovered that DMV failed to program its systems to ensure that the expiration date of non-REAL ID compliant non-domiciled CLPs and CDLs does not exceed drivers' legal presence. The errors discovered during the 2025 APR indicate a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—The New York DMV Issued Non-Domiciled CLPs or CDLs With an Expiration Date that Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that 101 of the driver records sampled showed that DMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). These transactions are described below.

1. On July 8, 2024, DMV issued a non-domiciled CDL with an expiration date of September 24, 2027 to a driver with the initials "DS." At the time the transaction occurred, DS's EAD credential showed an expiration date of July 5, 2025. However,

[12] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

[13] For example, if DMV issues a class D non-commercial driver's license to a driver with an eight-year expiration and the driver later obtains a CDL, the CDL's expiration date will be the remainder of the eight-year period of validity. If the license is within one year of renewal, DMV will extend the pervious expiration date by eight years.

DMV issued a non-domiciled CDL with an expiration date of September 24, 2027, more than two years after the EAD's expiration date.

2. On July 8, 2024, DMV issued a non-domiciled CDL with an expiration date of September 24, 2027 to a driver with the initials "AB." At the time the transaction occurred, AB's EAD credential showed an expiration date of April 6, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 24, 2027, more than two years after the EAD's expiration date.

3. On October 4, 2024, DMV issued a non-domiciled CDL with an expiration date of May 22, 2029 to a driver with the initials "CS." At the time the transaction occurred, CS's EAD credential showed an expiration date of May 10, 2029. However, DMV issued a non-domiciled CDL with an expiration date of May 22, 2029, more than 10 days after the EAD's expiration date.

4. On February 7, 2025, DMV issued a non-domiciled CDL with an expiration date of May 7, 2032 to a driver with the initials "JM." At the time the transaction occurred, JM's EAD credential showed an expiration date of May 22, 2025. However, DMV issued a non-domiciled CDL with an expiration date of May 7, 2032, more than six years after the EAD's expiration date.

5. On October 17, 2023, DMV issued a non-domiciled CDL with an expiration date of January 12, 2027 to a driver with the initials "KS." At the time the transaction occurred, KS's EAD credential showed an expiration date of November 8, 2024. However, DMV issued a non-domiciled CDL with an expiration date of January 12, 2027, more than two years after the EAD's expiration date.

6. On May 16, 2023, DMV issued a non-domiciled CDL with an expiration date of February 15, 2030 to a driver with the initials "JA." At the time the transaction occurred, JA's EAD credential showed an expiration date of June 30, 2024. However, DMV issued a non-domiciled CDL with an expiration date of February 15, 2030, more than five years after the EAD's expiration date.

7. On September 25, 2024, DMV issued a non-domiciled CDL with an expiration date of October 6, 2030 to a driver with the initials "BS." At the time the transaction occurred, BS's EAD credential showed an expiration date of May 19, 2029. However, DMV issued a non-domiciled CDL with an expiration date of October 6, 2030, more than one year after the EAD's expiration date.

8. On September 16, 2020, DMV issued a non-domiciled CDL with an expiration date of February 7, 2033 to a driver with the initials "BS." At the time the transaction occurred, BS's EAD credential showed an expiration date of July 25, 2021. However, DMV issued a non-domiciled CDL with an expiration date of February 7, 2033, more than 11 years after the EAD's expiration date.

9. On February 24, 2025, DMV issued a non-domiciled CDL with an expiration date of February 25, 2029 to a driver with the initials "SK." At the time the transaction occurred, SK's EAD credential showed an expiration date of January 24, 2029. However, DMV issued a non-domiciled CDL with an expiration date of February 25, 2029, more than one month after the EAD's expiration date.

10. On September 17, 2024, DMV issued a non-domiciled CDL with an expiration date of January 5, 2033 to a driver with the initials "PJ." At the time the transaction occurred, PJ's EAD credential showed an expiration date of March 8, 2029. However, DMV issued a non-domiciled CDL with an expiration date of January 5, 2033, more than three years after the EAD's expiration date.

11. On June 16, 2023, DMV issued a non-domiciled CDL with an expiration date of April 25, 2030 to a driver with the initials "JM." At the time the transaction occurred, JM's EAD credential showed an expiration date of June 30, 2024. However, DMV issued a non-domiciled CDL with an expiration date of April 25, 2030, more than five years after the EAD's expiration date.

12. On May 9, 2022, DMV issued a non-domiciled CDL with an expiration date of May 14, 2030 to a driver with the initials "SS." At the time the transaction occurred, SS's EAD credential showed an expiration date of December 26, 2023. However, DMV issued a non-domiciled CDL with an expiration date of May 14, 2030, more than six years after the EAD's expiration date.

13. On November 26, 2021, DMV issued a non-domiciled CDL with an expiration date of December 31, 2029 to a driver with the initials "SR." At the time the transaction occurred, SR's EAD credential showed an expiration date of December 31, 2022. However, DMV issued a non-domiciled CDL with an expiration date of December 31, 2029, more than seven years after the EAD's expiration date.

14. On February 26, 2024, DMV issued a non-domiciled CDL with an expiration date of February 12, 2026 to a driver with the initials "HS." At the time the transaction occurred, HS's EAD credential showed an expiration date of June 25, 2025. However, DMV issued a non-domiciled CDL with an expiration date of February 12, 2026, more than seven months after the EAD's expiration date.

15. On August 22, 2019, DMV issued a non-domiciled CDL with an expiration date of November 10, 2027 to a driver with the initials "OM." At the time the transaction occurred, OM's EAD credential showed an expiration date of September 9, 2019. However, DMV issued a non-domiciled CDL with an expiration date of November 10, 2027, more than eight years after the EAD's expiration date.

16. On October 18, 2023, DMV issued a non-domiciled CDL with an expiration date of April 4, 2027 to a driver with the initials "LA." At the time the transaction occurred, LA's EAD credential showed an expiration date of September 25, 2025. However, DMV issued a non-domiciled CDL with an expiration date of April 4, 2027, more than one year after the EAD's expiration date.

17. On December 28, 2023, DMV issued a non-domiciled CDL with an expiration date of September 5, 2028 to a driver with the initials "MS." At the time the transaction occurred, MS's EAD credential showed an expiration date of October 18, 2024. However, DMV issued a non-domiciled CDL with an expiration date of September 5, 2028, more than three years after the EAD's expiration date.

18. On January 31, 2025, DMV issued a non-domiciled CDL with an expiration date of April 15, 2029 to a driver with the initials "AO." At the time the transaction occurred, AO's EAD credential showed an expiration date of April 28, 2026. However, DMV

issued a non-domiciled CDL with an expiration date of April 15, 2029, more than two years after the EAD's expiration date.

19. On March 24, 2023, DMV issued a non-domiciled CDL with an expiration date of October 18, 2030 to a driver with the initials "LS." At the time the transaction occurred, LS's EAD credential showed an expiration date of June 30, 2024. However, DMV issued a non-domiciled CDL with an expiration date of October 18, 2030, more than six years after the EAD's expiration date.

20. On July 10, 2023, DMV issued a non-domiciled CDL with an expiration date of August 17, 2027 to a driver with the initials "MG." At the time the transaction occurred, MG's EAD credential showed an expiration date of February 22, 2025. However, DMV issued a non-domiciled CDL with an expiration date of August 17, 2027, more than two years after the EAD's expiration date.

21. On October 15, 2024, DMV issued a non-domiciled CDL with an expiration date of November 15, 2025 to a driver with the initials "KS." At the time the transaction occurred, KS's EAD credential showed an expiration date of June 8, 2025. However, DMV issued a non-domiciled CDL with an expiration date of November 15, 2025, more than five months after the EAD's expiration date.

22. On March 25, 2025, DMV issued a non-domiciled CDL with an expiration date of April 4, 2032 to a driver with the initials "MS." At the time the transaction occurred, MS's EAD credential showed an expiration date of December 11, 2029. However, DMV issued a non-domiciled CDL with an expiration date of April 4, 2032, more than two years after the EAD's expiration date.

23. On January 30, 2024, DMV issued a non-domiciled CDL with an expiration date of January 12, 2027 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of March 31, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 12, 2027, more than one year after the EAD's expiration date.

24. On April 10, 2024, DMV issued a non-domiciled CDL with an expiration date of July 23, 2028 to a driver with the initials "SH." At the time the transaction occurred, SH's EAD credential showed an expiration date of May 19, 2025. However, DMV issued a non-domiciled CDL with an expiration date of July 23, 2028, more than three years after the EAD's expiration date.

25. On December 27, 2023, DMV issued a non-domiciled CDL with an expiration date of December 28, 2028 to a driver with the initials "SS." At the time the transaction occurred, SS's EAD credential showed an expiration date of December 18, 2028. However, DMV issued a non-domiciled CDL with an expiration date of December 28, 2028, 10 days after the EAD's expiration date.

26. On November 1, 2024, DMV issued a non-domiciled CDL with an expiration date of February 12, 2029 to a driver with the initials "RS." At the time the transaction occurred, RS's EAD credential showed an expiration date of November 22, 2024. However, DMV issued a non-domiciled CDL with an expiration date of February 12, 2029, more than four years after the EAD's expiration date.

27. On January 22, 2024, DMV issued a non-domiciled CDL with an expiration date of March 15, 2032 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of December 5, 2028. However, DMV issued a non-domiciled CDL with an expiration date of March 15, 2032, more than three years after the EAD's expiration date.

28. On August 16, 2022, DMV issued a non-domiciled CDL with an expiration date of September 9, 2030 to a driver with the initials "SK." At the time the transaction occurred, SK's EAD credential showed an expiration date of June 14, 2024. However, DMV issued a non-domiciled CDL with an expiration date of September 9, 2030, more than six years after the EAD's expiration date.

29. On June 26, 2024, DMV issued a non-domiciled CDL with an expiration date of November 19, 2028 to a driver with the initials "RS." At the time the transaction occurred, RS's EAD credential showed an expiration date of February 23, 2025. However, DMV issued a non-domiciled CDL with an expiration date of November 19, 2028, more than three years after the EAD's expiration date.

30. On January 8, 2025, DMV issued a non-domiciled CDL with an expiration date of April 30, 2027 to a driver with the initials "EK." At the time the transaction occurred, EK's EAD credential showed an expiration date of January 17, 2027. However, DMV issued a non-domiciled CDL with an expiration date of April 30, 2027, more than three months after the EAD's expiration date.

31. On July 13, 2022, DMV issued a non-domiciled CDL with an expiration date of May 9, 2031 to a driver with the initials "HV." At the time the transaction occurred, HV's EAD credential showed an expiration date of September 29, 2023. However, DMV issued a non-domiciled CDL with an expiration date of May 9, 2031, more than seven years after the EAD's expiration date.

32. On July 9, 2024, DMV issued a non-domiciled CDL with an expiration date of December 1, 2032 to a driver with the initials "SS." At the time the transaction occurred, SS's EAD credential showed an expiration date of January 22, 2029. However, DMV issued a non-domiciled CDL with an expiration date of December 1, 2032, more than three years after the EAD's expiration date.

33. On July 6, 2022, DMV issued a non-domiciled CDL with an expiration date of April 24, 2026 to a driver with the initials "KS." At the time the transaction occurred, KS's EAD credential showed an expiration date of April 28, 2024. However, DMV issued a non-domiciled CDL with an expiration date of April 24, 2026, more than one year after the EAD's expiration date.

34. On May 9, 2023, DMV issued a non-domiciled CDL with an expiration date of October 14, 2027 to a driver with the initials "SF." At the time the transaction occurred, SF's EAD credential showed an expiration date of July 18, 2024. However, DMV issued a non-domiciled CDL with an expiration date of October 14, 2027, more than three years after the EAD's expiration date.

35. On August 5, 2024, DMV issued a non-domiciled CDL with an expiration date of February 26, 2030 to a driver with the initials "VS." At the time the transaction occurred, VS's EAD credential showed an expiration date of January 24, 2029.

However, DMV issued a non-domiciled CDL with an expiration date of February 26, 2030, more than one year after the EAD's expiration date.

36. On December 30, 2022, DMV issued a non-domiciled CDL with an expiration date of February 2, 2027 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of January 11, 2024. However, DMV issued a non-domiciled CDL with an expiration date of February 2, 2027, more than three years after the EAD's expiration date.

37. On April 23, 2025, DMV issued a non-domiciled CDL with an expiration date of April 21, 2030 to a driver with the initials "AR." At the time the transaction occurred, AR's EAD credential showed an expiration date of September 9, 2025. However, DMV issued a non-domiciled CDL with an expiration date of April 21, 2030, more than four years after the EAD's expiration date.

38. On November 22, 2024, DMV issued a non-domiciled CDL with an expiration date of November 17, 2027 to a driver with the initials "OK." At the time the transaction occurred, OK's EAD credential showed an expiration date of October 29, 2026. However, DMV issued a non-domiciled CDL with an expiration date of November 17, 2027, more than one year after the EAD's expiration date.

39. On December 13, 2024, DMV issued a non-domiciled CDL with an expiration date of November 16, 2026 to a driver with the initials "RA." At the time the transaction occurred, RA's EAD credential showed an expiration date of April 8, 2026. However, DMV issued a non-domiciled CDL with an expiration date of November 16, 2026, more than seven months after the EAD's expiration date.

40. On May 19, 2022, DMV issued a non-domiciled CDL with an expiration date of July 16, 2030 to a driver with the initials "ST." At the time the transaction occurred, ST's EAD credential showed an expiration date of June 29, 2023. However, DMV issued a non-domiciled CDL with an expiration date of July 16, 2030, more than seven years after the EAD's expiration date.

41. On June 5, 2023, DMV issued a non-domiciled CDL with an expiration date of September 24, 2029 to a driver with the initials "BQ." At the time the transaction occurred, BQ's EAD credential showed an expiration date of November 14, 2024. However, DMV issued a non-domiciled CDL with an expiration date of September 24, 2029, more than four years after the EAD's expiration date.

42. On January 29, 2025, DMV issued a non-domiciled CDL with an expiration date of June 7, 2030 to a driver with the initials "VP." At the time the transaction occurred, VP's EAD credential showed an expiration date of March 9, 2025. However, DMV issued a non-domiciled CDL with an expiration date of June 7, 2030, more than five years after the EAD's expiration date.

43. On June 14, 2024, DMV issued a non-domiciled CDL with an expiration date of May 2, 2029 to a driver with the initials "OH." At the time the transaction occurred, OH's EAD credential showed an expiration date of December 6, 2028. However, DMV issued a non-domiciled CDL with an expiration date of May 2, 2029, more than four months after the EAD's expiration date.

44. On June 26, 2025, DMV issued a non-domiciled CDL with an expiration date of February 9, 2033 to a driver with the initials "FH." At the time the transaction occurred, FH's EAD credential showed an expiration date of March 30, 2029. However, DMV issued a non-domiciled CDL with an expiration date of February 9, 2033, more than three years after the EAD's expiration date.

45. On September 9, 2025, DMV issued a non-domiciled CDL with an expiration date of June 9, 2029 to a driver with the initials "PS." At the time the transaction occurred, PS's EAD credential showed an expiration date of September 10, 2026. However, DMV issued a non-domiciled CDL with an expiration date of June 9, 2029, more than two years after the EAD's expiration date.

46. On June 28, 2023, DMV issued a non-domiciled CDL with an expiration date of December 26, 2026 to a driver with the initials "KS." At the time the transaction occurred, KS's EAD credential showed an expiration date of October 23, 2024. However, DMV issued a non-domiciled CDL with an expiration date of December 26, 2026, more than two years after the EAD's expiration date.

47. On November 29, 2024, DMV issued a non-domiciled CDL with an expiration date of July 5, 2027 to a driver with the initials "BJ." At the time the transaction occurred, BJ's EAD credential showed an expiration date of January 1, 2027. However, DMV issued a non-domiciled CDL with an expiration date of July 5, 2027, more than six months after the EAD's expiration date.

48. On December 18, 2024, DMV issued a non-domiciled CDL with an expiration date of January 20, 2033 to a driver with the initials "HS." At the time the transaction occurred, HS's EAD credential showed an expiration date of February 5, 2029. However, DMV issued a non-domiciled CDL with an expiration date of January 20, 2033, more than three years after the EAD's expiration date.

49. On September 6, 2024, DMV issued a non-domiciled CDL with an expiration date of January 15, 2026 to a driver with the initials "LS." At the time the transaction occurred, LS's EAD credential showed an expiration date of August 14, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 15, 2026, more than five months after the EAD's expiration date.

50. On October 30, 2023, DMV issued a non-domiciled CDL with an expiration date of August 20, 2030 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of October 3, 2024. However, DMV issued a non-domiciled CDL with an expiration date of August 20, 2030, more than five years after the EAD's expiration date.

51. On December 21, 2021, DMV issued a non-domiciled CDL with an expiration date of March 24, 2026 to a driver with the initials "RO." At the time the transaction occurred, RO's EAD credential showed an expiration date of May 12, 2023. However, DMV issued a non-domiciled CDL with an expiration date of March 24, 2026, more than two years after the EAD's expiration date.

52. On August 23, 2021, DMV issued a non-domiciled CDL with an expiration date of January 20, 2026 to a driver with the initials "AS." At the time the transaction occurred, AS's EAD credential showed an expiration date of March 28, 2023.

However, DMV issued a non-domiciled CDL with an expiration date of January 20, 2026, more than two years after the EAD's expiration date.

53. On April 19, 2024, DMV issued a non-domiciled CDL with an expiration date of April 20, 2032 to a driver with the initials "AK." At the time the transaction occurred, AK's EAD credential showed an expiration date of June 12, 2024. However, DMV issued a non-domiciled CDL with an expiration date of April 20, 2032, more than seven years after the EAD's expiration date.

54. On September 8, 2025, DMV issued a non-domiciled CDL with an expiration date of September 16, 2033 to a driver with the initials "ZT." At the time the transaction occurred, ZT's EAD credential showed an expiration date of October 26, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 16, 2033, more than seven years after the EAD's expiration date.

55. On October 2, 2024, DMV issued a non-domiciled CDL with an expiration date of August 9, 2029 to a driver with the initials "CS." At the time the transaction occurred, CS's EAD credential showed an expiration date of October 29, 2028. However, DMV issued a non-domiciled CDL with an expiration date of August 9, 2029, more than nine months after the EAD's expiration date.

56. On February 7, 2023, DMV issued a non-domiciled CDL with an expiration date of April 16, 2031 to a driver with the initials "AS." At the time the transaction occurred, AS's EAD credential showed an expiration date of August 22, 2024. However, DMV issued a non-domiciled CDL with an expiration date of April 16, 2031, more than six years after the EAD's expiration date.

57. On May 28, 2025, DMV issued a non-domiciled CDL with an expiration date of September 29, 2026 to a driver with the initials "AS." At the time the transaction occurred, AS's EAD credential showed an expiration date of January 24, 2026. However, DMV issued a non-domiciled CDL with an expiration date of September 29, 2026, more than eight months after the EAD's expiration date.

58. On May 17, 2023, DMV issued a non-domiciled CDL with an expiration date of December 17, 2027 to a driver with the initials "WM." At the time the transaction occurred, WM's EAD credential showed an expiration date of December 13, 2024. However, DMV issued a non-domiciled CDL with an expiration date of December 17, 2027, more than three years after the EAD's expiration date.

59. On January 12, 2021, DMV issued a non-domiciled CDL with an expiration date of June 20, 2028 to a driver with the initials "JN." At the time the transaction occurred, JN's EAD credential showed an expiration date of July 8, 2022. However, DMV issued a non-domiciled CDL with an expiration date of June 20, 2028, more than five years after the EAD's expiration date.

60. On August 1, 2022, DMV issued a non-domiciled CDL with an expiration date of August 2, 2030 to a driver with the initials "NS." At the time the transaction occurred, NS's EAD credential showed an expiration date of February 3, 2023. However, DMV issued a non-domiciled CDL with an expiration date of August 2, 2030, more than seven years after the EAD's expiration date.

61. On August 19, 2022, DMV issued a non-domiciled CDL with an expiration date of October 12, 2025 to a driver with the initials "VK." At the time the transaction occurred, VK's EAD credential showed an expiration date of March 20, 2024. However, DMV issued a non-domiciled CDL with an expiration date of October 12, 2025, more than one year after the EAD's expiration date.

62. On June 17, 2025, DMV issued a non-domiciled CDL with an expiration date of February 2, 2031 to a driver with the initials "BI." At the time the transaction occurred, BI's EAD credential showed an expiration date of February 11, 2027. However, DMV issued a non-domiciled CDL with an expiration date of February 2, 2031, more than three years after the EAD's expiration date.

63. On June 26, 2025, DMV issued a non-domiciled CDL with an expiration date of October 24, 2029 to a driver with the initials "SS." At the time the transaction occurred, SS's EAD credential showed an expiration date of October 15, 2026. However, DMV issued a non-domiciled CDL with an expiration date of October 24, 2029, more than three years after the EAD's expiration date.

64. On February 11, 2025, DMV issued a non-domiciled CDL with an expiration date of November 17, 2028 to a driver with the initials "HY." At the time the transaction occurred, HY's EAD credential showed an expiration date of November 8, 2028. However, DMV issued a non-domiciled CDL with an expiration date of November 17, 2028, nine days after the EAD's expiration date.

65. On September 15, 2023, DMV issued a non-domiciled CDL with an expiration date of August 31, 2030 to a driver with the initials "GZ." At the time the transaction occurred, GZ's EAD credential showed an expiration date of June 30, 2024. However, DMV issued a non-domiciled CDL with an expiration date of August 31, 2030, more than six years after the EAD's expiration date.

66. On November 14, 2024, DMV issued a non-domiciled CDL with an expiration date of December 17, 2032 to a driver with the initials "AJ." At the time the transaction occurred, AJ's EAD credential showed an expiration date of February 27, 2025. However, DMV issued a non-domiciled CDL with an expiration date of December 17, 2032, more than seven years after the EAD's expiration date.

67. On August 21, 2023, DMV issued a non-domiciled CDL with an expiration date of July 9, 2027 to a driver with the initials "IY." At the time the transaction occurred, IY's EAD credential showed an expiration date of December 16, 2023. However, DMV issued a non-domiciled CDL with an expiration date of July 9, 2027, more than three years after the EAD's expiration date.

68. On December 9, 2024, DMV issued a non-domiciled CDL with an expiration date of September 14, 2028 to a driver with the initials "RK." At the time the transaction occurred, RK's EAD credential showed an expiration date of September 17, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 14, 2028, more than two years after the EAD's expiration date.

69. On January 5, 2024, DMV issued a non-domiciled CDL with an expiration date of January 21, 2030 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of December 14, 2028.

However, DMV issued a non-domiciled CDL with an expiration date of January 21, 2030, more than one year after the EAD's expiration date.

70. On March 28, 2024, DMV issued a non-domiciled CDL with an expiration date of March 20, 2028 to a driver with the initials "SS." At the time the transaction occurred, SS's EAD credential showed an expiration date of January 24, 2025. However, DMV issued a non-domiciled CDL with an expiration date of March 20, 2028, more than three years after the EAD's expiration date.

71. On March 28, 2024, DMV issued a non-domiciled CDL with an expiration date of September 15, 2028 to a driver with the initials "JS." At the time the transaction occurred, JS's EAD credential showed an expiration date of May 9, 2026. However, DMV issued a non-domiciled CDL with an expiration date of September 15, 2028, more than two years after the EAD's expiration date.

72. On April 12, 2024, DMV issued a non-domiciled CDL with an expiration date of September 10, 2032 to a driver with the initials "ML." At the time the transaction occurred, ML's EAD credential showed an expiration date of March 21, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 10, 2032, more than seven years after the EAD's expiration date.

73. On November 21, 2022, DMV issued a non-domiciled CDL with an expiration date of November 3, 2028 to a driver with the initials "CR." At the time the transaction occurred, CR's EAD credential showed an expiration date of December 31, 2022. However, DMV issued a non-domiciled CDL with an expiration date of November 3, 2028, more than five years after the EAD's expiration date.

74. On March 18, 2024, DMV issued a non-domiciled CDL with an expiration date of December 16, 2025 to a driver with the initials "SB." At the time the transaction occurred, SB's EAD credential showed an expiration date of September 5, 2024. However, DMV issued a non-domiciled CDL with an expiration date of December 16, 2025, more than one year after the EAD's expiration date.

75. On January 22, 2021, DMV issued a non-domiciled CDL with an expiration date of January 31, 2029 to a driver with the initials "RS." At the time the transaction occurred, RS's EAD credential showed an expiration date of May 7, 2022. However, DMV issued a non-domiciled CDL with an expiration date of January 31, 2029, more than six years after the EAD's expiration date.

76. On June 11, 2021, DMV issued a non-domiciled CDL with an expiration date of September 2, 2028 to a driver with the initials "CF." At the time the transaction occurred, CF's EAD credential showed an expiration date of December 3, 2021. However, DMV issued a non-domiciled CDL with an expiration date of September 2, 2028, more than six years after the EAD's expiration date.

77. On January 10, 2022, DMV issued a non-domiciled CDL with an expiration date of February 26, 2030 to a driver with the initials "NI." At the time the transaction occurred, NI's EAD credential showed an expiration date of April 11, 2023. However, DMV issued a non-domiciled CDL with an expiration date of February 26, 2030, more than six years after the EAD's expiration date.

78. On July 8, 2025, DMV issued a non-domiciled CDL with an expiration date of December 9, 2031 to a driver with the initials "AG." At the time the transaction occurred, AG's EAD credential showed an expiration date of August 6, 2025. However, DMV issued a non-domiciled CDL with an expiration date of December 9, 2031, more than six years after the EAD's expiration date.

79. On August 29, 2022, DMV issued a non-domiciled CDL with an expiration date of January 19, 2027 to a driver with the initials "JY." At the time the transaction occurred, JY's EAD credential showed an expiration date of July 20, 2023. However, DMV issued a non-domiciled CDL with an expiration date of January 19, 2027, more than three years after the EAD's expiration date.

80. On December 17, 2019, DMV issued a non-domiciled CDL with an expiration date of September 20, 2028 to a driver with the initials "PS." At the time the transaction occurred, PS's EAD credential showed an expiration date of August 18, 2021. However, DMV issued a non-domiciled CDL with an expiration date of September 20, 2028, more than seven years after the EAD's expiration date.

81. On December 11, 2024, DMV issued a non-domiciled CDL with an expiration date of September 12, 2026 to a driver with the initials "DP." At the time the transaction occurred, DP's EAD credential showed an expiration date of August 14, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 12, 2026, more than one year after the EAD's expiration date.

82. On March 2, 2023, DMV issued a non-domiciled CDL with an expiration date of October 15, 2025 to a driver with the initials "JF." At the time the transaction occurred, JF's EAD credential showed an expiration date of December 13, 2024. However, DMV issued a non-domiciled CDL with an expiration date of October 15, 2025, more than 10 months after the EAD's expiration date.

83. On January 23, 2025, DMV issued a non-domiciled CDL with an expiration date of May 20, 2029 to a driver with the initials "AS." At the time the transaction occurred, AS's EAD credential showed an expiration date of March 28, 2025. However, DMV issued a non-domiciled CDL with an expiration date of May 20, 2029, more than four years after the EAD's expiration date.

84. On September 27, 2024, DMV issued a non-domiciled CDL with an expiration date of October 24, 2027 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of May 24, 2025. However, DMV issued a non-domiciled CDL with an expiration date of October 24, 2027, more than two years after the EAD's expiration date.

85. On November 1, 2018, DMV issued a non-domiciled CDL with an expiration date of November 8, 2026 to a driver with the initials "FB." At the time the transaction occurred, FB's EAD credential showed an expiration date of January 5, 2020. However, DMV issued a non-domiciled CDL with an expiration date of November 8, 2026, more than six years after the EAD's expiration date.

86. On May 6, 2024, DMV issued a non-domiciled CDL with an expiration date of July 28, 2028 to a driver with the initials "AS." At the time the transaction occurred, AS's EAD credential showed an expiration date of November 15, 2024. However, DMV

issued a non-domiciled CDL with an expiration date of July 28, 2028, more than three years after the EAD's expiration date.

87. On March 28, 2024, DMV issued a non-domiciled CDL with an expiration date of December 9, 2029 to a driver with the initials "SM." At the time the transaction occurred, SM's EAD credential showed an expiration date of December 31, 2022. However, DMV issued a non-domiciled CDL with an expiration date of December 9, 2029, more than six years after the EAD's expiration date.

88. On November 13, 2024, DMV issued a non-domiciled CDL with an expiration date of January 27, 2029 to a driver with the initials "SM." At the time the transaction occurred, SM's EAD credential showed an expiration date of September 13, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 27, 2029, more than three years after the EAD's expiration date.

89. On September 24, 2025, DMV issued a non-domiciled CDL with an expiration date of April 12, 2029 to a driver with the initials "FL." At the time the transaction occurred, FL's EAD credential showed an expiration date of March 7, 2026. However, DMV issued a non-domiciled CDL with an expiration date of April 12, 2029, more than three years after the EAD's expiration date.

90. On December 14, 2022, DMV issued a non-domiciled CDL with an expiration date of June 13, 2031 to a driver with the initials "GS." At the time the transaction occurred, GS's EAD credential showed an expiration date of March 23, 2024. However, DMV issued a non-domiciled CDL with an expiration date of June 13, 2031, more than seven years after the EAD's expiration date.

91. On April 2, 2025, DMV issued a non-domiciled CDL with an expiration date of August 3, 2032 to a driver with the initials "PM." At the time the transaction occurred, PM's EAD credential showed an expiration date of May 1, 2029. However, DMV issued a non-domiciled CDL with an expiration date of August 3, 2032, more than three years after the EAD's expiration date.

92. On August 8, 2024, DMV issued a non-domiciled CDL with an expiration date of December 15, 2028 to a driver with the initials "IP." At the time the transaction occurred, IP's EAD credential showed an expiration date of April 19, 2025. However, DMV issued a non-domiciled CDL with an expiration date of December 15, 2028, more than three years after the EAD's expiration date.

93. On March 21, 2022, DMV issued a non-domiciled CDL with an expiration date of February 14, 2026 to a driver with the initials "CD." At the time the transaction occurred, CD's EAD credential showed an expiration date of April 9, 2022. However, DMV issued a non-domiciled CDL with an expiration date of February 14, 2026, more than three years after the EAD's expiration date.

94. On April 19, 2021, DMV issued a non-domiciled CDL with an expiration date of April 19, 2029 to a driver with the initials "JC." At the time the transaction occurred, JC's EAD credential showed an expiration date of October 4, 2021. However, DMV issued a non-domiciled CDL with an expiration date of April 19, 2029, more than seven years after the EAD's expiration date.

95. On May 27, 2025, DMV issued a non-domiciled CDL with an expiration date of May 5, 2030 to a driver with the initials "AM." At the time the transaction occurred, AM's EAD credential showed an expiration date of October 20, 2029. However, DMV issued a non-domiciled CDL with an expiration date of May 5, 2030, more than six months after the EAD's expiration date.

96. On December 5, 2024, DMV issued a non-domiciled CDL with an expiration date of December 6, 2028 to a driver with the initials "VY." At the time the transaction occurred, VY's EAD credential showed an expiration date of September 21, 2026. However, DMV issued a non-domiciled CDL with an expiration date of December 6, 2028, more than two years after the EAD's expiration date.

97. On January 13, 2025, DMV issued a non-domiciled CDL with an expiration date of May 5, 2029 to a driver with the initials "VK." At the time the transaction occurred, VK's EAD credential showed an expiration date of November 12, 2025. However, DMV issued a non-domiciled CDL with an expiration date of May 5, 2029, more than three years after the EAD's expiration date.

98. On November 25, 2024, DMV issued a non-domiciled CDL with an expiration date of August 18, 2029 to a driver with the initials "EB." At the time the transaction occurred, EB's EAD credential showed an expiration date of September 20, 2026. However, DMV issued a non-domiciled CDL with an expiration date of August 18, 2029, more than two years after the EAD's expiration date.

99. On July 8, 2025, DMV issued a non-domiciled CDL with an expiration date of January 17, 2028 to a driver with the initials "GA." At the time the transaction occurred, GA's EAD credential showed an expiration date of December 26, 2026. However, DMV issued a non-domiciled CDL with an expiration date of January 17, 2028, more than one year after the EAD's expiration date.

100. On June 6, 2025, DMV issued a non-domiciled CDL with an expiration date of April 17, 2028 to a driver with the initials "EB." At the time the transaction occurred, EB's EAD credential showed an expiration date of April 12, 2026. However, DMV issued a non-domiciled CDL with an expiration date of April 17, 2028, more than two years after the EAD's expiration date.

101. On September 23, 2024, DMV issued a non-domiciled CDL with an expiration date of June 28, 2026 to a driver with the initials "VA." At the time the transaction occurred, VA's EAD credential showed an expiration date of February 14, 2025. However, DMV issued a non-domiciled CDL with an expiration date of June 28, 2026, more than one year after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—The New York DMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that six of the driver records sampled showed that DMV issued non-domiciled CDLs to drivers without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States. These transactions are described below.

1. On November 4, 2024, DMV issued a non-domiciled CDL with an expiration date of October 17, 2033 to a driver with the initials "IM." At the 2025 APR, DMV provided IM's EAD credential that showed an expiration date of November 3, 2024. However, DMV did not provide any evidence that IM presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of October 17, 2033, more than eight years after the EAD's expiration date.

2. On September 3, 2025, DMV issued a non-domiciled CDL with an expiration date of October 15, 2033 to a driver with the initials "MV." At the 2025 APR, DMV provided MV's EAD credential that showed an expiration date of April 9, 2025. However, DMV did not provide any evidence that MV presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of October 15, 2033, more than eight years after the EAD's expiration date.

3. On November 4, 2025, DMV issued a non-domiciled CDL with an expiration date of August 11, 2029 to a driver with the initials "MJ." At the 2025 APR, DMV provided MJ's EAD credential that showed an expiration date of October 31, 2023. However, DMV did not provide any evidence that MJ presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of August 11, 2029, more than five years after the EAD's expiration date.

4. On October 20, 2025, DMV issued a non-domiciled CDL with an expiration date of January 6, 2028 to a driver with the initials "JS." At the 2025 APR, DMV provided JS's EAD credential that showed an expiration date of April 27, 2025. However, DMV did not provide any evidence that JS presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of January 6, 2028, more than two years after the EAD's expiration date.

5. On January 12, 2022, DMV issued a non-domiciled CDL with an expiration date of December 16, 2025 to a driver with the initials "GS." At the 2025 APR, DMV provided GS's EAD credential that showed an expiration date of July 10, 2021. However, DMV did not provide any evidence that GS presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of December 16, 2025, more than four years after the EAD's expiration date.

6. On November 23, 2023, DMV issued a non-domiciled CDL with an expiration date of May 3, 2026 to a driver with the initials "ND." At the 2025 APR, DMV provided ND's EAD credential that showed an expiration date of October 6, 2022. However, DMV did not provide any evidence that ND presented an unexpired EAD or an unexpired foreign passport accompanied by an approved I-94 form, as required under 49 CFR § 383.71(f) at the time the transaction occurred. Thus, DMV issued a non-domiciled CDL with an expiration date of May 3, 2026, more than three years after the EAD's expiration date.

## IV. Required Corrective Action

Approximately 32,000 drivers hold an unexpired CLP or CDL issued by DMV. In light of the errors and deficiencies in DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that New York must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to New York under 23 U.S.C. § 104(b)(1) and (2).[14] Accordingly, upon a final determination of substantial noncompliance, New York risks losing up to approximately $73,500,000 for FY 2027.[15] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, New York risks losing up to approximately $147,000,000 in the second and subsequent FY(s) of noncompliance.[16] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to New York.[17]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify New York's CDL program. Decertification of New York's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[18]

---

[14] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[15] FMCSA estimates this amount based on FY 2026 funding levels.

[16] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[17] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[18] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

## VII. Conclusion

The 2025 APR uncovered 107 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is a grossly unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

New York is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses. However, the State's failure to issue non-domiciled CLPs and CDLs in accordance with Federal regulations jeopardizes these shared safety goals. FMCSA issues this preliminary determination of substantial noncompliance with a clear understanding of the gravity of the findings, but also with the expectation that New York will act expeditiously to achieve substantial compliance. To continue in that spirit of partnership, my staff stands ready to assist DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, S.E.
Washington, D.C. 20590**

December 11, 2025

<u>Via Electronic Mail and UPS</u>
The Honorable J. Kevin Stitt
Governor of Oklahoma
Office of Governor J. Kevin Stitt
2300 N. Lincoln Blvd., Suite 212
Oklahoma City, OK 73105

<u>Via Electronic Mail and USPS</u>
Jay Doyle
Chief Executive Officer
Service Oklahoma
P.O. Box 11415
Oklahoma City, OK 73136

Dear Governor Stitt and Mr. Doyle:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Service Oklahoma CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Oklahoma's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Oklahoma. In this regard, FMCSA found that Service Oklahoma issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States and issued non-domiciled CDLs to citizens of Canada or Mexico not present in the United States under the Deferred Action for Childhood Arrivals program. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Oklahoma has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Oklahoma must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

---

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. 18759-60.

conducted a thorough audit of Service Oklahoma's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, Service Oklahoma was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1) (2024).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Oklahoma's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. In September 2025, Service Oklahoma informed FMCSA that its records reflect that Oklahoma has issued 213 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 50 records of drivers that Service Oklahoma issued a non-domiciled CDL. Three of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found one transaction where Service Oklahoma issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. As explained in greater detail in section III(b) below, of the driver records sampled, FMCSA found two transactions where Service Oklahoma issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program.

During the 2025 APR, Service Oklahoma was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, Service Oklahoma has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in Service Oklahoma's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

### a. Finding: 49 CFR § 384.212— Service Oklahoma issued a Non-Domiciled CDL with an Expiration Date that Exceeded the Expiration of the Driver's Lawful Presence Documents.

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that Service Oklahoma issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). This transaction is described below.

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

1. On July 25, 2024, Service Oklahoma issued a non-domiciled CDL with an expiration date of July 31, 2028, to a driver with the initials "ZS" who is a citizen of Afghanistan. At the time the transaction occurred, ZS presented an EAD credential showing an expiration date of September 7, 2025. Service Oklahoma provided FMCSA with a copy of a SAVE[15] query report initiated on July 25, 2024, that confirmed ZS's EAD expiration date of September 7, 2025. However, Service Oklahoma issued a non-domiciled CDL with an expiration date of July 31, 2028, nearly *three years* after the EAD was set to expire.

**b. Finding: 49 CFR § 384.212—Service Oklahoma Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that Service Oklahoma issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On March 12, 2025, Service Oklahoma issued a non-domiciled CDL with an expiration date of December 31, 2025, to a driver with the initials "PRR" who is a citizen of Canada. At the time the transaction occurred, PRR presented an unexpired foreign passport and Form I-94 confirming PRR was from Canada. PRR's I-94 showed an expiration date of December 31, 2025. Service Oklahoma provided no evidence showing that PRR of DACA status, without which the, PRR would have been ineligible for a non-domiciled CDL as a citizen of Canada.

2. On August 6, 2025, Service Oklahoma issued a non-domiciled CDL with an expiration date of July 19, 2028, to a driver with the initials "DDJ" who is a citizen of Mexico. At the time the transaction occurred, DDJ presented an unexpired EAD credential confirming DDJ was from Mexico. DDJ's EAD showed an expiration date of July 19, 2028. Service Oklahoma provided no evidence of DACA status, without which DDJ would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

## IV. Required Corrective Action

As noted above, approximately 213 drivers hold an unexpired non-domiciled CLP or CDL issued by Service Oklahoma. In light of the errors and deficiencies in Service Oklahoma's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Oklahoma must take the following actions:

---

[15] The Systematic Alien Verification for Entitlements (SAVE) system is a service run by U.S. Citizenship and Immigration Services that "helps Federal, State and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP & IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take

into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Oklahoma under 23 U.S.C. § 104(b)(1) and (2).[16] Accordingly, upon a final determination of substantial noncompliance, Oklahoma risks losing up to approximately $30,500,000 for FY 2027.[17] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Oklahoma risks losing up to approximately $61,000,000 in the second and subsequent FY(s) of noncompliance.[18] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Oklahoma.[19]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Oklahoma's CDL program. Decertification of Oklahoma's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that Service Oklahoma is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[20]

## VII. Conclusion

The 2025 APR uncovered three non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. Service Oklahoma must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Oklahoma is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Oklahoma come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist Service Oklahoma in resolving these serious issues.

---

[16] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[17] FMCSA estimates this amount based on FY 2026 funding levels.

[18] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[19] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[20] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Please note that this letter addresses noncompliance with Service Oklahoma's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

November 19, 2025

Via Electronic Mail and UPS
The Honorable Josh Shapiro
Governor of the Commonwealth of Pennsylvania
501 North 3rd Street
508 Main Capitol Building
Harrisburg, PA 17120

Michael B. Carroll
Secretary of Transportation
Pennsylvania Department of Transportation
Keystone Building
400 North Street, Fifth Floor
Harrisburg, PA 17120

Dear Governor Shapiro and Secretary Carroll:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Pennsylvania Department of Transportation (PennDOT) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of procedural and programming errors in Pennsylvania's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Pennsylvania. In this regard, FMCSA found that PennDOT issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs without requiring the non-domiciled driver to comply with the standards for providing proof of lawful presence in the United States, and issued non-domiciled CDLs to lawful permanent residents who were eligible for a regular CDL. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Pennsylvania has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Pennsylvania must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

---

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq.*

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id.* at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] *Id.* at 18759-60.

conducted a thorough audit of PennDOT's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, PennDOT was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated Pennsylvania's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. PennDOT informed FMCSA that its records reflect that Pennsylvania has issued 12,436 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 150 records of drivers issued a non-domiciled CDL by PennDOT. As explained in greater detail in section III(a) below, of the 150 driver records sampled, FMCSA found two records where PennDOT issued non-domiciled CDLs with expiration dates that exceeded the expiration date found on the driver's lawful presence document. In addition, as set

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id.* at § 383.73(f)(2).

forth in section III(b) below, FMCSA also found four transactions where PennDOT provided no evidence that it required non-domiciled drivers to comply with the standards for providing proof of lawful presence at the time of the transaction, as required under 49 CFR § 383.71(f)(2)(i). Finally, as set forth in section III(c) below, FMCSA found two transactions where PennDOT issued a non-domiciled CDL to lawful permanent residents of the United States, who are eligible for regular CDLs.

The 2025 APR uncovered evidence of procedural and programming errors. In this regard, FMCSA learned through discussions with PennDOT staff during the 2025 APR that non-domiciled CLPs or CDLs may be issued with an expiration date that exceeds the expiration date of the driver's lawful presence documents due to typographical errors committed by PennDOT employees at the time of the transaction. In addition, FMCSA learned through discussions with PennDOT staff that, for some transactions, the State cannot provide evidence that it required non-domiciled drivers to comply with the standards for providing proof of lawful presence because PennDOT's licensing system does not document the type of immigration credential(s) the SDLA employee reviews at the time of the transaction. To determine whether a non-domiciled CLP or CDL should be issued, PennDOT employees must fill in an "INS expiration date" field. PennDOT staff indicated that this field is filled with dates from immigration credentials presented by the driver at the time of the transaction. However, PennDOT's licensing system does not have a data field to capture the type of immigration credential(s) reviewed. Consequently, there is no way to confirm that PennDOT accepted the credentials required by 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, and 384.212(a) unless staff retained copies of the documents.

The errors discovered during the 2025 APR indicate a breakdown in PennDOT's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—PennDOT issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents.**

During the 2025 APR, FMCSA discovered that two of the 150 driver records sampled showed that PennDOT issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). These transactions are described below.

1. On July 8, 2025, PennDOT issued a non-domiciled CDL with an expiration date of July 31, 2026 to a driver with the initials "DD" who is a citizen of Ukraine. At the time the transaction occurred, DD presented a Form I-94 and a foreign passport with an expiration date of August 15, 2025. In addition, PennDOT provided FMCSA with a copy of a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE).[12] The SAVE query report, initiated on July 8, 2025, showed

[12] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022),

DD held an EAD credential with an expiration date of July 31, 2025. However, PennDOT issued a non-domiciled CDL with an expiration date of July 31, 2026, almost *one year* after DD's lawful presence document expired.

2. On May 27, 2025, PennDOT issued a duplicate non-domiciled CDL with an expiration date of October 10, 2028 to a driver with the initials "KS." PennDOT had previously issued KS a REAL ID compliant non-domiciled CDL on March 11, 2025, at which time KS presented an EAD credential showing an expiration date of October 2, 2028, which PennDOT verified in SAVE. However, PennDOT issued a duplicate non-domiciled CDL with an expiration date of October 10, 2028, eight days after DD's lawful presence document expired.

Though PennDOT reported that it took action, or intends to take action, to downgrade DD's and KS's non-domiciled CDLs these repeated errors are evidence of the procedural deficiencies in PennDOT's non-domiciled CLP and CDL issuance practices.

**b. Finding: 49 CFR § 384.212—PennDOT issued non-domiciled CLPs or CDLs without providing evidence of lawful presence verification.**

During the 2025 APR, FMCSA discovered that four of the 150 driver records sampled showed that PennDOT provided no evidence that it required non-domiciled drivers to comply with the standards for providing proof of lawful presence at the time of the transaction, as required under 49 CFR § 383.71(f)(2)(i). As explained above, PennDOT's driver licensing system does not have a data field to capture the type of immigration credential(s) reviewed. For the transactions described below, PennDOT did not provide evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States.

1. On June 12, 2025, PennDOT issued a non-domiciled CDL with an expiration date of January 10, 2029 to a driver with the initials "GT." While PennDOT's records indicate that the "INS expiration date" field was filled in at the time of the transaction, suggesting that GT presented some form of immigration credential, PennDOT was unable to demonstrate that GT presented an unexpired foreign passport accompanied by an approved I-94 form or an unexpired EAD. Regardless, PennDOT issued GT a non-domiciled CDL with an expiration date of January 10, 2029.

2. On May 15, 2025, PennDOT issued a non-domiciled CDL with an expiration date of December 17, 2025 to a driver with the initials "AK." At the time of the transaction, AK presented an unexpired foreign passport and a Form I-589 Application for Asylum. However, PennDOT was unable to demonstrate that AK presented either a Form I-94 or an unexpired EAD, as required under § 383.71(f)(2)(i). Regardless, PennDOT issued AK a non-domiciled CDL with an expiration date of December 17, 2025.

---

https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

3. On September 22, 2025, PennDOT issued a duplicate non-domiciled CDL with an expiration date of February 20, 2026 to a driver with the initials "DT." PennDOT initially issued the non-domiciled CDL on August 16, 2025. At the time of the transaction, DT presented an unexpired foreign passport. However, PennDOT was unable to demonstrate that DT also presented either a Form I-94 or an unexpired EAD, as required under § 383.71(f)(2)(i). Regardless, PennDOT issued DT a non-domiciled CDL with an expiration date of February 20, 2026.

4. On December 4, 2024, PennDOT issued a non-domiciled CLP with an expiration date of November 14, 2025 to a driver with the initials "OT." At the time of the transaction, OT presented an unexpired foreign passport. However, PennDOT was unable to demonstrate that OT also presented either a Form I-94 or an unexpired EAD, as required under § 383.71(f)(2)(i). Regardless, PennDOT issued OT a non-domiciled CDL with an expiration date of November 14, 2025.

**c. Finding: 49 CFR § 384.212—PennDOT issued non-domiciled CLPs or CDLs to lawful permanent residents of the United States.**

During the 2025 APR, FMCSA discovered that two of the 150 driver records sampled showed that PennDOT issued a non-domiciled CDL to a lawful permanent resident of the U.S. who should have been issued a regular CDL. These transactions are described below.

1. On July 16, 2025, PennDOT issued a non-domiciled CDL with an expiration date of July 16, 2026 to a driver with the initials "BK." At the time the transaction occurred, PennDOT queried SAVE and the report indicated BK's lawful permanent resident status. Though PennDOT should have issued a regular CDL, due to BK's status as a lawful permanent resident, it issued a non-domiciled CDL with an expiration date of July 16, 2026.

2. On September 13, 2025, PennDOT issued a non-domiciled CDL with an expiration date of July 5, 2026 to a driver with the initials "HS." At the time the transaction occurred, HS presented their lawful permanent resident card as evidence of eligibility. Though PennDOT should have issued a regular CDL, due to HS's status as a lawful permanent resident, it issued a non-domiciled CDL with an expiration date of July 5, 2026.

## IV. Required Corrective Action

Approximately 12,400 drivers hold an unexpired non-domiciled CLP or CDL issued by PennDOT. In light of the errors and deficiencies in PennDOT's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Pennsylvania must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that PennDOT's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;

- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in PennDOT's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that PennDOT's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Pennsylvania under 23 U.S.C. § 104(b)(1) and (2).[13] Accordingly, upon a final determination of substantial noncompliance, Pennsylvania risks losing up to approximately $75,500,00 for FY 2027.[14] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Pennsylvania risks losing up to approximately $151,000,000 in the second and subsequent FY(s) of noncompliance.[15] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Pennsylvania.[16]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Pennsylvania's CDL program. Decertification of Pennsylvania's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that PennDOT is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[17]

## VII. Conclusion

The 2025 APR uncovered eight non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. PennDOT must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Pennsylvania is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Pennsylvania come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist PennDOT in resolving these serious issues.

---

[13] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[14] FMCSA estimates this amount based on FY 2026 funding levels.

[15] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[16] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[17] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Please note that this letter addresses noncompliance with PennDOT's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

January 20, 2026

Via Electronic Mail and UPS
The Honorable Wes Moore
Governor of Maryland
100 State Circle
Annapolis, MD 21401-1925

Christine Nizer, Administrator
Maryland Department of Transportation
Motor Vehicle Administration
6601 Ritchie Highway N.E.
Glen Burnie, MD 21062

Dear Governor Moore and Administrator Nizer:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the Maryland Department of Transportation Motor Vehicle Administration (MVA) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Maryland's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Maryland. In this regard, FMCSA found that MVA issued non-domiciled CDLs to citizens of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Maryland has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Maryland must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of MVA's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in

Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Maryland's 2025 APR in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, MVA informed FMCSA that its records reflect that Maryland has issued 2,571 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA requested copies of documentation of lawful presence for six non-domiciled CDL holders on or around September 24, 2025. After MVA failed to produce the documents, FMCSA provided a written request for the documents on October 23, 2025. In its written response, dated October 28, 2025, MVA stated that it provided FMCSA staff an opportunity to review source documents in-person at MVA's facility but did not provide paper copies of the requested documents. To date, MVA has not provided paper or electronic copies of the requested documents.

MVA also stated in the response letter that, prior to the 2025 APR, it conducted an internal review of approximately 2200 non-domiciled CDL holders to ensure each license holder complied with FMCSA regulations. MVA further stated that the review identified 40 non-domiciled CDLs issued in error.[15] MVA explained that, after identifying these errors, it immediately initiated the downgrade process for the 40 drivers erroneously issued a non-domiciled CDL. Though MVA discovered these errors during its internal review, and states that it took steps to rectify the problem, the fact that the errors occurred in the first place remains concerning.

The 2025 APR uncovered evidence of policy, procedural, and programming errors. FMCSA sampled 100 records of drivers to whom MVA issued a non-domiciled CDL. FMCSA found that four of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384. As explained in greater detail in section III(a) below, FMCSA found four transactions where MVA issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Mexico not present in the United States under the DACA program.

During the 2025 APR, MVA was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. The errors discovered during the 2025 APR indicate a breakdown in MVA's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

[15] These 40 errors include the four noncompliant driver records sampled by FMCSA during the 2025 APR, discussed below in section III(a).

**a. Finding: 49 CFR § 384.212—MVA Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico.**

During the 2025 APR, FMCSA discovered that four of the driver records sampled showed that MVA issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On January 4, 2025, MVA issued a non-domiciled CDL with an expiration date of December 10, 2027 to a driver with the initials "RPR" who is a citizen of Mexico. At the time the transaction occurred, RPR presented an unexpired EAD credential confirming their Mexican citizenship. However, MVA provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On March 27, 2025, MVA issued a non-domiciled CDL with an expiration date of February 21, 2026 to a driver with the initials "ERR" who is a citizen of Mexico. At the time the transaction occurred, ERR presented an unexpired EAD credential confirming their Mexican citizenship. However, MVA provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On March 2, 2024, MVA issued a non-domiciled CDL with an expiration date of September 4, 2027 to a driver with the initials "EGZ" who is a citizen of Mexico. At the time the transaction occurred, EGZ presented an unexpired EAD credential confirming their Mexican citizenship. However, MVA provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

4. On September 12, 2024, MVA issued a non-domiciled CDL with an expiration date of April 7, 2026 to a driver with the initials "LHE" who is a citizen of Mexico. At the time the transaction occurred, LHE presented an unexpired EAD credential confirming their Mexican citizenship. However, MVA provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico. Further, MVA informed FMCSA that it sent LHE a notice of cancellation on September 5, 2025, and that LHE downgraded to a noncommercial driver's license shortly thereafter. While MVA appears to have taken corrective action with respect to LHE, the fact that this error, and similar errors, occurred at all indicates widespread problems with MVA's administration of its non-domiciled CDL program.

## IV. Required Corrective Action

As noted above, approximately 2,571 drivers hold an unexpired non-domiciled CLP or CDL issued by MVA. In light of the errors and deficiencies in MVA's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Maryland must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Immediately provide FMCSA a list of the 40 drivers MVA erroneously issued a non-domiciled CLP or CDL when they were ineligible as citizens of Mexico, including the drivers' CDL number, name, and date of birth;
- Immediately provide FMCSA any and all documentation associated with the erroneous issuance of non-domiciled CLPs or CDL to 40 drivers who were ineligible as citizens of Mexico;
- Immediately provide FMCSA copies of all documents requested on or around September 24, 2025 and October 23, 2025;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide

documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Maryland under 23 U.S.C. § 104(b)(1) and (2).[16] Accordingly, upon a final determination of substantial noncompliance, Maryland risks losing up to approximately $27,000,000 for FY 2027.[17] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Maryland risks losing up to approximately $54,000,000 in the second and subsequent FY(s) of noncompliance.[18] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Maryland.[19]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Maryland's CDL program. Decertification of Maryland's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that MVA is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[20]

## VII. Conclusion

The 2025 APR uncovered four non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. Further, MVA acknowledged that it discovered 40 noncompliant issuances. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. MVA must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-

[16] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[17] FMCSA estimates this amount based on FY 2026 funding levels.

[18] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[19] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[20] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Maryland is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Maryland come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist MVA in resolving these serious issues.

Please note that this letter addresses noncompliance with MVA's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

January 20, 2026

Via Electronic Mail and UPS
The Honorable Mikie Sherrill
Governor of New Jersey
125 West State Street
Trenton, NJ 08608

Ms. Latrecia Littles-Floyd
Chief Administrator
New Jersey Motor Vehicle Commission
225 E. State Street
Trenton, NJ 08608

Dear Governor Sherrill and Ms. Littles-Floyd:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the New Jersey Motor Vehicle Commission's (MVC) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in New Jersey's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within New Jersey. In this regard, FMCSA found that MVC issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States and issued non-domiciled CDLs to lawful permanent residents who should have been issued regular CDLs. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that New Jersey has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. New Jersey must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of MVC's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, MVC was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

## III. 2025 Annual Program Review

FMCSA initiated New Jersey's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, MVC informed FMCSA that its records reflect that New Jersey has issued 9,200 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 129 records of drivers that MVC issued a non-domiciled CDL. FMCSA found that four of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

The 2025 APR uncovered evidence of policy and procedural errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found two transactions where MVC issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found two transactions where MVC issued non-domiciled CLPs or CDLs to lawful permanent residents of the United States, who are eligible for regular CDLs.

During the 2025 APR, MVC was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, MVC has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in MVC's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

**a. Finding: 49 CFR § 384.212—MVC Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that MVC issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On January 13, 2025, MVC issued a non-domiciled CDL with an expiration date of December 15, 2026 to a driver with the initials "SS" who is a citizen of Ukraine. Though MVC staff noted that SS presented an EAD at the time the transaction occurred, MVC did not present any evidence during the APR indicating the expiration date displayed on the credential. A query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[12] that was initiated nine months later, on September 12, 2025, showed that SS's EAD is set to expire on November 16, 2026. However, MVC issued a non-domiciled CDL with an expiration date of December 15, 2026, nearly *one month* after the EAD's expiration date.

2. On February 1, 2025, MVC issued a non-domiciled CDL with an expiration date of October 19, 2026 to a driver with the initials "VS" who is a citizen of Ukraine. At the time the transaction occurred, VS's EAD credential showed an expiration date of April 19, 2025. A SAVE query report that was initiated during the APR showed that VS's EAD is set to expire on June 8, 2026. However, MVC issued a non-domiciled CDL with an expiration date of October 19, 2026, more than *four months* after the EAD's expiration date.

---

[12] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

**b. Finding: 49 CFR § 384.212—MVC Issued Non-Domiciled CLPs or CDLs to Lawful Permanent Residents of the United States.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that MVC issued a non-domiciled CLP or CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transactions at issue are set forth below.

1. On July 28, 2025, MVC issued a non-domiciled CDL with an expiration date of July 28, 2029 to a driver with the initials "JRA." At the time the transaction occurred, MVC queried SAVE and the report showed that JRA had been granted lawful permanent resident status, which was unexpired. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, JRA was eligible for a regular CDL; however, MVC erroneously issued a non-domiciled CDL.

2. On October 16, 2025, MVC issued a non-domiciled CDL with an expiration date of August 27, 2029 to a driver with the initials "MR." During the APR, MVC did not present any evidence indicating the documentation of lawful presence it relied upon in issuing the non-domiciled CDL. A SAVE query report that was initiated during the APR showed that MR had been granted lawful permanent resident status, which was unexpired. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, MR was eligible for a regular CDL; however, MVC erroneously issued a non-domiciled CDL.

## IV. Required Corrective Action

As noted above, approximately 9,200 drivers hold an unexpired non-domiciled CLP or CDL issued by MVC. In light of the errors and deficiencies in MVC's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that New Jersey must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;

- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to New Jersey under 23 U.S.C. § 104(b)(1) and (2).[13] Accordingly, upon a final determination of substantial noncompliance, New Jersey risks losing up to approximately $44,000,000 for FY 2027.[14] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, New Jersey risks

[13] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[14] FMCSA estimates this amount based on FY 2026 funding levels.

losing up to approximately $88,000,000 in the second and subsequent FY(s) of noncompliance.[15] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to New Jersey.[16]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify New Jersey's CDL program. Decertification of New Jersey's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that MVC is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[17]

## VII. Conclusion

The 2025 APR uncovered four non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. MVC must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

New Jersey is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help New Jersey come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist MVC in resolving these serious issues.

Please note that this letter addresses noncompliance with MVC's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[15] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[16] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[17] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, S.E.
Washington, D.C. 20590**

January 8, 2026

Via Electronic Mail and USPS
The Honorable Josh Stein
Governor of North Carolina
Office of the Governor
20301 Mail Service Center
Raleigh, NC 27699-0301

Paul Tine, Commissioner
North Carolina Department of Transportation
Division of Motor Vehicles
3101 Mail Service Center
Raleigh, NC 27699-3101

Dear Governor Stein and Commissioner Tine:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the North Carolina Department of Transportation, Division of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in North Carolina's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within North Carolina. In this regard, FMCSA found that DMV issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that North Carolina has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. North Carolina must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated North Carolina's 2025 APR in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DMV informed FMCSA that its records reflect that North Carolina has issued 924 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 50 records of drivers that DMV issued a non-domiciled CDL. FMCSA found that 27[15] of the driver records sampled—approximately 54 percent—failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found 19 transactions where DMV issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found two transactions where DMV issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Mexico not present in the United States under the DACA program. Finally, as section III(c) explains, FMCSA found eight transactions where DMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

[15] Two driver records, GCM and JDM, had two violations each. Each violation is listed separately in sections III(a) and III(b). Accordingly, there are 29 errors, listed in in sections III(a)–(c) below, found in 27 driver records.

**a. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that 19 of the driver records sampled showed that DMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On March 6, 2025, DMV issued a non-domiciled CDL with an expiration date of May 28, 2030 to a driver with the initials "GCM" who is a citizen of Mexico. At the time the transaction occurred, GCM presented an unexpired EAD credential showing an expiration date of September 12, 2029. However, DMV issued a non-domiciled CDL with an expiration date of May 28, 2030, more than *eight months* after the EAD's expiration date.[16]

2. On February 5, 2025, DMV issued a non-domiciled CDL with an expiration date of November 4, 2029 to a driver with the initials "JDM" who is a citizen of Mexico. At the time the transaction occurred, JDM presented an unexpired EAD credential showing an expiration date of August 4, 2029. However, DMV issued a non-domiciled CDL with an expiration date of November 4, 2029, more than *three months* after the EAD's expiration date.[17]

3. On May 29, 2024, DMV issued a non-domiciled CDL with an expiration date of October 13, 2029, to a driver with the initials "GBM" who is a citizen of El Salvador. At the time the transaction occurred, GBM presented an unexpired EAD credential showing an expiration date of May 1, 2029. DMV provided FMCSA with a copy of a query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[18] initiated on May 29, 2024. That SAVE report showed an EAD expiration date of March 9, 2025. However, DMV issued a non-domiciled CDL with an expiration date of October 13, 2029, more than *four years* after the EAD's expiration date.

4. On April 8, 2025, DMV issued a non-domiciled CDL with an expiration date of January 2, 2030 to a driver with the initials "BPRN" who is a citizen of Honduras. At the time of the transaction, BPRN presented an unexpired foreign passport and an unexpired Form I-94 showing an expiration date of July 5, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 2, 2030, more than *four years* after the EAD's expiration date.

---

[16] The driver also appears in section III(b) because they are ineligible for a non-domiciled CDL as a citizen of Mexico not present in the United States under the DACA program.

[17] The driver also appears in section III(b) because they are ineligible for a non-domiciled CDL as a citizen of Mexico not present in the United States under the DACA program.

[18] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

5. On May 28, 2024, DMV issued a non-domiciled CDL with an expiration date of April 8, 2029 to a driver with the initials "MAP" who is a citizen of Colombia. At the time the transaction occurred, MAP presented an EAD credential showing an expiration date of January 25, 2025. DMV provided FMCSA with a copy of a SAVE query report initiated on June 8, 2024 that showed indefinite work authorization pursuant to a Withholding of Deportation or Removal Order. However, DMV did not present any evidence that it based the non-domiciled CDL issuance on an unexpired foreign passport and Form I-94. Rather, it appears that MVD based issuance on MAP's EAD and issued a non-domiciled CDL with an expiration date of April 8, 2029, more than *four years* after the EAD's expiration date.

6. On June 30, 2025, DMV issued a non-domiciled CDL with an expiration date of April 2, 2026 to a driver with the initials "WABM" who is a citizen of Venezuela. At the time the transaction occurred, WABM presented an expired EAD credential showing an expiration date of March 10, 2024. DMV provided FMCSA with a copy of a SAVE query report, initiated on June 30, 2025, that showed an EAD expiration date of September 10, 2025. However, DMV issued a non-domiciled CDL with an expiration date of April 2, 2026, nearly *seven months* after the EAD's expiration date.

7. On July 16, 2024, DMV issued a non-domiciled CDL with an expiration date of January 1, 2029 to a driver with the initials "AH" who is a citizen of Afghanistan. At the time the transaction occurred, AH presented an unexpired EAD credential showing an expiration date of February 23, 2025. DMV provided FMCSA with a copy of a SAVE query report, initiated on May 15, 2024, that confirmed the EAD expiration date of February 23, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 1, 2029, nearly *four years* after the EAD's expiration date.

8. On December 27, 2024, DMV issued a non-domiciled CDL with an expiration date of December 9, 2029 to a driver with the initials "PS" who is a citizen of Russia. At the time the transaction occurred, PS presented an unexpired EAD credential showing an expiration date of June 18, 2029. DMV provided FMCSA with a copy of a SAVE query report initiated on March 27, 2025 that confirmed the EAD expiration date of June 18, 2029. However, DMV issued a non-domiciled CDL with an expiration date of December 9, 2029, nearly *six months* after the EAD's expiration date.

9. On August 20, 2025, DMV issued a non-domiciled CDL with an expiration date of January 6, 2030 to a driver with the initials "AP" who is a citizen of Ukraine. At the time the transaction occurred, AP presented an unexpired EAD credential showing an expiration date of October 3, 2025. However, DMV issued a non-domiciled CDL with an expiration date of January 6, 2030, more than *four years* after the EAD's expiration date.

10. On November 6, 2023, DMV issued a non-domiciled CDL with an expiration date of June 13, 2028 to a driver with the initials "ADCM" who is a citizen of Nicaragua. At the time the transaction occurred, ADCM presented an unexpired EAD credential showing an expiration date of July 24, 2025. DMV provided FMCSA with a copy of a SAVE query report, initiated on November 6, 2023, which confirmed the EAD's expiration date.

However, DMV issued a non-domiciled CDL with an expiration date of June 13, 2028, nearly *three years* after the EAD's expiration date.

11. On July 29, 2025, DMV issued a non-domiciled CDL with an expiration date of August 8, 2030, to a driver with the initials "SSS" who is a citizen of Senegal. At the time the transaction occurred, SSS's EAD credential showed an expiration date of January 1, 2030. DMV provided FMCSA with a copy of a SAVE query report, initiated on May 6, 2025, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of August 8, 2030, more than *seven months* after the EAD's expiration date.

12. On June 11, 2025, DMV issued a non-domiciled CDL with an expiration date of October 25, 2030, to a driver with the initials "MG" who is a citizen of Russia. At the time the transaction occurred, MG presented an unexpired EAD credential showing an expiration date of June 19, 2025. DMV provided FMCSA with a copy of a SAVE query report, initiated on June 19, 2025, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of October 25, 2030, more than *five years* after the EAD's expiration date.

13. On October 26, 2023, DMV issued a non-domiciled CDL with an expiration date of June 13, 2028 to a driver with the initials "EAH" who is a citizen of Jordan. At the time the transaction occurred, EAH presented an unexpired EAD credential showing an expiration date of April 21, 2024. DMV provided FMCSA with a copy of a SAVE query report, initiated on October 26, 2023, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of June 13, 2028, more than *four years* after the EAD's expiration date.

14. On March 25, 2025, DMV issued a non-domiciled CDL with an expiration date of December 20, 2029 to a driver with the initials "IC" who is a citizen of Moldova. At the time the transaction occurred, IC presented an unexpired EAD credential showing an expiration date of October 3, 2028. DMV provided FMCSA with a copy of a SAVE query report, initiated on March 25, 2025, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of December 20, 2029, more than *one year* after the EAD's expiration date.

15. On March 21, 2025, DMV issued a non-domiciled CDL with an expiration date of December 1, 2030 to a driver with the initials "VZ" who is a citizen of Belarus. At the time the transaction occurred, VZ presented an unexpired EAD credential showing an expiration date of April 30, 2025. DMV provided FMCSA with a copy of a SAVE query report, initiated on March 21, 2025, which showed an EAD expiration date of October 22, 2026. However, DMV issued a non-domiciled CDL with an expiration date of December 1, 2030, more than *four years* after the EAD's expiration date.

16. On December 18, 2024, DMV issued a non-domiciled CDL with an expiration date of October 14, 2029 to a driver with the initials "MVSP" who is a citizen of El Salvador. At the time the transaction occurred, MVSP presented an unexpired EAD credential showing an expiration date of July 11, 2025. DMV provided FMCSA with a copy of a

SAVE query report, initiated on December 18, 2024, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of October 14, 2029, more than *four years* after the EAD's expiration date.

17. On September 3, 2024, DMV issued a non-domiciled CDL with an expiration date of September 17, 2028 to a driver with the initials "SM" who is a citizen of Eritrea. At the time the transaction occurred, SM presented an unexpired EAD credential showing an expiration date of September 10, 2025. However, DMV issued a non-domiciled CDL with an expiration date of September 17, 2028, more than *three years* after the EAD's expiration date.

18. On March 10, 2025, DMV issued a non-domiciled CDL with an expiration date of June 6, 2030 to a driver with the initials "AA" who is a citizen of Russia. At the time the transaction occurred, AA presented an unexpired EAD credential showing an expiration date of March 22, 2029. DMV provided FMCSA with a copy of a SAVE query report, initiated on March 10, 2025, which confirmed the EAD's expiration date. However, DMV issued a non-domiciled CDL with an expiration date of June 6, 2030, more than *one year* after the EAD's expiration date.

19. On August 13, 2024, DMV issued a non-domiciled CDL with an expiration date of November 29, 2029 to a driver with the initials "AH" who is a citizen of Ukraine. At the time the transaction occurred, AH presented an expired EAD credential showing an expiration date of October 19, 2023. DMV provided FMCSA with a copy of a SAVE query report, initiated on March 10, 2025, which showed AH's EAD was set to expire on April 19, 2025. However, DMV issued a non-domiciled CDL with an expiration date of November 29, 2029, more than *four years* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DMV issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On March 6, 2025, DMV issued a non-domiciled CDL with an expiration date of May 28, 2030 to a driver with the initials "GCM" who is a citizen of Mexico. At the time the transaction occurred, GCM presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On February 5, 2025, DMV issued a non-domiciled CDL with an expiration date of November 4, 2029 to a driver with the initials "JDM" who is a citizen of Mexico. At the time the transaction occurred, JDM presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status,

without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that eight of the driver records sampled showed that DMV issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On June 25, 2025, DMV issued a non-domiciled CDL with an expiration date of November 24, 2025, to a driver with the initials "JJGV" who is a citizen of El Salvador. At the time the transaction occurred, JJGV presented an expired EAD credential showing an expiration date of June 16, 2025. However, DMV did not provide any evidence that JJGV presented an unexpired foreign passport and Form I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). In addition, DMV provided FMCSA with a copy of a SAVE query report, initiated on June 25, 2025, that explicitly noted JJGV was not employment authorized due to a pending application. Regardless, DMV issued a non-domiciled CDL with an expiration date of November 24, 2025.

2. On May 19, 2025, DMV issued a non-domiciled CDL with an expiration date of August 24, 2030 to a driver with the initials "MS" who is a citizen of Ukraine. At the time the transaction occurred, MS presented an expired EAD credential showing an expiration date of May 17, 2025, alongside an unexpired foreign passport and expired Form I-94 showing an expiration date of May 17, 2025. However, DMV did not provide any evidence that MS presented an unexpired EAD or Form I-94, as required under 49 CFR § 383.71(f). DMV provided FMCSA with a copy of a SAVE query report, initiated on May 9, 2025, that explicitly noted MS was not employment authorized due to a pending application. Regardless, DMV issued a non-domiciled CDL with an expiration date of August 24, 2030.

3. On August 18, 2025, DMV issued a non-domiciled CDL with an expiration date of May 16, 2030 to a driver with the initials "OS" who is a citizen of Moldova. At the time the transaction occurred, OS presented three documents: 1) an expired EAD credential showing an expiration date of May 24, 2025; 2) an unexpired foreign passport; and 3) an expired Form I-94 showing an expiration date of May 24, 2025. However, DMV did not provide any evidence that OS presented an unexpired Form I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of May 16, 2030.

4. On November 27, 2023, DMV issued a non-domiciled CDL with an expiration date of August 8, 2028 to a driver with the initials "PJ" who is a citizen of Haiti. At the time the transaction occurred, PJ presented an expired EAD credential showing an expiration date of February 3, 2023. However, DMV did not provide any evidence that PJ presented an

unexpired foreign passport and Form I-94, or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of August 8, 2028.

5. On July 24, 2025, DMV issued a non-domiciled CDL with an expiration date of October 15, 2031 to a driver with the initials "LLV" who is a citizen of Venezuela. At the time the transaction occurred, LLV presented an expired EAD credential showing an expiration date of April 27, 2025. However, DMV did not provide any evidence that LLV presented an unexpired foreign passport and Form I-94, or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of October 15, 2031.

6. On September 25, 2025, DMV issued a non-domiciled CDL with an expiration date of October 10, 2026 to a driver with the initials "RSS" who is a citizen of India. At the time the transaction occurred, RSS presented an expired EAD credential showed an expiration date of June 30, 2025. While, DMV provided a copy of a Form I-94, it did not provide any evidence that RSS presented an unexpired foreign passport to accompany the Form I-94, or an unexpired EAD, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of October 10, 2026, more than *one year* after the EAD's expiration date.

7. On March 21, 2025, DMV issued a non-domiciled CDL with an expiration date of December 18, 2030 to a driver with the initials "BV" who is a citizen of Ukraine. At the time the transaction occurred, BV presented: 1) an expired EAD credential showing an expiration date of March 20, 2025; 2) an unexpired foreign passport; and 3) an expired Form I-94 showing an expiration date of March 20, 2025. However, DMV did not provide any evidence that BV presented an unexpired Form I-94 or an unexpired EAD, as required under 49 CFR § 383.71(f). DMV provided FMCSA with a copy of a SAVE query report initiated on March 21, 2025 that explicitly noted BV was not employment authorized due to a pending application. Regardless, DMV issued a non-domiciled CDL with an expiration date of December 18, 2030.

8. On March 19, 2024, DMV issued a non-domiciled CDL with an expiration date of August 10, 2028 to a driver with the initials "JLM" who is a citizen of Guatemala. At the time the transaction occurred, JLM presented an expired EAD credential showing an expiration date of April 26, 2023. DMV provided a copy of a SAVE query report confirming AH's lawful presence and work authorization in the United States, initiated on March 27, 2024. However, the SAVE query report does not cure DMV's failure to produce evidence that, at the time the transaction occurred, it verified the driver's lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States. Regardless, DMV issued a non-domiciled CDL with an expiration date of August 10, 2028.

## IV. Required Corrective Action

As noted above, approximately 924 drivers hold an unexpired non-domiciled CLP or CDL issued by DMV. In light of the systemic errors and deficiencies in DMV's issuance of non-domiciled

CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that North Carolina must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to North Carolina under 23 U.S.C. § 104(b)(1) and (2).[19] Accordingly, upon a final determination of substantial noncompliance, North Carolina risks losing up to approximately $48,750,000 for FY 2027.[20] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, North Carolina risks losing up to approximately $97,500,000 in the second and subsequent FY(s) of noncompliance.[21] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to North Carolina.[22]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify North Carolina's CDL program. Decertification of North Carolina's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[23]

## VII. Conclusion

The 2025 APR uncovered 27 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is a grossly unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

North Carolina is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses. However, the State's failure to issue non-domiciled CLPs and CDLs in accordance with Federal regulations jeopardizes these shared safety goals.

---

[19] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[20] FMCSA estimates this amount based on FY 2026 funding levels.

[21] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[22] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[23] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

FMCSA issues this preliminary determination of substantial noncompliance with a clear understanding of the gravity of the findings, but also with the expectation that North Carolina will act expeditiously to achieve substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

January 20, 2026

Via Electronic Mail and UPS
The Honorable Tina Kotek
Governor of Oregon
Office of the Governor
900 Court Street, Suite 254
Salem, OR 97301

Ms. Amy Joyce
Administrator
Oregon Driver & Motor Vehicle Services
1905 Lana Avenue NE
Salem, OR 97314

Dear Governor Kotek and Ms. Joyce:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review (APR) of the Oregon Driver & Motor Vehicle Services (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Oregon's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Oregon. In this regard, FMCSA found that DMV issued non-domiciled CDLs to citizens of Mexico not present in the United States under the Deferred Action for Childhood Arrivals program, issued a non-domiciled CDL to a lawful permanent resident who should have been issued a regular CDL, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States under the standards set forth in 49 CFR Part 383. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Oregon has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Oregon must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of DMV's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 CFR §§ 383.71 and 383.73, States must issue regular CLPs and CDLs to drivers who are U.S. citizens or lawful permanent residents. Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

(Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Oregon's 2025 APR in August of 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DMV informed FMCSA that its records reflect that Oregon has issued 1,426 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 75 records of drivers that DMV issued a non-domiciled CDL. FMCSA found that 10 of the driver records sampled failed to comply with requirements in 49 CFR Parts 383 and 384.[15]

The 2025 APR uncovered evidence of policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found eight transactions where DMV issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Mexico not present in the United States under the DACA program. In addition, as described in section III(b) below, FMCSA found one transaction where DMV issued a non-domiciled CDL to a lawful permanent resident of the United States, who was eligible for a regular CDL. Finally, as section III(c) explains, FMCSA found two transactions where DMV issued non-domiciled CLPs or CDLs but could not provide any evidence that it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DMV has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[13] *See id.*

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

[15] One driver record, MAJ, had two violations listed separately in sections III(a) and III(c). Accordingly, there are 11 errors, listed in in sections III(a) – (c) below, that FMCSA found in the 10 records sampled.

**a. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that eight of the driver records sampled showed that DMV issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On December 16, 2024, DMV issued a non-domiciled CDL with an expiration date of June 12, 2029 to a driver with the initials "DCR" who is a citizen of Mexico. At the time the transaction occurred, DCR presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On December 7, 2023, DMV issued a non-domiciled CDL with an expiration date of August 12, 2026 to a driver with the initials "JJV" who is a citizen of Mexico. At the time the transaction occurred, JJV presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On February 5, 2025, DMV issued a non-domiciled CDL with an expiration date of August 7, 2026 to a driver with the initials "LME" who is a citizen of Mexico. At the time the transaction occurred, LME presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

4. On November 7, 2024, DMV issued a non-domiciled CDL with an expiration date of May 18, 2023 to a driver with the initials "MAJ" who is a citizen of Mexico. At the time the transaction occurred, MAJ presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.[16]

5. On May 21, 2025, DMV issued a non-domiciled CDL with an expiration date of January 21, 2030 to a driver with the initials "MIM" who is a citizen of Mexico. At the time the transaction occurred, MIM presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

6. On July 24, 2025, DMV issued a non-domiciled CDL with an expiration date of January 7, 2029 to a driver with the initials "MDM" who is a citizen of Mexico. At the

[16] The driver also appears in section III(c) because DMV failed to provide evidence of lawful presence verification under the standards of 49 CFR Part 383.

time the transaction occurred, MDM presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

7. On November 15, 2023, DMV issued a non-domiciled CDL with an expiration date of April 17, 2026 to a driver with the initials "VMT" who is a citizen of Mexico. At the time the transaction occurred, VMT presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

8. On April 11, 2024, DMV issued a non-domiciled CDL with an expiration date of December 27, 2026 to a driver with the initials "LMG" who is a citizen of Mexico. At the time the transaction occurred, LMG presented an unexpired EAD credential confirming their Mexican citizenship. However, DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico

**b. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs to Lawful Permanent Residents of the United States.**

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that DMV issued a non-domiciled CDL to a driver who, as a lawful permanent resident of the United States, should have been issued a regular CDL. The transaction at issue is set forth below.

1. On May 31, 2024, DMV issued a non-domiciled CDL with an expiration date of March 22, 2027 to a driver with the initials "JZR." At the time the transaction occurred, JZR presented an unexpired United States Permanent Resident card issued by USCIS. In accordance with 49 CFR §§ 383.71 (Table 1) and 383.73, DMV was required to issue JZR a regular CDL; however, DMV erroneously issued a non-domiciled CDL.

**c. Finding: 49 CFR § 384.212—DMV Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification Under the Standards of 49 CFR Part 383.**

During the 2025 APR, FMCSA discovered that two of the driver records sampled showed that DMV issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On November 7, 2024, DMV issued a non-domiciled CDL with an expiration date of October 1, 2029 to a driver with the initials "MAJ" who is a citizen of Mexico. At the time the transaction occurred, MAJ's EAD credential had expired on May 18, 2023. However, DMV did not provide any evidence that MAJ presented an unexpired foreign passport accompanied by an approved Form I-94 or an unexpired EAD at the time the

transaction occurred, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of October 1, 2029.

2. On May 1, 2025, DMV issued a non-domiciled CDL with an expiration date of May 1, 2026 to a driver with the initials "MH" who is a citizen of Ukraine. At the time the transaction occurred, MH's EAD credential had expired on November 21, 2024. However, DMV did not provide any evidence that MH presented an unexpired foreign passport accompanied by an approved Form I-94 or an unexpired EAD at the time the transaction occurred, as required under 49 CFR § 383.71(f). Regardless, DMV issued a non-domiciled CDL with an expiration date of May 1, 2026.

## IV. Required Corrective Action

As noted above, approximately 1,426 drivers hold an unexpired non-domiciled CLP or CDL issued by DMV. In light of the errors and deficiencies in DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Oregon must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part

384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Oregon under 23 U.S.C. § 104(b)(1) and (2).[17] Accordingly, upon a final determination of substantial noncompliance, Oregon risks losing up to approximately $23,500,000 for FY 2027.[18] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Oregon risks losing up to approximately $47,000,000 in the second and subsequent FY(s) of noncompliance.[19] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Oregon.[20]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Oregon's CDL program. Decertification of Oregon's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as

[17] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[18] FMCSA estimates this amount based on FY 2026 funding levels.

[19] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[20] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

FMCSA determines that DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[21]

## VII. Conclusion

The 2025 APR uncovered 10 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Oregon is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Oregon come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

cc: Kristopher W Strickler
Director
Oregon Department of Transportation
355 Capitol St, NE MS 11
Salem, OR 97301

[21] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

**U.S. Department of Transportation**

**Federal Motor Carrier Safety Administration**

**1200 New Jersey Ave, S.E.
Washington, D.C. 20590**

January 20, 2026

Via Electronic Mail and USPS
The Honorable Spencer Cox
Governor of Utah
350 N. State Street, Suite 200
P.O. Box 142220
Salt Lake City, UT 84114

Mr. Jimmy Higgs, Director
Utah Department of Public Safety
Driver License Division
P.O. Box 144501
Salt Lake City, UT 84114-4501

Dear Governor Cox and Mr. Higgs:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In September 2025, FMCSA initiated an Annual Program Review (APR) of the Utah Department of Public Safety, Driver License Division (DLD) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, FMCSA obtained evidence of policy and procedural errors in Utah's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within Utah. In this regard, FMCSA found that DLD issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to citizens of Mexico not present in the United States under the DACA program, and issued non-domiciled CDLs without providing evidence that it verified the driver's lawful presence in the United States. Therefore, in accordance with 49 CFR § 384.307(b), this letter constitutes FMCSA's preliminary determination that Utah has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Utah must take immediate corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program.

[1] 49 U.S.C. § 31311; *see also* 49 CFR Part 384, Subparts B and C.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[2] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[3] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR Part 383 and Part 384, Subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of Part 384, Subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive APRs of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under Part 384, Subpart B, FMCSA will notify the State accordingly.[4] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[5] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[6]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[7] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take appropriate actions to improve the effectiveness of current protocols…."[8] Accordingly, FMCSA

---

[2] 49 U.S.C. § 31301 *et seq*.

[3] 49 U.S.C. § 31311(a).

[4] 49 CFR § 384.307(b). A preliminary determination of noncompliance is also known as a "finding."

[5] *Id*. at § 384.307(c).

[6] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR § 384.307(d), 49 CFR Part 384, Subpart D.

[7] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[8] Executive Order 14286 at 2; 90 Fed. Reg. at 18759–60.

conducted a thorough audit of DLD's procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time of the 2025 APR[9] provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DLD was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

With one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR Part 383.[12] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR Part 383.[13]

---

[9] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this preliminary determination of noncompliance reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

[10] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212.

[11] *Id*. at § 383.73(f)(2).

[12] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR Part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

[13] *See id.*

Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[14] States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

## III. 2025 Annual Program Review

FMCSA initiated Utah's 2025 APR in September 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. During the 2025 APR, DLD informed FMCSA that its records reflect that Utah has issued 997 non-domiciled CLPs or CDLs that remain unexpired. During the 2025 APR, FMCSA sampled 55 records of drivers that DLD issued a non-domiciled CDL. FMCSA found that 28 of the driver records sampled—approximately 51 percent—failed to comply with requirements in 49 CFR Parts 383 and 384.

The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. As explained in greater detail in section III(a) below, of the driver records sampled, FMCSA found 24 transactions where DLD issued a non-domiciled CDL that exceeded the expiration date of the driver's lawful presence documents. In addition, as set forth in section III(b) below, FMCSA found three transactions where DLD issued non-domiciled CDLs to individuals ineligible for that credential due to their status as a citizen of Canada or Mexico not present in the United States under the DACA program. Finally, as section III(c) explains, FMCSA found one transaction where DLD issued a non-domiciled CDL but could not provide any evidence that it verified the driver's lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the driver's most recent admittance into the United States prior to issuance, as required under 49 CFR §§ 383.71(f)(2)(i) and 383.73(f)(3).

During the 2025 APR, DLD was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, DLD has not programmed its systems with sufficient measures to prevent errors from occurring. The errors discovered during the 2025 APR indicate a breakdown in DLD's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below. FMCSA will provide electronic documentation for each through the State Compliance Records Enterprise (SCORE) system.

---

[14] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. Though this guidance was rescinded as part of the IFR (90 FR 46509, 46517), it remains in effect due to the Stay Order issued by the U.S. Court of Appeals for the District of Columbia Circuit on November 13, 2025.

**a. Finding: 49 CFR § 384.212—DLD Issued Non-Domiciled CLPs or CDLs With an Expiration Date That Exceeded the Expiration of the Driver's Lawful Presence Documents.**

During the 2025 APR, FMCSA discovered that 24 of the driver records sampled showed that DLD issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence document(s). The transactions are described below.

1. On June 2, 2023, DLD issued a non-domiciled CDL with an expiration date of October 4, 2028 to a driver with the initials "FML" who is a citizen of Venezuela. At the time the transaction occurred, FML's EAD credential showed an expiration date of August 28, 2024. However, DLD issued a non-domiciled CDL with an expiration date of October 4, 2028, more than *four years* after the EAD's expiration date.

2. On September 30, 2022, DLD issued a non-domiciled CDL with an expiration date of February 12, 2028 to a driver with the initials "JM" who is a citizen of Venezuela. At the time the transaction occurred, JM's EAD credential showed an expiration date of August 15, 2023. However, DLD issued a non-domiciled CDL with an expiration date of February 12, 2028, more than *four years* after the EAD's expiration date.

3. On August 21, 2025, DLD issued a non-domiciled CDL with an expiration date of February 25, 2030 to a driver with the initials "ABS" who is a citizen of Venezuela. At the time the transaction occurred, ABS's EAD credential showed an expiration date of March 4, 2029. However, DLD issued a non-domiciled CDL with an expiration date of February 25, 2030, nearly *one years* after the EAD's expiration date.

4. On August 29, 2022, DLD issued a non-domiciled CDL with an expiration date of December 24, 2027 to a driver with the initials "JPL" who is a citizen of Venezuela. At the time the transaction occurred, JPL's EAD credential showed an expiration date of March 9, 2023. However, DLD issued a non-domiciled CDL with an expiration date of December 24, 2027, more than *four years* after the EAD's expiration date.

5. On April 7, 2023, DLD issued a non-domiciled CDL with an expiration date of February 8, 2028 to a driver with the initials "LMP" who is a citizen of Venezuela. At the time the transaction occurred, LMP's EAD credential showed an expiration date of March 19, 2022, and a SAVE query report conducted by DLD at the time of transaction showed LMP's EAD was set to expire on September 10, 2023. However, DLD issued a non-domiciled CDL with an expiration date of February 8, 2028, more than *four years* after the EAD's expiration date .

6. On November 1, 2024, DLD issued a non-domiciled CDL with an expiration date of January 6, 2029 to a driver with the initials "JVO" who is a citizen of Colombia. At the time the transaction occurred, JVO's EAD credential showed an expiration date of April 30, 2025, which a SAVE query report conducted by DLD at the same time, confirmed. However, DLD issued a non-domiciled CDL with an expiration date of January 6, 2029, more than *three years* after the EAD's expiration date.

7. On October 30, 2023, DLD issued a non-domiciled CDL with an expiration date of July 31, 2028 to a driver with the initials "JAC" who is a citizen of Venezuela. At the time the transaction occurred, JAC's EAD credential showed an expiration date of May 28, 2025. However, DLD issued a non-domiciled CDL with an expiration date of July 31, 2028, more than *three years* after the EAD's expiration date.

8. On September 1, 2023, DLD issued a non-domiciled CDL with an expiration date of January 4, 2029 to a driver with the initials "RA" who is a citizen of Afghanistan. At the time the transaction occurred, RA's EAD credential showed an expiration date of June 8, 2025. While a query report from SAVE, conducted at the same time, shows RA's "Date Admitted to" was indefinite, DLD did not present any evidence that it based the non-domiciled CDL issuance on an unexpired foreign passport and Form I-94. Rather, it appears that DLD based issuance on RA's EAD and issued a non-domiciled CDL with an expiration date of January 4, 2029, more than *three years* after the EAD's expiration date.

9. On April 16, 2024, DLD issued a non-domiciled CDL with an expiration date of May 14, 2028 to a driver with the initials "MY" who is a citizen of Afghanistan. At the time the transaction occurred, MY's EAD credential showed an expiration date of July 12, 2025. While a query report from SAVE, conducted at the same time, shows MY's "Date Admitted to" was indefinite, DLD did not present any evidence that it based the non-domiciled CDL issuance on an unexpired foreign passport and Form I-94. Rather, it appears that DLD based issuance on MY's EAD and issued a non-domiciled CDL with an expiration date of May 14, 2028, more than *two years* after the EAD's expiration date.

10. On April 4, 2024, DLD issued a non-domiciled CDL with an expiration date of April 16, 2028 to a driver with the initials "RV" who is a citizen of India. At the time the transaction occurred, RV's EAD credential showed an expiration date of April 25, 2024, and a query report from SAVE, conducted at the same time, showed that RV's EAD was set to expire on October 17, 2025. However, DLD issued a non-domiciled CDL with an expiration date of April 16, 2028, more than *two years* after the EAD's expiration date.

11. On June 30, 2025, DLD issued a non-domiciled CDL with an expiration date of December 23, 2030 to a driver with the initials "EK" who is a citizen of Russia. At the time the transaction occurred, EK's EAD credential showed an expiration date of October 26, 2028. A SAVE query report conducted by DLD on May 7, 2025 also showed EK's EAD is set to expire on October 26, 2028. However, DLD issued a non-domiciled CDL with an expiration date of December 23, 2030, more than *two years* after the EAD's expiration date.

12. On May 8, 2025, DLD issued a non-domiciled CDL with an expiration date of March 20, 2030 to a driver with the initials "MS" who is a citizen of India. At the time the transaction occurred, MS's EAD credential showed an expiration date of January 17, 2029, and a SAVE query report conducted by DLD at the time of transaction showed that MS's EAD was set to expire on January 17, 2029. However, DLD issued a non-domiciled CDL with an expiration date of March 20, 2030, more than *14 months* after the EAD's expiration date.

13. On March 3, 2025, DLD issued a non-domiciled CDL with an expiration date of February 18, 2030 to a driver with the initials "AZ" who is a citizen of Russia. At the time the transaction occurred, AZ's EAD credential showed an expiration date of November 15, 2028, which a SAVE query report conducted by DLD at the time of transaction confirmed. However, DLD issued a non-domiciled CDL with an expiration date of February 18, 2030, more than *one year* after the EAD's expiration date.

14. On June 11, 2025, DLD issued a non-domiciled CDL with an expiration date of July 2, 2030 to a driver with the initials "RK" who is a citizen of Burundi. At the time the transaction occurred, RK's EAD credential showed an expiration date of August 29, 2029. While a query report from SAVE, conducted on November 19, 2024, shows RK's "Date Admitted to" was indefinite, DLD did not present any evidence that it based the non-domiciled CDL issuance on an unexpired foreign passport and Form I-94. Rather, it appears that DLD based issuance on RK's EAD and issued a non-domiciled CDL with an expiration date of July 2, 2030, more than *one year* after the EAD's expiration date.

15. On July 11, 2025, DLD issued a non-domiciled CDL with an expiration date of November 4, 2030 to a driver with the initials "LRF" who is a citizen of Brazil. At the time the transaction occurred, LRF's EAD credential showed an expiration date of April 29, 2029, and a SAVE query report conducted by DLD at the time of transaction, confirmed. However, DLD issued a non-domiciled CDL with an expiration date of November 4, 2030, more than *one year* after the EAD's expiration date.

16. On November 1, 2024, DLD issued a non-domiciled CDL with an expiration date of November 1, 2025 to a driver with the initials "MD" who is a citizen of Brazil. At the time the transaction occurred, MD's EAD credential showed an expiration date of November 29, 2024. However, DLD issued a non-domiciled CDL with an expiration date of November 1, 2025, nearly *one year* after the EAD's expiration date.

17. On February 20, 2025, DLD issued a non-domiciled CDL with an expiration date of April 19, 2030 to a driver with the initials "MMB" who is a citizen of Peru. At the time the transaction occurred, MMB's EAD credential showed an expiration date of June 13, 2029. However, DLD issued a non-domiciled CDL with an expiration date of April 19, 2030, more than *ten months* after the EAD's expiration date.

18. On March 25, 2025, DLD issued a non-domiciled CDL with an expiration date of June 9, 2030 to a driver with the initials "LSS" who is a citizen of India. At the time the transaction occurred, LSS's EAD credential showed an expiration date of October 15, 2029. A query report from SAVE, conducted on February 27, 2025, also showed that LSS's EAD is set to expire on October 15, 2029. However, DLD issued a non-domiciled CDL with an expiration date of June 9, 2030, more than *seven months* after the EAD's expiration date.

19. On October 25, 2024, DLD issued a non-domiciled CDL with an expiration date of July 3, 2029 to a driver with the initials "RDM" who is a citizen of Venezuela. At the time the transaction occurred, RDM's EAD credential showed an expiration date of November 16,

2028. However, DLD issued a non-domiciled CDL with an expiration date of July 3, 2029, more than *seven months* after the EAD's expiration date.

20. On February 18, 2025, DLD issued a non-domiciled CDL with an expiration date of January 10, 2030 to a driver with the initials "AA" who is a citizen of Somalia. At the time the transaction occurred, AA's EAD credential showed an expiration date of May 23, 2029. However, DLD issued a non-domiciled CDL with an expiration date of January 10, 2030, more than *seven months* after the EAD's expiration date.

21. On June 5, 2025, DLD issued a non-domiciled CDL with an expiration date of January 1, 2030 to a driver with the initials "MN" who is a citizen of Afghanistan. At the time the transaction occurred, MN's EAD credential showed an expiration date of April 19, 2029. However, DLD issued a non-domiciled CDL with an expiration date of January 1, 2030, more than *eight months* after the EAD's expiration date.

22. On November 4, 2024, DLD issued a non-domiciled CDL with an expiration date of October 16, 2029 to a driver with the initials "AFS" who is a citizen of Peru. At the time the transaction occurred, AFS's EAD credential showed an expiration date of July 10, 2029. However, DLD issued a non-domiciled CDL with an expiration date of October 16, 2029, more than *three months* after the EAD's expiration date.

23. On March 27, 2025, DLD issued a non-domiciled CDL with an expiration date of September 17, 2029 to a driver with the initials "BSC" who is a citizen of Colombia. At the time the transaction occurred, BSC's EAD credential showed an expiration date of July 7, 2029. However, DLD issued a non-domiciled CDL with an expiration date of September 17, 2029, more than *two months* after the EAD's expiration date.

24. On February 11, 2025, DLD issued a non-domiciled CDL with an expiration date of April 19, 2026 to a driver with the initials "ARR" who is a citizen of Mexico admitted under DACA. At the time the transaction occurred, ARR's EAD credential showed an expiration date of April 17, 2024. A query report from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE),[17] conducted on November 26, 2024, showed that ARR's EAD was set to expire on April 17, 2026. However, DLD issued a non-domiciled CDL with an expiration date of April 19, 2026, *two days* after the EAD's expiration date.

**b. Finding: 49 CFR § 384.212—DLD Issued Non-Domiciled CLPs or CDLs to Ineligible Citizens of Mexico or Canada.**

During the 2025 APR, FMCSA discovered that three of the driver records sampled showed that DLD issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico or Canada not present under the DACA program, was ineligible to receive a non-domiciled CDL. The transactions at issue are set forth below.

1. On August 4, 2025, DLD issued a non-domiciled CDL with an expiration date of December 15, 2029 to a driver with the initials "AMG" who is a citizen of Mexico. At the time the transaction occurred, AMG presented an unexpired EAD credential confirming

their Mexican citizenship. However, DLD provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On November 4, 2024, DLD issued a non-domiciled CDL with an expiration date of September 19, 2026 to a driver with the initials "JPC" who is a citizen of Mexico. At the time the transaction occurred, JPC presented an unexpired EAD credential confirming their Mexican citizenship. However, DLD provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. On December 5, 2023, DLD issued a non-domiciled CDL with an expiration date of August 24, 2028 to a driver with the initials "JHH" who is a citizen of Mexico. At the time the transaction occurred, JHH presented an unexpired EAD credential confirming their Mexican citizenship. However, DLD provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR § 384.212—DLD Issued Non-Domiciled CLPs or CDLs Without Providing Evidence of Lawful Presence Verification.**

During the 2025 APR, FMCSA discovered that one of the driver records sampled showed that DLD issued a non-domiciled CDL or CLP to a driver without providing evidence that, at the time the transaction occurred, it verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States. These transactions are described below.

1. On October 7, 2024, DLD issued a non-domiciled CDL with an expiration date of December 30, 2026 to a driver with the initials "DD" who is a citizen of Mongolia. At the time the transaction occurred, DD presented an unexpired foreign passport. DLD did not provide any evidence that DD presented an approved Form I-94 to accompany the unexpired foreign passport, or an unexpired EAD, as required under 49 CFR § 383.71(f), at the time the transaction occurred. Regardless, DLD issued a non-domiciled CDL with an expiration date of December 30, 2026.

## IV. Required Corrective Action

As noted above, approximately 997 drivers hold an unexpired non-domiciled CLP or CDL issued by DLD. In light of the systemic errors and deficiencies in DLD's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that Utah must take the following actions:

- Immediately pause the issuance of all new, renewed, transferred, amended, corrected, reprinted, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with Parts 383 and 384;

- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of Parts 383 and 384 (the scope of the audit should not be limited to the issues identified in this letter);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with Parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and, after FMCSA provides written confirmation that the State's corrective action plan has been accepted, reissue the licenses in accordance with Parts 383 and 384, in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs, including the reissuance of all previously rescinded noncompliant licenses, only after the State has voided or rescinded *all* unexpired noncompliant non-domiciled CLPs and CDLs, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of Part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR § 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. It is imperative that the corrective action addresses voiding or rescinding all unexpired noncompliant non-domiciled CLPs and CDLs. The State must provide documentation of implemented or planned corrective action, which must be adequate to address the deficiencies cited and be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to Utah under 23 U.S.C. § 104(b)(1) and (2).[15] Accordingly, upon a final determination of substantial noncompliance, Utah risks losing up to approximately $16,300,000 for FY 2027.[16] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, Utah risks losing up to approximately $32,600,000 in the second and subsequent FY(s) of noncompliance.[17] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to Utah.[18]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify Utah's CDL program. Decertification of Utah's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that DLD is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR Part 384, Subpart B.[19]

## VII. Conclusion

The 2025 APR uncovered 28 non-domiciled CDL issuances sampled by FMCSA that failed to comply with Parts 383 and 384. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. DLD must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

Utah is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help Utah come into substantial compliance. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist DLD in resolving these serious issues.

Please note that this letter addresses noncompliance with DLD's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

---

[15] 49 U.S.C. § 31314(c)(1); 49 CFR § 384.401(a).

[16] FMCSA estimates this amount based on FY 2026 funding levels.

[17] 49 U.S.C. § 31314(c)(2); 49 CFR § 384.401(b).

[18] 49 U.S.C. § 31314(d); 49 CFR § 384.403.

[19] 49 U.S.C. § 31312(a); 49 CFR § 384.405(a).

Sincerely,

Derek D. Barrs
Administrator

## List of States FMCSA Determined Failed to Comply with the Standards for Issuing Non-Domiciled CLPs and CDLs During 2025 Annual Program Reviews as of February 12, 2026

| State | Preliminary Determination of Noncompliance Letter Issuance Date (If Applicable*) | Docket Link (If Applicable) |
|---|---|---|
| California | 9/26/2025 (Preliminary Determination<br>11/13/2025 (Conditional Determination<br>1/7/2026 (Final Determination) | Preliminary Determination: https://www.regulations.gov/document/FMCSA-2025-0622-0463<br>Conditional Determination: https://www.regulations.gov/document/FMCSA-2025-0622-8056<br>Final Determination of Substantial Noncompliance: https://www.regulations.gov/document/FMCSA-2025-0622-8062 |
| Colorado | 10/23/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-4012 |
| Connecticut* | N/A | N/A |
| D.C. | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8059 |
| Delaware | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8057 |

**List of States FMCSA Determined Failed to Comply with the Standards for Issuing Non-Domiciled CLPs and CDLs During 2025 Annual Program Reviews as of February 12, 2026**

| State | Preliminary Determination of Noncompliance Letter Issuance Date (If Applicable*) | Docket Link (If Applicable) |
|---|---|---|
| Idaho* | N/A | N/A |
| Illinois** | | |
| Indiana | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8053 |
| Iowa | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8055 |
| Maine | 12/12/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8054 |
| Maryland | 1/20/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8092 |
| Michigan | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8064 |
| Minnesota | 12/1/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8063 |
| Missouri* | N/A | N/A |

**List of States FMCSA Determined Failed to Comply with the Standards for Issuing Non-Domiciled CLPs and CDLs During 2025 Annual Program Reviews as of February 12, 2026**

| State | Preliminary Determination of Noncompliance Letter Issuance Date (If Applicable*) | Docket Link (If Applicable) |
|---|---|---|
| Nevada* | N/A | N/A |
| New Jersey | 1/20/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8093 |
| New York | 12/12/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8066 |
| North Carolina | 1/8/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8094 |
| North Dakota | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8061 |
| Ohio | 2/10/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8060 |
| Oklahoma | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8067 |
| Oregon | 1/20/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8095 |
| Pennsylvania | 11/19/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8068 |

**List of States FMCSA Determined Failed to Comply with the Standards for Issuing Non-Domiciled CLPs and CDLs During 2025 Annual Program Reviews as of February 12, 2026**

| State | Preliminary Determination of Noncompliance Letter Issuance Date (If Applicable*) | Docket Link (If Applicable) |
|---|---|---|
| Rhode Island | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8065 |
| South Carolina* | N/A | N/A |
| South Dakota | 10/23/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-4011 |
| Texas | 10/23/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-4010 |
| Utah | 1/20/2026 | https://www.regulations.gov/document/FMCSA-2025-0622-8096 |
| Vermont | 12/11/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-8058 |
| Washington | 10/23/2025 | https://www.regulations.gov/document/FMCSA-2025-0622-4009 |
| Wyoming* | N/A | N/A |
| * This State has undertaken extensive voluntary corrective action and has not been issued a Preliminary Determination of Noncompliance Letter. This information is current as of February 12, 2026. | | |

**List of States FMCSA Determined Failed to Comply with the Standards for Issuing Non-Domiciled CLPs and CDLs During 2025 Annual Program Reviews as of February 12, 2026**

| State | Preliminary Determination of Noncompliance Letter Issuance Date (If Applicable*) | Docket Link (If Applicable) |
|---|---|---|
| ** Though FMCSA found that Illinois failed to comply with the standards for issuing non-domiciled CLPs and CDLs, the State remains under review. | | |